# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, <br><br> Defendants. | Case No. 1:22-cv-00398-LY |

**PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 4

    A.   Defendants Repeatedly Claim Prospera's Superiority Despite Knowing Their Claims Are Materially Misleading ................................................... 4

    B.   Deceptive Sales Practices Inflate Natera's Panorama Revenues And Demand ......................................................................................................... 5

    C.   As Natera's Stock Price Soars, Defendants Cash In ................................. 7

    D.   The Relevant Truth Is Revealed Through Two Partial Corrective Disclosures ................................................................................................... 7

III. STANDARD OF REVIEW .................................................................................. 7

IV.  ARGUMENT ......................................................................................................... 8

    A.   The AC Adequately Alleges Actionable Material Misrepresentations .................. 8

        1.   Defendants' Prospera Statements Were False And Misleading ................. 8

        2.   Defendants' Panorama Statements Were False And Misleading ............. 13

    B.   The AC Adequately Alleges A Strong Inference Of Scienter ............................. 16

    C.   The AC Adequately Alleges Loss Causation .......................................... 22

    D.   The AC Adequately Alleges Securities Act Section 11 And 12 Claims .............. 24

    E.   The AC Adequately Alleges Section 20(a) And 15 Claims ................................ 27

    F.   The AC Adequately Alleges Section 20A Claims ................................................ 27

    G.   None Of Plaintiffs' Claims Are Time-Barred ....................................................... 27

    H.   Defendants' Motion Should Be Converted To One For Summary Judgment ..................................................................................................... 29

V.   CONCLUSION ................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002) ................................................................................20

*Acticon AG v. China N. E. Petrol. Holdings, Ltd.*,
692 F.3d 34 (2d Cir. 2012)....................................................................................24

*Ala. Elec. Pension Fund v. Bank of Am. Corp.*,
175 F. Supp. 3d 44 (S.D.N.Y. 2016)......................................................................29

*In re APAC Teleservice, Inc. Sec. Litig.*,
1999 WL 1052004 (S.D.N.Y. Nov. 19, 1999).........................................................20

*In re Apache Corp.*,
2022 WL 4277350 (S.D. Tex. Sept. 15, 2022) .......................................................17

*In re Aphria, Inc. Sec. Litig.*,
2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020).........................................................14

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. July 20, 2010)......................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................8

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................................................................11

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005) .............................................................................8, 19

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
2021 WL 2646353 (E.D.N.Y. June 28, 2021) ........................................................14

*Berger v. Compaq Comput. Corp.*,
1999 WL 33620108 (S.D. Tex. Dec. 22, 1999)......................................................20

*Bond v. Clover Health Inv., Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022).................................................................14

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ...................................................................19

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*,
   2021 WL 1416025 (S.D. Tex. Apr. 14, 2021) ....................................................................14

*Campton v. Ignite Rest. Grp., Inc.*,
   2014 WL 61199 (S.D. Tex. Jan. 7, 2014) ....................................................................13, 15

*In re Cirrus Logic, Inc.*,
   2008 WL 4065925 (W.D. Tex. Aug. 28, 2008) ................................................................15

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
   2013 WL 1100819 (W.D. La. Mar. 15, 2013) .............................................................14, 20

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
   2016 WL 6075540 (W.D. Tex. Sept. 16, 2016) ..........................................................7, 8, 17

*In re Cobalt Energy, Inc. Sec. Litig.*,
   2017 WL 2599327 (S.D. Tex. June 15, 2017) .................................................................27

*In re Dynegy, Inc. Sec. Litig.*,
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ......................................................................28, 29

*Edwards v. McDermott Int'l, Inc.*,
   2021 WL 1421609 (S.D. Tex. Apr. 13, 2021) .................................................................19

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   258 F. Supp. 2d 576 (S.D. Tex. 2003) ..........................................................................19

*Ferris v. Wynn Resorts Ltd.*,
   2021 WL 3216462 (D. Nev. July 28, 2021) ....................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   618 F. Supp. 2d 311 (S.D.N.Y. 2009) ............................................................................12

*In re Fleming Cos. Inc. Sec. & Deriv. Litig.*,
   2004 WL 5278716 (E.D. Tex. June 16, 2004) .................................................................24

*In re Ford Motor Co. Sec. Litig., Class Action*,
   381 F.3d 563 (6th Cir. 2004) ........................................................................................16

*Ga. Firefighters' Pension Fund v. Anadarko Petrol. Corp.*,
   514 F. Supp. 3d (S.D. Tex. 2021) ................................................................ 9-10, 13, 26

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ....................................................................................................24

*Herschberger v. Lumpkin*,
   2022 WL 4454392 (S.D. Tex. Sept. 21, 2022) ...............................................................15

*Holzwasser v. Staktek Holdings, Inc.*,
2006 WL 897746 (W.D. Tex. Mar. 30, 2006) ........................................................21

*Howard v. Arconic Inc.*,
2021 WL 2561895 (W.D. Pa. June 23, 2021)..........................................................10

*Hurst v. Enphase Energy, Inc.*,
2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) ........................................................14

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016)......................................................................................26

*Jacobowitz v. Range Res. Corp.*,
596 F. Supp. 3d 659 (N.D. Tex. 2022) ....................................................................21

*Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*,
510 F. Supp. 3d 583 (M.D. Tenn. 2020)..................................................................10

*Jaeger v. Zillow Grp., Inc.*,
2022 WL 17486297 (W.D. Wash. Dec. 7, 2022) ............................................... 23-24

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011)..................................................................................................11

*Johnson v. CBD Energy Ltd.*,
2016 WL 3654657 (S.D. Tex. July 6, 2016)............................................................24

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
2016 WL 3981236 (D.S.C. July 25, 2016) ..............................................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...................................................................................30

*In re Kosmos Energy Ltd. Sec. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. June 24, 2013) ......................................................24

*Lee v. Active Power, Inc.*,
29 F. Supp. 3d 876 (W.D. Tex. 2014).......................................................................11

*Local 731 I.B. of T. Excavators and Pavers Pension Tr. Fund v. Diodes, Inc.*,
810 F.3d 951 (5th Cir. 2016) ...................................................................................20

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
238 F.3d 363 (5th Cir. 2001) ...................................................................................24

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)......................................................................14

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ................................................................ *passim*

*In re Massey Energy Co. Sec. Litig.*,
    883 F. Supp. 2d 597 (S.D. W. Va. 2012) ...............................................10

*McDonald v. Kinder-Morgan, Inc.*,
    287 F.3d 992 (10th Cir. 2002) ...............................................................16

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)..........................................3, 14, 15

*MicroCapital Fund LP v. Conn's Inc.*,
    2019 WL 3451153 (S.D. Tex. July 24, 2019)........................................20

*Norfolk Cnty. Ret. Sys. v. Ustian*,
    2009 WL 2386156 (N.D. Ill. July 28, 2009)..........................................21

*In re Novo Nordisk Sec. Litig.*,
    2018 WL 3913912 (D.N.J. Aug. 16, 2018) .............................................9

*Okla. Firefighters Pension and Ret. Sys. v. Six Flags Entm't Corp.*,
    58 F.4th 195 (5th Cir. 2023) ................................................... *passim*

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
    2018 WL 276338 (N.D. Tex. Jan. 3, 2018) ...........................................23

*Paskowitz v. Ernst & Young LLP*,
    2009 WL 10669368 (W.D. Tex. Jan. 27, 2009) ..........................8, 27, 28

*Plaisance v. Schiller*,
    2019 WL 1205628 (S.D. Tex. Mar. 14, 2019)........................................24

*Plumbers and Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
    679 F.3d 952 (7th Cir. 2012) .................................................................12

*Police and Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
    777 F. App'x 726 (5th Cir. 2019) ..........................................................10

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) .................................................................23

*In re Rocket Fuel, Inc. Sec. Litig.*,
    2015 WL 9311921 (N.D. Cal. Dec. 23, 2015)..................................10, 11

*Rose v. Chem. Lime, Ltd.*,
    2012 WL 13136337 (W.D. Tex. Feb. 29, 2012)....................................30

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) ........................................................................................16

*Rush v. Walter Energy, Inc.*,
    2013 WL 365269 (N.D. Ala. Jan. 29, 2013) ......................................................3, 30

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) ......................................................................18

*SEC v. Mapp*,
    2017 WL 5230358 (E.D. Tex. Nov. 9, 2017) ...........................................................9

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
    707 F.3d 95 (1st Cir. 2013)................................................................................ 25-26

*Simmons v. Tex.*,
    2010 WL 11601167 (W.D. Tex. May 14, 2010) .......................................................8

*Smith v. Reg'l Transit Auth.*,
    756 F.3d 340 (5th Cir. 2014) ....................................................................................8

