# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, <br><br> Defendants. | Case No. 1:22-cv-00398-LY |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    LEGAL STANDARDS ................................................................................... 2

III.   ARGUMENT ................................................................................................. 3

      A.    Analyst Reports............................................................................................ 3

            1.    March 21, 2022 Piper Sandler Analyst Report (Ex. 1) And
               March 9, 2022 Canaccord Genuity Analyst Report (Ex. 12)...................... 3

            2.    December 14, 2020 The Capitol Forum Analyst Report (Ex. 11) .............. 5

      B.    Natera's SEC Filings.................................................................................... 6

            1.    November 9, 2022 Form 10-Q (Ex. 13)..................................................... 7

            2.    FY 2019 Form 10-K (Ex. 3) And FY 2020 Form 10-K (Ex. 16) ............... 7

      C.    Excerpt From CareDx Trial Transcript (Ex. 2).......................................... 8

      D.    November 4, 2021 Earnings Call Transcript (Ex. 17) ............................. 10

      E.    Hindenburg Report (Ex. 10) ..................................................................... 10

      F.    MolDx Medicare Determinations (Ex. 5) ................................................. 11

      G.    March 15, 2022 Press Release (Ex. 8) ..................................................... 13

      H.    Huang Study (Exs. 6, 7) And Dar Study (Ex. 14)..................................... 14

IV.    CONCLUSION............................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambler v. Williamson Cnty., Tex.*,
2021 WL 769667 (W.D. Tex. Feb. 25, 2021).............................................................2

*Assure re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*,
2021 WL 2402485 (N.D. Tex. June 11, 2021) ............................................1, 14, 15

*Ball v. LeBlanc*,
792 F.3d 584 (5th Cir. 2015) ....................................................................................14

*Bergensen v. Manhattanville Coll.*,
2021 WL 3115170 (S.D.N.Y. July 20, 2021) ..........................................3, 4, 13, 15

*Bieller v. Atl. Specialty Ins. Co.*,
2016 WL 915424 (E.D. La. Mar. 10, 2016) ....................................................5, 9, 15

*Binh Hoa Le v. Exeter Fin. Corp.*,
990 F.3d 410 (5th Cir. 2021) ......................................................................................5

*Bosarge v. Miss. Bureau of Narcotics*,
796 F.3d 435 (5th Cir. 2015) ......................................................................................9

*Castaneda v. Saxon Mortg. Servs., Inc.*,
687 F. Supp. 2d 1191 (E.D. Cal. 2009)......................................................................4

*Clark v. Wells Fargo Bank*,
2021 WL 1232785 (D. Or. Mar. 31, 2021)........................................................ 12-13

*Cosmos v. Hassett*,
886 F.2d 8 (2d Cir. 1989) ....................................................................................5, 15

*DBW Partners, LLC v. Bloomberg, L.P.*,
2019 WL 5892489 (D.D.C. Nov. 12, 2019) ..............................................................6

*Dobbin Plantersville Water Supply Corp. v. Lake*,
2022 WL 2718985 (W.D. Tex. July 13, 2022) ........................................................12

*Eberhardt v. Merck & Co. Inc.*,
106 F. App'x 277 (5th Cir. 2004) ..............................................................................6

*Engerat v. Quincy Bioscience, LLC*,
2019 WL 4962597 (W.D. Tex. Oct. 8, 2019)....................................................5, 6, 7

*Fantroy v. First Fin. Bank, N.A.*,
  2012 WL 12884864 (N.D. Tex. Nov. 19, 2012)........................................................8, 9

*Ferguson v. Extraco Mortg. Co.*,
  264 F. App'x 351 (5th Cir. 2007) .............................................................................9

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
  53 F. Supp. 3d 882 (E.D. La. 2014).......................................................................3, 4

*Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*,
  898 F.3d 553 (5th Cir. 2018) ...................................................................................14

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ...................................................................................13

*Gisclair v. Galliano Marine Serv.*,
  2007 WL 1238902 (E.D. La. Apr. 25, 2007)............................................................4

*Hanmi Fin. Corp. v. SWNB Bancorp, Inc.*,
  2019 WL 937195 (S.D. Tex. Feb. 26, 2019) ............................................................6

*Harmon v. Toyo Tire U.S.A. Corp.*,
  2022 WL 2873481 (W.D. Tex. July 20, 2022) ........................................................15

*Kaye v. Lone Star Fund V (U.S.) L.P.*,
  453 B.R. 645 (N.D. Tex. 2011)........................................................................ *passim*

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
  2015 WL 7760201 (W.D. Tex. Dec. 1, 2015) .........................................................13

*Kessler v. Allstate Fire and Cas. Ins. Co.*,
  541 F. Supp. 3d 718 (N.D. Tex. 2021) ....................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .....................................................................................2

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ........................................................................... *passim*

