## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN,<br><br>                    Defendants. | Case No. 1:22-cv-00398-LY |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.     INTRODUCTION ................................................................................................................ 1

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B) ............................. 2

       A.     Plaintiffs Fail to Plead Falsity as to Prospera ........................................................ 2

              1.     Plaintiffs Fail to Plead Falsity Based on Chapman's Oral Statement ......... 3

              2.     Plaintiffs Fail to Allege Natera's Website Was False ................................. 4

       B.     Plaintiffs Fail to Plead Falsity as to Panorama ...................................................... 6

       C.     Plaintiffs Fail to Plead Scienter ............................................................................. 7

              1.     No Scienter as to the Prospera Allegations ................................................ 7

              2.     No Scienter as To Panorama ..................................................................... 10

III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTIONS 11 AND 12 .............. 12

       A.     Plaintiffs Fail to State a Claim as to the Prospera Statements ............................. 12

IV.    THE CLAIMS ARE TIME-BARRED .............................................................................. 14

V.     THIS IS NOT A SUMMARY JUDGMENT MOTION .................................................... 15

VI.    CONCLUSION .................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002) ...............................................................................................9

*Alaska Elec. Pension Fund v. Asar*,
768 F. App'x 175 (5th Cir. 2019)..........................................................................................9

*Anderson v. Peregrine Pharm., Inc.*,
No. 12-cv-1647, 2013 WL 12122423 (C.D. Cal. Aug. 23, 2013) ...........................................11

*Black v. N. Panola School Dist.*,
461 F.3d 584 (5th Cir. 2006) ................................................................................................2

*Braun v. Eagle Rock Energy Partners, L.P.*,
223 F. Supp. 3d 644 (S.D. Tex. 2016) .................................................................................13

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*,
19-cv-957, 2021 WL 1416025 (S.D. Tex. Apr. 14, 2021)..........................................................7

*Chen v. X Fin.*,
No. 19-cv-6908, 2022 WL 765417 (E.D.N.Y. Mar. 13, 2022)................................................14

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)................................................................................................1, 3

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
No. 12-cv-1609. 2013 WL 1100819 (W.D. La. Mar. 15, 2013)................................................7

*Colbert v. Rio Tinto PLC*,
No. 17-cv-8169, 2019 WL 10960490 (S.D.N.Y. July 29, 2019)..............................................5

*Congregation of Ezra Sholom v. Blockbuster*,
504 F. Supp. 2d 151 (N.D. Tex. 2007) ...................................................................................9

*Crutchfield v. Match Grp. Inc.*,
529 F. Supp. 3d 570 (N.D. Tex. 2021) .................................................................................11

*Edgar v. Anadarko Petroleum Corp.*,
No. 17-cv-1372, 2019 WL 1167786 (S.D. Tex. Mar. 13, 2019) ..............................................9

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ................................................................................................9

*Hirtenstein v. Cempra, Inc.*,
348 F. Supp. 3d 530 (M.D.N.C. 2018),
*aff'd sub nom. Janies v. Cempra, Inc.*, 816 F. App'x 747 (4th Cir. 2020) ................................8

*Hopson v. MetroPCS Commc'ns, Inc.*,
No. 09-cv-2392, 2011 WL 1119727 (N.D. Tex. Mar. 25, 2011)................................................9

*Huang v. Higgins*,
443 F. Supp. 3d 1031 (N.D. Cal. 2020) ...............................................................................4, 5

*In re Anadarko Petroleum Corp. Class Action Litig.*,
957 F. Supp. 2d 806 (S.D. Tex. 2013) ...................................................................................2

*In re AnaptysBio, Inc.*,
No. 20-cv-565, 2021 WL 4267413 (S.D. Cal. Sept. 20 2021)...................................................10

*In re Apache Corp.*,
No. 21-cv-575, 2022 WL 4277350 (S.D. Tex. Sept. 15, 2022)..................................................9

*In re Capstead Mortg. Corp. Sec. Litig.*,
258 F. Supp. 2d 533 (N.D. Tex. 2003) ...................................................................................12

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
No. 19-cv-6180, 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021)................................................11

*In re Ford Motor Co. Sec. Litig., Class Action*,
381 F.3d 563 (6th Cir. 2004) ...................................................................................7

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
289 F. Supp. 2d 416 (S.D.N.Y. 2003)...................................................................................14

*In re Novo Nordisk Sec. Litig.*,
No. 17-cv-209, 2018 WL 3913912 (D.N.J. Aug. 16, 2018) ......................................................4

*In re Philip Morris Int'l Inc. Sec. Litig.*,
No. 18-cv-8814, 2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021) ...............................................8

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015),
*aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).............................................4, 8

*In re Superior Offshore Int'l, Inc. Sec. Litig.*,
No. 08-cv-687, 2009 WL 82064 (S.D. Tex. Jan. 12, 2009)......................................................12

*In re Venator Materials PLC Sec. Litig.*,
547 F. Supp. 3d 624 (S.D. Tex. 2021) ...................................................................................15

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ..................................................................................................7, 8

*Kapps v. Torch Offshore, Inc.*,
    379 F.3d 207 (5th Cir. 2004) ..................................................................................................12

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
    No. 15-cv-2393, 2016 WL 3981236 (D.S.C. July 25, 2016)...................................................10

*KBC Asset Mgmt. NV v. MetLife, Inc.*,
    No. 21-cv-291, 2022 WL 480213 (2d Cir. Feb. 17, 2022) .......................................................11

