**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, *et al.*,<br><br>            Plaintiff<br><br>    v.<br><br>NATERA, INC., *et al.*,<br><br>            Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:22-CV-398-LY |

**THE UNDERWRITER DEFENDANTS' JOINDER IN THE NATERA DEFENDANTS'**
**REPLIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND REQUEST**
**FOR JUDICIAL NOTICE**

Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group, LLC (collectively, the "Underwriter Defendants") join in the Reply Memorandum in Support of the Motion to Dismiss [DE 93] (the "Reply") and Reply in Support of Judicial Notice and Incorporation by Reference [DE 94] (the "RJN Reply") filed by Defendants Natera, Inc., Steve Chapman, Michal Brophy, Matthew Rabinowitz, and Ramesh Hariharan, and address Underwriter Defendants-specific arguments in Plaintiffs' Opposition [DE 83] (the "Opposition"), as well as Plaintiffs' Opposition to Judicial Notice and Incorporation by Reference [DE 84] (the "Opposition RJN"). For the reasons explained in the Motion to Dismiss [DE 78] (the "Motion" at 1–11, 15–18, 25–28, 29–30), and the Reply (at 1–2, 2–7, 12–13, 14–15), Plaintiffs fail to plead their sole claim against the Underwriter Defendants—Count IV of the Amended Complaint [DE 60], under Section 12(a)(2) of the Securities Act. Am. Compl. ¶¶ 293–304.

The Reply shows, among other things, why the challenged statements by Natera's CEO and on Natera's website were not misleading or actionable, as well as demonstrating a lack of scienter with respect to the Prospera and Panorama allegations. *See* Reply at 2–6, 7–12. While those Natera statements are relevant for the Exchange Act Section 10(b) claim against Natera and the Individual Defendants, they are irrelevant for the motion to dismiss the Securities Act Section 12(a)(2) claim against the Underwriter Defendants. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 567–68, 571 (1995). That claim is based only on the offering documents for Natera's July 2021 secondary public offering (the "SPO"). Plaintiffs allege that the SPO offering materials:

(i)      incorporated by reference a misleading statement from Natera's 2020 Form 10-K regarding Natera's clinical validation study (the "Sigdel" study): "Published studies . . . report higher sensitivity and higher area under the curve, or AUC," for Prospera (Natera's kidney test), "than . . . the competing test" (referring to AlloSure, Prospera's primary competitor test, owned by CareDx); and

(ii)     failed to disclose that Natera's revenues for its non-invasive prenatal test, Panorama, were inflated because of Natera's (1) relationship with MGML (a prior authorization vendor that Natera used to submit prior authorization requests to insurers), and (2) allegedly deceptive practice of opting patients into microdeletion testing when patients ordered Panorama testing. Am. Compl. ¶¶ 13–14, 272.

Defendants have shown that (a) Plaintiffs have failed to plead falsity or a material omission as to the Prospera and Panorama-related statements, Mot. at 9–18, 26–27; Underwriter Defendants' joinder to the Motion [DE 79] (the "Joinder") at 2; and (b) the Section 12(a)(2) claim is time-barred, Mot. at 29–30; Joinder at 2. Plaintiffs' Opposition, in turn, abandoned almost all of the alleged misstatements in the Complaint, disclaimed any reliance on the jury verdict in the CareDx

trial, and mischaracterized the public record to support their "falsity" theory. *See* Opp. at 8–9, 13, 17, 25. Plaintiffs' attempts to recast this lawsuit fails.

## ARGUMENT

I. **PLAINTIFFS FAIL TO IDENTIFY A MATERIAL MISSTATEMENT OR OMISSION TO SUPPORT A SECURITIES ACT 12(a)(2) CLAIM**

### a. No Material Misstatement or Omission as to Prospera

As Defendants have shown, the 2019 Huang Study negates the Complaint's claim of falsity in the Offering Documents, because this post-Sigdel, pre-Offering study confirms that the statement in Natera's 10-K regarding Prospera was not misleading. This independent study—not supported or co-authored by Natera or CareDx—reexamined Allosure's performance, and its results showed that Allosure was not as effective as Prospera "***on every metric***." Mot. at 6. Recognizing that the Huang Study vitiates their falsity claim as to Prospera, Plaintiffs argue that the Court cannot consider it. *See* Opp. RJN at 1–2, 14–15. Plaintiffs are incorrect. The Huang Study is incorporated by reference in the Amended Complaint—which includes two advertisements that reference the Huang Study as part of the basis for Plaintiffs' claims, Defs. Request for Jud. Notice [DE 80] at 9–10; RJN Reply at 10 n.10; *see* Am. Compl. ¶¶ 50, 62—and thus must be considered on this motion to dismiss, *see* Reply at 15 (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); RJN Reply at 1, 3 (same).

As a fallback, Plaintiffs argue that Natera continued to support its assertion that Prospera is superior, without regard to the Huang Study. Opp. at 12. That argument is nonsensical. The point is that the Huang Study further (i) supports the accuracy of the challenged statement in the Offering Documents that "[p]ublished studies . . . report higher sensitivity and higher area under the curve, or AUC" for Prospera "than . . . the competing test"; and (ii) demonstrates that the 2018, pre-Huang Study, internal Natera emails on which Plaintiffs rely—which only expressed concern

-3-

as to whether Prospera "significantly" outperformed AlloSure, a word not used in the Offering Documents—are irrelevant to the Offering Documents' factual assertion three years later. *See* Mot. at 10, 26–27; Reply at 1, 3 & n.2, 12. Plaintiffs, therefore, cannot state a Section 12(a)(2) claim based on the Offering Documents' statements regarding Prospera.

