UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOHN HARVEY SCHNEIDER,          )
Individually and on Behalf of   )
All Others Similarly            )
Situated,                       )
Plaintiff,                      )
                                )Case No.
vs.                             )1:22-CV-00398-DAE
                                )
NATERA, INC., STEVE CHAPMAN,    )
MICHAEL BROPHY, MATTHEW         )
RABINOWITZ, and RAMESH          )
HARIHARAN,                      )
Defendants.                     )
*****************************)

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE DUSTIN M. HOWELL
TUESDAY, FEBRUARY 27, 2024


APPEARANCES:

FOR THE PLAINTIFFS BRITISH AIRWAYS PENSION TRUSTEES LIMITED:

KESSLER TOPAZ MELTZER & CHECK, LLP
BY:   JOSHUA E. D'ANCONA, ESQUIRE
BY:   VANESSA MILAN, ESQUIRE
280 King of Prussia Road
Radnor, PA  19087
610.667-7706
gcastaldo@ktmc.com

FOR THE PLAINTIFF KEY WEST POLICE & FIRE PENSION FUND:

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
BY:   LAUREN McMILLEN ORMSBEE, ESQUIRE
1251 Avenue of the Americas, 44th Floor
New York, NY  10020
212.554.1400
lauren@blbglaw.com

U.S.D.C. Official Court Reporter
Lisa A. Blanks

APPEARANCES:   (CONT'D)

LIAISON COUNSEL FOR LEAD PLAINTIFF BRITISH AIRWAYS PENSION TRUSTEES LIMITED:

NIX PATTERSON, LLP
BY:   CODY HILL, ESQUIRE
8701 Bee Cave Road
Austin, TX   78746
512.328.5333
codyhill@nixlaw.com


FOR THE DEFENDANTS:

KATTEN MUCHIN ROSENMAN LLP
BY:   ERIC R. HAIL, ESQUIRE
2121 North Pearl Street, Suite 1100
Dallas, Texas   75201-2591
214.765.3600
eric.hail@katten.com


BY:   CHRISTINA L. COSTLEY, ESQUIRE
BY:   PAUL S. YONG, ESQUIRE
2029 Century Park East, Suite 2600
Los Angeles, CA   90067
christina.costley@katten.com
paul.yong@katten.com


COURT RECORDER:   FTR GOLD
TRANSCRIBER:
LISA A. BLANKS, CSR, CRR, RPR
OFFICIAL COURT REPORTER, U.S.D.C.
262 West Nueva Street
San Antonio, Texas   78207
210.244.5038; lisa_blanks@txwd.uscourts.gov


                    U.S.D.C. Official Court Reporter
                          Lisa A. Blanks

SCHEDULING CONFERENCE                    3

*(Tuesday, February 27, 2024, in open court.)*

*         *    *    *

THE CLERK:  The Court calls the following for a scheduling conference, 1:22-398-DAE, Schneider, et al., vs. Natera, Inc., et al.

THE COURT:  Good afternoon, everyone.  We're here on a scheduling conference.  We'll start by having the attorneys introduce themselves, anybody who plans on talking in the hearing, starting with the plaintiff.

MR. D'ANCONA:  Thank you, your Honor.  Joshua D'Ancona, Kessler Topaz Meltzer & Check, on behalf of the plaintiffs.  And I'll mention that I'm joined here today by co-counsel Lauren Ormsbee of Bernstein Litowitz, local counsel Cody Nix from Nix -- Cody Hill, rather, from Nix Patterson, and my associate Vanessa Milan.

MR. HAIL:  Your Honor, Eric Hail here on behalf of the Natera defendants, and I am here with a partner of mine, Christina Costley, and another lawyer of ours, Paul Yong.

THE COURT:  Good afternoon to all of you.  So I have -- Judge Ezra referred this to me to resolve your dispute about a scheduling order.  I've looked over the 26(f) position statements you've provided in advance of the hearing, and the joint advisory, and I can see that it boils down to whether or not to bifurcate discovery and how to go about that.

I guess, generally speaking, bifurcated discovery in a

U.S.D.C. Official Court Reporter
Lisa A. Blanks

case like this probably could make sense, but it does require the parties to agree to a plan and to cooperate with each other.

If not, then we just end up with disputes over what the proper scope of discovery is in the initial phase, and that kind of defeats the purpose of bifurcation. Because, frankly, I don't want to put myself or Judge Ezra in the position of having to play referee on scope of discovery disputes.

That said, there may be a path, a bifurcated path available here, depending upon what y'all tell me here in this hearing. So I've not made up my mind yet. But I just want to hear both sides kind of explain what they think would work best.

I mean -- so the questions in my mind, as I sit here now, are to what extent, you know -- to the plaintiffs, what extent the merits bear on the class certification analysis, and is there -- I mean surely you don't need full blown merits discovery. So is there some way, if I were to give the plaintiffs an opportunity to define the scope, how would we do that?

And then to the defendants, you know, I'm interested knowing how they might draw the line. I mean, as I see it, or at least as it's currently been so far, it seems that defendants have kind of put themselves in the position of sort of being the gatekeeper on what's discoverable and what's not.

So I don't know that that's necessarily the best position. Maybe if there's some way to clearly define what is discoverable for the purpose of class certification and what's not, then maybe we can find a path forward.

Otherwise, I think it just makes sense to just let discovery go and plaintiffs seek what they think they need, and we adhere to a schedule that allows y'all to brief up class certification upon one of the schedules y'all propose. But that's just sort of my initial impressions.

I will let the plaintiffs go first.

MR. D'ANCONA: Thank you, your Honor. Again, Joshua D'Ancona, Kessler Topaz Meltzer & Check.

I guess just to set the table, I would note that discovery has barely moved here since Judge Ezra issued the Motion to Dismiss order back in September.

We served discovery requests back in the fall. We do not have a single document yet from any of the defendants. It also bears noting here that, as you pointed out, your Honor, the main issue, really the issue driving everything right here is whether discovery should be bifurcated.

