**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § § | Case No. 1:22-cv-00398-DAE |
| Plaintiff, | § § | |
| v. | § § | |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | § § § § § | |
| Defendants. | § § § § | |

**THE NATERA DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 4

I.      THE HINDENBURG REPORT ......................................................................................... 4

II.     THIS COURT'S PRIOR DECISION ................................................................................. 5

III.    REPEATED INVESTIGATIONS INTO THE HINDENBURG REPORT
        CONCLUDE THAT IT IS "UNFOUNDED" ................................................................... 5

ARGUMENT .................................................................................................................................. 7

I.      MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD .................................. 7

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE REFORM ACT. ....................... 8

        A.      Plaintiffs Fail to Plead Falsity. ............................................................................. 10

                1.      Plaintiffs Fail to State a Claim Based on the Hindenburg Report. ........... 10

                2.      Plaintiffs Fail to Plead that Panorama Revenue Was Inflated by
                        Illegal Practices ........................................................................................ 13

        B.      Plaintiffs Fail to Plead Scienter. ........................................................................... 16

        C.      Plaintiffs Fail to Plead Loss Causation. ................................................................ 18

III.    PLAINTIFFS' SECONDARY LIABILITY CLAIMS MUST BE DISMISSED. ............. 19

CONCLUSION .............................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ..................................................................................9, 10

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) ......................................................................................18

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
  915 F.3d 975 (5th Cir. 2019) ......................................................................................17

*AmTrust Fin. Servs., Inc. v. Liberty Ins. Underwriters Inc.*,
  2022 WL 980299 (D. Del. Mar. 31 2022) ....................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................10

*Basic Cap. Mgmt., Inc. v. Dynex Cap. Inc.*,
  976 F. 3d 585 (5th Cir. 2020) .......................................................................................8

*Batwin v. Occam Networks, Inc.*,
  2008 WL 2676364 (C.D. Cal. July 1, 2008)................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................10, 12

*Catogas v. Cyberonics, Inc.*,
  292 F. App'x 311 (5th Cir. 2008) ...............................................................................18

*Coates v. Heartland Wireless Commc'ns, Inc.*,
  100 F. Supp. 2d 417 (N.D. Tex. 2000) .........................................................................9

*Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*,
  972 F. 3d 684 (5th Cir. 2020) .......................................................................................9

*Crutchfield v. Match Grp., Inc.*,
  529 F. Supp. 3d 570 (N.D. Tex. 2021) ..........................................................14, 16, 17

*Dawes v. Imperial Sugar Co.*,
  975 F. Supp. 2d 666 (S.D. Tex. 2013) ........................................................................19

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005).....................................................................................................18

*Fahs Constr. Grp., Inc. v. Gray*,
 2012 WL 2873532 (N.D.N.Y. 2012), *aff'd*, 725 F.3d 289 (2d Cir. 2013)................................8

*Gentilello v. Rege*,
 627 F.3d 540 (5th Cir. 2010) ............................................................................................7

*Harris v. AmTrust Fin. Servs., Inc.*,
 135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)....................12, 18

*Heck v. Orion Grp. Holdings, Inc.*,
 468 F. Supp. 3d 828 (S.D. Tex. 2020) .......................................................................18

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
 537 F.3d 527 (5th Cir. 2008) ......................................................................................19

*In re BofI Holdings, Inc. Sec. Litig.*,
 977 F.3d 781 (9th Cir. 2020) ......................................................................................18

*In re Cassava Scis., Inc. Sec. Litig.*,
 2023 WL 3442087 (W.D. Tex. May 11, 2023) ..........................................................13

*In re DraftKings Inc. Sec. Litig.*,
 650 F. Supp. 3d 120 (S.D.N.Y. Jan. 10, 2023) ........................................11, 13, 14, 15

*In re Dell Inc., Sec. Litig.*,
 591 F. Supp. 2d 877 (W.D. Tex. 2008).......................................................................19

*In re Enron Corp. Sec. Derivative & "ERISA" Litig*,
 439 F. Supp. 2d 692 (S.D. Tex. 2006) .........................................................................7

*In re Fannie Mae 2008 Sec. Litig.*,
 742 F. Supp. 2d 382 (S.D.N.Y. 2010).....................................................................11, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................................2

*In re KBR, Inc. Sec. Litig.*,
 2018 WL 4208681 (S.D. Tex. Aug. 31, 2018) ...........................................................15

*In re Merrill Lynch Auction Rate Sec. Litig.*,
 704 F. Supp. 2d 378 (S.D.N.Y. 2010).........................................................................10

*In re Nektar Therapeutics Sec. Litig.*,
 34 F.4th 828 (9th Cir. 2022) ......................................................................................13

*In re Paracelsus Corp. Sec. Litig.*,
 61 F. Supp. 2d 591 (S.D. Tex. 1998) ...........................................................................8

*In re Unreligious Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ...................................................................................8

*In re WageWorks, Inc., Sec. Litig.*,
  2020 WL 2896547 (N.D. Cal. June 1, 2020) ....................................................................8

*Jacobowitz v. Range Res. Corp.*,
  596 F. Supp. 3d 659 (N.D. Tex. 2022) ...........................................................................17

*Jedrzejczyk v. Skillz Inc.*,
  2022 WL 2441563 (N.D. Cal. July 5, 2022)....................................................................19

*Kunzweiler v. Zero.net, Inc*,
  2002 WL 1461732 (N.D. Tex. July 3, 2002) .....................................................................3

*Last Atlantis Cap. LLC v. AGS Specialist Partners*,
  533 F. Supp. 2d 828 (N.D. Ill. 2008) .............................................................................18

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020).......................................................................11, 13

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...........................................................................................9

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ...........................................................................................8

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013)............................................................................11

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
  2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021), *aff'd*, 54 F.4th 82 (2d Cir. 2022) ...................11

*Mucha v. Winterkorn*,
  2022 WL 774877 (2d Cir. Mar. 15, 2022)......................................................................14

*Nathenson v. Zonagen Inc.*,
  267 F.3d 400 (5th Cir. 2001) ......................................................................................8, 15

