**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN,<br><br>        Defendants. | Case No. 1:22-cv-00398-DAE |

**PLAINTIFFS' OPPOSITION TO THE NATERA DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...............................................................................................1

II.   ARGUMENT.....................................................................................................4

    A.   Defendants' Motion Is Improper ...............................................................5

    B.   None of Defendants' Proffered "Facts" from Documents Outside the
          Pleadings Are Subject to Judicial Notice, Much Less for Their Truth........7

    C.   There Is No Basis for the Court to Reconsider Its Falsity Rulings............11

          1.   Defendants' Renewed Attacks on the Hindenburg Report
               Are Meritless...................................................................................11

          2.   Defendants' Remaining Falsity Arguments Mischaracterize
               Plaintiffs' Claims ...........................................................................13

    D.   There Is No Basis for the Court to Reconsider Its Scienter Rulings .........15

    E.   There Is No Basis for the Court to Reconsider Its Loss
          Causation Rulings .....................................................................................18

    F.   There Is No Basis for the Court to Reconsider Its Secondary
          Liability Rulings .......................................................................................20

III.  CONCLUSION.................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adkins Supply, Inc.*,
556 B.R. 285 (Bankr. N.D. Tex. 2016)....................................................................................5

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................................................18

*In re Anadarko Petroleum Corp. Sec. Litig.*,
2023 WL 2733401 (S.D. Tex. Mar. 31, 2023), *reconsideration denied*, 2023
WL 4308750 (S.D. Tex. June 30, 2023)..................................................................................10

*Benedetti v. Doe*,
2018 WL 6795899 (W.D. Tex. Nov. 7, 2018), *aff'd sub nom. Benedetti v.
Wal-Mart Stores Tex., L.L.C.*, 788 F. App'x 945 (5th Cir. 2019)...........................................7

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ................................................................................................19

*Bond v. Clover Health Invs., Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022)................................................................................11

*Bone v. Univ. of N.C. Health Care Sys.*,
2021 WL 395547 (M.D.N.C. Feb. 4, 2021), *R&R adopted*, 2021 WL 3196437
(M.D.N.C. Mar. 31, 2021) ......................................................................................................5

*Campton v. Ignite Rest. Grp., Inc.*,
2014 WL 61199 (S.D. Tex. Jan. 7, 2014)..............................................................................15

*Canadian Breaks, LLC v. JPMorgan Chase Bank, N.A.*,
2022 WL 1131172 (N.D. Tex. Mar. 28, 2022), *R&R adopted*, 2022 WL
1128722 (N.D. Tex. Apr. 15, 2022).........................................................................................4

*In re Cassava Scis., Inc. Sec. Litig.*,
2023 WL 3442087 (W.D. Tex. May 11, 2023) ...........................................................11, 17, 19

*In re Cirrus Logic, Inc.*,
2008 WL 4065925 (W.D. Tex. Aug. 28, 2008).......................................................................10

*Doss v. Morris*,
2013 WL 12291910 (W.D. Tex. Nov. 1, 2013)........................................................................7

*Duffie v. Wichita Cnty.*,
2014 WL 5796837 (N.D. Tex. Nov. 6, 2014)...........................................................................6

*E.G. by Gonzalez v. Bond*,
    2017 WL 3493124 (N.D. Tex. June 29, 2017), *R&R adopted*, 2017 WL
    3491853 (N.D. Tex. Aug. 14, 2017) ..................................................................................5

*Estep v. City of Somerset, Ky.*,
    2011 WL 845847 (E.D. Ky. Mar. 8, 2011) ........................................................................6

*Ettinoffe v. Sheikh*,
    2023 WL 3127665 (S.D. Tex. Apr. 26, 2023) ................................................................2, 5

*Handal v. Tenet Fintech Grp. Inc.*,
    2023 WL 6214109 (E.D.N.Y. Sept. 25, 2023) .................................................................11

*HLT Props., LLC v. Evanston Ins. Co.*,
    388 F. Supp. 3d 718 (W.D. Tex. 2019) ............................................................................3

*Jedrzejczyk v. Skillz Inc.*,
    2022 WL 2441563 (N.D. Cal. July 5, 2022) ...................................................................19

*Johnson v. Halstead*,
    916 F.3d 410 (5th Cir. 2019) ..........................................................................................15

*In re LDK Solar Sec. Litig.*,
    584 F. Supp. 2d 1230 (N.D. Cal. 2008) ..........................................................................10

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ..........................................................................................18

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) ............................................................................... 19-20

*Neiman v. Bulmahn*,
    854 F.3d 741 (5th Cir. 2017) ..........................................................................................17

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
    58 F.4th 195 (5th Cir. 2023) ......................................................................................13, 15

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ..........................................................................................18

*Reed v. Amira Nature Foods Ltd.*,
    2016 WL 6571281 (C.D. Cal. July 18, 2016) .................................................................20

*SCD RMA, LLC v. Farsighted Enters., Inc.*,
    591 F. Supp. 2d 1141 (D. Haw. 2008) ............................................................................11

*Schneider v. Natera, Inc.*,
    2023 WL 9958265 (W.D. Tex. Sept. 11, 2023) ........................................................ *passim*

*Simmons v. Tex.*,
    2010 WL 11601167 (W.D. Tex. May 14, 2010) ....................................................................11

*Smotherman v. Bayview Loan Servicing, LLC*,
    2022 WL 2904288 (W.D. Tex. Jan. 26, 2022) ...............................................................2, 4, 8

*Snellink v. Gulf Res., Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012) .................................................................................12

*Spitzberg v. Houston Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) ...............................................................................................16

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
    633 F. Supp. 2d 763 (D. Ariz. 2009), *judgment vacated in part on
    reconsideration*, 690 F. Supp. 2d 959 (D. Ariz. 2010) .........................................................9

*Tellabs Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..............................................................................................................13

*Tex. Ass'n for Rts. of Unemployed v. Serna*,
    2023 WL 6366646 (W.D. Tex. Sept. 6, 2023)............................................................2, 4, 5, 13

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009) ............................................................................. 9-10