*In re SolarWinds Corp. Sec. Litig.*,
    595 F. Supp. 3d 573 (W.D. Tex. 2022)................................................................2, 10

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ..................................................................................11

*Spitzberg v. Houston Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) .............................................................................17, 22

*Stillaguamish Tribe of Indians v. State of Wash.*,
    2016 WL 4992685 (W.D. Wash. Sept. 19, 2016).....................................................15

*Stone v. Life Partners Holdings, Inc.*,
    26 F. Supp. 3d 575 (W.D. Tex. 2014)..........................................................9, 14, 27

*In re Superior Offshore Int'l, Inc. Sec. Litig.*,
    2009 WL 82064 (S.D. Tex. Jan. 12, 2009).............................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................................16, 17

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)..................................................................................................26

*In re Venator Materials PLC Sec. Litig.*,
    547 F. Supp. 3d 624 (S.D. Tex. July 7, 2021) ...................................24, 27, 28, 29

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ...................................................................10

*Walker v. Rent-A-Ctr.*,
2005 WL 8161388 (E.D. Tex. July 25, 2005) ............................................................24

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ...................................................................................23

*Yannes v. SCWorx Corp.*,
2021 WL 2555437 (S.D.N.Y. June 21, 2021) ............................................................14

*Zarecor v. Morgan Keegan & Co., Inc.*,
801 F.3d 882 (8th Cir. 2015) .....................................................................................28

**Statutes**

15 U.S.C. § 78t-1(a)..........................................................................................................27

**Other Authorities**

17 C.F.R. § 229.105(a).....................................................................................................26

17 C.F.R. § 229.303(b) ....................................................................................................26

Lead Plaintiff British Airways Pension Trustees Limited and additional plaintiff Key West Police and Fire Pension Fund (together, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF No. 78) ("MTD") and the Underwriter Defendants' Joinder in the MTD (ECF No. 79) (collectively, the "Motions").[1]

## I.    **<u>INTRODUCTION</u>**

This is a straightforward securities fraud case arising from Defendants' misrepresentations about Natera's two key products, Prospera and Panorama.

Prior to the Class Period, Natera sought to enter the kidney transplant rejection testing market with its new product, Prospera, and take share from the established product, AlloSure. To get there, Defendants extolled Prospera's "superiority" over AlloSure based on comparisons of data from key studies of each respective test, the Sigdel and Bloom Studies. Internally, however, high-ranking Natera employees had long recognized that such statements of Prospera's superiority were misleading because the data did not support the apples-to-apples comparisons on which Defendants anchored their claims. Though this internal recognition at Natera never changed during the Class Period, Defendants continued to represent that Prospera was the superior test in the market. At the same time, Defendants repeatedly told the market that the Company's impressive revenues were generated largely on the back of its "flagship" product, Panorama. They did not, however, tell investors that Panorama revenues were inflated by two deceptive business practices that contravened industry guidance and norms.

As these misrepresentations and omissions injected and maintained artificial inflation in

---

[1]    Unless otherwise noted: (i) capitalized terms have the same meanings as in the Amended Complaint (ECF No. 60) ("AC"); (ii) "¶__" refers to AC paragraphs; (iii) "RJN Opp." refers to Plaintiffs' Opposition to Defendants' Request for Judicial Notice and Incorporation by Reference, filed herewith; (iv) "PX" refers to exhibits to the Declaration of Joshua E. D'Ancona, filed herewith; and (v) emphasis is added and internal alterations, citations, and quotations are omitted.

Natera's stock price throughout the Class Period, Defendants capitalized: the Company conducted two public offerings, raising nearly $900 million, while Chapman, Brophy, and Rabinowitz sold over $137 million worth of Natera stock. When the market finally learned the relevant truth, Natera's stock price collapsed, dropping over **70%** from its Class Period high of $129.09 to just $30.32 and erasing over $8.5 billion in shareholder value.

Defendants largely ignore the AC's well-pled allegations laying out the foregoing fraud, offering instead their own set of "facts" based mainly on matters outside the AC. This approach is improper at the pre-discovery, Rule 12(b)(6) stage for numerous reasons, and fails in any event. Defendants primarily claim that their alleged misstatements about Prospera were literally true statements, and simply relayed certain data from Bloom and Sigdel. Such statements can nevertheless materially mislead investors in the context in which they are made, as the AC alleges they did here. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 248 (5th Cir. 2009) (falsity is "measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead prospective buyers").

Defendants then claim a later study that is not meaningfully referenced in the AC, the Huang Study, proves their claims about Prospera's performance were true and believed by Defendants. It does not. As pled, Defendants continued to compare Bloom and Sigdel, not Huang, to push their superiority narrative. In any event, Defendants' claims about the content, import, and impact of the Huang Study raise quintessential fact issues that cannot be decided at this juncture.

Next, Defendants contend that alleged false statements on Natera's website about Prospera are *per se* not actionable because no Executive Defendant "made" them. Courts, however, routinely find that material statements on corporate websites give rise to liability for securities fraud. *See, e.g.*, *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 587 (W.D. Tex. 2022).

2

*Natera* made those statements, and its executives with "ultimate authority" over Company statements are liable for them.

With respect to Panorama, Defendants make similar arguments of "literal truth" in defense of their alleged misstatements, which also fail. From there, they dispute well-pled allegations derived from the Hindenburg Report, claiming it is presumptively unreliable because it was published by a short-seller. Courts regularly reject this argument, particularly where, as here, the report in question is corroborated and bolstered by Plaintiffs' investigation. *See, e.g.*, *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 124 (S.D.N.Y. 2013). Defendants then claim the Hindenburg Report is "refuted" by the purported findings of Natera's internal special committee investigation, the existence of which was only disclosed *after* the AC was filed, and which Defendants implore the Court to accept as true. This non-public, post-Class Period investigation and its findings are outside the four corners of the AC and cannot be considered or accepted for its truth.

Defendants' remaining arguments, including fact-intensive statute of limitation challenges, disputes over what Defendants "believed," and conclusory assertions about what the evidence will ultimately prove, are premature and improper factual disputes and, as shown below, meritless. To support these and other arguments, Defendants repeatedly introduce extraneous evidence of purported facts contrary to the AC's allegations, and ask the Court to assume their truth and dismiss this case before any of those "facts" have been tested in discovery. For the reasons set forth herein, Plaintiffs respectfully request that the Court reject this gambit and deny Defendants' Motions in their entirety, or else convert them to motions for summary judgment under Rule 56. *See Rush v. Walter Energy, Inc.*, 2013 WL 365269, at *2-3 (N.D. Ala. Jan. 29, 2013).

## II.    STATEMENT OF FACTS

### A.    Defendants Repeatedly Claim Prospera's Superiority Despite Knowing Their Claims Are Materially Misleading

Seeking to enter the kidney transplant rejection testing market, Natera embarked on a campaign to convert users of the established product in the space, CareDx, Inc.'s AlloSure, to Natera's new test, Prospera. ¶80. The linchpin of Natera's strategy was to claim that Prospera was superior to AlloSure based on what appeared be "head-to-head" comparisons. ¶¶80-81. Natera's marketing drew purported comparisons between data from the key studies for each test, the Bloom Study (for AlloSure) and the Sigdel Study (for Prospera). ¶81. For example, the Senior Medical Director of Natera's Organ Health Group trained sales representatives to claim Prospera's superiority based on that data. *Id.* Indeed, FE-1 recalled that from the start of the Class Period until ***mid-2020*** sales representatives were permitted to leave "1-pagers" with doctors, one of which made comparisons between Prospera's and AlloSure's negative predictive values, or NPVs (which measure the likelihood that a negative result is accurate), based on Sigdel and Bloom. ¶¶84-85.[2]

Throughout the Class Period, Defendants broadly hailed Prospera's superiority to the market. For example, in a May 4, 2020 press release, Billings claimed Prospera provided "more accurate, non-invasive testing methods" "***through its ability to identify rejection with higher accuracy than first generation dd-cfDNA tests*** [AlloSure] and current standards of care," supported by two footnotes: one to Bloom and one to Sigdel. ¶95. In September 2020, referencing Sigdel, Chapman boasted Prospera "generated performance data that was ***better than what was on the market from the competitors***." ¶97. All the while, Natera's website carried representations that "Prospera demonstrated better performance" citing graphics comparing the competing tests'

---

[2]    In mid-2020, sales representatives were abruptly told to stop using the "1-pagers." ¶85.

performance, and referencing Bloom and Sigdel as the bases for the claims. ¶¶100-03.