*Luna v. Am. Nat'l Ins. Co.*,
  2021 WL 1911339 (W.D. Tex. May 12, 2021) .......................................................12

*Mace v. Ocwen Loan Servicing, LLC*,
  2016 WL 9275406 (N.D. Cal. Dec. 29, 2016)...........................................................8

*In re MBIA, Inc., Sec. Litig.*,
  700 F. Supp. 2d 566 (S.D.N.Y. 2010)........................................................................4

*Mendoza v. Wells Fargo Bank, N.A.*,
  2014 WL 2624938 (S.D. Tex. June 12, 2014) ...................................................................7, 10

*Miller v. Stroman*,
  2020 WL 2494576 (W.D. Tex. May 14, 2020) ......................................................10, 12, 14, 15

*Morgan v. Medtronic, Inc.*,
  172 F. Supp. 3d 959 (S.D. Tex. 2016) ...............................................................................13

*N. Port Firefighters' Pension–Local Option Plan v. Temple-Inland, Inc.*,
  936 F. Supp. 2d 722 (N.D. Tex. 2013) ...................................................................................6

*Polnac v. City of Sulphur Springs*,
  555 F. Supp. 3d 309 (E.D. Tex. 2021)...........................................................................13, 15

*Red Rock Analytics, LLC v. Apple Inc.*,
  2021 WL 5828368 (W.D. Tex. Dec. 8, 2021) .............................................................1, 8, 9, 11

*Reneker v. Offill*,
  2012 WL 2158733 (N.D. Tex. June 14, 2012) ........................................................................9

*Scanlan v. Tex. A&M Univ.*,
  343 F.3d 533 (5th Cir. 2003) ....................................................................... *passim*

*In re Seitel, Inc. Sec. Litig.*,
  447 F. Supp. 2d 693 (S.D. Tex. 2006) ..................................................................................11

*Simmons v. Tex.*,
  2010 WL 11601167 (W.D. Tex. May 14, 2010) ....................................................................2

*Stone v. Life Partners Holdings, Inc.*,
  26 F. Supp. 3d 575 (W.D. Tex. 2014)...............................................................................3, 7

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*,
  2007 WL 9717366 (N.D. Tex. Aug. 2, 2007)........................................................................7

*Taylor v. Charter Med. Corp.*,
  162 F.3d 827 (5th Cir. 1998) ..............................................................................................9

*Waterford Twp. Police v. Mattel, Inc.*,
  321 F. Supp. 3d 1133 (C.D. Cal. 2018) ..............................................................................10

*Weeks v. Scott*,
  55 F.3d 1059 (5th Cir. 1995) ..............................................................................................12

*Whitfield v. Riley*,
  2021 WL 2354970 (E.D. La. June 9, 2021)..........................................................................12

*Williams v. Time Warner Inc.*,
    440 F. App'x 7 (2d Cir. 2011) ................................................................................4, 15

*Wooden v. Mo. Pac. R.R. Co.*,
    862 F.2d 560 (5th Cir. 1989) ................................................................................2, 14

**Statutes**

64 TEX. JUR. 3d,
    *Records and Recording Laws* § 1 (2021).................................................................5

**Other Authorities**

Fed. R. Evid. 201 ....................................................................................................2, 5

Lead Plaintiff British Airways Pension Trustees Limited and additional plaintiff Key West Police & Fire Pension Fund ("Plaintiffs") respectfully submit this opposition to Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference in Support of Defendants' Motion to Dismiss the Amended Complaint ("RJN") (ECF No. 80).[1]

## I.    INTRODUCTION

The application of the judicial notice and incorporation-by-reference doctrines is highly limited. The Court may take judicial notice of the existence of certain documents and of other self-evident matters that no reasonable person could question. And it may incorporate by reference documents that are sufficiently referred to in the AC *and* central to Plaintiffs' claims. Neither doctrine provides a vehicle for Defendants to inject new "facts" into the record that contradict the AC's well-pled allegations for the Court's consideration at the pleading stage—let alone to ask the Court to assume the truth of those "facts" as a basis for dismissal under Rule 12(b)(6).

But that is exactly what Defendants seek to do here. Throughout their Motion to Dismiss ("MTD") (ECF No. 78), Defendants provide their own narrative, urging the Court to ignore Plaintiffs' allegations and assume the truth of purported "facts" within the *22* extraneous documents on which Defendants rely. This tack is improper for numerous reasons, including because judicial notice "is limited to the existence of the documents, not to prove the truth of the documents' contents." *Assure re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*, 2021 WL 2402485, at *3 (N.D. Tex. June 11, 2021); *see also Red Rock Analytics, LLC v. Apple Inc.*, 2021 WL 5828368, at *5 (W.D. Tex. Dec. 8, 2021) (arguments based on documents incorporated by reference are not allegations and "need not be assumed true for purposes of a 12(b)(6) motion").