*Kovtun v. VIVUS, Inc.*,
    No. 10-cv-4957, 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012),
    *aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015) ................................3

*Kurtzman v. Compaq Computer Corp.*,
    No. 99-cv-779, 2002 WL 32442832 (S.D. Tex. Mar. 30, 2002) .............................................13

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
    810 F.3d 951 (5th Cir. 2016) ..................................................................................................11

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
    238 F.3d 363 (5th Cir. 2001) ..................................................................................................13

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ..................................................................................................10

*Lubbers v. Flagstar Bancorp. Inc.*,
    162 F. Supp. 3d 571 (E.D. Mich. 2016)....................................................................................7

*Magruder v. Halliburton Co.*,
    No. 05-cv-1156, 2009 WL 854656 (N.D. Tex. Mar. 31, 2009)................................................5

*McCloskey v. Match Grp., Inc.*,
    No. 16-cv-549, 2018 WL 4053362 (N.D. Tex. Aug. 24, 2018) ..............................................13

*McDonald v. Kinder-Morgan, Inc.*,
    287 F.3d 992 (10th Cir. 2002) ..................................................................................................7

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)................................................................................................................14

*Nathenson v. Zonagen Inc.*,
    267 F.3d 400 (5th Cir. 2001) ..............................................................................................1, 3

*Olagues v. Musk*,
    No. 18-cv-7110, 2019 WL 3457831 (N.D. Cal. July 31, 2019) ..............................................15

iv

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
    777 F. App'x 726 (5th Cir. 2019) ................................................................................5, 6

*Rose v. Chem. Lime, Ltd.*,
    No. 11-cv-854, 2012 WL 13136337 (W.D. Tex. Feb. 29, 2012) ............................................15

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ................................................................................10

*Sarafin v. BioMimetic Therapeutics, Inc.*,
    No. 11-cv-653, 2013 WL 139521 (M.D. Tenn. Jan. 10, 2013),
    *aff'd sub nom. Kuyat v. BioMimetic Therapeutics, Inc.*,
    747 F.3d 435 (6th Cir. 2014) ................................................................................3

*Sec. & Exch. Comm'n v. Mapp*,
    No. 16-cv-246, 2017 WL 5230358 (E.D. Tex. Nov. 9, 2017) ................................................4

*Shah v. Meeker*,
    435 F.3d 244 (2d Cir. 2006) ................................................................................14

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ................................................................................5, 8

*Talarico v. Johnson*,
    No. 21-cv-3689, 2023 WL 2618255 (S.D. Tex. Feb. 7, 2023), *report and
    recommendation adopted* No. 21-cv-3689,
    2023 WL 2616104 (S.D. Tex. Mar. 21, 2023) ................................................................2

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ................................................................................10, 15

*Weill v. Dominion Res., Inc.*,
    875 F. Supp. 331 (E.D. Va. 1994) ................................................................................12

**Rules**

Fed. R. Civ. P. 11 ................................................................................14

I. **<u>INTRODUCTION</u>**

This is a contrived case based on shifting theories of liability and alleged "misstatements" that Plaintiffs now admit were literally true. After initially filing suit to capitalize on a stock price drop following a subsequently debunked short attack about Panorama (Natera's NIPT screening test), Plaintiffs filed a consolidated Complaint that focused primarily on a jury verdict in an advertising case about Prospera (Natera's kidney rejection test).

Plaintiffs now expressly disavow reliance on the advertising verdict (Opp. at 13) and abandon any argument in connection with the Exchange Act claims that Natera's SEC filings and earnings calls about Prospera were false (Opp. at 8-9). Instead, they focus on: (1) a single oral representation by Steve Chapman (Natera's CEO) that Prospera generated "better" performance data than its competitor; and (2) a graphic that appeared, without attribution, on Natera's consumer website. *Plaintiffs admit these statements were accurate* but argue that they nevertheless misled investors because, eighteen months earlier, *three other* Natera employees sent emails in which they questioned whether the data that then existed showed that Prospera was "significantly" better than, or superior to, its competitor. But numerous courts (including the Fifth Circuit) have held that a difference of opinion about "how best to interpret trial data" does not give rise to securities fraud. *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 420 (5th Cir. 2001); *see also City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 171 (3d Cir. 2014) ("disagreement of five employees . . . about the interpretation of clinical trial data . . . does not render defendants' . . . statements false"). Here, moreover, the emails do not even disagree with Chapman's statement, but instead, question whether data from *over a year earlier* supported a claim of "significantly" better performance *that Natera never made*. Plaintiffs also do not allege that Chapman even saw the emails, let alone agreed with them.

The Panorama Claims, based on allegations from a debunked shortseller report, fare no better. The cases Plaintiffs cite hold that shortseller allegations can survive dismissal only when plaintiffs have verified them through an independent investigation. Plaintiffs argue in the Opposition that they conducted a "rigorous, independent investigation" to substantiate the

1

shortseller allegations here (Opp. at 14) but fail to plead it in the Complaint. Plaintiffs also fail to explain how the shortseller allegations rendered Natera's affirmative statements (none of which address the subject of the shortseller report) false or misleading. Instead, Plaintiffs ask this Court to recognize a "tell me everything" duty of disclosure that no court has ever adopted.