### b. No Material Misstatement or Omission as to Panorama

Defendants have shown that the Hindenburg report (the short seller report upon which Plaintiffs rely) is presumptively unreliable and the Amended Complaint fails to plead that Plaintiffs independently verified its accusations, and, in any event, Plaintiffs failed to plead falsity regarding two allegedly deceptive practices (i.e., opting patients in to microdeletion screening for 22q syndrome, and using MGML to submit Panorama prior authorization requests). *See* Mot. at 7–8, 15–18. Nothing in the Opposition suggests the falsity of Natera's alleged reporting in the Offering Documents that Panorama was an important revenue source. Plaintiffs point to no pleaded facts showing that the two allegedly improper practices violated any relevant laws, let alone how either practice would render statements about Natera's Panorama revenue false or misleading. *See* Reply at 7, 12–13.

Plaintiffs, therefore, cannot state a Section 12(a)(2) claim based on statements regarding the Offering Documents' concededly accurate reporting about Natera's revenue from Panorama.

## II. PLAINTIFFS' SECTION 12(a)(2) CLAIM IS TIME-BARRED

Securities Act claims must be filed within "one year after the discovery of the untrue statement or the omission or after such discovery should have been made by the exercise of reasonable diligence." Mot. at 29 (citing 15 U.S.C. § 77m). As Defendants have shown, Plaintiffs were on inquiry notice more than one year before they filed this action of (i) the Panorama-related claim, based on the December 14, 2020 Capitol Forum article about Natera's connection to

MGML; and (ii) the Prospera-related claim, based on the April 10, 2019 complaint filed by CareDx against Natera. *See id.* at 29–30; Joinder at 2. Plaintiffs fail in the Opposition to negate the inquiry notice these documents clearly provided.

Plaintiffs argue that The Capitol Forum article was insufficient to trigger inquiry notice because it was only available through a subscription. Opp. at 29. That argument is wrong as a matter of law. *See* Reply at 14–15; RJN Reply at 5–6; *see also Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1204 (10th Cir. 1998) (affirming district court's ruling that article in Barron's—a media outlet requiring subscription for content—created sufficient "storm warnings" to put reasonable investor on notice of possibility of fraudulent activity); *Sanchez v. IXYS Corp.*, 2018 WL 4787070, at *4 (N.D. Cal. Oct. 2, 2018) (concluding information published on Bloomberg, "a subscription service," was publicly available data) (collecting cases); *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 521 (S.D.N.Y. 2016) (concluding that articles published in Wall Street Journal, Barron's, and Financial Times—all subscription services—were publicly available). Tellingly, Plaintiffs do not argue that the 2020 Capitol Forum article did not provide enough information for them to file the same Panorama-related Section 12(a)(2) claim that they waited until 2022 to add to this lawsuit. *See* Opp. at 28–29; *see also* Mot. at 29–30. That claim is therefore time-barred.

Plaintiffs argue that the April 2019 CareDx complaint did not trigger inquiry notice of the Prospera-related claim because Natera denied the allegations in the CareDx action, and it was not until CareDx's trial against Natera, seven months before the Amended Complaint was filed, that other facts relating to the claim became available. Opp. at 27–28. But Plaintiffs do not dispute that the CareDx publicly-filed lawsuit showed the differences in methodologies of two clinical studies, discussed at length by Plaintiffs. *See id.* at 28; Mot. at 29; *see also* Reply at 14; Am. Compl. ¶¶ 3–5, 7, 46, 50, 52, 55–56, 58, 61–64. Relevant here, the Sigdel Study (Natera's

published clinical validation study)—which was published a year after the Bloom Study (CareDx's published clinical validation study)—showed that Prospera's performance metrics compared favorably to the Bloom Study's data concerning AlloSure. *See* Mot. at 4–5. According to the CareDx Complaint, the inappropriate and unreliable conclusions and comparisons between the two studies rendered false and misleading Natera's subsequent superiority claims. *See* Mot. at 29 (citing CareDx, Dkt. No. 1). Thus, this publicly-filed document put a reasonable Natera investor on notice of the potential misleading nature of Natera's statement in its 2020 10K, incorporated by reference into the July 2021 Offering Documents, that: "Published studies . . . report higher sensitivity and higher area under the curve, or AUC" for Prospera "than . . . the competing test." *See* Am. Compl. ¶ 272. And Natera's subsequent denial of CareDx's allegations was not enough to take Plaintiffs off inquiry notice. *See In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 289 F.Supp.2d 429, 433 (S.D.N.Y. 2003) (holding defendant's mere denial of wrongdoing does not eliminate plaintiff's duty to inquire). The Panorama Section 12(a)(2) claim is therefore time-barred.

## CONCLUSION

The Underwriter Defendants respectfully request that the Court grant the Motion to Dismiss and dismiss with prejudice the Section 12(a)(2) claim, the only claim asserted against them.

Dated:  April 17, 2023                          O'MELVENY & MYERS LLP


By: */s/Danny S. Ashby*
  Danny S. Ashby
  Texas Bar No. 01370960
  dashby@omm.com
  2501 N. Harwood Street, Suite 1700
  Dallas, Texas 75201
  T: (972) 360-1900
  F: (972) 360-1901

  Jonathan Rosenberg (*pro hac vice*)
  jrosenberg@omm.com
  Times Square Tower, 7 Times Square
  New York, New York 10036
  Telephone: (212) 326-2000
  Facsimile: (212) 326-2061

  *Counsel for Defendants Morgan Stanley &*
  *Co. LLC, Goldman Sachs & Co. LLC,*
  *Cowen and Company, LLC, SVB Leerink*
  *LLC, Robert W. Baird & Co., BTIG, LLC,*
  *and Craig-Hallum Capital Group LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on April 17, 2023.

/s/ *Danny S. Ashby*_____