In our view, bifurcation makes no sense. There's no good reason to bifurcate discovery here, for a couple of reasons, and it will really just slow down this case and draw it out, prolong it inordinately.

We -- I guess I would begin by pointing out that the

Exxon -- the Ramirez, the Exxon Mobile case that defendants point to, that case took about -- from 2018 through about 2023 for class certification to be resolved after the motion to dismiss, and there were normal squabbles and motions and all these things happening in the course of that.  I'm not saying that's exactly what's going to happen here.

But I think that's a good exemplar of what can happen and the way in which a case can be prolonged when there's bifurcated discovery, and only at the end of 2023, after a 2018 motion to dismiss ruling, did that case get into full blown discovery.

They had an agreement in that case, of course, that they would bifurcate, and that case did not involve securities act claims, unlike this case which involves both securities act and securities exchange act claims, which I think is a critical distinction, and another probably fundamental reason why this case should not be bifurcated, why it just don't make sense.

But let me just point out that the evidence that bifurcating these cases just prolongs them, there isn't even a case that defendants cite to.

But let me get to the securities act and securities exchange act point.  Because we have claims under both statutes, we have securities act claims against Natera and the underwriter defendants and exchange act claims and Rule 10b-5 claims against the Natera defendants.

Defendants' argument for why class certification could really shorten this case or resolve this case just doesn't get there.  It doesn't go as far as it needs to, because their argument pertains only to the Securities Exchange Act claims.

In other words, the price impact arguments that they have told us that they want to make, and we take them at their word, every defendant in these cases these days wants to make price impact arguments and says that they're going to win them at class certification, and these defendants are no different.

But those arguments, those price impact arguments, they go to the issue of reliance in the Securities Exchange Act Rule 10b-5 claims only.  There is no element of reliance in the Securities Act claims that are lodged against all of the defendants.

So even if defendants were to knock out as if it were summary judgment, the 10b-5 claims because of a failure of reliance, because they win on their price impact argument, the Securities Act claims would not fall for the same reason.

They would have to have some other reason why those didn't work at class certification.  We haven't heard anything about that yet.  We might hear something for the first time today.

But like I said, it doesn't go far enough to argue that this case is somehow going to end at class certification, even if they were to win on price impact, which we do not think

they will.  But even if they were, we'd still have our Securities Act claim.

So it won't shorten the case predictably, it won't possibly knock out the case if they were to win on price impact and class certification, and that goes for all of the defendants.

You asked to what extent do the merits bear on the class certification analysis.  The merits on the Securities Act claims are I think set to the side, because there's really no way that they're going to knock out the Securities Act claims in class cert.

But as to the price impact argument, which is front and center here, I think, your Honor, the merits are really inextricable from the issues that are going to come up at class certification, and I think the Supreme Court has made that clear.  First it was Wal-Mart versus Dukes back in 2011.

But more recently it's the Goldman Sachs versus Arkansas Teacher's case at which the Supreme Court has made increasingly clear over that decade-plus that the merits' issues of materiality of loss causation, of any number of merits issues in the Rule 10b-5 elements are at play in class certification.

And because of that, in the Goldman Sachs' opinion, Goldman Sachs/Arkansas Teacher's case, the Supreme Court made clear that all relevant discovery should be -- all relevant

evidence should be considered by the Court when assessing price impact arguments.

Now, courts are still working out exactly what all relevant evidence should be, and I grant that.

But it does seem clear that especially in a case in which defendants are arguing that they intend to knock out the entirety of a very significant cause of action, very significant claim in this case, given that the Supreme Court has said that all evidence should be considered at that time, we should really have all evidence that's going to be put forth in discovery.

They're treating it as if it's summary judgment on those claims, on the one hand, and on the other hand, they want to tie our hand behind our back and say, *You only get the discovery that we think is appropriate and that we think is relevant and pertinent to class certification from our perspective on the defendants' side.*

This is an argument that I think defendants have raised for a long time at class certification. You know, there's a case that we cited which is the Piney Woods case. It's in our short submission to your Honor in the Rule 26(f) report of the parties, and it talks about how bifurcating discovery often allows defendants to unduly limit the evidence available to plaintiffs for class certification.

That case then cites to the Rail Freight Surcharge

antitrust litigation in the District of D.C., which talks about how defendants often ask plaintiffs and the Court to accept their formulation of the certification issues and their determination of what pertains to it.

We will obviously do whatever your Honor directs us to do here, but we cannot agree off the blocks here, especially in light of Goldman Sachs which says, "All relevant evidence is in play here at the class certification price impact moment," to sort of take defendants' offering of what evidence they think we need to contest their effort to knock out our case in class certification.  We can't find ourselves in that position.

We'll submit to whatever your Honor rules, of course, but we can't agree that something short of what we've asked for in our discovery requests is appropriate at this point.  And we think we're entitled to full discovery, at least full documentary discovery, your Honor, prior to needing to file our reply on class certification.

You asked is there a middle ground.  A middle ground that makes sense to us is we get all of the documents in a reasonable time in advance of our requirement to putting our reply in, because it's really just on our reply, your Honor, that we will have seen what price impact arguments they're making, which they'll submit for the first time, they'll show us for the first time in their opposition.

So we're not saying we need it before we ever move,

but we need it before we have to formulate that reply.

I'll stop there in case your Honor has any questions.

THE COURT:  I've got a couple.  So one is defendants, in their 26(f) say, *Look, we've -- we provided them or proposed a phased plan where plaintiffs get -- we give them everything they've indicated they need for class certification as well as hundreds of thousands of pages of Natera internal emails and other documents that were already collected and reviewed by Natera's special committee during its investigation into the allegations in the Hindenburg report, and that all the allegations remaining in the case come from that report.*

So I guess, one, do you agree with that characterization at least of what they propose to offer you, and why is that still not enough?