*Neiman v. Bulmahn*,
  854 F.3d 741 (5th Cir. 2017) .........................................................................................17

*Ng v. Berkeley Lights, Inc.*,
  2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ..................................................................12

*Nozak v. N. Dynasty Mins. Ltd.*,
  804 F. App'x 732 (9th Cir. 2020) ...................................................................................13

iv

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
    58 F.4th 195 (5th Cir. 2023) ...................................................................................3, 9, 10, 11, 13

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ........................................................................................................14

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ....................................................................................................16

*Reed v. Amira Nature Foods Ltd.*,
    2016 WL 6571281 (C.D. Cal. July 18, 2016)...........................................................4, 12, 18, 19

*Ryan v. Brookdale Int'l Sys. Inc.*,
    2008 WL 2405970 (S.D. Tex. June 11, 2008)...........................................................................10

*Slaughter v. Torres*,
    2023 WL 2507578 (M.D. La. Mar. 14, 2023) ............................................................................8

*Solow v. Citigroup, Inc.*,
    507 F. App'x 81 (2d Cir. 2013) .................................................................................................18

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
    365 F.3d 353 (5th Cir. 2004) ...................................................................................14, 15, 16, 19

*Tellabs Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)........................................................................................................8, 12, 16

*Vardeman v. City of Houston*,
    55 F.4th 1045 (5th Cir. 2022) .....................................................................................................7

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ......................................................................................14

*Victor Med. Ctr. Beaumont, L.P. v. Connecticut Gen. Life Ins. Co.*,
    2018 WL 3467915 (E.D. Tex. July 17, 2018) .............................................................................7

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................................9

**Rules**

Fed. R. Civ. P. 12(c) ........................................................................................................................7

**Other Authorities**

141 Cong. Rec. S17933-04, 1995 WL 713530 (Dec. 5, 1995).......................................................9

141 Cong. Rec. S9032-04, 1995 WL 376979 (June 26, 1995).......................................................9

H.R. Conf. Rep. No. 104-369 (1995)...............................................................................................8

Case 1:22-cv-00398-DAE    Document 133    Filed 05/30/24    Page 7 of 28

H.R. Conf. Rep. No. 104-369 (1995)...............................................................................................8

Defendants Natera, Inc. ("Natera" or the "Company"), Steve Chapman, Michael Brophy, Matthew Rabinowitz, Paul Billings, Roy Baynes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, James I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena (collectively, the "Natera Defendants") respectfully move for judgment on the pleadings in their favor, dismissing with prejudice the Amended Class Action Complaint for Violations of the Federal Securities Laws filed by Lead Plaintiff British Airways Pension Trustees Limited and additional plaintiff Key West Police & Fire Pension Fund (collectively, "Plaintiffs").[1]

### INTRODUCTION[2]

The claims remaining in this case are based entirely on allegations from the Hindenburg Report – an anonymous "short-biased" report that has been extensively investigated and thoroughly discredited. The Hindenburg Report claimed that revenue for Natera's lead product, Panorama (a noninvasive prenatal screening test), was driven by deceptive billing practices, including use of a third-party payment processor, MGML, to process prior authorizations. Based on this Report, and without conducting any independent investigation or verification, Plaintiffs filed the instant lawsuit. In its prior Order granting in part and denying in part Defendants' motion to dismiss, this Court held that the allegations in the Hindenburg Report were sufficiently reliable, at that stage of the litigation, to support Plaintiffs' claims that Natera's revenue during the putative class period (2020-2022) was artificially inflated by improper billing practices. (Order at 23-24.)

In the two years since the Hindenburg Report's publication, however, judicially noticeable facts have emerged that significantly undermine its reliability. On November 8, 2022, Natera announced that a Special Committee of Natera's board of directors, acting through independent counsel (WilmerHale), had conducted a months-long internal investigation and concluded that the Hindenburg allegations were "unfounded." (Ex. 2 at 2.) On March 1, 2023 and February 29, 2024,

---

[1] This Court dismissed all claims against Paul Billings in resolving Defendants' motion to dismiss (*see* Dkt. 104 ("Order") at 31), but he joins this motion out of an abundance of caution.

[2] References to "¶" are to paragraphs of Plaintiffs' Amended Class Action Complaint (the "Complaint," Dkt. 60). References to "Ex. __" are to the exhibits annexed to the contemporaneously filed Declaration of Christina L. Costley ("Costley Decl.").

Ernst & Young LLP ("EY") conducted a full audit of Natera's financial results from 2020-2023 – including a special review of Natera's revenue from Panorama – and certified that they were accurate in all material respects. And on September 5, 2023, after a *seventeen-month* investigation into the allegations in the Hindenburg Report, the SEC determined that it would not "recommend an enforcement action by the Commission against Natera."[3] All of this confirms what Natera has said from the start: the Hindenburg Report was nothing but distortions and outright lies. It was not reliable when published and it is not reliable enough, now, to support a securities fraud claim.

Despite the firm rejection of the Hindenburg Report's allegations by every entity that has investigated them, Plaintiffs have insisted on moving forward with this case – presumably in the hope that the expense of document production, depositions, and briefing class certification and summary judgment will force Defendants to settle these claims. (*See* Dkt. 129 at 20:11-21:8 (discussing SEC no-action letter).) The expense of defending a securities class action – and the coercive effects thereof – are well documented. *See, e.g, AmTrust Fin. Servs., Inc. v. Liberty Ins. Underwriters Inc.*, 2022 WL 980299, at *6 (D. Del. Mar. 31 2022) (over $39 million in defense costs incurred in connection with defenses of an SEC investigation, securities class action, and tag-along derivative claim); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *25 (S.D.N.Y. Nov. 8, 2010) (defense costs in excess of $20 million); Allianz, https://commercial.allianz.com/news-and-insights/expert-risk-articles/d-o-notifications-and-loss-trends.html (last visited May 30, 2024) (defense costs for securities class actions "average around $10m, rising to $100m"). Indeed, it was concern over exactly this sort of situation – "targeting 'deep pocket' defendants and [] abusing the discovery process to induce settlement" – that originally drove enactment of the Private Securities Litigation Reform Act (the "Reform Act") almost thirty years ago, as a means of ensuring that unreliable and speculative complaints (like

---

[3] Natera obtained the relevant SEC documents on April 15, 2024, after filing a Freedom of Information Act ("FOIA") request on November 10, 2023. (Costley Decl. ¶¶ 4-5.) It filed this Motion shortly thereafter.

this one) would not make it beyond the pleading stage.  *See Kunzweiler v. Zero.net, Inc*, 2002 WL 1461732, at *3 (N.D. Tex. July 3, 2002).