*Wooden v. Mo. Pac. R.R. Co.*,
    862 F.2d 560 (5th Cir. 1989) ..................................................................................................9

Lead Plaintiff British Airways Pension Trustees Limited and Additional Plaintiff Key West Police & Fire Pension Fund ("Plaintiffs") respectfully submit this opposition to the Natera Defendants' Motion for Judgment on the Pleadings ("Motion" or "MJOP") (Dkt. No. 133).[1]

## I.    INTRODUCTION

Over nine months ago, this Court sustained Plaintiffs' claims arising from material misstatements and omissions by the Natera Defendants ("Defendants") about Natera, Inc.'s ("Natera" or "the Company") "rocket ship" revenue-driver, a prenatal diagnostic test called Panorama (¶11). *Schneider v. Natera, Inc.*, 2023 WL 9958265, at \*9-10 (W.D. Tex. Sept. 11, 2023) ("MTD Opinion"). Defendants' Motion, while styled as a motion for judgment on the pleadings, is a thinly-veiled and baseless request that the Court reconsider its MTD Opinion. It fails for multiple reasons.[2]

Defendants' Motion does not assert a single relevant argument, fact, or governing legal authority that was not or could not have been presented in their motion to dismiss ("MTD") (Dkt. No. 78). That is because, since the Court sustained Plaintiffs' Panorama claims, there has been no change in the law or the pleadings, which closed with Defendants' Answer in December 2023. *See* Dkt. No. 113. Moreover, at Defendants' request, merits discovery is effectively stayed pending a class certification ruling. *See* Dkt. No. 128 (ordering bifurcated discovery schedule).

Lacking any new ground on which to seek to end this case, the Motion repackages—nearly verbatim—arguments and purported support that the Court heard and rejected at the Rule 12(b)(6) stage. It even relies on documents, again presented through a flawed request for judicial notice

---

[1]    Unless otherwise noted, all emphasis is added, and internal citations and quotations have been omitted. Citations to "¶__" are to the Amended Complaint ("Complaint") (Dkt. No. 60). References to "RJN Exhibit(s)" and "RJN Ex(s)." are to the exhibits attached to the Costley Declaration in support of Defendants' Motion (Dkt. No. 135).

[2]    The Underwriter Defendants did not join the Motion, nor did they file their own Rule 12(c) motion for the sustained Section 12(a)(2) claims against them.

("RJN") (Dkt. No. 134), that the Court previously reviewed and deemed "not relevant" or judicially noticeable.[3] *Schneider*, 2023 WL 9958265, at *5. This extensive overlap alone makes clear that the Motion should be denied, as "those issues have already been decided under the same standard that applies here, and [Defendants] **may not take a second bite at the apple**." *Ettinoffe v. Sheikh*, 2023 WL 3127665, at *1 (S.D. Tex. Apr. 26, 2023); *see Smotherman v. Bayview Loan Servicing, LLC*, 2022 WL 2904288, at *2 (W.D. Tex. Jan. 26, 2022) (Ezra, J.) (standard for deciding Rule 12(b)(6) and Rule 12(c) motions is the same).

Beyond this threshold basis for denial, the Motion fails further because Defendants cannot meet the standard for judgment on the pleadings, which is not appropriate unless "material facts are not in dispute" and only questions of law remain. *Tex. Ass'n for Rts. of Unemployed v. Serna*, 2023 WL 6366646, at *3 (W.D. Tex. Sept. 6, 2023) (Ezra, J.) (on Rule 12(c) motion, "central issue is whether, **in the light most favorable to the plaintiff**, the complaint states a valid claim for relief"). Contrary to this standard, Defendants ask the Court to decide core disputed fact issues in their favor based on untested pieces of evidence, which they proffer in their RJN: (i) Natera's statement that an internal investigation deemed the Hindenburg Report "unfounded"; (ii) U.S. Securities and Exchange Commission ("SEC") letters about an informal investigation; and (iii) auditor opinion statements about Natera's financial results and internal controls.

The five documents or excerpts thereof that they put forth cannot be considered on a Rule 12(c) motion because they are neither relied upon in the Complaint nor properly subject to judicial notice—as this Court, for some of them, has already held. *See Schneider*, 2023 WL 9958265, at *5 (declining to take judicial notice of the Hindenburg Report and Natera's November 9, 2022

---

[3]    Plaintiffs oppose the RJN in Plaintiffs' Opposition to the Natera Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference in Support of Their Motion for Judgment on the Pleadings, filed separately on this date.

Form 10-Q, resubmitted in the RJN as Exhibits 1 and 2). Moreover, even if the Court were to notice the proffered materials, they "may be considered only to determine what statements they contain, not for proving the truth of their contents." *Id.* at \*4.

This black-letter law eviscerates the Motion, which depends ***entirely*** on the Court accepting as true statements the five documents contain and the inferences Defendants would draw from them. *See, e.g.*, MJOP at 2 (claiming documents "confirm[] what Natera has said from the start: the Hindenburg Report was . . . lies"); *id.* at 12 (asserting that judgment is warranted now because documents show internal investigation, auditor, and the SEC "have already scrutinized and determined to be 'unfounded'" certain factual claims); *id.* at 13 (asserting sustained allegations are not plausible because proffered evidence proves that "multiple investigations have reached a different conclusion").[4] To be clear, if the Court does not grant judicial notice and take as true the statements Defendants excerpt, the grounds for the instant Motion are eliminated, and the present inquiry ends.