In reality, the Sigdel and Bloom Studies flatly could not support a head-to-head comparison of Prospera and AlloSure due to several fundamental differences, including materially different sample sets (¶67), types of kidney biopsy samples used (¶68), adherence to Banff Rules (¶69)[3], and the fact that Sigdel was a single-site study, while Bloom was a multi-site study (¶70).

Due to these differences, and as confirmed by internal Natera communications unsealed in the CareDx Trial in March 2022, Defendants' claims about Prospera's superiority over AlloSure were unfounded. For example, in a September 2018 email, Billings was told that "*the performance [of Prospera] isn't quite as high as we thought, and is not significantly better than CareDx's data*." ¶71. In a December 2018 email discussing Sigdel and Bloom, Billings acknowledged "[t]he reviewers are trying for apples to apples. *Unfortunately, in these kinds of studies, that is not possible*." ¶75; *see also* ¶¶72-73, 76-77. And in a November 2018 email, Natera's then-Vice President of Marketing & Medical Education bluntly told high-level employees, "*I don't think we can claim superiority*." ¶74. Yet, throughout the Class Period, Defendants did just that.

**B.     Deceptive Sales Practices Inflate Natera's Panorama Revenues And Demand**

Defendants also regularly misrepresented how Natera's "flagship" non-invasive prenatal test (or NIPT), Panorama, supposedly drove Natera's revenues. For example, in an August 5, 2020 press release, they proclaimed that the "*increase in total [year over year] revenues was driven primarily by sales of Natera's Panorama and Horizon tests*." ¶¶150-52; *see also* ¶¶156-58, 162. Defendants claimed Panorama's performance was due in part to growing demand, foretelling

---

[3]     Defendants incorrectly claim that "no one has ever disputed" that Sigdel adhered to the Banff Rules. MTD at 5 n.7. But public comments responding to Prospera's Medicare coverage application noted that Sigdel did not follow 2017 Banff Rules in at least three significant ways. PX 1 at 8, 12-13, 23-25. In any event, Defendants' argument raises "industry-specific and inherently fact-bound propositions that are inappropriate at the pleading stage." *Okla. Firefighters Pension and Ret. Sys. v. Six Flags Entm't Corp.*, 58 F.4th 195, 214 (5th Cir. 2023).

significant future revenues. ¶¶153-55, 159-61. On January 12, 2021, for instance, Chapman boasted that microdeletion screening (an addition to the basic Panorama test that came at extra cost) was ordered "8 out of 10 times" a physician ordered Panorama. ¶153. The next month, Chapman claimed, "last year, we did 400,000 microdeletion tests, and that was at a growth rate of 37% year-on-year versus 2019. *So this is really a rocket ship that's growing*." ¶155.

In truth, growing Panorama revenues and microdeletion demand were boosted by deceptive and improper practices. *First*, contravening industry guidance from The Society for Maternal Fetal Medicine ("SMFM"), the Panorama order form by default opted patients *in* to microdeletion screening for 22q syndrome. ¶¶14, 107, 145-46. That inflated the number of microdeletion screens ordered, creating the misimpression that Natera's much-hyped microdeletion demand was organic, rather than due to a default choice, and increased Panorama revenues. ¶¶14, 149.

*Second*, Natera used a closely-related third-party company, MGML, to indiscriminately submit Panorama prior authorization ("PA") requests, which health insurers required to determine if they would cover the cost of a test. Between 2018 and 2022, MGML submitted roughly *450,000* PAs for Natera. ¶¶13, 124, 132, 138. But Natera never disclosed its tight personal and financial connections with MGML (¶¶127-31, 138-39), ignoring well-recognized formal opinions from the U.S. Department of Health and Human Services Office of Inspector General ("OIG") that addressed the use of third-party PA companies and related violations of anti-kickback laws (¶¶13, 123, 136-37, 140-41). Through this improper relationship, Natera boosted Panorama revenues through volume growth because MGML indiscriminately submitted PAs, often without regard to the underlying necessity of a Panorama screen. In addition, when a PA submitted by MGML was denied after a test was run, Natera could pursue the patient for the costs (including for microdeletions), generating additional revenues. ¶¶13, 132-34, 137-38, 149.

**C.      As Natera's Stock Price Soars, Defendants Cash In**

As a result of Defendants' repeated misrepresentations, Natera's stock price skyrocketed, more than *tripling* from 2020 into late 2021. ¶15. Seizing on the artificially inflated price, Natera conducted two secondary public offerings in less than one year, generating nearly *$900 million* in gross proceeds—a $287 million offering in September 2020, and a $585 million offering in July 2021 with the help of the Underwriter Defendants. ¶¶16, 268-69. Chapman, Brophy, and Rabinowitz also capitalized, collectively selling over *$137 million* worth of Natera common stock while in possession of MNPI about Prospera and Panorama, and reaping huge amounts of related compensation. ¶¶17, 165-66, 200-10, 232-36.

**D.      The Relevant Truth Is Revealed Through Two Partial Corrective Disclosures**

On March 9, 2022, Hindenburg Research, an investment research firm with a short position in Natera, published a report describing numerous deceptive sales and billing practices Natera used to drive Panorama revenues. ¶¶18, 172. Hindenburg revealed Natera's previously-unknown close ties with MGML, its widespread use of MGML to submit PAs, and its deceptive Panorama order form. *Id.* In response, Natera's common stock price fell a staggering *33%*, which analysts attributed to the Hindenburg Report's revelations. ¶¶18, 173-74, 176. Then, on March 14, 2022, a federal jury found that Natera had intentionally and willfully misled the public by using false and misleading advertisements to claim Prospera was superior to AlloSure and awarded CareDx $44.9 million in monetary damages. ¶¶19, 177-79. In response, Natera's common stock price declined roughly *22%*. ¶¶19-20, 180-81. Analysts linked the decline to the verdict, with one noting the devastating impact on Prospera's outlook, stating that the verdict "may have squashed competitive concerns [for AlloSure] once and for all." ¶¶19, 182.

**III.    <u>STANDARD OF REVIEW</u>**

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted." *City*

*of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2016 WL 6075540, at \*2 (W.D. Tex. Sept. 16, 2016) (Yeakel, J.). A complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion, the Court cannot resolve disputed fact issues, *see Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014), and must "draw all reasonable inferences in the plaintiff's favor." *Dell*, 2016 WL 6075540, at \*2. The court should deny the motion unless it "can determine to a certainty that the plaintiff cannot prove any set of facts that would allow relief under the allegations in the complaint." *Paskowitz v. Ernst & Young LLP*, 2009 WL 10669368, at \*1 (W.D. Tex. Jan. 27, 2009) (Yeakel, J.) (the inquiry "is not whether a plaintiff will ultimately prevail").

"The Court has discretion to determine whether to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Simmons v. Tex.*, 2010 WL 11601167, at \*2 (W.D. Tex. May 14, 2010) (Yeakel, J.). If the Court accepts such material, "it must convert the motion to dismiss into one for summary judgment" under Rule 56. *Id.*

## IV.     ARGUMENT

### A.     The AC Adequately Alleges Actionable Material Misrepresentations

To allege falsity, Plaintiffs need only specify the statements they claim are fraudulent and why, the speaker, and when and where the statements were made. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 255-56 (5th Cir. 2005). Statements that are literally true can, taken in context, materially mislead investors. *See Lormand*, 565 F.3d at 248. The AC satisfies these requirements.

#### 1.     Defendants' Prospera Statements Were False And Misleading

Throughout the Class Period, during conference calls, on Natera's website, and in press releases, Defendants repeatedly compared Prospera's performance to AlloSure's based on data from Sigdel and Bloom, representing that Prospera's performance was superior to AlloSure's. ¶56. For example, Natera's website displayed a large graphic drawing a direct comparison of the two

8

products' NPVs based on Sigdel and Bloom. ¶103 (noting that the NPV comparison was based on NPVs "*calculated from all AR in Sigdel" and "*calculated from for-cause in Bloom"); *see also* ¶¶100-02. Likewise, in a September 14, 2020 conference, Chapman told investors that Prospera "***generated performance data that was better than what was on the market from competitors***." ¶97. Defendants made similar statements throughout the Class Period. ¶¶90-96, 98.