---

[1]    Unless otherwise noted, all emphasis is added, and internal citations and quotations have been omitted. Citations to "¶__" are to the Amended Complaint ("AC") (ECF No. 60).

For this reason and those set forth below, Defendants' request as to 14 of 22 documents should be denied.

Alternatively, if Defendants' extensive extraneous materials are to be considered, the MTD must be converted into a motion for summary judgment and stayed pending the completion of fact discovery. *See Simmons v. Tex.*, 2010 WL 11601167, at *2 (W.D. Tex. May 14, 2010) (Yeakel, J.) ("Court has discretion to determine whether to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion[,]" but if the Court accepts such material, "it must convert the motion to dismiss into one for summary judgment" under Rule 56).

## II.    LEGAL STANDARDS

In determining whether to grant a motion to dismiss, a court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts in the light most favorable to the plaintiff. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

The discretion to take judicial notice "must be exercised by courts with caution . . . ." *Ambler v. Williamson Cnty., Tex.*, 2021 WL 769667, at *3 (W.D. Tex. Feb. 25, 2021).[2] The judicial notice doctrine is narrow, and "applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities." *Wooden v. Mo. Pac. R.R. Co.*, 862 F.2d 560, 563 (5th Cir. 1989). Judicial notice is appropriate only where a purported fact is "not subject to reasonable dispute." Fed. R. Evid. 201(b) ("Rule 201"). Such facts must be "generally known within the trial court's territorial jurisdiction" and "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 201(b)(1)-(2).

---

[2]    The limited application of judicial notice is not relaxed with respect to Rule 12(b)(6) motions in cases involving violations of the federal securities laws. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (noting that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery" and that the risk "is especially significant" in securities fraud matters).

Under the incorporation-by-reference doctrine, documents can only be incorporated into the pleadings if the documents are referred to in the complaint *and* central to the plaintiff's claims. *See Scanlan*, 343 F.3d at 536-38; *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 584 (W.D. Tex. 2014). Incorporation requires a "clear, definite[,] and substantial reference to the documents" in the pleading. *Bergensen v. Manhattanville Coll.*, 2021 WL 3115170, at *2 (S.D.N.Y. July 20, 2021). Documents are central when they are "necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.) L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

## III.    ARGUMENT[3]

### A.    Analyst Reports

#### 1.    March 21, 2022 Piper Sandler Analyst Report (Ex. 1) And March 9, 2022 Canaccord Genuity Analyst Report (Ex. 12)

Defendants claim judicial notice of two investment analyst reports, by Piper Sandler and Canaccord Genuity, respectively, is proper because their authors purportedly "conclud[ed] the Hindenburg allegations were unfounded," which Defendants contend disproves Plaintiffs' claims. RJN 5-6; MTD 7-8, 15. It is well-settled, though, that the purported truth of an analyst report's contents, including conclusions, opinions, and views, is not susceptible to judicial notice. *See, e.g., Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882,

---

[3]    Plaintiffs do not object to the Court taking judicial notice of the following Exhibits for the sole purpose of establishing the statements they contain: Exhibit 18 (Chapman's Form 4s), Exhibit 19 (Brophy's Form 4s), Exhibit 20 (Rabinowitz's Form 4s), Exhibit 21 (Natera's proxy statements), and Exhibit 22 (Natera's August 9, 2019 Form 10-Q). Plaintiffs also do not object to the Court taking judicial notice of Defendants' Exhibit 9 (Natera's historical stock price from Yahoo! Finance) for the sole purpose of establishing the price of Natera's stock on a given day, nor do Plaintiffs object to the Court incorporating Defendants' Exhibit 4 (the Sigdel Study) or Exhibit 15 (the Bloom Study) for the sole purpose of establishing the existence of the Sigdel Study and the Bloom Study. In all instances, Plaintiffs object to Defendants' use of these Exhibits and the information therein to prove the truth of the matter asserted, as Defendants repeatedly attempt to do in their MTD.

901-02 (E.D. La. 2014) (stating that courts cannot take judicial notice of the "truth of the assertions contained" in articles and analyst reports)[4]; *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 575 n.7 (S.D.N.Y. 2010) (acknowledging that court could not take judicial notice of the truth of analyst reports' contents). Indeed, the fact that the Hindenburg Report and these analyst reports reached different conclusions demonstrates that the analyst reports' conclusions are subject to reasonable dispute, which is sufficient to deny judicial notice. *See Gisclair v. Galliano Marine Serv.*, 2007 WL 1238902, at *2 (E.D. La. Apr. 25, 2007) (declining to take judicial notice of the contents of a consultant's conclusions because they were subject to reasonable dispute); *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1196 (E.D. Cal. 2009) (denying request for judicial notice of an article "which expresse[d] opinions of the author that may reasonably be questioned"). Defendants' request as to these reports should therefore be rejected.