Plaintiffs also fail to state a claim on the other theories in the Complaint. They fail to state a claim under Sections 11 and 12 because they do not, and cannot, establish that Natera had any duty to disclose the emails or allegations from the shortseller report, nor do the alleged omissions render Natera's affirmative statements misleading. And they fail to state a claim for secondary liability under: (i) Sections 20(a), 15, and 20A because they have not pled a primary violation; and (ii) under Section 20A because they have not pled particularized facts establishing that the Executive Defendants sold stock on the basis of material non-public information.

Finally, the claims are time-barred because Plaintiffs have been on inquiry notice of the Prospera allegations since April 2019 and the Panorama allegations since December 2020.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B)

### A.   Plaintiffs Fail to Plead Falsity as to Prospera

Plaintiffs have abandoned all but *two* of the allegedly false Prospera Statements. They do not argue that any statements about Prospera in Natera's SEC filings are actionable under Section 10(b). Opp. at 8 (listing alleged misstatements but not mentioning the SEC filings); *see also In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 826 (S.D. Tex. 2013) (abandonment where opposition fails to explain why a statement is false); *Black v. N. Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (failure to address claims in opposition constitutes abandonment). Plaintiffs also have abandoned all of the statements in Natera's earnings calls, all but one statement at industry conferences, and all but one website statement. *See* Opp. at 8-9 (referring to these statements generally but not arguing they were false or misleading); *Talarico v. Johnson*, 2023 WL 2618255, at *14-15 (S.D. Tex. Feb. 7, 2023), *report and recommendation adopted* 2023 WL 2616104 (S.D. Tex. Mar. 21, 2023) (abandonment where plaintiff addresses three statements in a single paragraph without explaining "how the statements

2

are misrepresented").[1]

### 1.      Plaintiffs Fail to Plead Falsity Based on Chapman's Oral Statement

Plaintiffs' 10(b) claim now rests on allegations that Natera's CEO, Steve Chapman, deceived investors by stating at a September 14, 2020 industry conference that Prospera "generated performance data that was better than what was on the market from competitors." *See* Opp. at 9. Although Plaintiffs admit the statement was *literally true* and "relayed accurate data" (*see* Opp. at 2, 12), they argue that it is still actionable because, eighteen months earlier, *three other* Natera employees sent four emails questioning whether the data showed that Prospera was "significantly better than" or "superior" to its competitor. *See* Opp. at 9; *see also* ¶¶ 71-74.[2]

Numerous courts – including the Fifth Circuit – have held, as a matter of law, that when a "company accurately reports the results of a scientific study,"[3] disagreement about "how best to interpret" those results does not give rise to securities fraud. *Nathenson*, 267 F.3d at 420; *see also City of Edinburgh*, 754 F.3d at 171. "There is nothing ominous or even surprising" about internal debate, which is a routine part of the product development process. *Sarafin v. BioMimetic Therapeutics, Inc.*, 2013 WL 139521, at *19 (M.D. Tenn. Jan. 10, 2013) (citation omitted), *aff'd sub nom. Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435 (6th Cir. 2014) (applying *Nathenson*); *see also Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *18 (N.D. Cal. Sept. 27, 2012), *aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015).

Plaintiffs ignore these cases and do not cite a single case in which any court has allowed a

---

[1] Plaintiffs acknowledge liability cannot be based on statements made prior to February 26, 2020. Opp. at 9. They argue those statements lend "context" to the Class Period statements but fail to explain how, since no Class Period statement referred to or reaffirmed them. *See* Opp. at 9-10.

[2] Chapman's 2020 statement was made *after* both the peer-reviewed publication of the Sigdel study and MolDx's Medicare determinations. *See* Ex. 4 at 1; Ex. 5. Moreover, the emails were sent in September and November of 2018 (¶¶ 71-74), *before* publication of the independent Huang study. *See* ¶¶ 62, 75, 100; MtD at 5-6; Ex. 7 at 1, 4, 7-8. None of the emails disagree with what Chapman said in 2020.

[3] There is no dispute that Natera accurately reported results from Sigdel and Bloom. *See, e.g.*, ¶ 52 (noting that Sigdel reported "higher sensitivity (89% v. 59%) and higher area under the curve [AUC] (0.87 vs. 0.74) than" the competitor's study).

plaintiff to plead falsity based on disagreement about how to interpret scientific data. Instead, they cite: (1) a scheme liability case in which the SEC alleged that the company manipulated the underlying study (*Sec. & Exch. Comm'n v. Mapp*, 2017 WL 5230358, at *7 (E.D. Tex. Nov. 9, 2017)); and (2) an out-of-circuit case in which the company stated that its product would command a "modest premium in price" due to its "superiority" even though "German and French authorities" already had determined that the drug was "substantially similar to existing drugs and therefore did not warrant a premium price" (*In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912, at *3, 9 (D.N.J. Aug. 16, 2018)). Neither question the rule that securities fraud cannot be based on disagreement about how to interpret study results. On this basis alone, the claim should be dismissed.

### 2.   Plaintiffs Fail to Allege Natera's Website Was False

The Opposition also focuses on a "large graphic drawing" from a consumer "video on Natera's website." *See* Opp. at 8-9 (citing ¶ 103). As with Chapman's 2020 statement, Plaintiffs concede that the graphic relayed accurate data but argue that it misleadingly drew "a direct comparison of the two products' NPVs based on Sigdel [the Natera study] and Bloom [the CareDx study]." Opp. at 9. These allegations fail for at least three reasons.