MR. D'ANCONA:  So we do not, and we actually -- we don't need to get into the back-and-forth, but we do not agree with that characterization of what they've offered.

We made clear throughout the meet and confer that our position is that we need, and we are entitled to, under Goldman Sachs and the Supreme Court's articulation of the evidence that's in play here, the documents -- at a minimum, the documents that we've requested.

And I'm calling out the documents, because the reason why I suggested that was a middle ground is because it could involve, you know, forebearing to some extent on certain

written discovery or perhaps certain depositions.  It wouldn't be full blown discovery in every regard, but it would provide us with the documents that we can at least work with and look at with our experts and our client to assess and evaluate the arguments we need to make for class certification.

But the characterization, your Honor, that they made, we object to it.  We do not buy into it at all, and the documents that -- look, again, without getting too far into the back-and-forth that the parties have had in their negotiation, the documents that at that point that they had offered to us fell far short of what we feel that we need.

So to take, for example, the special committee investigation, just at the outset, I'll note that, look, we see these in virtually many, many of our cases.  I won't say all of them, but many of our cases.

And these are investigations which are, as Your Honor is I'm sure well aware, in a way designed to inform the board of whether the board is at certain risk of liability where the company executives behaved in a way that could be deemed unlawful.

It is not uncommon in the least, your Honor, in these cases, for a special committee to say everything here is fine, nothing to see here, the executives did nothing wrong and we should move along, and for discovery to show something quite different.

It is not compelling to us that a special committee retained by the board of the company would reach one conclusion, and that an argument that we should only get to see the documents that were sort of curated in the discovery or the document collection performed by that committee, we would -- it would be a very different world if we were limited in discovery to the documents that were provided to a special committee or that a special committee sought when a special committee is on that kind of footing.  And it would not be fair and it would not be sufficient, in our view.

That being said, we don't know everything that that special committee saw.  I think that counsel is perhaps working on helping us understand more fully what that special committee saw.  We haven't seen that yet, so I can't go more into detail than that, your Honor, in response to your question.

But that's our position on that.  And I'll take the other documents that had been offered and were purportedly all we ever said that we needed were largely -- they were documents that we requested, but they were kind of structural documents, policies, documents regarding organizational charts, things like that.

I mean these are things we very much wanted in this case to understand what we're looking at when we get into deposition preparations and so forth, understanding who's who, but we feel that we need all the documents we requested,

including very much documents going to company interactions with outside investors, company deliberations about their public statements, the statements that they make to the market and to investors about what the company is doing; what its sales -- the key product at issue here is called Panorama. What its Panorama sales are doing in a given quarter, or what the guidance for that business unit that houses Panorama, that sells Panorama will be, and what's driving those dynamics.

That's what the false statements in this case are about, as Judge Ezra pointed out at page 24 of his motion to dismiss opinion. If there's deceptive business practices in those regards, those aren't going to be stated in the sort of public generic documents that defendants were suggesting that they would give to us.

They would be suggested -- they would be reflected in other kinds of documents, and even puzzling together of other types of documents that you really only see when you get the full discovery that you asked for in these kinds of cases, and then rarely are borne out or exposed in the special litigation committee, you know, of sort of self driven reports. And so I'll just stop there.

THE COURT: The discovery that you want, that you've now gotten responses to at this point, this is all the discovery you've already served? When I look at the proposed schedule, you've got this deadline for substantial completion.

So I take it you're proposing that I guess whatever discovery you served as of November 20, 2023, or would have had a response date of that date, that's -- you're saying you want defendants to substantially respond to all those requests by May 16th?

MR. D'ANCONA:  Yes, your Honor.  We served document requests back in November, once the Rule 26 conference began, and defendants propounded their responses and objections in December.

We have had initial meet and confers, although defendants have been reluctant to engage in real substantive meet and confers about those sort of 40 some document requests that sort of span the issues and topics that we think are relevant in this case until this bifurcation issue was resolved.  And they saw it as an inefficiency and a potential waste of time in case they were to prevail.

So what we would intend to see happen if we were to prevail here is that we get right on it with search terms, with custodians, with document areas to be searched.  How about the emails, the text messages, the chats, the internal repositories.

All these things that are standard fare at stage 1 of discovery, your Honor, we have not had a chance -- we have not had a willing partner to engage in that yet.  We believe we will if the gates are opened and discovery can begin in full

here.

That's very much what we want, and we think between now and -- you know, if defense were to say, *Look we can't do it by May,* we could work collaboratively with them on a date that would work.

But we think, given that they've had these requests for about four months now, we think that to take another three months to sort of consummate it and produce the documents under them is reasonable, although I can't say that I know what they've been doing in their shops behind the scenes in response. So it may be that they haven't done much yet, in which case they may need a little more time.

THE COURT: Right. I mean as I see it, your proposed order anyway contemplates they're being substantially done with that by May 16th, and then you're moving for class certification roughly a month later on June 14th.

And they filed their opposition July 19th and then there's a fiveish-week gap between then and August 30th, which as I understand you were saying by then you need to have everything in hand that you've requested so you can address their opposition to your class certification; is that right?

MR. D'ANCONA: Your Honor, that is correct, and if we were moving these pieces around to give them let's say a little more time to substantially complete, what I feel like we need at the bottom line is the documents substantially complete by

about, you know, 60 days, so that we have time to process them and review them before our reply is due.

So if our reply were to be end of August or beginning of September, sometime in, you know, June or July would be the substantial completion deadline that would be our kind of best and final -- our bottom line.  Not that we can demand a bottom line to your Honor, but that's how we would see the way that it should fall, that is correct.

THE COURT:  Anything else you'd like for me to consider before I hear from the defendants?

MR. D'ANCONA:  No, your Honor.  Thank you for the opportunity to speak.

THE COURT:  Mr. Hail?