The allegations here are not sufficient to state a claim for securities fraud, for at least three reasons.  First, and most importantly, they simply are not plausible.  This Court need not find, as a factual matter, that the allegations in the Hindenburg Report are false or that the findings by the SEC, EY, and the Special Committee were accurate.  It need not go that far.  But the Court can, and must, consider whether the strength of the inferences urged by Plaintiffs, based on an anonymous short report that expressly disclaims any "representation . . . as to the accuracy" of its own reporting, outweigh the strength of the inferences arising out of the actions taken by the SEC, EY, and the Special Committee.  (*See* Ex. 1 at 44-45); *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 207-08, n.8 (5th Cir. 2023) (considering whether allegations attributable to confidential sources are sufficiently reliable to plead falsity).  Is it plausible to conclude, given the size and severity of the allegations made in the Report, that the SEC would have just walked away if those allegations had merit? Is there any reasonable likelihood that Plaintiffs will uncover credible evidence of wrongdoing that the Special Committee, EY, and the SEC all missed?  Is there any plausible basis to infer that Natera's revenue was inflated when EY, with full awareness of the issues raised by Hindenburg, has confirmed it was not?

Second, *even if* the Court were inclined to credit every factual allegation in the Hindenburg Report, it need not – indeed, cannot – credit its legal conclusions.  Plaintiffs allege in conclusory form that the conduct alleged "implicated" (not violated) "guidance" (not laws) from a decade earlier applicable to third party-prior authorization services (not laboratories), but they do not plead, as they must, that Natera violated a specific law or rule of accounting that caused Natera's revenue to be inflated.  This is a separate, independent, basis for dismissal.

Third, Plaintiffs have not pled that any individual defendant acted with the required state of mind, as they must to plead securities fraud. Instead, they rely on generalized allegations attributable to the Company as a whole and then ask the Court to infer that Natera "must" have been aware of these facts because of the importance of Panorama to the Company.  The Fifth

3

Circuit, however, has expressly held that plaintiffs cannot rely on this type of pleading to state a claim against companies, like Natera, with thousands of employees – particularly where, as here, the conduct at issue involved a vendor responsible for only a small percentage (11%, according to Plaintiffs) of Natera's overall revenue.

Finally, Plaintiffs have not pled, and cannot plead, loss causation.  To plead loss causation, Plaintiffs must allege that investors suffered an "economic loss" proximately caused by a corrective disclosure of the truth.  Plaintiffs attempt to use the Hindenburg Report as their "corrective disclosure," but where (as here) "[t]ime has shown that the [short] Report did not 'correct' public knowledge about the company," loss causation does not exist. *See Reed v. Amira Nature Foods Ltd.*, 2016 WL 6571281, at *12 (C.D. Cal. July 18, 2016).  For all these reasons, and as further set forth below, the Natera Defendants' Motion for Judgment on the Pleadings should be granted.

**FACTUAL BACKGROUND**

## I.    THE HINDENBURG REPORT

On March 9, 2022, Hindenburg Research – a short seller that stood "to realize significant gains" if it succeeded in driving down Natera's stock and that expressly disclaimed the "accuracy" and "completeness" of its reporting (Ex. 1 at 44-45) – released a report (the "Hindenburg Report") that alleged that Natera had engaged insurance fraud and billing improprieties.

The Hindenburg Report repeated accusations from a December 2020 Capitol Forum article concerning Natera's relationship with MGML (a third-party prior authorization vendor).  (*See* Ex. 1 at 1-2, 9-27, 44-45.)  Hindenburg claimed that MGML violated anti-kickback laws and Office of the Inspector General ("OIG") advisory opinions by processing pre-authorizations for physicians, without charge, and not disclosing that MGML's founder purportedly had a relationship with an individual employed by Natera from October 2017 to May 2019 (before the putative class period).  (*See* ¶¶ 129, 136-37.)

The Report also claimed that Natera had "propp[ed] up" demand for its microdeletion screening "by forcing patients to opt out of receiving such screenings."  (¶ 18.)  The requisition

4

form excerpted in the Complaint, however, reveals that Natera did not force physicians (patients do not fill out requisition forms) to opt out of anything – it merely offered two options for its baseline panel, one that included screening for the 22q microdeletion and one that did not. (¶ 145.)

## II.    THIS COURT'S PRIOR DECISION

On September 11, 2023, this Court issued a thirty-two page decision granting in part and denying in part Defendants' motion to dismiss. Most of the decision was spent discussing the then lead claims in the case – Plaintiffs' allegations that Natera had misled investors with respect to its kidney screening test, Prospera. After close review, the Court granted Defendants' motion to dismiss those claims, without prejudice. (*See* Order.) Plaintiffs chose not to amend.

The Court considered Plaintiffs' trailing Panorama claims – which have now become Plaintiffs' *only* claims – in just three paragraphs (two on falsity, one on scienter). (Order at 23-25.) This was consistent with treatment of the Panorama claims in the Complaint and the briefing, both of which treated them as secondary claims. (*See* Dkts. 78, 83, 93, 97-1.) The Court held that Plaintiffs had adequately alleged that Defendants' "repeated statements that Panorama was a key driver of Natera's revenues" were false because those statements concealed that "Panorama revenues were inflated by deceptive practices." (Order at 24.) The Court did not consider whether Plaintiffs had pled that the conduct in the Hindenburg Report constituted a deceptive practice. It did, however, determine based on the facts that then existed that Plaintiffs had sufficiently alleged that the allegations in the Hindenburg Report were reliable. (*Id*.) The Court also held that Plaintiffs had pled scienter with respect to these claims based on allegations that Panorama was Natera's "flagship" product and the Individual Defendants "sold large amounts of stock" during the putative class period. (*Id.* at 25.) The parties did not raise – and the Court did not reach – the question of whether the Hindenburg allegations were sufficiently reliable to plead loss causation.