Furthermore, Defendants' evidence-based arguments are materially incomplete, irrelevant, or flat wrong. For example, the SEC "no-action" letter (RJN Ex. 5) urged throughout their Motion as an indicium of their innocence expressly states that "***the notice must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation***." *See infra*, pp. 9-10. With respect to Natera's internal investigation (RJN Ex. 2), the Court has already heard and rejected the argument that its untested conclusion, as stated by Natera, is dispositive. *See infra*, pp. 12-13. Moreover, *post-hoc* auditor opinions (RJN Ex. 3)

---

4    Defendants' bare conclusion, in a footnote, that "Plaintiffs' claims under Sections 11, 12 and 15 of the Securities Act should be dismissed" (MJOP at 12 n.6) should be waived: "Arguments subordinated in a footnote are insufficiently addressed in the body of the brief, and thus are waived." *HLT Props., LLC v. Evanston Ins. Co.*, 388 F. Supp. 3d 718, 727 (W.D. Tex. 2019).

are irrelevant because there are no claims for accounting violations or misstated financials in this case. *See infra*, pp. 10, 13-15. Yet, as in their MTD, many of Defendants' arguments are predicated on that mischaracterization of the Complaint—i.e., a misguided claim that Plaintiffs must prove "accounting violations." MJOP at 11 (brackets omitted). The Court has already sifted through and rejected this same faulty argument. *See Schneider*, 2023 WL 9958265, at *2 (noting that "Plaintiffs allege that Defendants cultivated a misleading impression that the increased revenue from Panorama sales 'was the result of organically growing demand'").

At best, Defendants' arguments on the proffered evidence and underlying events raise fact disputes that cannot be resolved at this stage, and make plain the significant need for discovery into the merits of the parties' claims and defenses. *See Tex. Ass'n*, 2023 WL 6366646, at *6 ("Defendant's motion asks the Court to consider the merits of Plaintiff's claims, which the Court will not yet do."). As set forth more fully below, the Motion should be denied, or else converted to a motion for summary judgment and determined once discovery is complete. *See id.* at *8 ("[r]ather than continue to clutter the Court's docket with separate motions," defendant should "bring any further argument and evidence regarding the merits of Plaintiffs' claims in an organized, cohesive summary judgment motion after the time for discovery has closed").

## II.     ARGUMENT

In the Fifth Circuit, Rule 12(c) motions are "disfavored and rarely granted." *Canadian Breaks, LLC v. JPMorgan Chase Bank, N.A.*, 2022 WL 1131172, at *4 (N.D. Tex. Mar. 28, 2022), *R&R adopted*, 2022 WL 1128722 (N.D. Tex. Apr. 15, 2022). "The standard for deciding a motion for judgment on the pleadings under Rule 12(c) is the same as that for a Rule 12(b)(6) motion to dismiss." *Smotherman*, 2022 WL 2904288, at *2. "Review is limited to the contents of the complaint and matters properly subject to judicial notice." *Id*. "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Tex. Ass'n*, 2023

4

WL 6366646, at *3. "Courts do not focus on whether the non-movant will ultimately prevail; they instead focus on whether that party should be permitted to present evidence to support adequately asserted claims." *E.G. by Gonzalez v. Bond*, 2017 WL 3493124, at *3, (N.D. Tex. June 29, 2017), *R&R adopted*, 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017). Judgment is granted only upon a showing that "material facts are not in dispute" and questions of law are all that remain. *Tex. Ass'n*, 2023 WL 6366646, at *3. Under these standards, the Motion must be denied.

### A. Defendants' Motion Is Improper

The Motion fails out of the gate because it largely asserts arguments Defendants raised or could have asserted in their MTD and asks the Court to rule again on issues it already decided. Defendants cannot dispute that the Court's MTD Opinion entailed a "careful" analysis of the Complaint, all of the parties' arguments in the briefing on the MTD (which included a sur-reply) and Defendants' request for judicial notice of 22 documents. *See Schneider*, 2023 WL 9958265, at *4, 8 n.5. Indeed, the Court dismissed **half** of Plaintiffs' alleged claims (i.e., all claims regarding Natera's Prospera product). *Id*. at *5-8, 10, 12. For several reasons, "Defendants do not deserve a second bite at the apple" and their belated criticism of the Court's analysis in its MTD Opinion should be rejected. *In re Adkins Supply, Inc.*, 556 B.R. 285, 290 (Bankr. N.D. Tex. 2016) (denying Rule 12(c) motion where "Defendants have previously submitted a Rule 12(b)(6) motion to dismiss which the Court denied"); *see also Ettinoffe*, 2023 WL 3127665, at *1 (same).

*First*, a Rule 12(c) motion does not allow Defendants "an unfettered grant to seek reconsideration of arguments already raised and lost in a previous Rule 12(b)(6) motion." *E.G. by Gonzalez*, 2017 WL 3493124, at *7; *see also Bone v. Univ. of N.C. Health Care Sys.*, 2021 WL 395547, at *6 (M.D.N.C. Feb. 4, 2021), *R&R adopted*, 2021 WL 3196437 (M.D.N.C. Mar. 31, 2021). But that is the central thrust of Defendants' Motion. It repeats from their MTD challenges to Plaintiffs' allegations of falsity and scienter that the Court has already passed on, such as fact-

based arguments premised on Natera's internal investigation regarding the Hindenburg Report,[5] whether the Hindenburg Report is "reliable,"[6] whether the core operations doctrine applies, and the inferences arising from allegations of insider trading and a prior Department of Justice ("DOJ") settlement. *See* MTD at 19 n.18, 21-22, 24-25; MJOP at 16-17. The MTD Opinion was not merely advisory. The Court need not decide these issues again.

*Second*, a "12(c) motion is not a vehicle for a party to assert arguments that it failed to timely assert in its earlier 12(b)(6) motion." *Duffie v. Wichita Cnty.*, 2014 WL 5796837, at *9 (N.D. Tex. Nov. 6, 2014); *see also Estep v. City of Somerset, Ky.*, 2011 WL 845847, at *2 (E.D. Ky. Mar. 8, 2011) ("If the defendant raises new arguments in his 12(c) motion that he could (and should) have raised in his 12(b)(6) motion, the court should usually deny the 12(c) motion, lest its first opinion be rendered merely advisory."). Yet, Defendants make several arguments they could have raised in their MTD (filed December 16, 2022). For example, they seek to overturn the Court's loss causation ruling with flawed legal arguments disputing what the Hindenburg Report revealed and whether short-seller reports can serve as corrective disclosures. *See* MJOP at 18-19. These arguments, reliant in part on cases decided before their MTD, are both too late and meritless (*see infra*, pp. 11-13). *See Wichita Cnty.*, 2014 WL 5796837, at *9. Similarly, as to scienter, in their MTD, Defendants contested Plaintiffs' allegations that Panorama revenue and demand was core to Natera's business. MTD at 19 n.18. Now, they (wrongly) claim the Court misapplied long-

---

[5]    *Compare* MTD at 2, 7-8, 9-11, 13-15 (arguing Natera "rejected the allegations after a months-long independent investigation") *with* MJOP at 1-3, Section III (titled "REPEATED INVESTIGATIONS INTO THE HINDENBURG REPORT CONCLUDE THAT IT IS 'UNFOUNDED.'"), 5-7, 10-11, 13.