Internal emails from high-level Natera employees reveal that by late 2018, it was well-known within Natera that comparisons of Bloom and Sigdel did not support representations claiming Prospera's superiority. *See, e.g.*, ¶71 ("the performance data . . . is ***not*** significantly better than CareDx's data"); ¶73 ("***[i]t is misleading*** to claim higher sensitivity without also stating that it came with the price of lower specificity"); *see also* ¶¶72, 74-77. Thus, Defendants' statements were materially false and misleading. *See SEC v. Mapp*, 2017 WL 5230358, at *7 (E.D. Tex. Nov. 9, 2017) (sustaining scheme liability claims where SEC "identified actionable misrepresentations and false statements regarding [product's] utility compared to industry competitors"); *In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912, at *3 (D.N.J. Aug. 16, 2018) (statements that drug was "superior" to competing products misleading where product was "virtually the same as insulin drugs already on the market" and analysts attributed stock price decline to drug's failure to meet assertions of quality). While Defendants argue their prior similar claims comparing Bloom and Sigdel are irrelevant to assessing the falsity of their Class Period statements (MTD 14-15), such "context is instrumental in determining whether a statement is misleading." *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 595 (W.D. Tex. 2014). Here, Defendants' Class Period misstatements followed years of similar ones and were, in effect, the Company line. *See, e.g.*, ¶¶46-52, 78; *see also Ga. Firefighters' Pension Fund v. Anadarko Petrol. Corp.*, 514 F. Supp. 3d 942, 951-52 (S.D. Tex. 2021) (pre-class period statements provided relevant "background and

context" for class period misrepresentations).

Defendants' other arguments also fail. ***First***, they claim statements on a company's website are categorically inactionable, or, alternatively, must be overtly targeted at investors. MTD 13-14. Not so. Many courts have sustained statements made on corporate websites, including in *Police and Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019), on which Defendants rely. There, the Fifth Circuit agreed with the district court that two company website statements were false or misleading. *Id.*; *see also SolarWinds*, 595 F. Supp. 3d at 587 (sustaining statements on company website); *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, 510 F. Supp. 3d 583, 606 (M.D. Tenn. 2020) (same); *Howard v. Arconic Inc.*, 2021 WL 2561895, at *14 (W.D. Pa. June 23, 2021) ("[I]t is certainly plausible that any rational seller of securities would operate on the belief that investors would visit the Company's website."). Furthermore, "whether a reasonable investor would have utilized the website for such information [] would necessarily involve considerations of fact which is wholly inappropriate at this stage of the litigation." *In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597, 617 (S.D. W. Va. 2012).[4]

Nor is there merit to Defendants' claim that attributing Natera's website statements to the Company is impermissible group pleading. MTD 14. Defendants do not contest that Natera is a "maker" of such statements. *See In re Rocket Fuel, Inc. Sec. Litig.*, 2015 WL 9311921, at *10 (N.D. Cal. Dec. 23, 2015) ("plaintiffs may also attribute the [website] statement to the company

---

[4]  There is also no requirement that statements on a website or in marketing materials be explicitly "directed" at investors. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281, at *18 (N.D. Cal. Jan. 4, 2017) (rejecting argument that emission compliance stickers were "directed toward consumers and not the investing public" and refusing to "declare as a matter of law that a reasonable investor would not have considered the emissions stickers on Volkswagen Vehicles to be material investing information").

itself, which is also named as a defendant on the Exchange Act claims").[5] As for the Executive Defendants, where, as here, corporate executives had "ultimate authority over [a] statement" (¶34), they may be held liable for its material falsity, regardless of whether they authored it. *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011); *see also* ¶34 (alleging "each Executive Defendant was directly involved in preparing, reviewing, and approving the Company's public statements and disclosures to the market"); *Ferris v. Wynn Resorts Ltd.*, 2021 WL 3216462, at *13 (D. Nev. July 28, 2021) (executives "made" statement where complaint "alleges [they] were among the [c]ompany's most senior executives, were involved in the [c]ompany's day-to-day affairs, and were provided with copies of the [statement for approval]"); *Rocket Fuel*, 2015 WL 9311921, at *10 (executives were "makers" of website statement where complaint alleged they "possessed the power and authority to control the contents of the Company's press releases and investor and media presentations"). The same reasons doom Defendants' argument (MTD 12 n.14) that a slide deck presented during Natera's February 26, 2020 earnings call is inactionable.[6]

**Second**, Defendants argue that the Huang Study (which only analyzed AlloSure) proves that their statements comparing Prospera and AlloSure were not false or misleading. MTD 5-6, 10. For one, neither the judicial notice nor incorporation by reference doctrines permit consideration of the Huang Study, much less acceptance of Defendants' reading of it as "fact." *See* RJN Opp. at

---

[5]     Defendants' reliance on *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365-66 (5th Cir. 2004) fails, as the AC "specif[ies] which . . . document[] is attributable" to each defendant. As Defendants admit, the AC alleges "that Natera in general is liable for" its website statements. MTD 13. Further, the Court can consider the Executive Defendants' scienter for Natera's website statements, even if they did not "make" them. *See Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 884-85 (W.D. Tex. 2014) ("[T]he Court rejects Defendants' view that [an individual defendant's] scienter cannot be imputed to [the company] because [the defendant] did not make the alleged false statements . . . as this is not a legal requirement under *Southland*.").

[6]     The slide deck was also attached to an 8-K filed with the SEC that Brophy signed. ¶92; *see In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 663 (S.D.N.Y. 2017) (defendant "maker" of "statements contained within" 6-K filed with SEC that he signed).

11

14-15. But even post-Huang, Defendants kept supporting their superiority claims with comparisons of data from Sigdel and Bloom, not Huang. *See, e.g.*, ¶¶91, 95, 100-03. ***Well into 2020***, Natera trained its sales representatives to emphasize comparisons of Sigdel and Bloom, not Huang, when pitching Prospera. ¶¶82-85. And of course, Huang did not analyze Prospera at all, let alone in head-to-head fashion. Indeed, Billings testified in the CareDx Trial that Natera ***avoided*** doing a head-to-head study between Prospera and AlloSure "***because we are chicken***." *See* PX 2. In any event, arguments about the Huang Study's significance, including whether it proved Prospera's superiority or resolved purported internal "debate" at Natera (MTD 5-6), conflict with the AC's well-pled allegations and raise industry-specific questions of fact that cannot be resolved at this juncture. *See Six Flags*, 58 F.4th at 214.

***Third***, Defendants claim their statements are not actionable because they relayed accurate data. MTD 9-12. This miscasts the AC's allegations that Defendants misled "prospective buyers" by representing that Prospera was superior based on head-to-head comparisons of Bloom and Sigdel data, when they recognized internally that the Studies were inapt for this purpose and did not support such claims.[7] *See Lormand*, 565 F.3d at 248.

***Fourth***, Defendants incorrectly claim that their oral statements are subject to a different standard of falsity than their written ones. MTD 12-13.[8] The standard for oral and written

---

[7]    Defendants claim they disclosed that Bloom and Sigdel were not head-to-head studies, but none of their "support" explicitly says so. MTD 10. Moreover, a reasonable investor is not tasked with piecing together information from various sources, analyzing them, and drawing conclusions about the type of scientific comparison being made. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 325 (S.D.N.Y. 2009) ("This Court cannot rule that the scattered disclosures in various amendments, annexes and exhibits to the Prospectus and Registration Statement were sufficient as a matter of law to disclose the material facts to reasonable investors.").

[8]    *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 955-56 (7th Cir. 2012) did not hold that oral statements are analyzed differently than written ones. It observed that, in the context of being asked a compound question, a defendant's truthful response to one part did not make his failure to answer another part fraudulent. *Id.*

12

statements is the same. *See Anadarko,* 514 F. Supp. 3d at 952 (statements made in earnings and conference calls with investors and analysts actionable where defendants "failed to disclose material information necessary so the statements would not be misleading").

***Fifth***, Plaintiffs' falsity allegations are not based on the jury verdict in the CareDx Trial, as Defendants contend. MTD 10 n.13, 12. They are based, in part, on the facts within previously-sealed Natera ***records***, which reveal that Defendants' claims about Prospera's superiority based on comparisons of Bloom and Sigdel were materially inaccurate and misleading. ¶¶71-77, 104. While Plaintiffs' allegations of falsity are ***consistent*** with the jury's verdict, they are not dependent upon it, rendering Defendants' cited authority inapposite. ¶104 (alleging jury verdict "is ***further*** evidence that Defendants' statements were materially false or misleading when made").

Relatedly, Defendants' dissatisfaction with the CareDx verdict, or the presiding Judge's post-verdict remarks about Natera's statements (MTD 1, 6), are not facts that can disprove falsity or support inferences in Defendants' favor now. *See Campton v. Ignite Rest. Grp., Inc.*, 2014 WL 61199, at *4 (S.D. Tex. Jan. 7, 2014) (courts do not resolve fact disputes when ruling on motion to dismiss); *see also* RJN Opp. 8-9, 13-14.