Defendants' request to incorporate these two analyst reports should also be denied because neither report is sufficiently referred to in the AC nor central to Plaintiffs' claims. *See Bergensen*, 2021 WL 3115170 at *2 (incorporation requires a "clear, definite[,] and substantial reference to the documents" in the complaint). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). Plaintiffs only refer to the Piper Sandler report at issue in passing on one occasion (¶176), not four different times, as Defendants claim. RJN 5.[5] The Canaccord Genuity report is likewise referenced, in passing, in a single

---

[4]     Defendants' reliance on *Bulmahn* for the proposition that the Court can judicially notice the contents of Piper Sandler and Canaccord Genuity analyst reports is misguided. RJN 5. There, the court explicitly stated that it could not consider analyst reports "for the truth of the assertions contained therein," which is exactly what Defendants ask the Court to do here. 53 F. Supp. 3d at 901-02.

[5]     Plaintiffs actually cite four ***different*** Piper Sandler reports. *See* ¶112 (May 7, 2020); ¶114 (August 5, 2020); ¶174 (March 10, 2022); ¶176 (March 21, 2022).

paragraph (¶174), not twice as Defendants assert. RJN 5. These minimal references to the reports do not support their incorporation by reference into the AC. *See, e.g.*, *Cosmos v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (holding that where "[t]he amended complaint merely discussed [certain] documents and presented short quotations from them" the documents were not incorporated by reference because "[l]imited quotation does not constitute incorporation by reference").

Moreover, neither report is central to Plaintiffs' claims—each is referenced in the context of alleging broad market coverage following certain events. *See* ¶¶174, 176. While these two analyst reports are critical to **Defendants'** position regarding the Hindenburg Report's veracity, that is irrelevant to whether they may properly be incorporated by reference. *See Scanlan*, 343 F.3d at 537 (declining to find document attached to defendant's motion incorporated by reference into complaint where the document was more central to defendant's defenses); *Kaye*, 453 B.R. at 662 (declining to incorporate by reference report referred to in compliant because it was not necessary to establish plaintiff's claims); *Bieller v. Atl. Specialty Ins. Co.*, 2016 WL 915424, at *2 (E.D. La. Mar. 10, 2016) (declining to extend incorporation-by-reference doctrine to uninsured motorist waiver because it was only central to defendant's defense that coverage was waived).

### 2.    December 14, 2020 The Capitol Forum Analyst Report (Ex. 11)

Defendants seek judicial notice of this paywalled analyst report to establish that Plaintiffs were on notice of their Panorama claims since December 14, 2020. MTD 29. But The Capitol Forum report is not the sort of public record the Court may judicially notice. *See* Rule 201; *see* 64 TEX. JUR. 3d, *Records and Recording Laws* § 1 (2021) ("[a] public record is one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said, or done"). "[P]ublic records, by definition, presume public access." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021); *see also Engerat v. Quincy Bioscience, LLC*, 2019 WL 4962597, at *4 (W.D. Tex. Oct. 8,

5

2019), *report and recommendation adopted*, 2020 WL 504660 (W.D. Tex. Jan. 9, 2020) (Yeakel, J.) (public records "are typically government-provided records and a commercial website is not a public record"). That The Capitol Forum report was accessible only through a paywall means that it was not "public" for purposes of judicial notice. *See DBW Partners, LLC v. Bloomberg, L.P.*, 2019 WL 5892489, at *2 (D.D.C. Nov. 12, 2019) (noting that The Capitol Forum's reports are intended to be "distributed . . . only to paid subscribers, or to other authorized recipients," all of whom "must execute [a subscription agreement] [that] prohibits redistribution of Capitol Forum's content"); *Engerat*, 2019 WL 4962597, at *4 ("For purposes of a motion to dismiss, however, matters of public record do not include all documents which *may* be accessible to the public.") (emphasis in original).

In any event, Defendants' attempt to leverage documents and information introduced through judicial notice to resolve the fact-intensive question of inquiry notice is improper and premature. *See Eberhardt v. Merck & Co. Inc.*, 106 F. App'x 277, 279 (5th Cir. 2004) (declining to take judicial notice of newspaper articles to establish media-coverage argument in context of statute of limitations defense); *see also N. Port Firefighters' Pension–Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 765 (N.D. Tex. 2013) (denying motion to dismiss with respect to inquiry notice defense because any assumption regarding inquiry notice was not proper at the pleading stage).