First, Plaintiffs do not plead facts showing that the graphic was false or misleading. Plaintiffs argue that it led "prospective buyers" to believe "that Prospera was superior based on head-to-head comparisons of Bloom and Sigdel data" (Opp. at 12), but the graphic did not make any claim of superiority (and even if it had, such claim was not misleading (*see infra* at 7)) and expressly stated that the data came from two different studies (Sigdel and Bloom), *not* a single head to head comparison (¶ 103). *See Huang v. Higgins*, 443 F. Supp. 3d 1031, 1048 (N.D. Cal. 2020) ("[t]he fact that this particular study was not head-to-head does not mean that Defendants were not permitted to describe its results in marketing their drug"). Natera also repeatedly disclosed in press releases, earnings calls, and the Sigdel paper itself that it had not performed a head to head study comparing the two tests. *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 540 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) ("reasonable investor had reason to know" that "clinical trials used a single-blind, not double-blind design"

4

when disclosed in medical journals and press releases); *Huang*, 443 F. Supp. 3d at 1048 (no falsity where defendants "accurately described the results of the disputed study on their website and in their marketing materials"); MtD at 10.

Second, Plaintiffs fail to identify *who* made the website statements. *See* Opp. at 8-9, 10-11. Plaintiffs' generalized allegations that "each Executive Defendant was directly involved in preparing, reviewing and approving the Company's public statements and disclosures to the market" (Opp. at 11 (quoting ¶ 34)) are classic group pleading expressly forbidden by the Fifth Circuit. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (rejecting allegations that defendants "each controlled the contents of and participated in writing" SEC filings as impermissible group pleading); *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731-32 (5th Cir. 2019) (plaintiffs must plead "particular factual allegations explaining the individual's involvement in the formulation" of the website).

Plaintiffs ignore the Fifth Circuit's rejection of group pleading by arguing, based on a case from N.D. Cal., that Natera still may be liable for statements on its website even in the absence of allegations linking those statements to an Executive Defendant. Opp. at 10-11 (citing *In re Rocket Fuel, Inc. Sec. Litig.*, 2015 WL 9311921, at *10 (N.D. Cal. Dec. 23, 2015)).[4] But, in this Circuit, plaintiffs must plead particularized facts establishing that "authorized officers," acting on the company's behalf, either made or participated in drafting the challenged statement. *See Southland*, 365 F.3d at 365; *see also Plains All Am.*, 777 F. App'x at 731-32 (affirming dismissal where plaintiff failed to specifically plead participation by "senior-level corporate officers" in making website statements); *Magruder v. Halliburton Co.*, 2009 WL 854656, at *7 (N.D. Tex. Mar. 31, 2009) (no corporate liability where complaint does not "identify the individual corporate officer to whom the statement or omission is attributed"). The absence of such facts, here, is dispositive.

Finally, the graphic (and other website statements) are inactionable because they were not

---

[4] The language from the case Plaintiffs cite is dicta because "the court ha[d] already found that [the] plaintiffs ha[d] adequately alleged . . . ultimate authority" with respect to the individual defendants." *Colbert v. Rio Tinto PLC*, 2019 WL 10960490, at *7 (S.D.N.Y. July 29, 2019).

made in connection with the purchase or sale of securities. In this Circuit, false statements on a consumer website cannot be used to plead securities fraud even where plaintiffs allege, generally, that defendants directed investors to those statements. *See Plains All Am.*, 777 F. App'x at 731-32. Even the out-of-circuit decisions on which Plaintiffs rely require specific allegations that defendants used the website to communicate with investors. *See* Opp. at 10 (citing cases). Plaintiffs include no such allegations, conceding that the website was "aimed at patients and clinicians," *not* investors. ¶¶ 61-63. This is a further, independent, reason to dismiss.

### B.   Plaintiffs Fail to Plead Falsity as to Panorama

Plaintiffs argue that Natera's accurate representation that its revenue was "driven primarily by sales of Natera's Panorama and Horizon tests" misled investors because Natera did not *further* disclose that Panorama revenue purportedly was "driven by": (a) revenue from a prior authorization vendor (MGML) with alleged ties to a former Natera employee; and (b) a requisition form that Plaintiffs alleged improperly "opt[e]d patients by default into" testing for the 22q microdeletion. Opp. at 13. This argument fails for several independent reasons.

First, the Complaint does not allege that Panorama revenue was actually "driven by" either factor. *Compare* Opp. at 13-14 (arguing that Plaintiffs pled this in ¶¶ 123-41 and 145-46), *with* ¶¶ 123-41 and 145-46 (no such allegations) *and* Ex. 16 at 8, 9 (22q microdeletion screening does not materially impact revenue). 22q screening has no material impact on Natera's revenue (Ex. 16 at 8, 9) and MGML is just a vendor that assists with certain prior authorizations, not a revenue source (Ex. 1 at 1-2).

Second, Plaintiffs base the allegations entirely on a (debunked) shortseller report. While some courts disregard shortseller reports entirely (*see* MtD at 15) others allow them if substantiated by plaintiffs' own investigation (*see* Opp. at 14 & n.10). These allegations fail either way. Despite Plaintiffs' representation that they performed a "rigorous independent investigation" into the shortseller allegations (Opp. at 14), the Complaint does not plead even a cursory investigation. *See* ¶¶ 140-43 (quoting generalized guidance from OIG); 145-48 (Natera's publicly available website) and 124-139 (parroting Hindenburg allegations).  Moreover, even the unverified allegations from

Hindenburg do not show that anyone at Natera knew about the former employee's purported ties to MGML, nor do they cite any finding of impropriety as to the requisition form. *See* MtD at 18.