MS. COSTLEY:  Good afternoon, your Honor, Christina Costley on behalf of the Natera defendants.  Thank you for having us here today.

I want to start by pointing out that I heard something very clever from the perspective of the plaintiffs' lawyer.

They are -- if you accept what plaintiffs are suggesting at face value, they are trying to reorder how a securities class action goes forward.  They're setting forth a world in which we cannot determine whether a class can be certified until all document discovery has occurred, something that can take one to two years in a case of this size and scope.

They know it's going to take a year or two to get through discovery.  They have been plaintiffs in many securities class actions.  They know how long it takes to get through documents discovery.

So what they're setting up is a world in all documents have to be produced prior to class cert, and the end game on this, of course, is that they're trying to take class cert out of this in terms of leveraging a settlement.  So they're trying to do away with class certification as a barrier.

And that's why we're in the position where we hear the plaintiffs coming in, and I think your Honor asked me and asked plaintiff's counsel, *Where would you draw the line?  Which documents do you need for class cert and which ones do you not need?*

We have been trying to have that conversation with plaintiffs' counsel since December, and we don't have an answer.  And the reason we don't have an answer is plaintiffs' counsel keeps saying, *Under the Supreme Court's Goldman decision, we have to have every document.  We can't just have documents related to class cert because Goldman holds all documents related to class cert.*

That's not what Goldman holds.  Goldman holds that documents that are related to class certification do not become irrelevant simply because they overlap with the merits.

Nothing in Goldman can be read to say internal

U.S.D.C. Official Court Reporter
Lisa A. Blanks

documents that have no bearing on the stock price are suddenly relevant to class certification. Nothing in the decision says that. No court has interpreted it that way. It almost defies logic to understand how those things, that internal emails and internal documents that have never been released to the market would have an effect on the stock price.

But what they said is by refusing to identify the documents they do need is a world in which you sort of become forced gatekeepers, and we are negotiating against ourselves to say, Well, *Plaintiffs, why don't we give you this for class cert?*

*No, that's not going to work. We need everything.*

So what we have offered plaintiffs in this case, and this is an offer we made because we didn't get any back and forth on what we were going to need to do for class cert.

What we have offered them are all of the documents that are traditionally related to class certification, documents related to information are in the market how Natera structured information about their (inaudible) -- but we also offered them this very substantial body of documents, of emails. Hundreds, over a hundred thousand documents. It's something close to a million pages.

All of the documents reviewed by the special committee, and importantly, when your Honor asked plaintiffs' counsel whether he would disagree that this case is based on

the Hindenburg report, he did not respond to that, which I take as an agreement that, yes, this case is based on the Hindenburg report.

These are the documents that not just Natera's special committee deemed sufficient to investigate the Hindenburg allegations; now I understand plaintiffs' counsel has sort of gotten that and frankly sort of impugned the integrity of WilmerHale and the special committee that conducted the internal investigation.

But that's not the only source that has vetted this body of documents.  The Securities & Exchange Commission also launched an investigation into Natera as a result of the allegations in the Hindenburg report.  So Natera has been fully investigated by the SEC with respect to these allegations as well.

And the SEC relied on the investigation done by WilmerHale, and I think, you know, conducted some confirmatory investigation of its own.  But substantially relied on the documents collected and reviewed by WilmerHale.  And the SEC, after reviewing those documents and investigating the Hindenburg report, also determined that there was no basis for wrongdoing by Natera.

So you know this is not a situation where plaintiffs' counsel sort of set it up as if to imply that the it's not a legitimate independent investigation.  This was a full

independent investigation by independent law partners (inaudible), beyond reproach, and it is an investigation that was then followed up on by an independent SEC investigation.

And so from our perspective it is difficult to conceive of why plaintiffs need more documents and to conduct a further investigation than was sufficient for the Securities and Exchange Commission when exonerating Natera on these allegations.

So, you know, when the Court says that they're concerned that if we would bifurcate, I think this is really more properly called phased discovery, because we're not trying to draw a bottom line just at class cert.  We have offered the special committee documents.

But when your Honor said that if we do this sort of phased discovery, we're going to be here in here with a million discovery disputes.  Your Honor, we're going to be in here with discovery disputes regardless, just by the tenor of how this case has kicked off and how conversations with plaintiffs' counsel have gone thus far.

I think plaintiffs' counsel said at the beginning of this hearing something to the effect of we haven't produced a single shred of documents.  Well, we haven't produced a single shred of paper, because they have refused to put an attorneys' eyes only designation in the protective order.  So we are not going to be producing documents until that issue gets resolved.

And to even have to go to the Court over an AEO designation when the defendant is a medical company that has patient medical records as well as its own private, confidential and proprietary information, that's the tenor of where we are.  We can't even reach an agreement on how to get an AEO designation and protective order.

So, you know, I would -- I try, and I would like to have middle ground with the plaintiffs, and I would very much like to get this case into a place where we do not have to involve the Court over disputes.

But frankly, I am not optimistic that opening the gates of discovery are going to do that, particularly in this world that plaintiffs have conceived where all discovery somehow is relevant to class certification discovery.  And we're not even going to get to certifying a class most likely for a year or two, if we have to produce all these documents before we do that.

You know, beyond that, I do have a few other comments on their proposed schedule and what the schedule needs to look like, if we are indeed in a world where we are going to have full document discovery before class certification.

THE COURT:  I have a question for you, Ashley, [sic] before we get to that.

So you have in hand, I guess, discovery requests from plaintiffs.  You guys have been meeting and conferring about,

it sounds like for a little while anyway.  I take it -- I mean, I could have asked this question to Mr. D'Ancona as well, I guess, but I take it that while your desire to have this phased discovery question decided before responding to any of the discovery requests is part of the objection that's in your response, I assume there are other -- let's say you prevail on this motion and I agree, *Yeah, let's -- I'm going to trust defendants to participate in good faith and turn over their best understanding of what is appropriate for class certification discovery,* knowing that there may be disputes about that.