## III.    REPEATED INVESTIGATIONS INTO THE HINDENBURG REPORT CONCLUDE THAT IT IS "UNFOUNDED."

In 2022, shortly after the release of the Hindenburg Report, a special committee of Natera's board of directors (the "Special Committee"), acting through independent counsel (WilmerHale),

5

conducted its own months-long internal investigation into the Hindenburg allegations. The Special Committee interviewed Natera's executives and other personnel, reviewed Company records and emails, and ultimately concluded that "the allegations of wrongdoing against the Company in the [Hindenburg] report were unfounded." (Ex. 2 at 2.)

Since publication of the Hindenburg Report, Natera has continued to file audited financial statements that affirm the accuracy of Natera's reported revenue (and other financial results) from the relevant time period (2020-2022). (*See* Ex. 3 at 3-4, 7-8.) Each filing includes a representation, signed by Natera's independent, outside auditors, EY, confirming that they had audited Natera's consolidated financial statements, operations, and cash flow in accordance with generally accepted accounting principles and that "[i]n our opinion, [they] present fairly, in all material respects, the financial position of the Company." (*See* Ex. 3 at 3 (10-K filed March 1, 2023, verifying operations, and cash for 2020-2022 and consolidated financial statements for 2021-2022); *id.* at 7 (10-K filed February 29, 2024, verifying operations and cash flow from 2021-2023 and consolidated financial statements for 2022-2023).) EY also verified that they had "audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States) (PCAOB), Natera's internal controls over financial reporting and expressed an unqualified opinion thereon." (*See* Ex. 3 at 3, 7.)

For both 2022 and 2023, EY's audit opinion included a special note detailing its audit of product revenue from genetic tests (including Panorama). (*See* Ex. 3 at 4, 7-8.) EY explained that it "obtained an understanding, evaluated the design, and tested the effectiveness of internal controls that address the risks of material misstatement related to the measurement of revenue relating to [genetic] tests performed on behalf of patients" and tested "controls related to management's review of the inputs and significant assumptions used in estimating consideration expected to be received." (*Id.* at 4, 8.)

On September 5, 2023, the SEC sent Natera a "no-action letter" in which it stated that it would not take enforcement action against Natera based on the Hindenburg allegations. (Ex. 5.) This letter concluded a seventeen-month investigation during which the SEC subpoenaed

documents relating to *every* substantive allegation in the Hindenburg Report.  The ten-page subpoena (attached hereto as Ex. 4) sought documents related to, amongst other things: (1) Natera's use of MGML to provide prior authorization services (Ex. 4 at 9, Request 15); (2) Natera's billing and collection practices with both insurers and patients (*id.* at 11-12, Request 2); (3) whether patients or physicians were confused by the Panorama requisition form (*id.* at 13, Request 7); (4) Natera's public disclosures, financial reporting, and accounting procedures regarding the Panorama test revenue (*id.* at 14, Request 10); and (5) the audit performed by (EY) into Natera's 2020-2022 revenue (*id.* at 14, Request 11).

**ARGUMENT**

## I.    MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial . . ."  Fed. R. Civ. P. 12(c).  A court may grant a Rule 12(c) motion if "it is clear that the plaintiff 'can prove no set of facts in support of his claim that would entitle him to relief.'"  *In re Enron Corp. Sec. Derivative & "ERISA" Litig*, 439 F. Supp. 2d 692, 696 (S.D. Tex. 2006); *see Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). "Conclusory allegations and unwarranted deductions of fact are not accepted as true and will not preclude dismissal."  *Enron*, 439 F. Supp. 2d at 696.  "The Rule 12(c) standard is the same as that applied to Rule 12(b)(6)."  *Vardeman v. City of Houston*, 55 F.4th 1045, 1049 (5th Cir. 2022).

As explained in greater detail in the contemporaneously filed Request for Judicial Notice, a court, in considering a motion under Rule 12(b)(6) or Rule 12(c), may examine materials subject to judicial notice under Federal Rule of Evidence 201 without converting the motion into one for summary judgment.  *Enron*, 439 F. Supp. 2d at 696 ("in securities fraud suits the court may also consider documents attached to or incorporated by reference in the complaint, and materials of public record subject to judicial notice"); *Victor Medical Center Beaumont, L.P. v. Connecticut Gen. Life Ins. Co.*, 2018 WL 3467915, at *3 (E.D. Tex. July 17, 2018).  This includes SEC investigative records, such as "no-action" letters and subpoenas, which are judicially noticeable as both administrative records and as documents obtained through a FOIA request.  *See Slaughter v.*

*Torres*, 2023 WL 2507578, at *2-3 (M.D. La. Mar. 14, 2023) (taking judicial notice of "responses to a public records request for file materials").[4]  It also includes SEC filings, such as Natera's Form 10-Ks.  *See Basic Capital Mgmt., Inc. v. Dynex Capital Inc.*, 976 F. 3d 585, 589 (5th Cir. 2020) (taking judicial notice of Form 10-K because "the existence of the document[], and the contents therein, cannot reasonably be questioned"); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) ("a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC").

Consideration of such documents is not only "usual" when deciding the sufficiency of a pleading in a securities class action, but a necessary part of the holistic analysis mandated by the Supreme Court, which requires courts to weigh the inferences urged by the plaintiff against other inferences arising out of the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *See Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE REFORM ACT.