[6]    *Compare* MTD at 15 (arguing about the "presumptive unreliability of the short seller report") *with* MJOP at 1, 2 (arguing Hindenburg Report "was not reliable when published and it is not reliable enough, now"), 10 (claiming "allegations and conclusions in the Hindenburg Report [were] implausible and unreliable"), 12-13.

extant Fifth Circuit law because of Natera's employee headcount during the Class Period—a fact clearly known but not argued by Defendants at the time of their MTD (*see infra*, p. 17).

Neither a Rule 12(c) motion nor even a motion for reconsideration permits arguments, such as these, that a defendant simply opted not to bring in a motion to dismiss. *See, e.g.*, *Doss v. Morris*, 2013 WL 12291910, at *2 (W.D. Tex. Nov. 1, 2013) (Ezra, J.) (reconsideration is not an appropriate "vehicle for rehashing evidence, legal theories, or arguments that could have been offered"); *Benedetti v. Doe*, 2018 WL 6795899, at *3 (W.D. Tex. Nov. 7, 2018) (reconsideration is not "intended to give an unhappy litigant one additional chance to sway the judge" and "must show more than disagreement with the court's decisions and recapitulation of the same cases and arguments already considered by the court"), *aff'd sub nom. Benedetti v. Wal-Mart Stores Tex., L.L.C.*, 788 F. App'x 945 (5th Cir. 2019).

### B.    None of Defendants' Proffered "Facts" from Documents Outside the Pleadings Are Subject to Judicial Notice, Much Less for Their Truth

The Motion should further be denied because none of the extraneous documents that Defendants put forth in their RJN are judicially noticeable, much less for the improper purposes for which Defendants offer them, and on which their Motion depends.

Under the judicial notice doctrine, "documents may be considered only to determine what statements they contain, not for proving the truth of their contents." *Schneider*, 2023 WL 9958265, at *4. And yet, in their Motion, Defendants press the Court to accept snippets of extraneous documents ***as case dispositive evidence of the truth***, and then, on that factual basis, to reverse itself and dismiss this case. *See, e.g.*, MJOP at 2 (claiming documents "***confirm[] what Natera has said*** from the start: the Hindenburg Report was . . . lies"); *id.* at 12 (asserting that judgment is warranted now because documents show internal investigation, auditor, and SEC "***have already scrutinized and determined to be 'unfounded'***" certain factual claims); *id.* ("there can be no

reasonable expectation that discovery will prove allegations that . . . [auditor] EY. . . ha[s] already scrutinized"); *id*. at 13 (asserting that Plaintiffs' sustained allegations are not plausible because proffered documents prove that "***multiple investigations have reached a different conclusion***"). The Motion is wholly reliant on the documents in the RJN; Defendants offer no alternative grounds for the relief they seek. If the Court denies the RJN, or does not accept the contents of the proffered documents for their truth, the Motion collapses.

Defendants' document-specific arguments also suffer from other fatal shortcomings, which independently warrant denying the Motion. *First*, Defendants re-raise points the Court has already decided. For example, the Court ruled months ago, upon comprehensive briefing, that Defendants' fact-intensive arguments about certain language in the Hindenburg Report and Natera's November 9, 2022 Form 10-Q (both of which Defendants had, as here, proffered for judicial notice) were not relevant to the Rule 12(b)(6) inquiry. *See Schneider*, 2023 WL 9958265, at \*5 (ruling documents were "not relevant to the Court's analysis").[7] Undeterred, Defendants repackage the same arguments in the MJOP, and the same documents as RJN Exhibits 1 and 2. As noted above, the standard governing Rule 12(c) and Rule 12(b)(6) motions "is the same," *Smotherman*, 2022 WL 2904288, at \*2, so there is no reason for the Court to reconsider its ruling and analysis on documents that were offered for the same purpose before.

*Second*, several documents and purported "facts" Defendants point to are opinions that are not properly subject to judicial notice. For instance, Defendants' attempt to offer language from

---

[7]      *See* MTD at 8 (citing statement about special committee investigation in Natera's November 2022 Form 10-Q that was put forth for judicial notice and arguing, as in MJOP, that "[a] special committee of Natera's board of directors, acting through independent counsel (WilmerHale), conducted a separate months-long internal investigation into the Hindenburg allegations" and "ultimately concluded" that they "were unfounded"); *id.* at 15 (arguing Hindenburg Report unreliable due to language it contained).

Natera's November 9, 2022 Form 10-Q (RJN Ex. 2) stating that Natera and its outside counsel deemed the Hindenburg Report "unfounded" (MJOP at 1) fails because counsel's interpretation and opinions are not "self-evident truths." *Wooden v. Mo. Pac. R.R. Co.*, 862 F.2d 560, 563 (5th Cir. 1989); *see Schneider*, 2023 WL 9958265, at *5 (holding judicial notice of opinions within analyst reports "for the truth of the assertions contained in the reports is not proper").[8]

*Third*, Defendants claim "facts" in certain proffered documents show that Natera did not engage in the alleged misconduct (*see* MJOP at 2-3, 10-12), but the suggested facts are irrelevant or nonexistent. For example, documents concerning the SEC's investigation into the Company that Defendants offer (RJN Exs. 4, 5) have no relevant purpose because the SEC explicitly stated in its "no-action" notice that the inference Defendants urge cannot be drawn from it: "***this notice . . . must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation***." RJN Ex. 5.