### 2.    Defendants' Panorama Statements Were False And Misleading

In press releases and conference calls during the Class Period, Defendants continuously highlighted Natera's revenues, which they claimed were "driven primarily by sales of Natera's Panorama and Horizon tests," and lauded demand for microdeletion screening, claiming it was ordered on nearly 80% of all Panorama tests. ¶¶150-62. In truth, Panorama revenues were being driven, in part, by opting patients in to 22q screening by default (¶¶145-46) and the use of closely-related MGML, which indiscriminately submitted PAs for Panorama tests (¶¶123-41). These practices flouted well-established industry guidance.

Where, as here, "Plaintiffs describe in detail [Defendants'] departure from the industry

13

standard," and how that drove Natera's revenues, such statements are actionable. *Stone*, 26 F. Supp. 3d at 586; *see also Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, 2021 WL 1416025, at \*12 (S.D. Tex. Apr. 14, 2021) (sustaining fraud claims where defendants "clandestinely used unconventional and unsustainable drilling methods to inflate reserve and earnings estimates"); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*, 2013 WL 1100819, at \*3 (W.D. La. Mar. 15, 2013) (statements that revenues were driven by organic growth and acquisitions actionable where they partly resulted from Medicare abuse).

Defendants' arguments to the contrary all fail. **First**, they accuse Plaintiffs of blindly relying on the Hindenburg Report, which Defendants claim is presumptively unreliable. MTD 15. As noted above though, courts routinely credit allegations derived from short reports, including by Hindenburg. *See McIntire*, 927 F. Supp. 2d at 124 (rejecting reliability challenge as to short reports); *see also Bond v. Clover Health Inv., Corp.*, 587 F. Supp. 3d 641, 666 (M.D. Tenn. 2022) (rejecting argument that short report **by Hindenberg** was unreliable).[9] Moreover, far from blind acceptance, Plaintiffs' counsel conducted a rigorous independent investigation that corroborated and expanded on the Hindenburg Report's factual claims. ¶¶124-30, 132-38, 140-43 (corroborating information about MGML); ¶¶145-48 (same for order form allegations).[10]

Defendants argue the Hindenburg Report must be **further** "substantiat[ed]" or "validated"

---

[9]    Hindenburg's reports have been credited in many other cases alleging securities fraud. *See Behrendsen v. Yangtze River Port & Logistics Ltd.*, 2021 WL 2646353, at \*15 (E.D.N.Y. June 28, 2021); *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at \*2 (S.D.N.Y. June 21, 2021); *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at \*3 (S.D.N.Y. Sept. 30, 2020).

[10]    *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020) does not help Defendants. That court noted that "where courts have found that well-pled independent and particularized facts **corroborate** those attributed to anonymous sources in short-seller reports, courts have sustained such complaints." Here, Plaintiffs alleged corroborating facts. Thus, *Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at \*4 (N.D. Cal. Aug. 17, 2021) is also inapposite.

14

now, before discovery, to be considered in the Court's analysis. MTD 15. But a "plaintiff is not required to prove his case at the pleading stage." *Herschberger v. Lumpkin*, 2022 WL 4454392, at *2 (S.D. Tex. Sept. 21, 2022).[11] And the "truth of [a short report] is a factual dispute not appropriate for resolution at this stage." *McIntire*, 927 F. Supp. 2d at 124.

Defendants next claim it is dispositive and exculpatory that Natera conducted an internal investigation regarding the assertions in the Hindenburg Report that purportedly found no evidence of wrongdoing, the existence of which was not disclosed until after the AC was filed. *See* MTD 8, 15; ECF No. 81, Ex. 13. As an initial matter, no details, much less the full record, of this investigation have been made public, nor have Plaintiffs had the opportunity to analyze or test its conclusions. Defendants cannot secure dismissal based on non-public evidence solely in their possession that has not been subjected to discovery. *See In re Cirrus Logic, Inc.*, 2008 WL 4065925, at *5 (W.D. Tex. Aug. 28, 2008) (special committee findings "may prove to exonerate Defendants after a supporting evidentiary record has been developed, [but] the Court finds them unpersuasive at the pleadings stage"); *see also Stillaguamish Tribe of Indians v. State of Wash.*, 2016 WL 4992685, at *5 (W.D. Wash. Sept. 19, 2016) (denying dismissal and summary judgment motions "until after discovery is conducted"). Nor can a few quotes from analyst reports that Defendants claim undercut the Hindenburg Report win the day. *Id.* These arguments all raise fact disputes that cannot be resolved at this stage. *See Campton*, 2014 WL 61199, at *4.

***Second***, Defendants wrongly argue that Plaintiffs allege Natera's financial results were misstated. MTD 16-18. The AC actually alleges that Defendants repeatedly told investors that Panorama was a key source of Natera revenues, rendering Defendants' concealment of the material

---

[11]     The crux of Plaintiffs' allegations is that the Natera-MGML relationship increased the Company's revenues, so they need not prove that Natera violated anti-kickback laws. MTD 16.

fact that Panorama revenues were inflated by deceptive practices materially false or misleading. *See Lormand*, 565 F.3d at 248-49 ("Once the defendants engaged in public discussions concerning the [issue], they had a duty to disclose a mix of information that is not misleading."); *see also Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994) ("[A] duty to speak the full truth arises when a defendant undertakes a duty to say anything.").[12] For the same reason, it is no defense that Defendants never ***denied*** offering 22q screening with Panorama tests (MTD 18) or that they never acknowledged the existence of MGML (MTD 16-17), as portraying a literally true but materially incomplete picture violates the federal securities laws. *See Lormand*, 565 F.3d at 248-49.

***Third***, Defendants make arguments about what the OIG opinions required, whether they were obligated to follow them or the SMFM's guidance on microdeletions, and the extent to which Natera was reimbursed for microdeletion screening. MTD 15-18. These arguments are irrelevant and cannot be squared with the AC's allegations, as they ignore the gravamen of Plaintiffs' claims—that Defendants' undisclosed, deceptive conduct inflated Natera's revenues. Regardless, Defendants' arguments raise fact-intensive and industry-specific inquiries that cannot be resolved on a motion to dismiss. *See Six Flags*, 58 F.4th at 214.

B.     **The AC Adequately Alleges A Strong Inference Of Scienter**

Scienter is the "intent to deceive, manipulate, or defraud or severe recklessness." *Id.* Courts must consider all of the AC's scienter allegations "holistically" and may not "scrutinize" individual allegations "in isolation." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). The inference of scienter "need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences," so long as it is "cogent and at least as compelling as

---

[12]     Defendants' authorities miss the mark. MTD 17. For example, both *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002) and *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 570 (6th Cir. 2004) found that accurate historical financial results did not mandate disclosure of uncertain ***future*** events.

16

any opposing inference one could draw from the facts alleged." *Id.* at 324. Circumstantial allegations can suffice, *Dell*, 2016 WL 6075540, at *4, and motive allegations are not necessary, though they may "meaningfully enhance" the inference. *See Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 685 (5th Cir. 2014). "[T]he strong-inference pleading standard does not license the court to resolve disputed facts at this stage in the case," *Dell*, 2016 WL 6075540, at *4, and a "tie favors the plaintiff." *Six Flags*, 58 F.4th at 214. Viewed holistically, the AC's allegations raise a strong inference of Defendants' scienter.

***Defendants Knew Information Undermining Their Prospera Statements.*** A series of 2018 and 2019 emails show that internally, at Natera's highest levels, it was recognized that claims of Prospera's superiority based on comparing data from Sigdel and Bloom were unfounded. ¶¶71-77. For example, in September 2018, Billings was told that "***the performance [of Prospera] isn't quite as high as we thought, and is not significantly better than CareDx's data***." ¶71. Natera's Director for Transplant Marketing stated in November 2018, "***I don't think we can claim superiority***." ¶74. Per FE-2, Chapman was explicitly advised by Natera's Head of Communications for PR to stop publicly comparing Prospera and AlloSure. ¶86.

Nevertheless, prior to and throughout the Class Period, Defendants kept representing that Prospera was superior to AlloSure.[13] These directly relevant internal communications undermining Defendants' public statements support a strong inference of scienter. *See In re Apache Corp.*, 2022 WL 4277350, at *6-7 (S.D. Tex. Sept. 15, 2022) (scienter pled where defendants made statements about oil field's prospects despite knowledge it was not viable, lacked data to make reasonable statements or projections about future production from the oil field, and knew the oil field was

---

[13]    Contrary to Defendants' claim (MTD 23 & n.24), the AC does plead that Rabinowitz made misstatements about Prospera within Natera's 2019 and 2020 10-Ks, which he signed.

17

underperforming), *adopted by*, 2022 WL 17324439, at *1 (S.D. Tex. Nov. 29, 2022); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 905-06 (E.D. Pa. 2018) (finding scienter where defendants knew "withholding the negative data that contradicted their public statements was misleading to investors").