### B.    Natera's SEC Filings

Courts can take judicial notice of SEC or other regulatory filings for the purpose of determining what statements they contain, but may not accept the truth of their contents. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996); *Hanmi Fin. Corp. v. SWNB Bancorp, Inc.*, 2019 WL 937195, at *4 n.7 (S.D. Tex. Feb. 26, 2019) (declining to take judicial notice of the substance of SEC filings put forth to prove the truth of an entity's financial

health); *see also Stone*, 26 F. Supp. 3d at 603-04 (declining to take judicial notice of the substance of reports filed with the Texas Department of Insurance) (citing *Lovelace*, 78 F.3d at 1018).

### 1.    November 9, 2022 Form 10-Q (Ex. 13)

Relying on Natera's November 9, 2022 Form 10-Q, Defendants wrongly claim it is proper to judicially notice the purported outcome of a Company-led internal investigation as proof that the Hindenburg Report's findings are "unfounded." MTD 8; RJN 7. The Company's self-investigation and conclusion, the existence of which was first disclosed in this SEC filing ***after the AC was filed***, is the type of "self-serving" disputed "fact" that courts refuse to judicially notice. *See Scanlan*, 343 F.3d at 537 (concluding that it would be improper to take judicial notice of the defendant-university's own report on bonfire collapse in light of plaintiffs' objections); *Engerat*, 2019 WL 4962597, at *4 (declining to take judicial notice of results of a private corporation's study on a supplement produced by the corporation and posted on that corporation's website).[6] Further, Natera has not disclosed any of the underlying facts or produced any evidence about its supposed internal investigation. Put simply, Defendants are wrong that the Court can accept as undisputed fact that Natera did not break the law simply because the Company concluded the Hindenburg Report was "unfounded."

### 2.    FY 2019 Form 10-K (Ex. 3) And FY 2020 Form 10-K (Ex. 16)

Defendants seek judicial notice of Natera's fiscal year ("FY") 2019 Form 10-K and FY 2020 Form 10-K ("Form 10-Ks") for the truth of certain statements they contain. The statements

---

[6]    *See also Mendoza v. Wells Fargo Bank, N.A.*, 2014 WL 2624938, at *3 (S.D. Tex. June 12, 2014) (concluding "that the averments in . . . Foreclosure Applications and the factual content of the documents attached to them fail to clear Rule 201's "indisputability hurdle," in part, due to their self-serving nature); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 2007 WL 9717366, at *5 n.6 (N.D. Tex. Aug. 2, 2007) (declining to take judicial notice of defendants' SEC filings that purportedly provided terms of certain trusts because the court could not determine whether the representations were accurate).

include assertions that: (i) Natera does not recognize revenue on all tests performed; (ii) insurers typically do not reimburse for microdeletion screenings; and (iii) Defendants believed they were in compliance with the applicable federal Anti-Kickback Statute. MTD 16-17. Again, the Court cannot judicially notice the substance of the Form 10-Ks and accept the truth of these statements. *See Lovelace*, 78 F.3d at 1018. In any event, the self-serving statements in the Form 10-Ks to which Defendants point cannot be judicially noticed because they are subject to reasonable dispute—indeed, they conflict with the AC's well-pled allegations. *See, e.g.*, *Mace v. Ocwen Loan Servicing, LLC*, 2016 WL 9275406, at *3 (N.D. Cal. Dec. 29, 2016) (declining to take judicial notice of a "self-serving" statement that the defendants complied with the law).

Defendants' related request that the Court incorporate the entirety of the Form 10-Ks by reference because they "include the alleged misstatement on which the Prospera claim is based" is also meritless. RJN 7. Despite claiming that the Form 10-Ks are relevant to Plaintiffs' Prospera claims, Defendants rely on the Form 10-Ks only to make arguments about Plaintiffs' **Panorama** claims. MTD 17-18. In any event, if this Court deems the Form 10-Ks incorporated by reference, Defendants' contentions based on those documents are not allegations and their truth cannot be assumed. *See Red Rock*, 2021 WL 5828368, at *5.

### C.    Excerpt From CareDx Trial Transcript (Ex. 2)

Defendants' request for judicial notice of an excerpt of the CareDx Trial transcript reflecting Judge Connolly's commentary should be denied because they seek to establish as true that CareDx's claims (on which it prevailed in a jury trial) are purportedly "weak." MTD 6. This information is not judicially noticeable because it does not reflect an indisputable fact. *See Fantroy v. First Fin. Bank, N.A.*, 2012 WL 12884864, at *1 (N.D. Tex. Nov. 19, 2012) (judicial notice extends to only "indisputable adjudicative facts because its effect . . . is to preclude a party from introducing contrary evidence"). This action and the jury verdict finding that Natera made false

8

statements about Prospera demonstrate as much. *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (affirming district court's refusal to take judicial notice of findings from companion discrimination cases because the facts underlying those decisions were subject to a reasonable dispute and "were indeed disputed"); *Reneker v. Offill*, 2012 WL 2158733, at *14 (N.D. Tex. June 14, 2012) (declining to take judicial notice of a prior jury's findings that the moving party sought to rely on for the truth, in part, because the matter was disputed at the underlying criminal trial). Moreover, even if Judge Connolly's comments were legal determinations, Rule 201 would not permit the Court to take judicial notice of them. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) (noting that Rule 201 authorizes courts to take notice only of "adjudicative *facts*," not legal determinations); *Fantroy*, 2021 WL 12884864, at *2 (declining to take judicial notice of purported mandate that court had jurisdiction and noting that judicial notice of legal determinations is not proper).