Finally, *even if* Plaintiffs had alleged that Natera engaged in improper conduct, this would not render false or misleading Natera's concededly accurate representation that revenue was "driven primarily by sales of Natera's Panorama and Horizon tests." Plaintiffs argue, based on a nearly thirty year old case, that companies have a "duty to speak the full truth" (Opp. at 16), but ignore recent Fifth Circuit precedent clarifying that a "claim of incomplete disclosure is actionable only if what [defendants] said is misleading." *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541-42 (5th Cir. 2008) (citing *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).[5] "An omission" is only misleading if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* (some punctuation altered).  Courts consistently have held that an otherwise accurate discussion of financial results is not materially misleading even if the company fails to disclose that results are based on violation of "consumer protection regulations" (*Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 582-83 (E.D. Mich. 2016), a "defective product" (*In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 570 (6th Cir. 2004)) or "risky" contracts (*McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 994, 998 (10th Cir. 2002)).  Here, the absence of any nexus between the statements at issue and the alleged omissions warrants dismissal.

### C.   Plaintiffs Fail to Plead Scienter

#### 1.   No Scienter as to the Prospera Allegations

Because **Steve Chapman** (Natera's CEO) is the only Executive Defendant alleged to have

---

[5] Plaintiffs argue that three district court cases require disclosure of any adverse facts about a revenue source. Opp. at 14. In those cases, the defendants either inflated the actual financial results (*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, 2021 WL 1416025, at *12 (S.D. Tex. Apr. 14, 2021)) or expressly misrepresented how the company generated revenue (*Stone*, 26 F. Supp. 3d at 586 (company claimed it employed multiple "doctors and [using] published actuarial data" when it actually employed "only one doctor" who reviewed policies "using non-industry standards"); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*, 2013 WL 1100819, at *3 (W.D. La. Mar. 15, 2013) (representation that revenue growth was "organic" when it "resulted in significant part from [the company's] abuse of the Medicare system").

7

made or issued any of the contested Prospera Statements, his state of mind is the only one relevant to whether Plaintiffs have pled scienter. *See Southland*, 365 F.3d at 366 (rejecting "corporate scienter" and holding courts must "look to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment").

Plaintiffs argue they have adequately pled scienter as to Chapman based on: (1) the 2018 emails; and (2) quadruple hearsay from a confidential witness ("CW") who claimed that another employee told the CW that she "told Chapman not to make public statements comparing Natera's products to CareDx's"). *See* Opp. at 17. These allegations fail because Plaintiffs have not, and cannot, plead facts establishing that Chapman was even aware of the emails, let alone agreed with their claims. Plaintiffs' allegations are at best an argument that Chapman behaved unreasonably by relying on "articles published in peer-reviewed medical journals and [a] regulatory decision[] approving [Prospera] for" Medicare coverage *instead of* eighteen-month old emails expressing the subjective views of three employees who were not even discussing the claim Chapman made.[6] *Sanofi*, 87 F. Supp. 3d at 544; *see also* ¶¶ 49, 55, 60. This is not sufficient to plead fraud. *See id.*; *see also In re Philip Morris Int'l Inc. Sec. Litig.*, 2021 WL 4135059, at *12-13 (S.D.N.Y. Sept. 10, 2021); *Hirtenstein v. Cempra, Inc.,* 348 F. Supp. 3d 530, 563 (M.D.N.C. 2018), *aff'd sub nom. Janies v. Cempra, Inc.*, 816 F. App'x 747 (4th Cir. 2020) (no scienter where company disclosed results in "peer-reviewed medical journals").

Plaintiffs also make generalized allegations about Chapman's position at the company, his compensation structure, and the fact that he sold stock (*see infra*); none of these are sufficient to plead the required cogent and compelling inference of scienter. *See Shaw,* 537 F.3d at 535 (scienter "may not rest on the inference that defendants must have been aware of the misstatement based on

---

[6] The emails were sent prior to publication of (1) the peer-reviewed Sigdel study in <u>late 2018</u> (which reported that Prospera "showed a higher AUC value (0.87)" and "greater sensitivity (89%)" compared to the competitor, which reported AUC of 0.74 and 59% sensitivity) (¶¶ 49, 52; Ex. 4); and (2) the independent, peer-reviewed Huang study in <u>early 2019</u> (which reported that the competitor could not identify the most common form of early rejection) (¶¶ 50, 62, 100; Ex. 7).

their positions with the company"); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002) (rejecting allegations based on bonuses); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 246 (5th Cir. 2003) (motive allegations, such as stock sales and bonuses, "will not fulfill the pleading requirements of the PSLRA"). Plaintiffs fail to plead – as they must – that Chapman's stock sales were unusual in timing or amount. They concede that Chapman made almost all the sales under a Rule 10b5-1 plan and maintained the same percentage of overall holdings before and after the Class Period (Opp. at 20), negating any adverse inference. *See Hopson v. MetroPCS Commc'ns, Inc.*, 2011 WL 1119727, at \*14 & n.14 (N.D. Tex. Mar. 25, 2011) (refusing "to find a strong inference of scienter based on insider sales made pursuant to Rule 10b5-1 trading plans"); *Abrams*, 292 F.3d at 434.[7]