But I assume there are other docs being withheld that might be potentially relevant that are being withheld pursuant to other objections, or --

MS. COSTLEY:  So the biggest one is the lack of the AEO designation right now.

Otherwise, the other objections that come to mind are not ones that I would view as being controversial or anything like attorney-client privilege and things like that.  But if we had a protective order in place, we could get started with producing documents.

THE COURT:  Okay.  So two things then.  One, protective order should be easy.  I mean, the Western District of Texas has, at Appendix H2, a protective order form that we enter in every case that needs an attorney eyes' only

designation, and that thing is plug and play for about 99 percent of our cases.

Occasionally we tailor it, but the vast majority of times when I encounter disputes between parties who, one wants something other than the form order and the other side is saying, *Look, Judge, we just want the form order so we can start producing stuff,* I can tell you right now, and I realize that's not tee'd up for today's decision, but rare is the case that we ever depart from that form order, because it provides a designation, it puts the producing party in the position of making the initial determination of whether something should be confidential or attorneys' eyes only.

It provides for a means of the parties informally trying to address disputes about overdesignation, if that happens, and then there is a mechanism to raise it to the Court if there is a dispute.

So everything that's a concern there should be addressed by that proposed order. I don't know where your discussions are on that. And again, we don't need to get too far down that trail.

But what about -- I mean I trusted at the outset, right, is that -- and Mr. D'Ancona wanted to at least, in any case, making the same observation, which is if we agreed to a phased discovery here as you've proposed, you have the documents, they're requesting the documents, their requests as

they currently stand delve into merits, and maybe there's some overlap with class certification issues, and maybe there's not, at least with respect to some of the requests.

How -- I mean doesn't that put you in the, put the defendants in the driver's seat in terms of at least being the initial arbiter of what's discoverable and what's not?  How do you see this playing out?

Let's say, as I said before, I say *All right, we're going to do phased discovery and I'm going to let defendants make the first pass of which requested, you know, RFPs are responsive and certification question which aren't*, aren't we gonna be right back here with defendants -- I mean plaintiffs saying, *Gosh, we need everything because this Goldman case and they're not giving us --*

We're sort of dealing with that problem hypothetically right now, and I guess we're just going to have to deal with it in reality two months from now, right?

MS. COSTLEY:  Yeah, I think much of it depends on the position that plaintiffs' counsel takes in this case.

So we have offered -- I think we've offered documents responsive to 31 of their document requests.  That includes documents responsive to 17 categories of documents that are related to the internal investigation documents.

We have -- yes, it is true that if plaintiffs' counsel is not -- well, I think if the Court reads Goldman and reaches

a determination that Goldman in fact does not hold that every document is relevant to class certification, and that, you know, no, you are not entitled to every document to litigate class cert, I think we're going to make some progress with plaintiffs.  Because I think that will create a situation in which plaintiffs' counsel will go through the document request and start identifying documents that are related to class cert versus document requests aren't related to class cert.

You are correct, though, that if we continue in a world where we accept -- or there is no resolution on whether plaintiffs are entitled to all documents for class cert, we are going to end up back in front of you and it's going to be a prolonged battle.

THE COURT:  What about -- I guess the other thought that occurred to me is it's -- maybe I'm just being naive here.

But I mean there is -- I mean plaintiffs -- if we don't do a phase, if we don't constrain the discovery at this stage and just say, *Plaintiffs can ask for whatever they want and defendants have to respond with whatever is asked of them,* don't plaintiffs have their own incentive to restrict their efforts to the class certification question at this point?

And while they may reach more broadly than you might contend they're entitled to, plaintiffs have an incentive of their own of not unnecessarily expending effort, right, until they get class certification determined, and isn't that a

natural restraint on their behavior in discovery?

MS. COSTLEY: Yeah, you know, I'm going to get historical and talk about passage of the Private Securities Litigation Reform Act, which of course is the body of law that governs all of this.

When Congress passed the PSLRA years ago, the reason they did it and the reason we actually have a complete ban on discovery prior to the motion to dismiss is that plaintiffs' counsel -- this is not directed to this plaintiffs' counsel, but plaintiffs' counsel in America just has a long history of using the high cost of discovery and the burden on the company to go through expenses discovery as a way of leveraging a settlement even in cases that are not meritorious.

And so, your Honor, I think it's just the way the plaintiffs are generally set up to operate, and that's what the format sort of was aimed at. It's not an incentive. It's an incentive for them to put their costs on the company and disrupt the company's business by engaging in voluminous discovery.

THE COURT: One other question for you -- well, maybe one more. I'll check my list, too, but in terms of let's say I agree with you that phased discovery makes sense and I intend to adopt your proposed phased scheduling order as proposed.

Is that limited to just doc production, or does it contemplate plaintiffs' ability to take depositions or

U.S.D.C. Official Court Reporter
Lisa A. Blanks

interrogatories, things of that nature?

MS. COSTLEY:  Well, we're going to need to do some depositions on both sides for class certification.  So that would, of course, would be experts from both sides.  Plaintiffs', the lead plaintiff in the case typically would take those depositions, and then because this case is based on the short (inaudible), there may need to be a deposition there.

But it would not, our schedule would not envision what we would call merit depositions.  That is depositions unrelated to documents that are publicly available beyond the soft price really until after a class is certified.

THE COURT:  Just looking at your proposed schedule, you estimate that -- I mean everything's kind of counting from the class certification decision.  But roughly, January 2026 is where you contemplate likely dispositive motions being filed in the first part of 2026, you know, and Judge Ezra doesn't set cases for trial until after he's ruled on the dispositive motions.

But I know Judge Pitman, just as a rule of thumb, won't set a trial any sooner than four months after the dispositive motion deadline.

So under your schedule of -- phased discovery schedule, we're looking at trial mid-2026 roughly; does that sound about right?

MS. COSTLEY:  Yes, your Honor.