Congress enacted the Reform Act to "prevent abusive, frivolous strike suits."  *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001).  The Reform Act's "purpose was to 'protect investors, issuers, and all who are associated with our capital markets from abusive securities litigation,' and to 'implement [] needed procedural protections to discourage frivolous litigation.'"  *In re Paracelsus Corp. Sec. Litig.*, 61 F. Supp. 2d 591, 596 (S.D. Tex. 1998) (quoting H.R. Conf. Rep. No. 104-369, at 32 (1995)); *see also ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336,

---

[4] Decisions from the Ninth Circuit, and some from the Third Circuit, are in accord.  *See, e.g., In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *4 (N.D. Cal. June 1, 2020) (judicial notice of FOIA order as a "document[] on file in federal or state court"); *In re Unreligious Sec. Litig.*, 527 F. Supp. 2d 262, 274 n.2 (D.N.J. 2007) (judicial notice of no-action letter because its accuracy could not "be questioned with respect to whether or not an investigation was terminated"); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *2 n.3 (C.D. Cal. July 1, 2008) (same); *but see Fahs Constr. Grp., Inc. v. Gray*, 2012 WL 2873532 (N.D.N.Y. 2012), *aff'd*, 725 F.3d 289 (2d Cir. 2013) (refusing to take judicial notice of a FOIA document).  Courts typically do not take judicial notice of no-action letters to conclusively establish defendants' innocence, but frequently take judicial notice of their existence and to support the fact that the SEC reached that conclusion.

354 (5th Cir. 2002) ("The [Reform Act] was enacted, in part, to compensate for the perceived inability of Rule 9(b) to prevent abusive, frivolous, strike suits" (citation and quotation marks omitted)); *Coates v. Heartland Wireless Commc'ns, Inc.*, 100 F. Supp. 2d 417, 422 (N.D. Tex. 2000) ("Congress enacted the [Reform Act] to deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs."). Congress was particularly concerned with halting "the routine filing of lawsuits . . . with only [a] faint hope the discovery process might lead eventually to some plausible cause of action." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 n.22 (5th Cir. 2009); *see also* 141 Cong. Rec. S17933-04, at S17934, 1995 WL 713530 (Dec. 5, 1995) (statement of S. D'Amato) (noting the Reform Act's goal of "weeding out frivolous cases by making it harder to file factually baseless complaints").

The Reform Act imposes several key pleading requirements in addition to those already required by Rule 9. It requires plaintiffs to "first, allege with particularity why each one of defendants' representations or omissions was 'misleading' under 15 U.S.C. § 78u–4(b)(1) and, second, allege with particularity those facts giving rise to a 'strong inference' that the defendant acted with the required state of mind under 15 U.S.C. § 78u-4(b)(2)." *Six Flags Ent.*, 58 F.4th at 206-07 (5th Cir. 2023); *see also* 141 Cong. Rec. S9032-04, at S9076, 1995 WL 376979 (June 26, 1995) (statement of S. Hatch) (the Reform Act "require[s] that that case be set out and that all the allegations be supported by sufficient allegations of fact").

In addition, the Reform Act requires plaintiffs to plead "all facts" on which an allegation made on information and belief is based. 15 U.S.C. § 78u-4(b)(1)(B); *see Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Development, Inc.*, 972 F. 3d 684, 689 (5th Cir. 2020) ("where allegations are based on information and belief, the complaint must set forth a factual basis for such belief"). This requires courts to "'weigh the strength of plaintiffs' favored inference in comparison to other possible inferences'" arising from the complaint, documents incorporated by reference in the complaint, and judicially noticeable documents. *Six Flags Ent.*, 58 F.4th at 207, n.8 (applying this standard to both falsity and scienter (citation omitted)). In doing this analysis,

courts credit only allegations that are specific and reliable, not "conclusory [or] speculative." *Ryan v. Brookdale Int'l Sys. Inc.*, 2008 WL 2405970, at *1 (S.D. Tex. June 11, 2008). And, it credits only those "beliefs" that are reasonable in light of the facts alleged. *See In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 389 (S.D.N.Y. 2010).

Finally, as is the case under any pleading standard, Plaintiffs' allegations must be plausible. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In other words, the allegations must be sufficient to "raise a reasonable expectation" that discovery will reveal evidence of the claim alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### A. Plaintiffs Fail to Plead Falsity.

### 1. Plaintiffs Fail to State a Claim Based on the Hindenburg Report.

To plead falsity, Plaintiffs must set forth particularized facts supporting a plausible inference that Natera's public statements to investors were false. *See Tchuruk*, 291 F.3d at 349-50. To do so, Plaintiffs must "specify, among other things, each allegedly misleading statement and explain why it is misleading – 'the so-called 'particularity' requirement.'" *See Six Flags Ent.*, 58 F.4th at 212 (citation omitted).

At least two significant judicially noticeable events have occurred since Defendants filed their motion to dismiss that render the allegations and conclusions in the Hindenburg Report implausible and unreliable.[5] First, the SEC concluded a seventeen-month investigation into the

---

[5] In its decision on Defendant's motion to dismiss, this Court relied on *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 124 (S.D.N.Y. 2013) to hold that "the reliability of short-seller reports . . . is a question of fact that cannot be resolved at this time." (*See* Order at 23-24.) More recent decisions, however, describe a "developing body of case law" that requires courts to view short reports with the same "caution and care" as confidential witness allegations. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020); *see also In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. Jan. 10, 2023) (short reports "must be considered with caution"). This is consistent with the Fifth Circuit's admonition that allegations from confidential sources must be discounted because anonymity "obstruct[s]" the court's ability to weigh inferences. *See Six Flags Ent.*, 58 F.4th at 207.

claims made in the Hindenburg Report.  The SEC specifically investigated Natera's use of MGML to provide prior authorization services (Ex. 4 at 15, Request 15), Natera's billing and collection practices with both insurers and patients (*id.* at 11-12, Request 2), whether patients or physicians were confused by the Panorama requisition form (*id.* at 13, Request 7), Natera's public disclosures, financial reporting, and accounting procedures regarding the Panorama test revenue (*id.* at 14, Request 10), and the audit performed by Natera's independent auditors (EY) into Natera's 2020-2022 revenue (*id.* at 14, Request 11).  The SEC completed this review on September 5, 2023 – shortly before this Court's decision on Defendants' motion to dismiss – and decided to take no action against Natera.  (*See* Ex. 5); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 408 (S.D.N.Y. 2010) (granting motion to dismiss where "only the Plaintiffs contend that [defendant] committed these [accounting] violations – federal regulators have never claimed any violation"); *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.,* 2021 WL 1199035, at *6, 16 (S.D.N.Y. Mar. 30, 2021), *aff'd*, 54 F.4th 82 (2d Cir. 2022) (granting motion to dismiss where plaintiff failed to allege "that the Department of Justice has filed any criminal charges or taken other actions against the defendants after receiving [the company's] submission").