Securities fraud defendants have for years raised the same tired argument about purported "no-action" decisions by the SEC, and courts have rejected it. *See Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 633 F. Supp. 2d 763, 796 (D. Ariz. 2009) ("[t]he ***SEC's determination is irrelevant to this court's scienter analysis*** because, in the first instance . . . ***the SEC's decision not to take action can 'in no way be construed as indicating that the party has been exonerated'*** such that "'***any attempted use ... as a purported defense in any action ... would be clearly inappropriate and improper***'"), *judgment vacated in part on reconsideration*, 690 F. Supp. 2d 959 (D. Ariz. 2010) (second and third ellipses in original); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975 n.15 (N.D. Cal. 2009) ("the SEC's discretionary determination with respect to prosecution is not determinative of whether Defendants, in fact, committed

---

[8] The opinions of Natera's auditor (RJN Ex. 3) likewise may not be noticed for their truth.

securities fraud"); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1240 (N.D. Cal. 2008) (acknowledging there was "no language in the letter stating that the SEC exonerated LDK or why the SEC decided not to pursue an enforcement action" and that "letter is not a proper subject of judicial notice").

Equally irrelevant are the opinions of Natera's auditor, EY, about the veracity of the Company's consolidated financial results (RJN Ex. 3). MJOP at 11. The Complaint neither incorporates nor relies on any facts or allegations related to EY or Natera's accounting, there are no claims based on accounting violations, and Plaintiffs do not contend that Natera's disclosed financials were misstated. From all angles, RJN Exhibit 3 misses the point.

*Finally*, **none** of the purported evidence Defendants proffer and of which they seek judicial notice has been subjected to full and fair discovery. The law is clear that "***Defendants cannot secure dismissal based on non-public evidence solely in their possession that has not been subjected to discovery***." *See In re Cirrus Logic, Inc.*, 2008 WL 4065925, at *5 (W.D. Tex. Aug. 28, 2008) (special committee findings "may prove to exonerate Defendants after a supporting evidentiary record has been developed, [but] the Court finds them unpersuasive at the pleadings stage"). Under the Court's Scheduling Order, full merits discovery will not occur unless the Court grants Plaintiffs' pending motion for class certification. Dkt. No. 128.[9]

Because the extraneous documents on which Defendants rely are not judicially noticeable at the pleadings stage, and are untested in discovery yet offered for their truth, if the Court

---

[9]   It is, of course, entirely impermissible for Defendants to wield as a sword the results of internal or SEC investigations while shielding Plaintiffs from discovery into all relevant aspects of those matters, which is exactly what they seek to preempt through their Motion. *See, e.g.*, *In re Anadarko Petroleum Corp. Sec. Litig.*, 2023 WL 2733401, at *3 (S.D. Tex. Mar. 31, 2023) (A party "cannot rely on [an] investigation as a defense and shield this information from plaintiffs merely because their investigators happen to be attorneys."), *reconsideration denied*, 2023 WL 4308750 (S.D. Tex. June 30, 2023) (alteration in original).

considers them, it must convert the Motion to one for summary judgment to be decided after discovery is complete. *See SCD RMA, LLC v. Farsighted Enters., Inc*., 591 F. Supp. 2d 1141, 1144-45 (D. Haw. 2008) (Ezra, J.) (If, on 12(c) motion, court "relies on matters presented outside of the pleadings, such as . . . other outside statements and/or documents, it shall treat the motion as one for summary judgment."); *see also Simmons v. Tex.*, 2010 WL 11601167, at *2 (W.D. Tex. May 14, 2010) (same).

### C.    There Is No Basis for the Court to Reconsider Its Falsity Rulings

#### 1.    Defendants' Renewed Attacks on the Hindenburg Report Are Meritless

In its MTD Opinion, the Court rejected Defendants' argument "that the Panorama claims should be dismissed because of the presumptive unreliability of a short-seller report like the Hindenburg Research report," correctly holding that "Plaintiffs have alleged corroborating facts (*see generally* ¶¶124-48)" and that "the reliability of short-seller reports—here, the Hindenburg Research Report—is a question of fact that the Court cannot resolve at this time." *Schneider*, 2023 WL 9958265, at *9 (emphasis in original); *see also In re Cassava Scis., Inc. Sec. Litig.*, 2023 WL 3442087, at *8 (W.D. Tex. May 11, 2023) (Ezra, J.) (ruling that reliability of investment analyst report raised fact issue that could not be decided on the pleadings).[10]

The Court rendered this decision upon consideration of Defendants' argument that Plaintiffs were required to effectively ***prove***, at the pleading stage, facts reported in the Hindenburg Report. *See* MTD at 15; Plaintiffs' Opposition to Defendants' MTD ("MTD Opp.") (Dkt. No. 83)

---

[10]    There is overwhelming support for the Court's ruling. *See, e.g.*, *Handal v. Tenet Fintech Grp. Inc*., 2023 WL 6214109, at *12 (E.D.N.Y. Sept. 25, 2023) ("the truth or accuracy of the Grizzly Reports are factual disputes not appropriate for resolution at this stage"); *Bond v. Clover Health Invs., Corp*., 587 F. Supp. 3d 641, 668 (M.D. Tenn. 2022) (finding complaint's reliance on a Hindenburg research report appropriate and holding that evaluating credibility of the report "on a Rule 12(b)(6) motion, would significantly overstep the court's role").

at 14-15; *see Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012) ("It is permissible for Plaintiffs to rely on a short seller report . . . to allege falsity at the pleading stage."). The Motion's attempts to resurrect these factual debates offer the Court nothing new, much less sufficient, to justify reversing its prior rejection. *See* MJOP at 12 (arguing Hindenburg Report's factual allegations are not verified); Defendants' Reply in Support of their MTD ("MTD Reply") (Dkt. No. 93) at 6-7 (same).