In response, Defendants try to neutralize the AC's FE allegations, claiming they "must" be discounted. MTD 20 n.20. But "[d]iscount does not mean unfettered discretion to discard." *Six Flags*, 58 F.4th at 208. Contrary to the MTD (MTD 20 n.20), the AC details how each FE possessed the information they provided and how that information is relevant to the issues in this case. ¶¶82-85 (FE-1 attended meetings where Natera trained sales representatives to push "superiority" narrative based on comparisons of Sigdel and Bloom); ¶86 (FE-2 was told by Stabrawa that Stabrawa personally told Chapman to stop comparing Prospera and AlloSure). These well-substantiated FE allegations therefore must be credited, regardless of the absence of allegations of direct FE interaction with Chapman, Brophy, or Billings (MTD 22-23). *See Six Flags*, 58 F.4th at 208 (crediting FE allegations where complaint detailed how FE would possess relevant knowledge, job responsibilities directly relevant to issues in case, and had corroborating evidence). The AC pleads, based on internal documents, that Billings had actual knowledge that Natera's superiority claims were unjustified, and the FE allegations bolster the ample circumstantial evidence of his, Chapman's, and Brophy's severe recklessness.

***Defendants repeatedly spoke on the topics at issue.*** During the Class Period, Defendants made 13 detailed statements during earnings calls, in press releases, and on Natera's website claiming Prospera's purported clinical superiority over AlloSure, including seven statements that contained explicit footnote references to Sigdel and Bloom. ¶¶90-98, 100-03. Natera, Chapman, and Brophy also repeatedly highlighted Panorama as a key driver of revenue growth, and boasted

18

in detail no less than five times about the specific number of microdeletions the Company was running and the potential for significant profits. ¶¶150-62. Defendants' "numerous and frequent" detailed statements claiming Prospera's superiority and touting Panorama's revenue growth and microdeletion demand contribute to a strong inference of their scienter. *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 784 n.37 (S.D. Tex. 2012); *see KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2016 WL 3981236, at *9 (D.S.C. July 25, 2016) ("allegations that [defendants] repeatedly spoke on these issues at conferences, on conference calls, and in press releases" supported scienter).

**Chapman, Brophy, and Rabinowitz had motive to defraud.** The AC amply pleads that achieving certain revenue targets, which Defendants' fraud directly impacted, had a 55% weight in determining the over **$1.38 billion** collective bonuses in 2020 and 2021 of Chapman, Brophy, and Rabinowitz. ¶¶196-98. Additionally, in 2020 and 2021 Chapman received large stock grants tied to revenue targets. ¶199. That Defendants' fraud enabled these executives to reap significant financial rewards establishes motive and contributes to the scienter inference. *See Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421609, at *9 (S.D. Tex. Apr. 13, 2021) (allegations defendants "received bonuses and increases in their base pay" supported scienter); *Barrie*, 397 F.3d at 261, 264 (bonuses tied to achieving company's targeted revenues and earnings sufficient motive).

Defendants' stock sales also support a strong inference of scienter. "There is no *per se* rule for what constitutes illicit insider trading, and each case must be decided on its own facts." *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 593-94 (S.D. Tex. 2003). Whether sales are suspicious is gauged by factors including timing of the sales, amount and percentage of holdings sold, amount of profit received, number of other insiders selling, or a substantial change in the volume of insider sales. *See id.* Here, Chapman, Brophy, and Rabinowitz all sold large amounts of stock at inflated prices, reaping proceeds of over **$137 million**. ¶200. Chapman sold

19

roughly 93% of his holdings for over **$73 million**, Brophy sold nearly 83% of his holdings for over **$25 million**, and Rabinowitz sold stock worth over **$38 million**, all while Natera's stock price was vastly inflated by Defendants' fraud. ¶¶201-10; *see LHC Grp.*, 2013 WL 1100819, at *5 (stock sale at inflated price indicated scienter); *Berger v. Compaq Comput. Corp.*, 1999 WL 33620108, at *17 (S.D. Tex. Dec. 22, 1999) (collective insider sales of roughly $120 million supported inference of scienter).

Relying on *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 435 (5th Cir. 2002), Defendants argue that the dispositive inquiry is Chapman's and Rabinowitz's percentage of total holdings sold. MTD 21-22. But the Fifth Circuit did not establish so strict a test in *Abrams*, and also explained that "[s]uspicious" means sales "out of line with prior trading practices **or at times calculated to maximize personal profit**," as here. 292 F.3d at 435. Defendants do not claim Brophy's percentage of shares sold is not suspicious and Billings' lack of stock sales or bonuses does not undercut his or any other Defendants' scienter. MTD 23. "[T]hat not every one of the defendants may have sold stock does not defeat an inference of scienter at this stage of the litigation." *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *7 (S.D.N.Y. Nov. 19, 1999) (citing *Rubinstein*, 20 F.3d at 169-170).[14] Defendants' argument that their trading was immunized because it was pursuant to 10b5-1 plans raises a fact-intensive "affirmative defense, which is irrelevant" at this stage. *MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *21 n.40 (S.D. Tex. July 24, 2019); *see also In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 722 (W.D. Tex. July 20, 2010) (same).

---

[14]    Defendants' reliance on *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 960 (5th Cir. 2016) in unavailing. MTD 23-24. There, a single defendant sold stock, which the court found did not **establish** scienter. Here, the AC's insider trading allegations for three of four Executive Defendants bolsters a strong inference of scienter.

***Panorama and Prospera were core operations.*** Defendants do not contest that Panorama, Natera's "flagship" product and a primary driver of Company revenues (¶¶187-88), was a core operation. In addition, Prospera was the crucial first offering in one of Natera's three business segments, and in 2022 was identified by Defendants as a "Key driver[]" for future revenue. ¶¶189-90. The importance of Panorama and Prospera to Natera supports an inference of Defendants' conscious misbehavior or recklessness when misrepresenting material facts about these two tests. *See Six Flags*, 58 F.4th at 219 (operation that was "important aspect of future growth prospects and EBITDA" despite only comprising 3% of company's revenues supported scienter)[15]; *Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) (Yeakel, J.) (misstatements that "pertained to [company's] core business" supported scienter).

***Natera's history of improper billing supports a strong inference of scienter.*** The AC also details Natera's 2018 settlement with the DOJ for abusive billing practices that increased Natera's Panorama revenues. ¶193. Chapman and Rabinowitz were in key positions at the time of the DOJ settlement and the period in which the abusive Panorama billing practices occurred. ¶195. These facts support the inference that they were focused on and knowledgeable about the Company's Panorama billing practices during the Class Period. *Id.*; *see Norfolk Cnty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *8 (N.D. Ill. July 28, 2009) (defendants' knowledge of prior accounting irregularities and SEC investigation that foreshadowed problems to come supported scienter).[16]

---

[15]    Defendants' claim that Prospera was not a core operation because it did not generate the majority of Natera's revenues (MTD 19 n.18) thus fails.

[16]    That no Executive Defendant was named in the settlement and Natera did not admit guilt (MTD 24-25) is irrelevant, and Defendants' reliance on *Jacobowitz v. Range Resources Corp.*, 596 F. Supp. 3d 659, 688 (N.D. Tex. 2022) fails. There, despite arguing that scienter was established because defendants admitted to misconduct in a settlement, plaintiff did not "give any further detail on precisely what alleged misconduct gives a basis for his scienter argument." *Id.* Here, the AC details why the DOJ settlement ***contributes*** to, rather than establishes, scienter.

***Defendants' remaining arguments fail.*** To argue that Billings lacked scienter for his May 4, 2020 statement, Defendants attempt to explain away emails he sent or received by adding their own gloss onto them, based on extrinsic documents. MTD 22-23. Their narrative about the comparison Billings "purport[ed]" to make between Prospera and AlloSure, however, conflicts with the AC and should not be credited, and their point about what Billings did not say when comparing Prospera and AlloSure (e.g., "significantly better") is irrelevant speculation.

***Defendants do not raise a more compelling inference.*** Defendants' argument that the more compelling inference is that Natera simply compared Prospera against competitors using accurate data (MTD 24) asks the Court to ignore reality. Natera's strategy from 2019 through mid-2021 was to convert AlloSure users to Prospera based on public statements comparing the performance of both tests that were recognized internally to be misleading. ¶¶80-81, 83-84. Similarly, Defendants claim they believed their statements about Prospera or Panorama, including that Panorama growth was driven by demand. MTD 20, 22-24. But "Defendants['] subjective beliefs . . . are irrelevant to whether [their] statements . . . were factually false and severely reckless." *Spitzberg*, 758 F.3d at 686.[17] Put simply, the inference that Defendants were at least severely reckless is as cogent and compelling as any other inference Defendants strain to raise.