Defendants also claim that the Court should deem their proffered excerpt of the CareDx Trial transcript incorporated by reference. MTD 6. Judge Connolly's commentary, however, is not central to Plaintiffs' claims (and of course is inconsistent with Plaintiffs' claims). *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (holding that even if affidavits attached to a motion to dismiss "may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with [the nonmoving party's] allegations"); *see also Kaye*, 453 B.R. at 662; *Bieller*, 2016 WL 915424, at *2. In the AC, Plaintiffs reference record evidence (witness and documentary) from the CareDx Trial, but nowhere do they reference the lawyers' or presiding judge's arguments or commentary, none of which are facts, much less indisputable ones that can be accepted as true. *See Red Rock*, 2021 WL 5828368, at *5.

9

**D.    November 4, 2021 Earnings Call Transcript (Ex. 17)**

Defendants claim to seek judicial notice of Natera's November 4, 2021 earnings call transcript to provide "context" around the alleged misrepresentations in the AC. RJN 8. However, Defendants' actual use of this document is not so limited. In their MTD, Defendants rely on this document for the truth of its contents—specifically, the supposed Panorama payment rate and amount Natera earned for microdeletion testing. MTD 18. These assertions are not free from reasonable dispute, including because the Court and Plaintiffs cannot "accurately and readily determine" the payment rates Defendants ask the Court to deem true.[7] *Mendoza*, 2014 WL 2624938, at *2. Moreover, Defendants' approximation about Panorama payment rates is not relevant to Plaintiffs' claims that Defendants engaged in several deceptive practices that increased Panorama-derived revenues. Indeed, Plaintiffs' claims do not rest on Panorama's actual microdeletion reimbursement rate, but whether Natera created an impression of organic demand and untapped revenues. *See Lovelace*, 78 F.3d at 1018; *Miller v. Stroman*, 2020 WL 2494576, at *2-3 (W.D. Tex. May 14, 2020) (declining request for judicial notice and holding that a court can only take judicial notice of records that are relevant to the claim).

**E.    Hindenburg Report (Ex. 10)**

In support of their position that the Hindenburg Report was "inaccurate" or "unfounded," Defendants claim the Court can take judicial notice of the report and may accept as true selected matters stated therein (only some, but not others). RJN 5-6; MTD 7-8, 15. As with the analyst

---

[7]    In *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018), the plaintiff did not object to judicial notice of or dispute the accuracy of the contents of earnings call transcripts. Here, Plaintiffs are not in a position to concede whether "percent paid rates on microdel[etion]s are in that kind of single-digit percentage kind of range" and comprised "only a few bucks out of ASP." MTD 18. Further, Defendants omit that the court in *Mattel* provided judicial notice of the earnings calls only for consideration of what information was available to investors, not "for the truth of the matters discussed therein." 321 F. Supp. 3d at 1144.

reports, Defendants offer no legal support for their position because there is none. *See, e.g.*, *supra* pp.3-4 (collecting cases holding that courts cannot take judicial notice of the "truth of the assertions contained" in articles and analyst reports).

For example, Defendants assert that certain disclaimers in the Hindenburg Report are susceptible to judicial notice and, once noticed, support Defendants' positions that Hindenburg was financially motivated to fabricate information and that the Hindenburg Report is presumptively unreliable. RJN 5-6; MTD 7-8, 15. Of course, Hindenburg's motivation and the accuracy of its findings are not subject to determination at the pleading stage, much less the proper subject of judicial notice. *See, e.g.*, *Kessler v. Allstate Fire and Cas. Ins. Co.*, 541 F. Supp. 3d 718, 732 (N.D. Tex. 2021) (defendant's attempt to challenge the veracity of plaintiff's allegations was not proper at the pleading stage); *In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 713 (S.D. Tex. 2006) (in light of court's obligation to assume the truth of plaintiffs' allegations, defendants' fact-based argument disputing such allegations was not proper in the context of a motion to dismiss).

Defendants' request to incorporate certain portions of the Hindenburg Report also fails insofar as it (or Defendants' related MTD arguments) is nothing more than a request that the Court assume the truth of Defendants' contentions—that Hindenburg's allegations are "spurious" and a mere "hit piece"—based on Hindenburg's statement that it had a short position on Natera. MTD 7; *Red Rock*, 2021 WL 5828368, at *5.