Since Plaintiffs do not allege that **Dr. Billings** (Natera's CMO at the relevant times) made any of the statements still at issue, his scienter is irrelevant. *See Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, at \*11 (S.D. Tex. Mar. 13, 2019) (defendant was not alleged to have made a statement, as "required for liability under § 10(b) and Rule 10b-5"). Plaintiffs also have not sufficiently alleged that Dr. Billings knew, or was reckless in not knowing, that the Prospera statements were false. Plaintiffs attempt to attribute scienter to Dr. Billings based on two emails from 2018. Opp. at 17. One of these emails was not sent to him (¶ 74) and the other simply reflected the view of a single scientist that a journal might be uninterested in the Sigdel study because its data was not "significantly better" than the competitor's existing published data (Opp. at 17 (citing ¶ 71)). Plaintiffs do not allege that Dr. Billings agreed with this statement or continued to hold this view during the Class Period.[8] Plaintiffs also concede that Dr. Billings did not sell stock, calling

---

[7] Plaintiffs have abandoned their "control period" argument. *See* ¶¶ 203-04. Their unsupported reading of *Abrams* still requires them to plead the trades were unusual. They have not done so. Plaintiffs also ignore many cases in which courts consider Defendants' use of 10b5-1 plans at the pleading stage. *See, e.g., Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 181-82 (5th Cir. 2019); *Congregation of Ezra Sholom v. Blockbuster*, 504 F. Supp. 2d 151, 165 (N.D. Tex. 2007).

[8] *In re Apache Corp.*, 2022 WL 4277350, at \*5 (S.D. Tex. Sept. 15, 2022), on which Plaintiffs rely (Opp. at 17), actually helps Defendants. Plaintiffs there alleged that defendants received daily updates (including a report from a "team of technical experts" advising "senior management that the company lacked the technical data and analyses to make reasonable statements or projections")

"into question [his] alleged motive to artificially inflate the stock price." *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003).

Plaintiffs do not seriously argue that they have pled either scienter or participation as to **Rabinowitz** (Natera's Executive Chairperson) or **Brophy** (Natera's CFO). They do not allege either was involved with Prospera, played any role in drafting the statements at issue, or saw the 2018 emails. Instead, Plaintiffs rely exclusively on generalized allegations about Rabinowitz and Brophy's positions, bonuses, and stock sales. *See supra* at 8-9 (allegations based on position and motive, alone, do not suffice). Plaintiffs do not connect those bonuses to Prospera or identify any unusual stock sales or trading patterns by these Defendants.[9]

Finally, Plaintiffs argue that scienter can be inferred due to the "numerous and frequent" misstatements. Opp. at 19. This weighs *against* scienter because the Prospera claims rely on just *two* allegedly false statements, neither of which was made in SEC filings or on analyst calls. *See* Opp. at 19 (quoting *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 784 (S.D. Tex. 2012)); *cf. KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2016 WL 3981236, at *9 (D.S.C. July 25, 2016) (scienter where defendants "repeatedly spoke on these issues"). It is simply not "cogent and compelling" to argue, as Plaintiffs do here, that the Executive Defendants inflated Natera's securities in statements most investors will never see without making a single false statement in the documents on which investors typically rely. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

### 2.     No Scienter as to Panorama

Plaintiffs do not purport to have pled individual scienter with respect to Panorama. They

---

contradicting "*numerous*" statements made by defendants. *Id.* at *6-7. The magistrate called scienter a "tie" and a "very close call." *Id.* at 6. Plaintiffs here, by contrast, rely on informal emails sent before the Class Period and not seen by the only Executive Defendant alleged to have made either of the *two* statements at issue. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 (5th Cir. 1996) (no scienter where plaintiffs alleged "difference in judgment" about how to apply accounting rules); *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *11 (S.D. Cal. Sept. 20 2021) (no scienter where plaintiffs detailed "internal disagreements" about scientific data reports).

[9] *See* MtD at 22, 24 (Rabinowitz sold ~10% of vested holdings and pursuant to 10b5-1 trading plans or to cover tax obligations; 98% of Brophy's sales were pursuant to 10b5-1 plans or to cover tax obligations from vesting RSUs).

10

do not allege that any Executive Defendant even knew about the purported relationship between the former employee and MGML. *See* ¶ 175. Likewise, they do not allege that any Executive Defendant had reason to know that there was a purported issue with the requisition form. *See* ¶ 146 (citing guidance issued nine years ago by a professional society that merely "suggested" that microdeletion screenings "should be offered as 'opt-in'"). Instead, Plaintiffs rely solely on conclusory allegations about Panorama's importance, the Executive Defendants' purported motive, and an irrelevant DOJ settlement. These are precisely the sort of generalized allegations that cannot carry Plaintiffs' burden. *See, e.g.*, *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) ("the core operations doctrine can only be a buoy, not a life raft").

The core operations doctrine applies only to matters of such central importance that no reasonable executive could have failed to perceive them. *See Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 959 (5th Cir. 2016) (must "jeopardize[] the company's existence"). While Panorama may be critical to Natera's business, the allegations here are about a third-party vendor and the requisition process for microdeletion screening, which is not alleged to have had any material impact on overall revenue. These are not the sort of facts from which an inference of knowledge arises. *See Anderson v. Peregrine Pharm., Inc.*, 2013 WL 12122423, at *10 (C.D. Cal. Aug. 23, 2013) ("absurd to suggest" core operations applies to operations at a third-party); *Crutchfield v. Match Grp. Inc.*, 529 F. Supp. 3d 570, 603-04 (N.D. Tex. 2021) (no core operations when only tangentially related to a core product).