THE COURT:  And under plaintiffs' kind of single track, it would be about late 2025.

So it sounds like even under your proposed -- you're less than a year apart in terms of contemplating -- I know who's to say how long class certification litigation will take, and if I'm to believe what Mr. D'Ancona is telling me, it often drags out longer.  And it sounds like even you think the class certification process can take awhile, right?

MS. COSTLEY:  Yes, your Honor.  You know, well, when it can take awhile is if there's a decision that goes up on appeal to Fifth Circuit -- that's why it can drag out.

THE COURT:  Let me double-check my list, my write-up notes and questions ahead of these hearings and let me make sure I've gotten all my questions answered.

Okay.  Now, anything else you'd like me to consider before I hear a brief rebuttal from Mr. D'Ancona?

MS. COSTLEY:  Yes, just one thing.  My associate tells me that we did propose using the form protective order and wanted to use that language, but nothing else, your Honor.

THE COURT:  Thank you.  Mr. D'Ancona?

MR. D'ANCONA:  Thank you, Judge Howell.  I think three main points here that I'd like to rebut on.

Number one is that bifurcation is not normally done in these cases.  I think Ms. Costley came out of the gate suggesting that we were sort of turning the normal procedure on

its head by suggesting that we should now be entitled to full discovery.

As she later arrived at, we are entitled to full discovery now because we, under the PSLRA, got past the motion to dismiss, the discovery stay is over, and just like every other civil case in federal court, we're entitled to propound discovery and obtain it.

Defendants are in effect attempting to impose a second round of discovery stay on us by suggesting that we only get a limited amount of discovery now, and unless and until we get past class certification.

But that's nowhere in the PSLRA.  That's nowhere in the rules, and it's notable that defendants don't cite a case in their brief, a securities fraud case from anytime recently, where a court just went ahead and ordered bifurcation in a Rule 10b-5 securities fraud case like this, unless the parties had agreed and jointly submitted.

The Ramirez case that they submitted, that was a joint submission by agreement where the parties worked it out and they provided it.

The other cases that they submitted to your Honor, the Deka case, that was a joint request that discovery be stayed and bifurcated while settlement was worked on.  Same with the First Plus case.  That was a joint request.

The Court did not impose it on the parties or on the

plaintiffs over an objection or where there was an initial request.

The Krim versus pcOrder.com case, that's from over 20 years ago. That's before all of this case law, Walmart, Goldman Sachs, Haliburton, too, all of the relevant case law that governs the price impact inquiry. It was not even in existence at that time.

So I think it's notable that defendants are suggesting that we're doing something unorthodox here. They don't have a case that supports what they're asking your Honor to do. We put one in.

Because of the constraints here, I'll point your Honor to another one, which is -- it's a Circuit Court opinion. It's the 7th Circuit in the In re Allstate Securities litigation, stating: "Given the significant and growing overlap between the evidence at stake at the certification and merit stages, district courts may well choose not to bifurcate discovery at all in punitive fraud on the market securities fraud class actions."

That's the state of the law. That's the norm these days and it has been for years. And the suggestion otherwise that we're somehow turning things on their head is just unsupported, your Honor.

The second point here is if there's going to be bifurcation, there really needs to be a good reason. There

needs to be some efficiency that's going to be gained by it, is normally what courts look for here. So where's the efficiency here?

Defendants, at best, are going to trim, or in their best case scenario, knock out one of two of our claims. It will not end the case.

The case will go on for at least one of the two causes of action that we have at bar here. More likely, they lose in attempting to knock out the one that they attempt to knock out, because, at least from where we sit, their price impact arguments aren't very strong.

However, that's expected that I would say that. I'm sure they'll tell you that their price impact arguments are excellent with a high probability of winning. But that's to be decided at class certification.

But in any event, it's not going to end the case, and where bifurcation doesn't point towards some efficiency to be gained in ending the case, courts just don't do it. If there's not a joint agreement, or there's not that efficiency to be gained, they certainly haven't cited a case and we haven't found one.

The other point, and finally, is how would this look. Your Honor, I think you asked Ms. Costley that question.

So how this would look is we would get some documents that defense would curate now in response to our request. It

U.S.D.C. Official Court Reporter
Lisa A. Blanks

would parcel out some stuff under several requests and set aside others where we don't get any. We get some under some. They probably don't agree to search new emails and custodian text messages and chats, all those things they say, *No, that's too burdensome. We'll only do that if you win the class cert.*

We're going to get past class cert on at least some of this case because they can't knock it out on price impact. But let's say we get past it on all of it. I know you were hypothesizing to Ms. Costley that you go with her here. Well, let's hypothesize that we prevail. We're now at square one on all of that discovery.

All of those documents that they did not give us now, Ms. Costley said earlier that that could take a year, it could take more to work through the collection and review and so forth of the full document production.

We're now starting over again after class certification is granted for some or all of this case on the rest of discovery that they haven't done yet. That's probably prolonging the case by a year or more beyond what it would be if we just did it the standard by-the-book way of *Discovery is now open, we're passed the PSLRA mandatory discovery stay.*

There's no second discovery stay for class certification where defendants think they have a good argument. We're into discovery now, and let's go. We don't have that second round to restart document discovery afterwards.

Of course we can't take depositions fairly, your Honor, unless we're going to keep them all open until after we have all the documents.  Otherwise we're going to have to see those witnesses a second time once we get the rest of their documents, and the text messages that defendants didn't want to search and so forth.

It's a highly inefficient construct.  It makes less sense than ever in this case where there's no chance that defendants will knock out the entirety of this case at class certification.  And with that, I'll pause unless your Honor has any other questions.

THE COURT:  Yeah, I do have at least one.

So in defendants' revised proposed scheduling order they have two columns, right?  They've got their proposal should the Court agree with them with respect to phased discovery, and then they've got a -- on the right-hand column a no-phased discovery schedule.