Second, EY has issued two audit opinions for the period covered by the Hindenburg Report.  After specifically considering the accounting issues raised in the Report and testing Natera's "internal controls" and the revenue recognition procedure used by Natera when recognizing revenue for Panorama, EY issued clean audit opinions for the entire putative class period, certifying that Natera's financial results were accurate in all material respects.  (*See* Ex. 3 at 3, 7 (certifying financial results reported for 2020 through 2023)); *Harris v. AmTrust Fin. Servs., Inc.,* 135 F. Supp. 3d 155, 159 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (granting motion to dismiss where allegations in short report have "been proven wrong . . . by the passage of time," including by the fact that there has been no restatement); *Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d at 408 (dismissing allegations where regulators "scrutinized [defendant's] financials [] and [have] not asked for a restatement").

Natera is not asking the Court to find, as a factual matter, that the statements in the Hindenburg Report were false or that the findings by the SEC, EY, and the Special Committee were accurate. The Court need not go that far. But even without considering whether the findings are accurate, the Court can, and must, consider whether the strength of the inferences urged by Plaintiffs, based on an anonymous short report, are sufficient to overcome the strength of the inferences that arise out of the actions taken by these entities. *See Tellabs*, 551 U.S. at 322. Even under Rule 8, the facts alleged by Plaintiffs must be sufficient to "raise a reasonable expectation" that discovery will reveal evidence supporting Plaintiffs' claims that Natera's reported revenue during the putative class period (2020-2022) was falsely inflated by improper billing practices. *See Twombly*, 550 U.S. at 545. But there can be no reasonable expectation that discovery will prove allegations that the Special Committee, EY, and the SEC have already scrutinized and determined to be "unfounded" and insufficient to support regulatory action or a restatement. *See Harris*, 135 F. Supp. 3d at 163-64 (taking judicial notice of the fact that none of the "apocalyptic prediction[s]" in the short report had transpired); *Reed*, 2016 WL 6571281, at *12 (granting motion to dismiss where "revenue numbers have remained unchanged" after an audit and an independent investigation).[6]

Any inference of reliability is further weakened by the fact that the Hindenburg Report is completely anonymous and expressly states that its reporting is not complete, accurate, or unbiased. The Report does not list an author, does not provide any basis to infer that its authors have any knowledge of the law or accounting procedures, and attributes its primary allegations to sources described only as "former employees" and "former customers."[7] *Compare Six Flags Ent.*,

---

[6] For this same reason, Plaintiffs' claims under Sections 11, 12, and 15 of the Securities Act should be dismissed. *See Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *18-19 (N.D. Cal. Feb. 20, 2024) (dismissing claims under Sections 11, 12, and 15 premised on short report).

[7] Courts typically apply a deeper discount to confidential witness allegations lifted from a short report than to confidential witness allegations that have been investigated and verified by counsel. *See DraftKings*, 650 F. Supp. 3d at 154. Any other approach would result in a perverse situation where confidential witness allegations deemed too unreliable to support a fraud claim when investigated by counsel and certified under Rule 11 could become a sufficient basis for pleading

58 F.4th 207 (5th Cir. 2023) (allegations from confidential sources must be "discounted" because anonymity "obstruct[s]" the court's ability to weigh inferences), *and Nozak v. N. Dynasty Mins. Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020) (applying standards for confidential witnesses to short report), *with In re Cassava Scis., Inc. Sec. Litig.*, 2023 WL 3442087, at *7 (W.D. Tex. May 11, 2023) (Ezra, J.) (denying motion to dismiss where short seller allegations came from known authors with expertise in their field and were supported by the commencement of governmental investigations, "photographic evidence," and "retractions and expressions of concern" in scientific journals).  In addition, the Report describes itself as a "short-biased report"; acknowledges that Hindenburg Research "is not registered as an investment advisor" but a short-seller that "stands to realize significant gains" as a result of the allegations in the Report; and expressly disclaims that the information in the Report is "presented 'as is,' without warranty of any kind" and without any "representation, express or implied, as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use."  (Ex. 1 at 44-45); *see, e.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 840 (9th Cir. 2022) (disregarding short seller report that "included disclaimers . . . stating that they made 'no representation as to the accuracy or completeness of the information set forth in this article.'"); *Long Miao*, 442 F. Supp. 3d at 801 (noting unreliability of short seller reports) (collecting cases).  In light of the multiple investigations that have reached a different conclusion, there is no plausible basis to bestow upon the Hindenburg Report any greater degree of reliability than it claims for itself.

### 2.    Plaintiffs Fail to Plead that Panorama Revenue Was Inflated by Illegal Practices.

Even if the Court were inclined to credit the factual allegations in the Hindenburg Report, they still would be insufficient.  Under the Reform Act, the inquiry is not whether Natera engaged in misconduct – it is whether Natera engaged in misconduct that caused its statements to investors to be false.  *See Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 579 (N.D. Tex. 2021)

---

fraud merely by virtue of their prior publication in an anonymous report that expressly disclaims any warranty as to their accuracy.  *See Long Miao*, 442 F. Supp. 3d at 804.

(allegations that company used fraudulent accounts to communicate with customers were not sufficient; instead, plaintiffs must allege that these fraudulent communications caused defendant's "statements regarding its finances [to be] untrue"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 795, 812 (N.D. Cal. 2019) (rejecting allegations that defendant "deceived potential borrowers throughout the loan origination process by various means" because, to "pass muster in this securities fraud action, Plaintiffs must allege that investors were misled[,]" not borrowers).  To state a claim on this basis here, Plaintiffs must plead particularized facts establishing that the conduct alleged in the Complaint *both*: (1) violated a specific law or accounting standard, and (2) caused Natera's revenue to be inflated during the putative class period.  *See Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021).  Plaintiffs fail to meet this standard here.