At bottom, Defendants rest their renewed Hindenburg arguments on the Court accepting as true Defendants' proffered facts and inferences from what they claim are "two significant judicially noticeable events"—the SEC's investigation, which explicitly concluded with a disclaimer that Natera was not "exonerated," and opinions from EY on Natera's financial results, which are not alleged to be misstated. MJOP at 10-11. For all the reasons set forth herein, including in Section II.B., *supra*, these documents and purported facts are not judicially noticeable, and cannot be considered for their truth, as Defendants tacitly urge.

While Defendants claim that they are not asking the Court to "find, as a factual matter, that the statements in the Hindenburg Report were false or that the findings by the SEC, EY, and the Special Committee were accurate," MJOP at 3, 12, this is mere lip service, belied by their Motion and RJN. For example, they argue "there can be no reasonable expectation that discovery will prove allegations that the Special Committee, EY, and the SEC have already scrutinized and determined to be 'unfounded' and insufficient to support regulatory action or a restatement." MJOP at 12. They claim purported "facts" or "inferences" from Natera's internal investigation or the SEC's investigation (which by its terms was not exculpatory) render Plaintiffs' allegations implausible. *See, e.g.*, MJOP at 11-12 & 12 n.7. They then argue these untested "facts" establish beyond any dispute that the Hindenburg Report is "unreliable." *Id*.

12

Plainly, each of these arguments requires that the Court judicially notice Defendants' extraneous documents, accept as true Defendants' version of the facts within those documents, draw pivotal inferences in Defendants' favor, and thus discredit Plaintiffs' allegations. But "because Defendant[s'] argument asks the Court to consider the merits of Plaintiffs' claims" at the pleadings stage, it must be rejected. *Tex. Ass'n*, 2023 WL 6366646, at *7; *id.* at *5 ("The Court will not delve into the credibility of Plaintiffs' claims at this time.").

In a last effort to shoehorn in their proffered facts and inferences, Defendants claim that both the Supreme Court and Fifth Circuit require the Court to "weigh the inferences urged by the plaintiff against other inferences arising out of the complaint" in its analysis of every element in the Complaint, including falsity. MJOP at 8 (citing *Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). That is wrong twice over. *Tellabs* requires courts to weigh competing inferences in the **scienter** analysis and, regardless, is restricted to inferences arising from the complaint—not purported facts outside the pleading, as Defendants urge here. 551 U.S. at 314. *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corp.*, 58 F.4th 195, 207 n.8 (5th Cir. 2023) did not hold that district courts must "weigh the strength of plaintiffs' favored inference in comparison to other possible inferences" for both falsity and scienter allegations. MJOP at 9. The portion of that decision Defendants cite concerns the weight to be afforded to former employee witness allegations, not falsity allegations generally. *See Six Flags*, 58 F.4th at 207 n.8.

### 2. Defendants' Remaining Falsity Arguments Mischaracterize Plaintiffs' Claims

Defendants argue that, to plead falsity, Plaintiffs must "plead particularized facts establishing that the conduct alleged in the Complaint *both*: (1) violated a specific law or accounting standard, and (2) caused Natera's revenue to be inflated during the putative class

13

period." MJOP at 14 (emphasis in original); *see also id.* at 3. Defendants unsuccessfully pressed a version of this strawman argument in their MTD. MTD at 16 ("Plaintiffs allege that Natera . . . fail[ed] to disclose this relationship to unspecified entities but they fail to plead that this actually *did* violate anti-kickback laws.") (emphasis in original).

In fact, as Defendants know, Plaintiffs' claims are not predicated upon an assertion that Defendants misstated their reported financial results or violated an accounting rule. *See* MTD Opp. at 15-16 ("The AC actually alleges that Defendants repeatedly told investors that Panorama was a key source of Natera revenues, rendering Defendants' concealment of the material fact that Panorama revenues were inflated by deceptive practices materially false or misleading."). In its MTD Opinion, the Court grasped Plaintiffs' claims despite Defendants' similarly faulty arguments at that stage.[11] The Complaint thus cannot be defeated by purported facts about "clean" audit opinions or the absence of a restatement.

Ignoring all of this, Defendants ask the Court to resolve in their favor numerous factual disputes that they raised in their MTD, and that cannot be decided on a Rule 12(c) motion. For example, Defendants again argue that Plaintiffs failed to allege what OIG opinions regarding the use of third-party prior authorization companies "required," "how [they] applie[d] to Natera," or whether they were in effect during the relevant time period. MJOP at 14-15; *see also* MTD at 16. Defendants also again urge the Court to find, as a matter of law and fact, how patients understood the Panorama order form and that it "shows that Natera did not force patients to 'opt out' of

---

[11]   *See Schneider*, 2023 WL 9958265, at *2 ("Plaintiffs allege that Defendants cultivated a misleading impression that the increased revenue from Panorama sales 'was the result of organically growing demand''' (quoting ¶12)); *id.* at *9 ("Plaintiffs adequately allege that Defendants' repeated statements that Panorama was a key source of Natera's revenues . . . made while concealing that Panorama revenues were inflated by deceptive practices—such as the inappropriate submission of prior authorizations by MGML—rendered those statements false or misleading. The same is true for Defendants' statements regarding microdeletions.").

14

microdeletions testing." MJOP at 15 n.8; *see also* MTD at 18 n.17.[12] These arguments fare no better the second time around, and at best, raise "industry-specific and inherently fact-bound propositions that are inappropriate at the pleading stage." *Six Flags*, 58 F.4th at 214 (alteration omitted); *Campton v. Ignite Rest. Grp., Inc.*, 2014 WL 61199, at \*4 (S.D. Tex. Jan. 7, 2014) (courts do not resolve fact disputes when ruling on motion to dismiss).

In sum, Defendants may disagree with the decision, but the Court has already ruled that Plaintiffs' "allegations are plausible enough to allow [them] to engage in the full discovery process and find out if there is evidence to back them up." *Johnson v. Halstead*, 916 F.3d 410, 419 (5th Cir. 2019) (affirming in part denial of Rule 12(c) motion). The Court's ruling should stand.