### C.    The AC Adequately Alleges Loss Causation

To plead loss causation, Plaintiffs need only allege "a facially plausible causal relationship between the fraudulent statements or omissions and plaintiff's economic loss," i.e., a disclosure "of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock" and investor loss. *Lormand*, 565 F.3d at 258. Rule 8's notice pleading standard governs the

---

[17]    Defendants claim any scienter inference is undermined by the fact that that Chapman, Brophy, and Rabinowitz were not in the CareDx Trial. MTD 20, 22-23. This point is supported by no case law and sidesteps the AC's allegations of their actual knowledge or severe recklessness.

inquiry. *See Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014).

The AC pleads loss causation, alleging that: (i) on March 9, 2022, Hindenburg detailed Natera's deceptive Panorama sales and billing practices, leading to a 33% decline in Natera's stock price (¶¶18, 172-76); and (ii) on March 14, 2022, a jury found that Natera intentionally misled the public through false and misleading claims that Prospera was superior to AlloSure, driving a stock price decline of roughly 22% over two days (¶¶19-20, 180-81). *See Parmelee v. Santander Consumer USA Holdings, Inc.*, 2018 WL 276338, at *6 (N.D. Tex. Jan. 3, 2018) (holding allegations that "company's stock price dropped" upon corrective information pled loss causation).

Defendants do not dispute the substance of the alleged corrective disclosures or that such information caused Natera's stock price to decline.[18] Instead, citing *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021), they argue that a bounce back in Natera's stock price several days after the CareDx verdict proves a lack of loss causation for the March 14 corrective. MTD 25. Defendants are wrong. In *Tesla*, the court found that: (i) the truth was disclosed *a month earlier* than plaintiffs alleged; and (ii) the stock fell only 3.9% and "immediately rebounded" the next trading day. 985 F.3d at 1198 & n.4. Here, the relevant truth about Prospera was not disclosed before March 14, 2022, and Natera's stock price did not fully rebound the next day; rather, its stock price declined roughly 22% across March 14 *and* 15. ¶180; MTD 25. Even two and three days later, Natera's stock price did not attain pre-disclosure levels. *Id.* In addition, courts regularly reject "bounce back" arguments at the pleading stage. *See, e.g.*, *Jaeger v. Zillow Grp., Inc.*, 2022 WL 17486297, at *10 (W.D. Wash. Dec. 7, 2022) (rejecting argument that plaintiff failed to plead

---

[18]    Defendants wrongly claim that Plaintiffs do not differentiate between the stock price drop after the Hindenburg Report and that following the CareDx Trial verdict (MTD 7). *Compare* ¶173 (decline following Hindenburg Report) *with* ¶¶179-80 (declines following CareDx Trial verdict).

loss causation because stock price recovered); *Acticon AG v. China N. E. Petrol. Holdings, Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) ("[a]t this stage . . . we do not know whether the price rebounds represent the market's reactions to the disclosure of the alleged fraud or . . . unrelated gains").[19]

### D.       The AC Adequately Alleges Securities Act Section 11 And 12 Claims

Securities Act Section 11 and 12(a)(2) claims have "roughly parallel elements," that create liability for any "untrue statement of a material fact or omi[ssion] [of] a material fact required to be stated therein or necessary to make the statements" not misleading in a registration statement and prospectus, respectively. *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *2-3 (S.D. Tex. July 6, 2016). Section 11 and 12(a)(2) claims need only satisfy Rule 8's notice pleading standard, *see In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 664 (N.D. Tex. June 24, 2013), and "place[] a relatively minimal burden on a plaintiff." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). They do "not require a plaintiff to plead or prove scienter," and congressional policy "was to create liability regardless of fault." *In re Fleming Cos. Inc. Sec. & Deriv. Litig.*, 2004 WL 5278716, at *45 (E.D. Tex. June 16, 2004).[20]

Plaintiffs specifically pled their Securities Act claims separately, disavowed fraud allegations, and expressly alleged strict liability and negligence for those claims. ¶249. Thus, Rule 8 applies. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 369 (5th Cir. 2001); *Walker v. Rent-A-Ctr.*, 2005 WL 8161388, at *18 (E.D. Tex. July 25, 2005).[21]

Here, the Offering Documents for Natera's July 2021 SPO incorporated by reference

---

[19]    *Plaisance v. Schiller*, 2019 WL 1205628, at *38 (S.D. Tex. Mar. 14, 2019) is inapposite, as the plaintiffs there did not allege that a stock drop occurred after the alleged corrective disclosure. Here, Plaintiffs have done so for the March 14 corrective. ¶180.

[20]    Plaintiffs' standing for their Securities Act claims is uncontested.

[21]    Assuming, arguendo, that Plaintiffs' Securities Act claims sound in fraud, the AC's allegations were made with particularity and thus satisfy Rule 9(b). *See* Section IV.A.1; *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 669 (S.D. Tex. July 7, 2021) (sustaining Section 11 claims for same reasons as Section 10(b) claims).

Natera's 2020 10-K, which claimed Prospera's supposed superiority over AlloSure, rooted in a comparison of data from Bloom and Sigdel, stating: "[p]ublished studies of the performance of our Prospera transplant rejection test in **both clinical** and analytical **validation report higher sensitivity and higher area under the curve, or AUC, than both the current standard of care and the competing test**." ¶272. This statement omitted the material fact that the clinical validation data on which Natera based its comparison did not support claims of superiority, as demonstrated by numerous internal emails dating back to 2018. ¶273. These facts that undermined Defendants' Prospera claims indisputably constituted "information that a reasonable investor could consider significant in making his investment decision" in Natera. *See In re Superior Offshore Int'l, Inc. Sec. Litig.*, 2009 WL 82064, at *3 (S.D. Tex. Jan. 12, 2009).

In response, Defendants claim that because their damning internal emails predated the July 2021 SPO by over two years, and additional clinical studies were conducted after 2018, their statement is not actionable. MTD 27. These facts are irrelevant since Defendants claimed Prospera was superior based on a comparison of Bloom and Sigdel, not any other clinical validation data, and the AC does not allege that those circumstances changed between 2018 and the July 2021 SPO. Next, Defendants again claim that their internal emails reflect some sort of "debate" over whether Prospera was "significantly" better than AlloSure. *Id.* For the reasons discussed in Section IV.A.1., this is an improper factual dispute. Defendants' related claim that the Offering Documents were not misleading because they did not use the words "significantly better" raises a distinction without a difference. Their words were misleading when evaluated for their "ability . . . to accurately inform rather than mislead prospective buyers." *Lormand*, 565 F.3d at 248.

With respect to Plaintiffs' Item 303 and Item 105 (formerly Item 503) claims, Defendants concede they are actionable as "[Section] 11 omission[s]." *Silverstrand Invs. v. AMAG Pharms.,*

25

*Inc.*, 707 F.3d 95, 102 (1st Cir. 2013); *see also Anadarko*, 514 F. Supp. 3d at 954 (upholding Rule 10b-5(c) claim where plaintiffs alleged failure to disclose complete information necessary to understand company's financial position violated Item 303). Plaintiffs have adequately alleged that Defendants' concealed practices of: (i) opting patients by default into expensive microdeletion testing; and (ii) using MGML to submit large numbers of PAs were known trends that were "reasonably likely to have a material . . . unfavorable impact on net sales or revenues or income" in violation of Item 303, 17 C.F.R. § 229.303(b)(1)(i), (b)(2)(ii). ¶¶282-83. Those omissions, in addition to Defendants' knowing concealment that, contrary to its representations, Natera lacked any head-to-head study comparing Prospera and AlloSure (¶275), were actionable violations of Item 105, which requires disclosure of "the material factors that make an investment in [Natera] or [the July 2021 SPO] speculative or risky." 17 C.F.R. § 229.105(a).

Defendants' challenges to Plaintiffs' Item 303 and Item 105 claims also fail. MTD 27-28. ***First***, Defendants assert that misrepresentations and omissions about Prospera and Natera's deceptive billing practices were not sufficiently material to render investment in the July 2021 SPO risky, or that the undisclosed risk could seriously affect its present or future business. This is belied by the significant market reactions following disclosure of the relevant truth on March 9 and March 14, 2022. ¶¶173, 179-80; *see, e.g.*, *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95-96 (2d Cir. 2016) (disclosure required because defendant "could be implicated in the fraud" and had "possible exposure to significant civil and even criminal liability"). Moreover, materiality is a mixed question of law and fact ordinarily entrusted to a jury. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). ***Second***, Defendants argue they lacked sufficient knowledge that the challenged practices, once revealed, were reasonably likely to negatively impact Natera's sales,

26

revenues, or income, or make investment in the July 2021 SPO risky. Not so. As discussed in Section IV.B., above, senior officers were aware of these practices and the risks they entailed.