**F.    MolDx Medicare Determinations (Ex. 5)**

Defendants' bid for judicial notice of two MolDx Medicare determinations ("Determinations") should also be denied. They ask the Court to consider the Determinations' contents for the truth of certain matters asserted therein—specifically, in Defendants' words, that the "strength of evidence supporting Natera's study was stronger than the data supporting

11

CareDx's." MTD 5, 11.[8] But this purported "fact" is not free from reasonable dispute, as the instant matter demonstrates. *See, e.g.*, *Dobbin Plantersville Water Supply Corp. v. Lake*, 2022 WL 2718985, at *10 (W.D. Tex. July 13, 2022), *report and recommendation adopted*, 2022 WL 5568377, at *9-10 (W.D. Tex. Aug. 4, 2022) (declining to take judicial notice of Public Utility Commission of Texas' findings regarding the capacity of an entity to manage properties because defendants sought to rely on the purported truth of factual assertions contained therein); *Weeks v. Scott*, 55 F.3d 1059, 1063 n.5 (5th Cir. 1995) (affirming refusal to take judicial notice of position regarding whether saliva could be transmitted under certain circumstances because it was not free from reasonable dispute).

Additionally, Defendants' claim that the Determinations "[are] the proper subject of judicial notice because [they are] public government record[s]" (RJN 6-7) is wrong. A report's "mere status as a report of federal agency is insufficient" to warrant judicial notice. *Whitfield v. Riley*, 2021 WL 2354970, at *2-3 (E.D. La. June 9, 2021); *see also Luna v. Am. Nat'l Ins. Co.*, 2021 WL 1911339, at *4 (W.D. Tex. May 12, 2021) ("Publication in a government document alone is not necessarily sufficient to render a fact so self-evident that no reasonable person could question it."); *Clark v. Wells Fargo Bank*, 2021 WL 1232785, at *8 (D. Or. Mar. 31, 2021) (refusing to take judicial notice of a report on federal crime, including federal agency response letters, because "the matters asserted within them are not of the high degree of indisputability that

---

[8]    Defendants also claim that the Court "can consider the MolDx determinations for the purpose of showing that the respective strength of evidence determinations were publicly available to the market." RJN 7. But Defendants do not actually rely on the supposed public availability of the Determinations. Instead, they rely only on the purported truth of the Determinations. MTD 5, 11. Thus, whether the Determinations' underlying findings were publicly available is not relevant and judicial notice is not proper. *See Miller*, 2020 WL 2494576, at *2-3.

the Advisory Committee Notes to Rule 201 indicates is an essential prerequisite for a court to take judicial notice of a particular fact"). None of the cases Defendants cite support their position.[9]

Defendants' request to have the Determinations incorporated by reference should also be rejected because the Determinations were not sufficiently referred to in the AC and are not central to Plaintiffs' claims. Defendants' position that "Plaintiffs repeatedly refer to . . . Medicare's strength of evidence ranking in the coverage determination" is wrong. RJN 6. The AC generally alleges that Natera obtained Medicare coverage for Prospera; it does not mention any underlying findings with respect to Prospera or AlloSure. ¶¶51, 53, 55, 90, 94, 102. Indeed, the AC never cites, quotes, or explicitly references the Determinations or any of their supporting reports, analyses, or findings. *See, e.g.*, *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 325 (E.D. Tex. 2021); *Bergensen*, 2021 WL 3115170, at *2. The absence of the Determinations from the AC highlights that their substance is not central to Plaintiffs' claims. *See Scanlan*, 343 F.3d at 537; *Kaye*, 453 B.R. at 662.

### G.    March 15, 2022 Press Release (Ex. 8)

Defendants' request for judicial notice of Natera's March 15, 2022 press release containing Natera's positions about the CareDx Trial is improper. RJN 7. As a threshold matter, there is no

---

[9]    For example, in *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 7760201, at *3 (W.D. Tex. Dec. 1, 2015), the court judicially noticed the FDA's published guidance regarding the purpose of discipline review letters in general, not a specific FDA determination with respect to a certain drug or product. Here, Defendants seek judicial notice of the purported significance of underlying data and specific findings, not merely an interpretation of the purpose of Medicare's procedures. In *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011), the Fifth Circuit affirmed the district court's decision to judicially notice an FDA letter because there was, in light of plaintiff's allegations, "uncertainty as to whether the [product at issue] underwent" a certain approval process. Here, there is no uncertainty that Prospera went through the Medicare reimbursement process. In *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 965 n.4 (S.D. Tex. 2016), the court took judicial notice of the FDA's classification of a device at issue. Here, there is no dispute whether Medicare issued a decision approving Prospera for Medicare reimbursement or even approved Prospera for reimbursement.

dispute that the jury verdict was issued on March 14, 2022, and what Natera asserted about the trial after-the-fact (and after the Class Period) is irrelevant. *See, e.g.*, *Lovelace*, 78 F.3d at 1018 (finding that courts may only consider "relevant" public documents); *Miller*, 2020 WL 2494576, at *2-3 (declining request for judicial notice and holding that a court can only take judicial notice of records that are relevant to the claim).