Plaintiffs do not allege that the Executive Defendants' bonuses were impacted in any way by the alleged relationship between the former employee and MGML or the layout of Natera's requisition form. Opp. at 19. Nor do Plaintiffs explain how a 2018 DOJ settlement (in which Natera admitted no liability and expressly disputed the allegations), which does not even mention Natera's requisition form, establishes that the Executive Defendants knew the requisition form would become the basis of a short attack. *See KBC Asset Mgmt. NV v. MetLife, Inc.*, 2022 WL 480213, at *2 (2d Cir. Feb. 17, 2022) (plaintiffs cannot rely on admissions in a settlement agreement that

11

"concerned a separate issue" to plead scienter). This is a separate basis for dismissal.[10]

## III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTIONS 11 AND 12

### A.    Plaintiffs Fail to State a Claim as to the Prospera Statements

Plaintiffs base their Sections 11 and 12 claims on Natera's representation, in a Form 10-K filed February 26, 2021 (incorporated by reference in the July 2021 offering materials), that "[p]ublished studies . . . report higher sensitivity and higher [AUC]" for Prospera than "the competing test." Plaintiffs admit that this statement (a direct quote from the Sigdel study) was true but argue it was still misleading because Natera did not also disclose the 2018 emails.

An omission is actionable only if it is *both* (1) material; *and* (2) necessary "so that other statements are not misleading." *See In re Superior Offshore Int'l, Inc. Sec. Litig.*, 2009 WL 82064, at *2 (S.D. Tex. Jan. 12, 2009) (relied on by Opp. at 25); *see also Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213 (5th Cir. 2004). Plaintiffs argue the statement is "information a reasonable investor could consider significant in making his investment decision" (Opp. at 25), but they do not explain how the 2018 emails could have rendered an accurate report of results from a published, peer-reviewed study misleading. *See, e.g.*, *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 556 (N.D. Tex. 2003) ("a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact" (internal quotes omitted)); *Weill v. Dominion Res., Inc.*, 875 F. Supp. 331, 337-39 (E.D. Va. 1994) (dismissing Section 11 claim based on "nothing more than mere internal management disputes").

Likewise, Plaintiffs do not identify any misleading Panorama-related statements in Natera's registration statement. Instead, they argue that Items 303 and 105 (formerly, Item 503) impose an independent duty to disclose that Natera "opt[ed] patients by default into" testing for microdeletions and used a third-party vendor for prior authorizations. But Items 303 and 105 only require disclosure of "known trends that have had or that are reasonably likely to have a material

---

[10] In addition to the reasons discussed in the MtD (*see* MtD at 25), Plaintiffs fail to plead loss causation as to the Prospera Statements because Plaintiffs do not allege that Natera's stock price dropped following disclosure of the 2018 emails. *See* Opp. at 23 (arguing loss causation based on announcement of the *jury verdict*, on which Plaintiffs no longer rely).

12

favorable or unfavorable impact" on financial results (Item 303) or "*the most significant* [*i.e.*, material] factors that make an investment speculative or risky" (Item 105). Natera's requisition form and use of MGML do not satisfy either disclosure criterion. *See McCloskey v. Match Grp., Inc.*, 2018 WL 4053362, at *5-7 (N.D. Tex. Aug. 24, 2018) (matters collateral to the main business did not have "material impact" and were not "the most significant" factors). In fact, Plaintiffs do not allege that Natera's requisition form or use of MGML had *any* impact on Natera's financial results. *See* ¶¶ 145-49. Moreover, to bring claims pursuant to Items 303 and 105, Plaintiffs must allege that the individuals who signed the Registration Statement were aware of the undisclosed "trend" or "most significant factor," which they do not even purport to plead here. *See* ¶¶ 274-84.[11]

Finally, Plaintiffs' Securities Act claims should be dismissed because Plaintiffs failed to comply with the Rule 9(b) pleading standard. Plaintiffs argue that the Securities Act claims did not have to be pled with particularity – even though they pled the same factual allegations in support of both the Securities At and Exchange Act claims – because Plaintiffs included the Securities Act causes of action under a separate heading and disavowed reliance on the fraud allegations. *See* Opp. at 24 (relying on *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 369 (5th Cir. 2001)). "Contrary to Plaintiff's contention," however, "*Lone Star* did not hold that boilerplate disclaimers of fraud would permit the Court to disregard fraud-based claims in the complaint." *Kurtzman v. Compaq Computer Corp.*, 2002 WL 32442832, at *24 (S.D. Tex. Mar. 30, 2002); *see also Lone Star*, 238 F.3d at 368-69 (dismissal under Rule 9(b) is proper where plaintiffs base Securities Act claims on "wholesale adoption" of Exchange Act claims but holding that district court erred by not giving plaintiff leave to file amended complaint with *only* Securities Act claims). Since Plaintiffs here do not include any independent factual basis for the Securities Act claim, those allegations also fail because they are not pled with specificity.

---

[11] Natera *did* disclose its Panorama requisition form (¶ 145) and the market was aware of its use of a third-party vendor (*see* Ex. 12 at 1), which alone is a sufficient basis for dismissal. *See Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 651-52 (S.D. Tex. 2016).