I'm trying to compare those side-by-side with your proposal, and I think where I landed in comparing them was it's a difference of maybe four months or so in terms of the contemplated life span of the case; is that right?

Are there material different -- beyond just that, at least by my counting, was a four-month difference.  Are there other material differences on what they propose on their unphased or no-phased schedule?

U.S.D.C. Official Court Reporter
Lisa A. Blanks

MR. D'ANCONA:  The key difference that I saw, your Honor, your math was my math.  I found the same as far as the broad framework.  The key difference was that their deadline for the substantial completion of documents was mid September of 2024.

In other words, that was after all of the briefing was in on class certification, which is the key touchstone for us.

We understand these dates can move around to accommodate the needs of the parties and the lawyers and everything else, but that cadence where the reply brief happens only after we get the substantial completion and a reasonable time after so we can process those documents and have a look at them and understand what they say, that's the big difference I think that I saw between their no-phased proposal and our proposal which is obviously not bifurcated, either.  It's where that substantial completion falls.

I don't have anything else that I think was a really salient difference, other than the -- some difference in the overall time that you noted already, your Honor.  I think they took about another five months to complete everything under theirs.

THE COURT:  When I look at your proposed schedule, your reply brief on the class cert is due on August 30th, which is the same as the defendants' proposed deadline, the substantial completion deadline, though, that you propose is

August -- or May 16th, in your current proposal, although you also said but if it ends up being 60-ish days before our reply is due which would put you at, what, June 30th, so it would be six weeks later than what you originally proposed.

You said that was still enough time to get what you needed in order -- in time to process it and include anything you learned from it in the reply brief; is that right?  Am I correct so far?

MR. D'ANCONA:  That is what I said and we do believe that, your Honor.

THE COURT:  Okay.  Anything else you'd like for me to consider, Mr. D'Ancona?

MR. D'ANCONA:  Not at this time, Your Honor, thank you.

THE COURT:  And, Ms. Costley, anything else?

MS. COSTLEY:  Yes, your Honor, just briefly.  The one clarification I wanted to make, I am not suggesting that plaintiffs' counsel is turning something on its head by wanting to do discovery all at the same time and not do phased discovery.

Plaintiffs do (inaudible).  I wouldn't agree that an order trend to do bifurcated or phased discovery; in fact, the 2023 note to Rule 23 seemed to advocate for a phased discovery approach.

But what I want to really drill down on and make sure

it's very clear is that plaintiffs are asking the Court to do something very novel here.  They are asking the Court ordinarily, yes, they want all discovery and they don't want to wait until after class or merits discovery, but they are generally historically been willing to have briefing on class certification before all merit discovery is done.

So you get the class certification the first year after a decision on the motion to dismiss.

What they want here is to not do class certification at all for a year until after -- they don't want to do their class certification (inaudible) until after all discovery is done.

That is extremely unusual.  I've never seen that done in a securities class action where all discovery is complete before, and the hope they're using for that, they're saying that the Supreme Court's recent Goldman decision justifies doing this.

It is very unusual.  I don't want to say unprecedented, but I am not aware of a case where that has happened, and it is not supported by Goldman, and it is an enormous burden on defendants because it creates a situation where we cannot get to the next major phase of the litigation for a year, year and a half.

THE COURT:  I understand their proposal to be that -- the substantial completion proposal at least in their, the

thing they filed as Exhibit A, their revised proposed schedule, it includes a qualifier and says *This pertains to document production for any document request delivered by November 20, 2023,* which was four months ago, three months ago, however long it was -- three months ago, and so that's not -- and then the end of fact discovery actually takes place after all the briefing is complete on the class cert that's in October of this year.

So it's not all fact discovery.  As I understand, it's document requests that have been served on you as of November, late October of last year, right?

MS. COSTLEY:  Yes, your Honor.  You're correct about that, but the number of document requests that were served, they're very comprehensive.  They encompass the entirety of the case.

It is a situation where if indeed, if indeed they prevail on the view that they get every single document that they have asked for, and that that's what Goldman compels, it is a world in which we realistically could not do class certification for a year and a half out.

And that would allow them to go forward as if they represent a class without testing that for over a year and a half after the decision on the motion to dismiss, which is very important among defendants.

THE COURT:  Well, what about their argument that the

only authority you have for that position is that -- are cases where parties agree to a bifurcated or phased discovery schedule, and that plaintiffs didn't find one where a party was forced to do it by court order and you didn't cite one.  So maybe it's not so unprecedented.

MS. COSTLEY:  Your Honor, so I want to be clear about what I'm saying.  It is not unprecedented for plaintiffs to get merit discovery before a class is certified.

What is unprecedented is the idea that that merit discovery has to be substantially complete or that you have to respond to like the 64 categories of documents before class certification can be briefed.

So historically how these cases go is plaintiff serves discovery requests.  The Court bifurcates, the Court doesn't bifurcate, but if the Court doesn't bifurcate, which sometimes it doesn't, if the Court doesn't bifurcate, you still certify the class because the plaintiffs aren't making the argument that internal email about (inaudible) about, you know, what an officer or director knew.

The plaintiff isn't making an argument they need that for class certification.  So even though -- they're just on a parallel track, they're not interrelated, but the world that plaintiffs' counsel is urging here is a world in which merits discovery actually becomes class certification discovery.

So instead of having class certification go sort of on

a parallel track, they have to be on the same track and that same track compels putting the class certification briefing out by a year and a half.

So that's what's at (inaudible), the timing of the class certification.  Not the idea of doing bifurcated or not.  Bifurcated -- that happens all the time that courts don't bifurcate.

I will say, though, your Honor, that we try -- so we agreed to a two-page submission limit to the Court in terms of our Rule 26 reports.  We were trying to be brief.  There are cases where courts have ordered bifurcated discovery or the discovery over a party's objection.