First, Plaintiffs fail to "specify *what* law or standard" the conduct violated and "*how* the violation occurred."  *See In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 157 (S.D.N.Y. Jan. 10, 2023) (granting motion to dismiss) (quoting *Danske Bank A/S*, 11 F.4th at 99 (emphasis in original)); *see also Mucha v. Winterkorn*, 2022 WL 774877, at *2 (2d Cir. Mar. 15, 2022) (granting motion to dismiss where the complaint "does not set forth how [the] collusive conduct was unlawful, nor the manner in which this supposedly unlawful conduct occurred").  Plaintiffs rely on generalized allegations that Natera's relationship with MGML violated unspecified "*potential* anti-kickback laws" (¶¶ 136-37), but Plaintiffs do not identify any specific anti-kickback law. Instead, they refer only to Advisory Opinions from 2010-2012 (a decade before the putative class period) in which the Office of Inspector General purportedly advised "third party prior authorization companies" (not laboratories) to "disclose their identity to insurers."  (¶ 137.) Plaintiffs do not quote any specific language from this guidance, nor do they allege that the guidance required prior authorization companies to disclose the conduct alleged here (*i.e.*, the existence of a personal relationship between an officer at the prior authorization company and a former employee at the laboratory).  Plaintiffs also do not explain how this guidance applies to

14

Natera, how Natera violated it, or even whether the guidance was in effect during the relevant time period. *See DraftKings*, 650 F. Supp. 3d at 157 (granting motion to dismiss claims based on another Hindenburg report because the complaint did not specify "what laws [the company] allegedly violated; how, if at all, those laws applied to [the company]; how concretely [the company's] conduct violated those laws" and "whether those laws are in fact enforced"); *see also Southland*, 365 F.3d at 361 (*citing Nathenson*, 267 F.3d at 406 ("[n]or do we accept . . . legal conclusions")); *In re KBR, Inc. Sec. Litig.*, 2018 WL 4208681, at *3 (S.D. Tex. Aug. 31, 2018) (granting motion to dismiss where plaintiff alleged "conclusory allegations that a company has engaged in widespread illegal conduct").

Allegations about the Panorama requisition form are similarly conclusory. Instead of pleading particularized facts explaining how the requisition form violated a specific law, Plaintiffs allege only that it contravened a 2014 industry publication that "suggested" that "microdeletion screenings "should be offered as 'opt-in.'" (*See* ¶¶ 146, 149.)[8] This does not amount to particularized allegations that Natera violated a specific law that would have required Natera to restate its revenue.

Nor is there any plausible basis to infer that Plaintiffs ever will be able to plead (let alone, prove) that the conduct alleged actually inflated Natera's revenue. Since publication of the Hindenburg Report, EY repeatedly has verified the accuracy of Natera's financial reporting from 2020-2022. (*See* Ex 3 at 203, 6-7.) The SEC has concluded its own investigation into the Hindenburg allegations, which included review of EY's determination, and decided to take no action against Natera. (*See supra* at 6-7.) Putting aside every other issue, in the absence of a

---

[8] The order form excerpted in the Complaint (¶ 145) shows that Natera did not force patients to "opt out" of microdeletions testing, but merely provided physicians (not patients) with the option to either order: (a) the standard Panorama panel; or (b) the "Extended Panel," which includes microdeletions screening. When ordering the standard panel, physicians have a further option of either including 22q microdeletion or excluding it – the two options appear right next to each other on the page. (*See* ¶ 145.)

15

restatement or an SEC finding of wrongdoing, it is unclear how Plaintiffs will ever prove – as they must – that Natera's revenue was inflated.

### B. Plaintiffs Fail to Plead Scienter.

To plead scienter, Plaintiffs must plead particularized facts supporting a "cogent and compelling" inference that an individual defendant, who made statements on behalf of Natera, knew, or was reckless in not knowing, that those statements were false. *See Tellabs*, 551 U.S. at 324. When determining whether Plaintiffs have pled scienter, courts must "look to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment." *Southland*, 365 F.3d at 366-67 (rejecting corporate scienter); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (plaintiffs "must allege facts sufficient to raise a strong inference of scienter with respect to each individual defendant").

The only two defendants alleged to have made the statements at issue here are Steve Chapman (Natera's CEO) and Mike Brophy (its CFO). (*See* ¶¶ 150-62.) Plaintiffs do not even attempt to plead particularized allegations supporting a strong inference of scienter as to either defendant. Instead, they rely on a disfavored pleading doctrine known as the "special circumstances" exception in the Fifth Circuit (the "core operations" inference elsewhere). *See Match Grp.*, 529 F. Supp. 3d at 603. In short, Plaintiffs allege that, because "Panorama was one of Natera's most important revenue drivers," the Court can infer that the Individual Defendants knew, or were reckless in not knowing, that Natera's statements about its revenue growth were false. (*See* ¶¶ 187-190.)

The Fifth Circuit, however, has expressly held that the special circumstances exception does not apply to companies – like Natera – with "over 60 employees." *See Neiman v. Bulmahn*, 854 F.3d 741, 750 (5th Cir. 2017); *Match Grp.*, 529 F. Supp. 3d at 603 (does not apply to company "with 1,400 to 1,700 employees, [which] is significantly larger than any of the companies in cases where the Fifth Circuit has found a special circumstance"); (*see also* Ex. 3 at 2 (Natera's "workforce comprised 3,018 employees")).

16

And, even if it did, it also would not apply to the conduct alleged here.  Panorama is critical to Natera's revenue; MGML is not.  Plaintiffs allege in the Complaint that 11% of Natera's Women's Health prior authorizations were conducted by MGML (¶ 132); the threshold for applying the special circumstances exception is somewhere above 20%.  *See Match Grp.*, 529 F. Supp. 3d at 603-04 (rejecting "special circumstances" where alleged fraud stemmed from "15% to 20% of illegitimate users"); *Bulmahn*, 854 F.3d at 750 (22.5% of company's output).

Moreover, to plead scienter, Plaintiffs must first allege that the conduct allegedly actually occurred, which Plaintiffs here have not done, and cannot do, for the reasons set forth above.  *See Match Grp.*, 529 F. Supp. 3d at 596-97, 604 (even where defendants spoke alleged fraudulent account, they were not presumed to have known it was significant to company); *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 983, 986 (5th Cir. 2019) ("There is no specific allegation that [defendant] knew at the time he made the statement" that it was false).  Absent such allegations, there can be no cogent and compelling inference that Chapman or Brophy knew, or were reckless in not knowing, about the conduct.