**D.      There Is No Basis for the Court to Reconsider Its Scienter Rulings**

Based on its holistic evaluation of the Complaint, and in full view of the same scienter arguments that Defendants re-assert in their Motion, the Court held that "Plaintiffs have supported a cogent inference of scienter" as to Defendants Chapman, Brophy, Rabinowitz, and Natera. *Schneider*, 2023 WL 9958265, at \*9 (noting allegations); *see, e.g.*, ¶¶187-88 (misstatements concerned core Natera business), ¶¶150-62 (Natera, Chapman, and Brophy repeatedly spoke about Panorama revenue and demand), ¶¶196-199 (motive allegations), ¶¶193-95 (facts supporting inference Chapman and Rabinowitz were focused on Panorama billing practices). All of these allegations were the subject of intense dispute in the parties' briefs. *See* MTD at 18-25; MTD Opp. at 18-22; MTD Reply at 7-12; Plaintiffs' Sur-reply to Defendants' MTD Reply (Dkt. No. 97-1) at 5 n.5. Defendants offer no basis in law or fact for the Court to revisit its rulings.

*First*, the Court held allegations that Chapman, Brophy, and Rabinowitz "received large

---

[12]      Defendants skirt Plaintiffs' claims that Natera engaged in an improper practice of submitting prior authorization requests after Panorama tests were run. *See Schneider*, 2023 WL 9958265, at \*2; ¶¶135-39, 143.

15

stock grants tied to revenue targets" and "sold large amounts of stock at inflated prices" supported the scienter inference. *Schneider*, 2023 WL 9958265, at \*9. Defendants do not challenge this ruling, but merely argue Plaintiffs cannot plead scienter on "stock sale allegations" alone. MJOP at 17. This gets them nowhere, as the Court held the Complaint pled scienter based on numerous allegations **in addition to** the massive insider stock sales. *Schneider*, 2023 WL 9958265, at \*9; *see Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 685 (5th Cir. 2014) (motive allegations "meaningfully enhance" the inference).

*Second*, with respect to the DOJ settlement, Defendants argue that Plaintiffs must, but failed to, allege that Defendants were implicated in or "knew of the misconduct." MJOP at 17. This claim and its supporting case law are repeated, almost verbatim, from Defendants' MTD. *Compare* MTD at 24-25 (claiming "2018 DOJ settlement" cannot support scienter finding absent a "concession of intentional or reckless wrongdoing," citing *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 688 (S.D. Tex. 2022)) *with* MJOP at 17 (same); *see also* MTD Reply at 11-12 (same). This argument fails now for the same reasons it did before. *See Schneider*, 2023 WL 9958265, at \*9 (crediting allegations that when "Chapman and Rabinowitz were in key positions at Natera," the Company "settled with the DOJ for abusive billing practices that increased Natera's Panorama revenues"). Defendants' rebooted argument also misses the point: these allegations support a compelling inference that Chapman and Rabinowitz were "focused on or knowledgeable about [Natera's Panorama-specific billing practices] **during the Class Period**"—not that they committed prior misconduct. ¶195.

*Finally*, Defendants try to side-step the core operations doctrine (i.e., the "special circumstances" exception) by divorcing the importance of Panorama revenue from its underlying drivers. MJOP at 17 (claiming "Panorama is critical to Natera's revenue; MGML is not"). But

16

again, the Court has already passed on these arguments. *See* MTD at 19 n.18 (arguing "Plaintiffs may not rely on the core operations doctrine since a 'significant majority' of Natera's revenue is from other sources"); MTD Reply at 11 (acknowledging "Panorama may be critical to Natera's business" but disputing whether Panorama revenue drivers "had any material impact on overall revenue"); *id.* ("[t]hese are not the sort of facts from which an inference of knowledge arises").[13]

The only purported "new" fact that Defendants seek to rely on—the number of employees at Natera during the Class Period—is one they opted not to raise in their MTD, and in any event, does not refute the strong inference that Defendants were aware of information concerning critical Panorama revenue drivers. MJOP at 16-17. Selectively quoting from *Neiman v. Bulmahn*, 854 F.3d 741, 750 (5th Cir. 2017), Defendants argue the Fifth Circuit "has expressly held that the special circumstances exception does not apply to companies – like Natera – with 'over 60 employees.'" MJOP at 16. That is wrong. In *Neiman*, the Fifth Circuit held only that those plaintiffs' allegations did not satisfy ***any of the four factors*** considered in determining whether the exception applies, including that the topic of the alleged misstatements was material. 854 F.3d at 750.[14] Defendants also ignore that, as pled and as Plaintiffs argued in opposing the MTD, Defendants spoke specifically and repeatedly about Panorama, its revenues, microdeletion demand, and related critical facts at-issue. *See* MTD Opp. at 18-19. Defendants' remaining effort to undermine the Court's core operations ruling is premised on an argument that the Complaint fails to plausibly allege deceptive business practices (MJOP at 17), but the Court has already found that it does. *See*

---

[13]     Chapman and Brophy are not the "only two defendants alleged to have made the statements at issue." MJOP at 16. The Court also sustained allegations based on misstatements and omissions made by Natera and numerous Natera Directors. *See, e.g.*, ¶¶34, 150-62, 217-23, 274-92.

[14]     "Relevant factors may include: (1) the size of the company; (2) whether the transactions are critical to the company's continued vitality; (3) whether the misrepresented information would have been readily apparent to the speaker; and (4) whether the defendant's statements were internally inconsistent with one another." *Cassava*, 2023 WL 3442087, at *10.

17

*Schneider*, 2023 WL 9958265, at \*9.

> **E.    There Is No Basis for the Court to Reconsider Its Loss Causation Rulings**

To plead loss causation, Plaintiffs need only allege "a facially plausible causal relationship between the fraudulent statements or omissions and plaintiff's economic loss," i.e., a disclosure "of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock" and investor loss. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009). Rule 8's notice pleading standard governs the inquiry. *See Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014).

In its MTD Opinion, the Court held that Plaintiffs adequately pled loss causation because, among other allegations, "they allege that on March 9, 2022, the release of the Hindenburg Research report regarding Natera's Panorama sales and billing practices led to a 33% decline in Natera's stock price." *Schneider*, 2023 WL 9958265, at \*10; *see* ¶¶168-76 (loss causation allegations). Defendants' belated attempt to upend that ruling is baseless.