### E.    The AC Adequately Alleges Section 20(a) And 15 Claims

The Court should sustain Plaintiffs' Section 20(a) and 15 claims because the AC adequately pleads violations of Sections 10(b), 11, and 12(a)(2), and the Executive Defendants concede they controlled Natera. *See Stone*, 26 F. Supp. 3d at 612 (Section 20(a) claim sustained where "control person" allegations uncontested).

### F.    The AC Adequately Alleges Section 20A Claims

The AC pleads that the Insider Trading Defendants traded Natera stock while in possession of MNPI about Prospera and Panorama (¶¶228-44), and, thus, adequately pleads Section 20A claims. *See In re Cobalt Energy, Inc. Sec. Litig.*, 2017 WL 2599327, at *3 (S.D. Tex. June 15, 2017) ("A plaintiff makes a *prima facie* case that a defendant is liable for insider trading under Section 20A by showing that the defendant was aware of the material nonpublic information when he made the purchase or sale of the securities."). Defendants do not contest that they possessed MNPI, but instead argue that Plaintiffs claims fail because they have not pled that the Insider Trading Defendants traded "on the basis of" MNPI. MTD 28. This is not the standard. *See Cobalt*, 2017 WL 2599327, at *3; 15 U.S.C. § 78t-1(a) (proscribing "purchasing or selling a security while in possession of material, nonpublic information").

### G.    None Of Plaintiffs' Claims Are Time-Barred

Inquiry notice exists only where plaintiffs have ready access to "the ***essential facts***" they need "in order to be able to sue," *Paskowitz*, 2009 WL 10669368, at *3, which must relate "directly to the misrepresentations and omissions plaintiffs later allege in their action against defendants" and be "sufficiently ***confirmed*** or ***substantiated*** to a point at which" they are incited to investigate. *Venator*, 547 F. Supp. 3d at 667. Questions of inquiry notice are "factually intensive" and "often

27

inappropriate to resolve on motion to dismiss." *Id.* at 668. "Investors are not placed on inquiry notice when the warning signs are accompanied by reliable words of comfort from management." *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 850 (S.D. Tex. 2004). "[D]efendants bear a heavy burden in establishing that the plaintiff was on inquiry notice as a matter of law." *Id.* at 847.

Defendants argue without merit that the limitations periods for the: (i) Prospera-based Securities Act and Exchange Act claims ran in April 2020 and April 2021, respectively; and (ii) Panorama-based Securities Act claims ran in December 2021. MTD 29-30.[22] Regarding Plaintiffs' Prospera claims, the April 2019 filing of the complaint in the CareDx action does not establish inquiry notice. MTD 29-30. "Essential facts" for the Prospera claims were not available until the March 2022 CareDx Trial, when internal documents providing a basis for falsity and scienter cited in the AC were unsealed. The AC was filed approximately seven months later, so all Prospera claims are timely. *See Paskowitz*, 2009 WL 10669368, at *3 (claims timely where "[p]laintiffs contend that they could not have filed a claim within a year . . . because none of [defendant's] disclosures up to that point indicated . . . scienter, and because it had no access to facts sufficient to plead scienter").[23] Moreover, Natera denied the allegations in the CareDx action (¶178), which counteracted any inquiry notice "storm warnings." *See Dynegy*, 339 F. Supp. 2d at 850 (no inquiry notice where "managers continued to defend Project Alpha in both the press and conference calls with analysts as a solid deal").

---

[22]    Defendants do not argue Plaintiffs' Panorama-based Exchange Act claims are untimely.

[23]    *Zarecor v. Morgan Keegan & Co., Inc.*, 801 F.3d 882, 887 (8th Cir. 2015), on which Defendants rely, supports Plaintiffs' position as the case recognized that the limitations period does not begin to run until a plaintiff "actually discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation" "***after*** an appropriate investigation," which "***include[s] scienter***." Here, critical falsity and scienter evidence was not reasonably discoverable until it was unsealed in March 2022. There were no allegations by the *Zarecor* plaintiffs that their claims were timely because they were based on newly learned information key to their claims.

28

Defendants next wrongly contend that Plaintiffs' Panorama claims are untimely due to a December 2020 report from a subscription-only research firm, The Capitol Forum. MTD 29. Whether the report was publicly distributed or known about (it was not) is a question of fact and, regardless, is insufficient to trigger inquiry notice. *See Ala. Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 67 (S.D.N.Y. 2016) (a "single article raising suspicions about the rate-setting process [at issue] is not enough to establish, on a motion to dismiss, that [p]laintiffs failed to exercise reasonable diligence"); *Dynegy*, 339 F. Supp. 2d at 847. The Panorama-based Exchange Act claims are timely.

In any event, "when determining the presence of inquiry notice in the securities fraud context," "courts have considered fluctuations in [the defendant company's] share price following a [corrective] disclosure." *Venator*, 547 F. Supp. 3d at 668. Here, "[g]iven the corrective disclosures alleged by Plaintiffs on [March 9 and March 14, 2022], the drop in [Natera's] share price . . . certainly corresponds to a market perception of new information," further supporting the conclusion that Plaintiffs were not on inquiry notice of their claims in 2019 or 2020. *Id.*

### H.    Defendants' Motion Should Be Converted To One For Summary Judgment

Throughout their MTD, Defendants rely on and ask the Court to assume the truth of information drawn from extrinsic materials that directly conflict with the AC's allegations. For example, they contend the Court can take as true their claims that: (i) the Huang Study disproves Plaintiffs' allegations about Prospera because its "gave [] additional support" to Sigdel (MTD 5-6, 10); (ii) Medicare stated or found that "the strength of evidence supporting Natera's study [Sigdel] was stronger than the data supporting CareDx's [Bloom]" (*id.* 11; *see also id.* 5); and (iii) the Hindenburg Report was incorrect and does not support Plaintiffs' claims because Natera's own post-Class Period, non-public special committee investigation (which is not referenced in the AC) "rejected the [Hindenburg Report's] allegations" (*id.* 15), and because two analyst reports

purportedly "conclud[ed] the Hindenburg allegations were unfounded" (*id.* 7-8; *see also id.* 15).

Defendants cannot secure dismissal under Rule 12(b)(6) on the basis of such newly-injected factual assertions because "unless the [] [C]ourt converts [Defendants'] motion to dismiss into a motion for summary judgment, [Plaintiffs] receive[] no opportunity to respond to [Defendant's] new version of the facts." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). To be sure, these extrinsic materials and the conclusions Defendants assert the Court should draw from them have not been subjected to discovery (and in the case of Natera's special committee materials, have not even been made public). This outcome is particularly necessary where, as here, the extraneous materials are outcome-determinative for Defendants' MTD. *See Rose v. Chem. Lime, Ltd.*, 2012 WL 13136337, at *1 (W.D. Tex. Feb. 29, 2012) (Yeakel, J.) ("Because the court is unable to address the merits of Defendants' motion without considering the record evidence outside of the pleadings, the court converts Defendants' motion into a motion for summary judgment under Rule 12(d)."); *Rush*, 2013 WL 365269, at *2-3 (denying motions to dismiss that relied on extrinsic materials and permitting defendants to file summary judgment motion and plaintiffs to respond with affidavits "regarding any areas of discovery that they believe are essential to conduct before they may reasonably respond to the arguments presented on summary judgment").

## V.    **CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendants' Motions, or else convert them into motions for summary judgment, and permit discovery before requiring a response.

Dated: February 17, 2023                              Respectfully submitted,

                                    **NIX PATTERSON, LLP**

                                    *S/ Jessica Underwood*
                                    Jessica Underwood (Bar No. 24093291)
                                    8701 Bee Cave Road

30

Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 495-1534
junderwood@nixlaw.com

*Liaison Counsel for Lead Plaintiff British
Airways Pension Trustees Limited*

**KESSLER TOPAZ
 MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted *pro hac vice*)
Joshua E. D'Ancona (admitted *pro hac vice*)
Joshua A. Materese (admitted *pro hac vice*)
Evan R. Hoey (admitted *pro hac vice*)
Daniel B. Rotko (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com
ehoey@ktmc.com
drotko@ktmc.com

*Lead Counsel for Lead Plaintiff British Airways
Pension Trustees Limited*

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**

Lauren McMillen Ormsbee
(*admitted pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(212) 554-1400
lauren@blbglaw.com

*Counsel for Additional Named Plaintiff Key
West Police & Fire Pension Fund*

31

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 17, 2023, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

S/ <i>Jessica Underwood</i><br>
Jessica Underwood

32