That aside, to the extent Defendants seek judicial notice of anything beyond the existence of the statements made in this press release by claiming they reflect undisputed facts the Court can accept as true, such notice is improper. Natera's interpretation of the jury verdict and opinions related to the trial are not "self-evident truths" or "truisms that approach platitudes or banalities." *Wooden*, 862 F.2d at 563; *cf. Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015); *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 558 n.2 (5th Cir. 2018).

**H.    Huang Study (Exs. 6, 7) And Dar Study (Ex. 14)**

Contrary to Defendants' request, the Court cannot take judicial notice of the underlying contents of the Huang Study or the Dar Study. With regard to the Huang Study, despite stating that the date of the publication should be recognized, Defendants' MTD is replete with arguments about what claims in this case the Huang Study purportedly supports and/or refutes. MTD 5-6, 10-11. For example, Defendants claim the Huang Study disproves Plaintiffs' allegations about Prospera and further assert that "internal debate [regarding Prospera's superiority claims in comparison to AlloSure] ceased" after the Huang Study was published, purportedly based on its findings. *Id.* But the truth of the findings within the Huang Study, and Defendants' internal reactions to it, may not be considered and accepted at the pleading stage through judicial notice. *See, e.g.*, *Assure*, 2021 WL 2402485, at *3 ("The Court's notice, however, is limited to the existence of the documents, not to prove the truth of the documents' contents."). Judicial notice of the Dar Study is likewise

14

improper insofar as the Court cannot take judicial notice of its findings with respect to "22q deletion syndrome."[10] MTD 8 n.12; *Assure*, 2021 WL 2402485, at *3.

Further, Defendants' request to have the Huang Study incorporated by reference should be denied because the Huang Study is neither meaningfully referenced in the AC nor central to Plaintiffs' claims. First, Defendants incorrectly assert that the Huang Study was cited "as the basis for [Plaintiffs'] claims[.]" RJN 9-10. Even a cursory review of the images included in the AC shows that *only* the Sigdel Study and the Bloom Study were highlighted and referenced. ¶¶50, 62, 100. Indeed, the title of the Huang Study is merely included in a footnote of an image among five other separately cited studies. *Id.* Accordingly, the Huang Study is not sufficiently referenced to warrant incorporation by reference. *See Polnac*, 555 F. Supp. 3d at 325 (holding general references to a 911 call in the complaint were not sufficient to warrant incorporation of the actual call for consideration in the context of a motion to dismiss); *see also Bergensen*, 2021 WL 3115170, at *2; *Williams*, 440 F. App'x at 9; *Cosmos*, 886 F.2d at 13. Second, while the Huang Study is apparently central to Defendants' factual defense in this case, they fail to demonstrate that the Huang Study is central to Plaintiffs' claims. *See Scanlan*, 343 F.3d at 537; *Kaye*, 453 B.R. at 662; *Bieller*, 2016 WL 915424, at *2; *Harmon v. Toyo Tire U.S.A. Corp.*, 2022 WL 2873481, at *3 (W.D. Tex. July 20, 2022). Thus, incorporation by reference is not warranted.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' RJN as to the documents discussed herein.

---

[10]     Nor is the purported frequency of the "22q deletion syndrome" the proper subject of judicial notice, as that "fact" is not relevant to Plaintiffs' Panorama claims. *See Lovelace*, 78 F.3d at 1018; *Miller*, 2020 WL 2494576, at *2-3.

Dated: February 17, 2023                        Respectfully submitted,

**NIX PATTERSON, LLP**

*S/ Jessica Underwood*
Jessica Underwood (Bar No. 24093291)
8701 Bee Cave Road
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 495-1534
junderwood@nixlaw.com

*Liaison Counsel for Lead Plaintiff British
Airways Pension Trustees Limited*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Gregory M. Castaldo (*admitted pro hac vice*)
Joshua E. D'Ancona (*admitted pro hac vice*)
Joshua A. Materese (*admitted pro hac vice*)
Evan R. Hoey (*admitted pro hac vice*)
Daniel B. Rotko (*admitted pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com
ehoey@ktmc.com
drotko@ktmc.com

*Lead Counsel for Lead Plaintiff British Airways
Pension Trustees Limited*

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**

Lauren McMillen Ormsbee
(*admitted pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(212) 554-1400
lauren@blbglaw.com

16

*Counsel for Additional Named Plaintiff Key West Police & Fire Pension Fund*

17

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 17, 2023, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*S/ Jessica Underwood*
Jessica Underwood