## IV.      THE CLAIMS ARE TIME-BARRED

Plaintiffs acknowledge that the statutory period for bringing suit (one year for Securities Act claims, two years for Exchange Act claims) began to run when they were on "inquiry notice" of their claims but disagree about the factors that constitute inquiry notice. *See* Opp. at 27-28. Inquiry notice exists when there are sufficient facts "to have prompted a reasonably diligent plaintiff to begin investigating." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010).

Plaintiffs argue that the CareDx complaint did not constitute inquiry notice as to the Prospera claims because it did not detail the 2018 emails. But emails are part of every commercial lawsuit in the modern era and, here, the case record expressly mentioned the emails in discovery orders and the summary judgment briefing. *See, e.g.*, *CareDx*, Dkt. Nos. 128, 220. Plaintiffs cannot dispute that – at least in their view – they had sufficient information to file suit without the emails because they did exactly that in the initial complaint in this case. *See* Dkt. No. 1 (initial complaint, alleging Prospera claims without mentioning the emails); *see also* Fed. R. Civ. P. 11 (requiring counsel to certify that a pleading is "warranted" and has "evidentiary support"). Nor is it sufficient for Plaintiffs to argue, as they do now, that Natera did not admit fault in the CareDx case. *See In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 289 F. Supp. 2d 416, 425 (S.D.N.Y. 2003) ("a plaintiff's duty to inquire is not dissipated merely because of a defendant's later refusal to acknowledge or own up to the alleged fraud"). The inquiry is simply whether the disclosure for a "reasonable plaintiff [to] have discovered sufficient information to plead a securities-law violation adequately." *Chen v. X Fin.*, 2022 WL 765417, at *8 (E.D.N.Y. Mar. 13, 2022).

Plaintiffs similarly argue that they were not on inquiry notice of the Panorama claims, even though Capitol Forum made the same allegations in December 2020, since that story appeared on a subscription website. *See* Opp. at 29; *see also* ¶ 127 (discussing the Capitol Forum report).  Other courts, however, have held that inquiry notice runs when disclosure is made on a subscription website. *See, e.g., Shah v. Meeker*, 435 F.3d 244, 249-50 (2d Cir. 2006) (inquiry notice where subscription magazine article described the alleged conflict of interest); Joinder at 5. Moreover, here, the allegations were repeated in other publications and based on publicly available facts.

Plaintiffs do not, and cannot, deny they were aware of these facts in December 2020. *See* Ex. 12 at 1 (describing the Hindenburg allegations as "not entirely new information"). Plaintiffs' final argument – that the Hindenburg report must have conveyed new information because it was followed by a stock price drop – is tautological. Even the case on which Plaintiffs rely acknowledges that "share price isn't dispositive either way." *See In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 668 (S.D. Tex. 2021).

## V.    THIS IS NOT A SUMMARY JUDGMENT MOTION

The Supreme Court has expressly recognized that, when ruling on a motion to dismiss in a securities class action, "courts must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.

Plaintiffs rely on this Court's decision in *Rose v. Chem. Lime, Ltd.*, 2012 WL 13136337 (W.D. Tex. Feb. 29, 2012) to argue that this Court should convert the Motion to Dismiss into a summary judgment motion, but *Rose* was not a securities class action and the documents at issue there were "outside of the pleadings." *Id.* at *1. Here, the pleadings cite almost every document Natera submitted on this motion. *See, e.g.*, ¶¶ 50, 62, 100 (excerpting slides that cite the Huang study); ¶ 94 (allegations about the Medicare "proof of evidence" ratings); ¶¶ 174, 176 (analyst reports quoted in the MtD). The only document not cited in the Complaint (Natera's Form 10-Q announcing the completion of the Special Committee investigation) is exactly the sort of publicly-available document of which courts routinely take judicial notice. *Olagues v. Musk*, 2019 WL 3457831, at *4 (N.D. Cal. July 31, 2019); *see also* RJN Reply at 6.[12] But even if this Court were to disregard all of these exhibits, dismissal would still be required because internal debate and unsubstantiated short reports are not a sufficient basis to state a claim.

## VI.    CONCLUSION

For the foregoing reasons, and as further set forth in the Motion to Dismiss, the Complaint should be dismissed with prejudice.

---

[12] As discussed in Defendants' RJN Reply, the Form 10-Q is cited for context, and the Court does not need to take judicial notice of it to grant the Motion to Dismiss. *See* RJN Reply at 7.

Dated: April 17, 2023

**KATTEN MUCHIN ROSENMAN LLP**

*/s/ Bruce G. Vanyo*
Bruce G. Vanyo (admitted *pro hac vice*)
Christina L. Costley (admitted *pro hac vice*)
Paul S. Yong (admitted *pro hac vice*)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Tel: (310) 788-4400
Fax: (310) 788-4471
bruce@katten.com
christina.costley@katten.com
paul.yong@katten.com

Kelly D. Hine
Texas State Bar No. 24002290
Megan C. McKennon
Texas State Bar No. 24102184
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
kelly.hine@katten.com
megan.mckennon@katten.com

Sarah L. Eichenberger (admitted *pro hac vice*)
50 Rockefeller Plaza
New York, NY 10020
Tel: (212) 940-8800
Fax: (212) 940-8776
sarah.eichenberger@katten.com

*Counsel for Defendants Natera, Inc., Steve Chapman, Michael Brophy, Matthew Rabinowitz, Paul Billings, Roy Baynes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, James I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that copy of the foregoing document was filed with the Court's electronic case filing (ECF) filing system on April 17, 2023 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.

*/s/ Bruce G. Vanyo*
Bruce G. Vanyo