I think we cited some of them.  Plaintiffs' counsel said, *Oh that's an old decision*.  There are some from other districts as well that we can cite, and in addition, as I said, very recently even in the comments to Rule 23, there's a comment that phased discovery is desirable.  The Manual for Conference Litigation says the same.  We can submit further decisions as well, if the Court would like to see those, but it happens all the time that it's phased.

THE COURT:  So one other argument I'd like to hear your response to is Mr. D'Ancona says *Look, the efficiencies that are contemplated by courts that have endorsed this sort of phased discovery aren't really in play here, because regardless of how class certification goes, this case isn't going to be*

*knocked out.  It's not going to be resolved at the class certification phase.*

*And so if we restrain plaintiffs' ability to get discovery now, all we're doing is basically kicking the can down the road, because there will be something left of this case at the end of the class certification decision and we're really slowing things down if we put it all off until then.*  Is that wrong?

MS. COSTLEY:  We don't agree with that, your Honor. The claims that don't require class certification are trailing claims.  They're like these sort of Section 11 claims.  I think they sent maybe 10 percent of the complaint on them as compared to 90 percent on the claims of securities fraud claims.  The damages for those other claims are very small.

It is not fair they would even pursue the case if the securities fraud claims aren't met and the thing just went forward (inaudible).

In addition, I don't think -- well, if they want to move forward with discovery on some of those other claims, you know, I don't think that's necessarily an issue.  We didn't even tell them no on that, but the underwriters are defendants as well, and I think they were having a discussion about producing documents related to those (inaudible) claims.

But, no, your Honor, we would not -- we would not agree and indeed would be shocked if this case went forward

after class certification if the class is not certified (inaudible).

THE COURT:  Well, under your own proposed nonphased discovery schedule, you contemplate substantial completion by September 16, 2024, which would be -- and now I mean, as I understand Mr. D'Ancona, he's saying *Well, if we can have until June 30th, 2024, that's good enough to adhere to the proposed class certification briefing that we're talking about.*

So if we're really only ten weeks apart on that particular deadline -- but that doesn't seem to be consistent with what you're telling me that *Oh gosh, well, there's no way we could respond to the discovery we have in hand because that would take a year to get through, to get to substantially complete,* even though you yourself suggested you could do it by the middle of September.

MS. COSTLEY:  We -- so that depends on I think how the ordering is.  But yeah, I mean look, if we can get through it by the end of September and there are not extensions, which typically there are, that may be, but that still puts class certification off by an entire year.  We're not getting into class cert until 2025, under that proposal.

And frankly, your Honor, I think it seems like an aggressive schedule, but that's what we put forward.

THE COURT:  Okay.  So I am going to take a short break here, and then I'll come back on and I think I'll be ready to

give you a ruling on the record.  I've got a 3:00 o'clock hearing that's in the waiting room right now.

But I appreciate the fair discussion back and forth that we've had on this.  So if you'll bear with me.  I'm not stepping away from my computer, so I'll still be able to hear you talk, but I am going to turn my camera off and go on mute while I sort through everything here.

So if you'll bear with me for a minute.

(Brief recess taken.)

THE COURT:  If everybody's ready, we can go back on the record.

MR. D'ANCONA:  Thank you, your Honor.

THE COURT:  Thank you.  So I've considered the parties' 26(f) report and competing positions they've set out there along with the new revised proposed scheduling orders from both sides that were filed alongside the joint advisory that I ordered the parties to file.  So thank you for providing up-to-date proposals and for conferring as I had ordered you to do.

And having considered plaintiffs' proposed unphased scheduling order with key deadlines of the motion certification briefing happening in June, July, and August, the proposed, revised proposed substantial completion deadline of all discovery that's been served, even if it's just limited to just documentary discovery, that being done by the end of June, and

then moving forward on the traditional trial schedule from there, defendants have a phased discovery proposal that contemplates a motion for class certification being filed by plaintiffs along around the same time, June 2024, with opposition due on July 19th, and a reply brief from plaintiff filed on August 30th, with a July 1st substantial completion deadline for production of class certification related discovery, and then the deadlines count onward from there based on -- based on the class certification decision.

The Defendants also propose a no-phased schedule that's similar to the plaintiffs, except that it's delayed overall by a few more months with key deadlines being substantial completion of document production happening in mid September, but with the briefing on certification being the same.

Having considered the parties' filings and the case law that's been provided to me in this area, and taking into account the volume of discovery that needs to take place and the efficiencies that might be gained from phased discovery, I do think that defendants' proposed phased discovery is prudent, a prudent approach in this case, recognizing that the hypothetical dispute that is potentially contemplated by now in terms of what's the scope of discoverability as it relates to class certification, I can't predict exactly how that's going to play out.

I don't doubt there might be a dispute, but I trust defendants to litigate in good faith and respond as they see fit to the requests that they have gotten so far, and if plaintiffs feel like they are entitled to more than what they've received, they can file a motion and we can really address the scope of class cert discoverability on the merits. I feel like the question isn't just quite ripe yet.

So I am going to suggest, or order, on behalf of Judge Ezra -- this was referred to me for disposition -- I'm going to enter a scheduling order along the lines of the defendants' phased discovery proposal that appears in Exhibit B of their joint advisory at document entry 126-2.

Any questions for me regarding that ruling?

MS. COSTLEY:  No, your Honor, thank you.

MR. D'ANCONA:  No, your Honor.

THE COURT:  Very good.  Then I will enter an order to that effect, and I wish y'all the best of luck in moving forward with your case, and thank you for being here today. You're excused.

MR. D'ANCONA:  Thank you.

MS. COSTLEY:  Thank you, your Honor.

*(Proceedings concluded.)*

U.S.D.C. Official Court Reporter
Lisa A. Blanks

* * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.


Date:  March 5, 2024


/s/ Lisa A. Blanks
_____
Official Court Reporter
United States District Court
262 West Nueva Street
San Antonio, Texas   78207
210.244.5038
lisa_blanks@txwd.uscourts.gov