Plaintiffs are left, then, to rely on: (1) a settlement with the DOJ, covering conduct from 2013-2016, in which Natera "denied" all allegations (¶ 194); and (2) stock sales (¶¶ 200-210).  It is well settled, however, that Plaintiffs cannot plead scienter based on a settlement agreement unless the settlement includes admissions that the individual defendants knew of the misconduct.  *See Jacobowitz v. Range Resources Corp.*, 596 F. Supp. 3d 659, 688 (N.D. Tex. 2022) (settlement with regulator "includ[ing] no concession of intentional or reckless wrongdoing" insufficient to establish scienter); *Last Atlantis Cap. LLC v. AGS Specialist Partners*, 533 F. Supp. 2d 828, 831-32 (N.D. Ill. 2008) ("absence of specific regulatory findings against the [] defendants" undermined scienter).  Likewise, even if Plaintiffs had pled that the stock sales were unusual in timing or amount (which they have not), the Fifth Circuit has expressly held that stock sale allegations, "standing alone are no longer sufficient to plead a strong inference of scienter."  *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002) ("motive and opportunity, standing alone are no longer sufficient to plead a strong inference of scienter").

17

### C.      Plaintiffs Fail to Plead Loss Causation.

The Complaint also fails to plausibly allege that investors suffered an "economic loss" proximately caused by a corrective disclosure of the alleged truth. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). To plead loss causation, plaintiffs must allege "that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Solow v. Citigroup, Inc.*, 507 F. App'x 81, 82 (2d Cir. 2013) (emphasis in original; citation omitted); *see Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 861 (S.D. Tex. 2020) (corrective disclosure must "cause the plaintiff's economic loss"). Ordinarily, plaintiffs do this by pointing to some disclosure by the defendant that reveals the falsity of a prior public statement. *See Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 314-15 (5th Cir. 2008).

The Complaint here includes no such allegations. Plaintiffs do not, and cannot, identify any statement by Natera revealing that its revenue was inflated for any reason (let alone, because of MGML or the Panorama requisition form). Instead, the Complaint attempts to use the Hindenburg Report as a corrective disclosure. But a short report is "corrective" only when it "reveals accurate information about a company that exposes actual misstatements by the company." *Harris*, 135 F. Supp. 3d at 173 n.30. Where (as here) "[t]ime has shown that the [short] Report did not 'correct' public knowledge about the company," loss causation does not exist. *See Reed*, 2016 WL 6571281, at *12 (quoting *Harris*, 135 F. Supp. 3d at 173 n.30 (holding that there was no loss causation because the company had "not restated its financial statements" as predicted in the short report)).

In addition, "numerous courts have noted concerns with relying on reports written by entities with serious financial incentives to damage a company's stock price." *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *6 (N.D. Cal. July 5, 2022). When a disclosure comes from an anonymous entity "who had a financial incentive to convince others to sell, and the [report] included disclaimers from the authors stating that they made 'no representation as to the accuracy or completeness of the information,'" it "is not plausible" to conclude that "the market reasonably perceived these posts as revealing the falsity of [the company's] prior misstatements." *See In re*

18

*BofI Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020). Here, as in *BofI*, a reasonable investor "likely [would] have taken" the allegations in the Hindenburg Report "with a healthy grain of salt," *id.*, because it disclosed, on its face, that the authors were short-sellers who "stand to realize significant gains" should Natera's stock price decline and who expressly made "no representation, express or implied, as to the accuracy, timeliness, or completeness" of the report, the contents of which were "obtained from public sources" and based on "generally available information . . ." (Ex. 1 at 44-45.)[9]

## III.   PLAINTIFFS' SECONDARY LIABILITY CLAIMS MUST BE DISMISSED.

Because Plaintiffs fail to state a claim for a primary violation under Section 10(b), Section 11, and Section 12, Plaintiffs' control person claims under Section 20(a), Section 20A, and Section 15 (¶¶ 224-27, 305-12) must be dismissed. *See Southland*, 365 F.3d at 383-84 ("[c]ontrol person liability is secondary only and cannot exist in the absence of a primary violation"); *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 545 (5th Cir. 2008) (same); *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 912 (W.D. Tex. 2008) ("Section 20A mandates an independent, predicate violation of the 1934 Act or of its rules and regulations.")

## CONCLUSION

For all the foregoing reasons, the Natera Defendants respectfully request that the Court grant judgment on the pleadings in their favor and dismiss the Amended Complaint in its entirety, with prejudice.

---

[9] The existence of a stock price drop following release of the Hindenburg Report does not mean that the disclosure was corrective. *See Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 710 (S.D. Tex. 2013) (66% stock price drop did not establish that the announcement was a corrective disclosure); *Reed*, 2016 WL 6571281, at *11 (26% drop).

Dated: May 30, 2024

KATTEN MUCHIN ROSENMAN LLP

*/s/ Bruce G. Vanyo*
Bruce G. Vanyo (admitted *pro hac vice*)
Christina L. Costley (admitted *pro hac vice*)
Paul S. Yong (admitted *pro hac vice*)
2121 Avenue of the Stars, STE 1100, Suite 1100
Los Angeles, CA 90067
Tel: (310) 788-4400
Fax: (310) 788-4471
bruce@katten.com
christina.costley@katten.com
paul.yong@katten.com

Eric R. Hail
State Bar No. 24047579
Ted A. Huffman
State Bar No. 24089015
Megan C. McKennon
Texas State Bar No. 24102184
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
eric.hail@katten.com
ted.huffman@katten.com
megan.mckennon@katten.com

*Counsel for Defendants Natera, Inc., Steve Chapman, Michael Brophy, Matthew Rabinowitz, Paul Billings, Roy Baynes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, James I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena*

20

## CERTIFICATE OF SERVICE

I, Bruce G. Vanyo, hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on May 30, 2024 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.

*/s/ Bruce G. Vanyo*