*First*, they claim "Plaintiffs do not, and cannot, identify any statement by Natera revealing that its revenue was inflated for any reason." MJOP at 18. But pleading loss causation does not require the "fact-for-fact" admission of a fraud that Defendants now demand: "[t]o be corrective, [a] disclosure need not precisely mirror [an] earlier misrepresentation." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) (alterations in original). Moreover, having opted not to make this argument in the MTD, Defendants cannot raise it now. *See* Section II.A.

*Second*, Defendants again claim Hindenburg was financially motivated to fabricate information, such that the Hindenburg Report is unreliable. *See* MJOP at 10-13, 18-19. From there, they ask the Court leap to factual conclusions about the plausibility of Plaintiffs' allegations and, ultimately, how "the market reasonably perceived these posts." MJOP at 18.

Setting aside that the Hindenburg Report is not subject to judicial notice—itself fatal to

Defendants' arguments (*see supra* Section II.B.)—these are the same fact-intensive arguments Defendants made at the motion to dismiss stage. *See* MTD at 7-8, 15 (asserting the "presumptive unreliability of the short-seller report"). There, the Court correctly held that "the reliability of short-seller reports—here, the Hindenburg Research report—is a question of fact that the Court cannot resolve at this time." *Schneider*, 2023 WL 9958265, at *9; *see also Cassava*, 2023 WL 3442087, at *8 (reliability of short seller report raised a fact question). That Defendants now attempt to recycle these failed arguments in the context of loss causation makes no difference. *Id*.

Neither of Defendants' out-of-Circuit cases (MJOP at 18-19)—both of which were published at the time of their MTD filing—supports their argument, nor provides a basis for the Court to reconsider its prior holding. In *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *6 (N.D. Cal. July 5, 2022), the Court did not opine on loss causation and, in any event, noted that "courts have not categorically forbid the use of short seller reports as corrective disclosures." In *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781, 797 (9th Cir. 2020), short-seller blog posts on a website were not corrective disclosures chiefly because they were anonymous. The Hindenburg Report, by definition, was not. *See* MJOP at 12.

*Third*, Defendants argue in a footnote that "the existence of a stock price drop following the release of the Hindenburg Report does not mean the disclosure was corrective." MJOP at 19 n.9. In their MTD, Defendants did not dispute Plaintiffs' allegations that the report was a sufficient corrective disclosure or that it caused Natera's stock price to decline, *see* MTD Opp. at 23, allegations that the Court specifically analyzed and upheld. *Schneider*, 2023 WL 9958265, at *9-10. Further, it is well-settled that the cause of a stock price decline is a fact-intensive question, subject to expert evidence, that cannot be determined at the pleading stage. *See, e.g.*, *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 397 (N.D. Ga. 2019) (the "questions – what caused

19

Southern Company's stock price to decline following each of the corrective disclosures (*i.e.*, loss causation) and how much inflation was dissipated as a result of those disclosures (*i.e.*, damages) – are ultimate questions for the trier of fact on the merits").

The cases Defendants rely on for the first time here preceded their MTD by many years. They are distinguishable because they concerned disclosures and stock drops that had attenuated connections to the alleged misrepresentations—unlike the disclosure of "Natera's Panorama sales and billing practices [that] led to a 33% decline in Natera's stock price" here, *Schneider*, 2023 WL 9958265, at *9-10, which aligned neatly with the alleged material misrepresentations and omissions of those "deceptive practices." *Id.* at *9.[15]

## F.     There Is No Basis for the Court to Reconsider Its Secondary Liability Rulings

Like their arguments against secondary liability at the motion to dismiss stage, Defendants' arguments here are made "in a conclusory fashion" and fail for the same reasons the Court stated in its MTD Opinion. *See Schneider*, 2023 WL 9958265, at *10 ("[T]he Court has already found an independent, predicate violation of the 1934 Act or of its rules and regulations, with respect to the Panorama claims. . . [a]nd Plaintiffs do plead that the Insider Trading Defendants traded Natera stock while in possession of material nonpublic information about Panorama.").

## III.    CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' opposition to Defendants' RJN, Plaintiffs respectfully request that the Court deny Defendants' Motion.

---

[15]     *See* MJOP at 19 n.9 (citing *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 710 (S.D. Tex. 2013) ("Imperial's prior statements about its copacking and refined-sugar purchases are ***too attenuated*** from the August 2011 public disclosures to satisfy § 10(b)'s loss-causation element."); *Reed v. Amira Nature Foods Ltd.*, 2016 WL 6571281, at *11 (C.D. Cal. July 18, 2016) ("[P]laintiffs have failed to allege that anything in the . . . Reports corrected any of Amira's purportedly false or misleading statements or otherwise revealed the truth to the market.")).

Dated: June 21, 2024

Respectfully submitted,

**NIX PATTERSON, LLP**
By: */s/ Jessica Underwood*
Jessica Underwood (Bar No. 24093291)
Cody Hill (Bar No. 24095836)
Jeffrey J. Angelovich (Bar No. 00786988)
8701 Bee Cave Road
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 495-1534
junderwood@nixlaw.com
codyhill@nixlaw.com
jangelovich@nixlaw.com

*Liaison Counsel for Lead Plaintiff British Airways Pension Trustees Limited*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted *pro hac vice)*
Joshua E. D'Ancona (admitted *pro hac vice*)
Joshua A. Materese (admitted *pro hac vice*)
Evan R. Hoey (admitted *pro hac vice*)
Vanessa M. Milan (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com
ehoey@ktmc.com
vmilan@ktmc.com

*Lead Counsel for Lead Plaintiff British Airways Pension Trustees Limited*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jesse Jensen (*pro hac vice* forthcoming)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(212) 554-1400

21

jesse.jensen@blbglaw.com

*Counsel for Additional Plaintiff*
*Key West Police & Fire Pension Fund*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: June 21, 2024                    */s/ Jessica Underwood*
                                         Jessica Underwood

23