**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-00398-DAE |
| Plaintiff, | |
| v. | |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO THE NATERA DEFENDANTS' REQUEST**
**FOR JUDICIAL NOTICE AND CONSIDERATION OF DOCUMENTS**
**INCORPORATED BY REFERENCE IN SUPPORT OF THEIR**
<u>**MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   LEGAL STANDARD................................................................................... 4

III.  ARGUMENT................................................................................................ 4

      A.    The Hindenburg Report (RJN Ex. 1) ....................................................... 4

      B.    Natera's Post-Class Period and Post-Complaint SEC Filings
           (RJN Exs. 2-3) ......................................................................................... 6

           1.     Natera's November 9, 2022 Form 10-Q (RJN Ex. 2)............................... 7

           2.     Excerpts of Natera's Forms 10-K for FY 2022 and 2023
               (RJN Ex. 3) ........................................................................................... 10

      C.    Non-Public Letters from the SEC to Defendants and Their Counsel
           (RJN Exs. 4 and 5)................................................................................. 12

IV.  CONCLUSION........................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambler v. Williamson Cnty., Tex.*,
2021 WL 769667 (W.D. Tex. Feb. 25, 2021)....................................................................... 4, 5-6

*In re Anadarko Petroleum Corp. Sec. Litig.*,
2023 WL 2733401 (S.D. Tex. Mar. 31, 2023), *reconsideration denied*, 2023
WL 4308750 (S.D. Tex. June 30, 2023)...............................................................................9, 14

*Aventa Learning, Inc. v. K12 Inc.*,
2011 WL 13100748 (W.D. Wash. Mar. 28, 2011) ...................................................................13

*Ball v. LeBlanc*,
792 F.3d 584 (5th Cir. 2015) .....................................................................................................3

*Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*,
2019 WL 5578510 (N.D. Tex. Oct. 28, 2019)..................................................................... 11-12

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008)....................................................................... 13-14

*Blain v. Liberty Mut. Fire Ins. Co.*,
2024 WL 948020 (S.D. Cal. Feb. 12, 2024)..............................................................................13

*Brooks v. United Dev. Funding III, L.P.*,
2020 WL 6132230 (N.D. Tex. Apr. 15, 2020) ............................................................................6

*In re Cassava Scis., Inc. Sec. Litig.*,
2023 WL 3442087 (W.D. Tex. May 11, 2023) ...........................................................................5

*Castaneda v. Maxim Healthcare Servs., Inc.*,
2024 WL 1747650 (W.D. Tex. Apr. 23, 2024)..........................................................................14

*Daghlian v. DeVry Univ., Inc.*,
461 F. Supp. 2d 1121 (C.D. Cal. 2006) ....................................................................................13

*Doe 1 v. Baylor Univ.*,
335 F.R.D. 476 (W.D. Tex. 2020) ..............................................................................................9

*In re Dot Hill Sys. Corp. Sec. Litig.*,
594 F. Supp. 2d 1150 (S.D. Cal. 2008).......................................................................................6

*Engerat v. Quincy Bioscience, LLC*,
2019 WL 4962597 (W.D. Tex. Oct. 8, 2019).............................................................................8

*Fantroy v. First Fin. Bank, N.A.*,
  2012 WL 12884864 (N.D. Tex. Nov. 19, 2012).................................................................. 14-15

*Ferguson v. Extraco Mortg. Co.*,
  264 F. App'x 351 (5th Cir. 2007) ..................................................................................9

*Hanan v. Crete Carrier Corp.*,
  2021 WL 5447659 (N.D. Tex. Mar. 8, 2021), *denying new trial*, 2021 WL
  3130081 (N.D. Tex. Jul. 23, 2021), *aff'd*, 2022 WL 2188527 (5th Cir. 2022)..................... 9-10

*Hanmi Fin. Corp. v. SWNB Bancorp, Inc.*,
  2019 WL 937195 (S.D. Tex. Feb. 26, 2019) ...........................................................8

*Highfields Capital I, LP v. SeaWorld Ent., Inc.*,
  365 F. Supp. 3d 1050 (S.D. Cal. 2019).................................................................14

*In re Intel Corp. Sec. Litig.*,
  2019 WL 1427660 (N.D. Cal. Mar. 29, 2019).......................................................7

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ......................................................................13

*In re ITT Educ. Servs., Inc. Sec. Litig.*,
  34 F. Supp. 3d 298 (S.D.N.Y. 2014)......................................................................14

*Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*,
  2006 WL 622796 (E.D. La. Mar. 7, 2006) ...........................................................10

*In re L & L Energy, Inc. Sec. Litig.*,
  908 F. Supp. 2d 1147 (W.D. Wash. 2012)..............................................................6

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) .............................................................9, 13

*Linenweber v. Sw. Airlines Co.*,
  2023 WL 6149106 (N.D. Tex. Sept. 19, 2023)........................................................7

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) .......................................................................6, 10, 11

*Mace v. Ocwen Loan Servicing, LLC*,
  2016 WL 9275406 (N.D. Cal. Dec. 29, 2016).........................................................9

*McNulty v. Kanode*,
  2013 WL 12077503 (W.D. Tex. Nov. 6, 2013)......................................................11

*Mendoza v. Wells Fargo Bank, N.A.*,
  2014 WL 2624938 (S.D. Tex. June 12, 2014).........................................................8

*Miller v. Stroman*,
　　2020 WL 2494576 (W.D. Tex. May 14, 2020) ........................................................10

*Scanlan v. Tex. A&M Univ.*,
　　343 F.3d 533 (5th Cir. 2003) ...................................................................................8

*Schneider v. Natera, Inc.*,
　　2023 WL 9958265 (W.D. Tex. Sept. 11, 2023)............................................... *passim*

*In re Sec. Litig. BMC Software, Inc.*,
　　183 F. Supp. 2d 860 (S.D. Tex. 2001) ...................................................................11

*Slaughter v. Torres*,
　　592 F. Supp. 3d 515 (M.D. La. 2022)....................................................................14

*Smith v. L.A. Unified Sch. Dist.*,
　　830 F.3d 843 (9th Cir. 2016) ................................................................................14

*Smotherman v. Bayview Loan Servicing, LLC*,
　　2022 WL 2904288 (W.D. Tex. Jan. 26, 2022) ....................................................3, 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
　　2011 WL 1219238 (N.D. Cal. Jan. 12, 2011)........................................................14

*Stone v. Life Partners Holdings, Inc.*,
　　26 F. Supp. 3d 575 (W.D. Tex. 2014)................................................................. 6-7

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*,
　　2007 WL 9717366 (N.D. Tex. Aug. 2, 2007)...................................................... 8-9

*Wooden v. Mo. Pac. R.R. Co.*,
　　862 F.2d 560 (5th Cir. 1989) ......................................................................3, 4, 8, 11

**Other Authorities**

Fed. R. Evid. 201(b)......................................................................................................4

iv

Lead Plaintiff British Airways Pension Trustees Limited and Additional Plaintiff Key West Police & Fire Pension Fund ("Plaintiffs") respectfully submit this opposition to the Natera Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference in Support of Their Motion for Judgment on the Pleadings ("Request" or "RJN") (Dkt. No. 134).[1]

## I.    INTRODUCTION

This Court has held that Plaintiffs' Complaint sufficiently alleged claims arising from misstatements and omissions by numerous defendants concerning Natera, Inc.'s ("Natera" or "the Company") Panorama test. *See Schneider v. Natera, Inc*., 2023 WL 9958265, at *11 (W.D. Tex. Sept. 11, 2023). Nothing in the pleadings warrants the Court reconsidering its ruling. Knowing this, in their Motion for Judgment on the Pleadings ("MJOP") (Dkt. No. 133), the Natera Defendants ("Defendants") rely almost exclusively on purported "facts" they cull from five extraneous documents that they proffer in the instant Request. These include: (i) the Hindenburg Report (RJN Ex. 1); (ii) Natera's bare, self-serving statement that an internal investigation deemed the Hindenburg Report "unfounded" (RJN Ex. 2); (iii) irrelevant statements of opinion by Natera's auditor about the Company's financial results and internal controls (RJN Ex. 3); and (iv) U.S. Securities and Exchange Commission ("SEC") correspondence concerning an informal investigation that expressly states it should not be construed to exonerate Natera (RJN Exs. 4-5).

Defendants invoke the judicial notice doctrine and, for the Hindenburg Report, incorporation-by-reference doctrine, as the grounds to proffer these documents and selected excerpts they contain. From there, they press the Court to accept these documents as true, treat

---

[1]    Unless otherwise noted, all emphasis is added, and internal citations and quotations have been omitted. Citations to "¶__" are to the Amended Complaint ("Complaint") (Dkt. No. 60). References to "RJN Exhibit(s)" and "RJN Ex(s)." are to the exhibits attached to the Costley Declaration in support of Defendants' Motion for Judgment on the Pleadings (Dkt. No. 135).

them as case dispositive evidence and, on that factual basis, reverse itself and hold that Plaintiffs' previously-sustained allegations are now insufficient. There is, however, a fundamental flaw in this tactic. Under the judicial notice doctrine, "documents may be considered only to determine what statements they contain, ***not for proving the truth of their contents***." *Schneider*, 2023 WL 9958265, at \*4.

Despite artful language describing their arguments as respecting the limitations of the judicial notice doctrine, the actual weight Defendants place on the proffered documents is clear. *Compare* RJN at 6 n.3 ("Defendants do not offer Natera's disclosures concerning the Special Committee's and EY's [Ernst & Young LLP ("EY")] findings for their truth . . . .") *with* MJOP at 2 (claiming proffered documents "confirm[] what Natera has said from the start: the Hindenburg Report was . . . lies"); *id.* at 12 (asserting that judgment is warranted now because proffered documents show internal investigation, auditor, and "the SEC have already scrutinized and determined to be 'unfounded'" certain factual claims); *id*. at 13 (asserting that Plaintiffs' sustained allegations are not plausible because proffered evidence proves that "multiple investigations have reached a different conclusion"). The Court should deny the Request due to its fundamentally improper purpose alone.

Defendants' document-specific arguments in the Request also suffer from numerous fatal shortcomings. *First*, some re-raise arguments the Court has already decided. For example, Defendants submit for a second time the Hindenburg Report and Natera's November 9, 2022 Form 10-Q. *See* RJN Exs. 1 and 2; RJN at 6, 8 n.4; MJOP at 1-2, 5-6, 10-13. But last year, the Court ruled on Defendants' previous request for judicial notice of these same documents ("MTD Request for Judicial Notice") (Dkt. No. 80 at 5, 7), deemed them irrelevant to the Rule 12(b)(6) inquiry, and rejected Defendants' same related, fact-intensive arguments. *See Schneider*, 2023 WL

9958265, at *5, 9 (ruling that proffered documents were "not relevant to the Court's analysis" and that Defendants' arguments raised "a question of fact that the Court cannot resolve at this time"). Defendants suggest no reason—and there is none—for the Court to revisit its prior determination on documents that were offered for the same purpose in connection with Defendants' Motion to Dismiss ("MTD") (Dkt. No. 78), as the standard governing Rule 12(c) and Rule 12(b)(6) motions "is the same." *Smotherman v. Bayview Loan Servicing, LLC*, 2022 WL 2904288, at *2 (W.D. Tex. Jan. 26, 2022) (Ezra, J.).

*Second*, several of the documents and purported facts Defendants point to are opinions or subjective judgments that cannot be judicially noticed. For example, Defendants' attempt to proffer language from Natera's November 9, 2022 Form 10-Q (RJN Ex. 2) stating that Natera and its outside counsel deemed the Hindenburg Report unfounded fails because counsel's interpretation and opinions are not subject to judicial notice. *See Wooden v. Mo. Pac. R.R. Co.*, 862 F.2d 560, 563 (5th Cir. 1989); *cf. Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015). Defendants' Request as to auditor opinions (RJN Ex. 3) is similarly flawed.

*Third*, Defendants seek notice of "facts" within documents they claim are exculpatory that are, in truth, non-probative or irrelevant. *See* MJOP at 2-3, 10-12. Purported facts about the supposed scope and outcome of the SEC's investigation into the Company (RJN Exs. 4-5) have no relevant purpose because the SEC specifically stated in RJN Exhibit 5 that the exact inference Defendants urge cannot be drawn: "***This notice . . . must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation***." Similarly, the opinions of Natera's auditor about the Company's consolidated financial results (RJN Ex. 3) are irrelevant because the Complaint does not allege that Natera misstated its disclosed financials or otherwise committed accounting violations.

3

For these and additional reasons discussed below, the Request should be denied.

## II.   LEGAL STANDARD

As with a motion under Rule 12(b)(6), when deciding a Rule 12(c) motion, "[r]eview is limited to the contents of the complaint and matters properly subject to judicial notice." *Smotherman*, 2022 WL 2904288, at *2. The discretion to take judicial notice "must be exercised by courts with caution." *Ambler v. Williamson Cnty., Tex.*, 2021 WL 769667, at *3 (W.D. Tex. Feb. 25, 2021). The judicial notice doctrine is narrow and "applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities." *Wooden*, 862 F.2d at 563. Judicial notice is appropriate only where a purported fact is "not subject to reasonable dispute[.]" Fed. R. Evid. 201(b). Such facts must be "generally known within the trial court's territorial jurisdiction" and "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 201(b)(1)-(2). "The burden is on the party seeking judicial notice" to show it is appropriate. *Ambler*, 2021 WL 769667, at *3.

## III.   ARGUMENT

### A.   The Hindenburg Report (RJN Ex. 1)

Defendants request that the Court take judicial notice of or consider through incorporation by reference portions of the Hindenburg Report in support of their argument that this publication was "unfounded." MJOP at 12. Primarily, Defendants claim certain disclaimers in the Hindenburg Report are susceptible to judicial notice. They then argue that, once noticed, those disclaimers support their position that Hindenburg was financially motivated to fabricate information and that,

therefore, the Hindenburg Report must be deemed presumptively unreliable as a matter of law. MJOP at 12-13.[2] They also argue other documents they offer undermine the report's reliability.

Defendants proffered the same document, and made the same arguments, at the motion to dismiss stage. *See* MTD at 15-16 (arguing Hindenburg Report unreliable due to language it contained); *see also id.* at 8 (citing Natera's November 9, 2022 Form 10-Q that was proffered for judicial notice and arguing, as in MJOP, that "[a] special committee of Natera's board of directors, acting through independent counsel (WilmerHale), conducted a separate months-long internal investigation into the Hindenburg allegations" and "concluded" they "were unfounded"); MTD Request for Judicial Notice at 5-6.

In full view of these arguments, the Court held the Hindenburg Report was "not relevant" to its analysis of the MTD, and therefore did not consider its contents. *Schneider*, 2023 WL 9958265, at *5. The Court further held that "the reliability of short-seller reports—here, the Hindenburg Research report—is a question of fact that the Court cannot resolve at this time." *Id.* at *9; *see also In re Cassava Scis., Inc. Sec. Litig.*, 2023 WL 3442087, at *8 (W.D. Tex. May 11, 2023) (Ezra, J.) (deeming reliability of short seller reports a factual dispute that cannot be resolved on a Rule 12(b)(6) motion).

There is no basis for the Court to revisit these conclusions. The Court correctly ruled that issues of Hindenburg's motivation and the accuracy of its findings—as raised by Defendants to rebut Plaintiffs' factual allegations—are not subject to determination at the pleading stage, much less the proper subject of judicial notice or incorporation by reference. *See, e.g.*, *Ambler*, 2021 WL

---

[2]     Inexplicably, Defendants take two contradictory positions with respect to the Hindenburg Report in their Request: they argue it is unreliable based on certain facts they put forth, but simultaneously assert that the Court may take the Hindenburg Report "in its entirety, including for the truth of the statements made therein." RJN at 3.

769667, at *5 (declining to take judicial notice of evidence offered to rebut plaintiff's allegations); *Brooks v. United Dev. Funding III, L.P.*, 2020 WL 6132230, at *34 (N.D. Tex. Apr. 15, 2020) (taking notice of documents filed in other proceedings, but not "to test the reasonableness of [p]laintiffs' allegations in the [a]mended [c]omplaint or inferences to be drawn from the allegations" as doing so "would not be consistent with the 'sparing' use of judicial notice that is appropriate at the motion to dismiss stage").

Defendants' assertion that courts take judicial notice of documents that "bear on whether the corrective disclosure . . . plausibly provided corrective information to the market and caused the plaintiff's losses" is also flawed. RJN at 4. The cases they cite involved courts taking judicial notice of documents the plaintiffs had affirmatively relied on or referenced, where the contents of the documents expressly contradicted the plaintiffs' claims about them. *See In re L & L Energy, Inc. Sec. Litig.*, 908 F. Supp. 2d 1147, 1152 n.4 (W.D. Wash. 2012) (taking judicial notice of a research report because plaintiff represented that it disclosed the falsity of statements regarding revenues in 2010 and 2011 when the report only referred to filings for 2009); *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1164 & n.6 (S.D. Cal. 2008) (taking judicial notice of press release in which there was "no disclosure of *any* information concerning" the alleged fraud) (emphasis in original). Here, the Court has already determined the Hindenburg Report is not noticeable, and in any event, the contents of the Report align with Plaintiffs' claims.

### B.    Natera's Post-Class Period and Post-Complaint SEC Filings (RJN Exs. 2-3)

Courts can take judicial notice of regulatory filings for the purpose of determining the statements they contain, ***but not for the truth of their contents***. *See Schneider*, 2023 WL 9958265, at *4 (judicial notice of SEC filings proper, if at all, only "for the purpose of determining what statements they contain" but "not for proving the truth of their contents"); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996); *see also Stone v. Life Partners Holdings, Inc.*,

26 F. Supp. 3d 575, 603-04 (W.D. Tex. 2014) (declining to take judicial notice of the substance of reports filed with the Texas Department of Insurance).[3] Under this law, Defendants' request for judicial notice of RJN Exhibits 2 and 3 should be rejected.[4]

### 1.    Natera's November 9, 2022 Form 10-Q (RJN Ex. 2)

Defendants claim it is proper to judicially notice Natera's description, in its Form 10-Q, of the purported outcome of an internal investigation through "independent counsel (WilmerHale)" as evidence that the Hindenburg Report's findings are "unfounded." RJN at 6; MJOP at 1-2. Once noticed, they argue Natera's description should be deemed to undermine the reliability and plausibility of Plaintiffs' allegations. MJOP at 5-6. They are wrong on all fronts.

As noted above, after Defendants made this exact argument based on the same snippet from the same Form 10-Q months ago, the Court held that the purported disclosure was "not relevant" to its analysis and not subject to further consideration at the motion to dismiss stage. *Schneider*, 2023 WL 9958265, at *5. Nothing has changed—the document remains "central to Defendants' defenses," not Plaintiffs' allegations and claims, and therefore is not properly noticeable. *See id.* (declining request to take judicial notice or incorporate by reference).

Moreover, despite claiming otherwise, Defendants plainly seek to offer RJN Exhibit 2 for the truth of Natera's statement, which is legally impermissible and independently fatal to their request. *Compare* RJN at 6 n.3 (claiming Natera disclosure concerning internal investigation

---

[3]    Defendants' authority (RJN at 6) is in full accord. *See Linenweber v. Sw. Airlines Co.*, 2023 WL 6149106, at *4 (N.D. Tex. Sept. 19, 2023) ("The Court takes judicial notice of the SEC filings only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."); *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *6 (N.D. Cal. Mar. 29, 2019) ("simply because a document is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth").

[4]    To the extent Defendants argue that SEC filings can be judicially noticed for the purpose of showing the "chronology of events" (*see* RJN at 4), they cannot here. Neither RJN Exhibit 2 nor 3 provide any information about the chronology of events that is not included in the Complaint.

finding not offered "to show that they reached correct conclusions concerning the Hindenburg Report's allegations") *with* MJOP at 6 (claiming RJN Exhibit 2 establishes that the "Special Committee interviewed Natera's executives and other personnel, reviewed Company records and emails, and ultimately concluded that the allegations of wrongdoing against the Company in the [Hindenburg] report were unfounded") (alterations in original) *and* MJOP at 12 (claiming "there can be no reasonable expectation that discovery will prove allegations that the Special Committee . . . already scrutinized and determined to be 'unfounded'"); *see also Schneider*, 2023 WL 9958265, at *4-5; *Hanmi Fin. Corp. v. SWNB Bancorp, Inc.*, 2019 WL 937195, at *4 n.7 (S.D. Tex. Feb. 26, 2019) (declining to take judicial notice of the substance of SEC filings put forth to prove the truth of an entity's financial health). RJN Exhibit 2 also reflects Natera's description of its and counsel's opinion, not a self-evident fact, and so cannot be noticed. *See Wooden*, 862 F.2d at 563.

Still more, the purported conclusion of Natera's internal investigation that Natera stated in its Form 10-Q *after the Complaint was filed* is the type of "self-serving" disputed "fact" bearing on ultimate liability issues that courts regularly refuse to judicially notice. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (concluding it would be improper to take judicial notice of defendant-university's own report on bonfire collapse); *Engerat v. Quincy Bioscience, LLC*, 2019 WL 4962597, at *4 (W.D. Tex. Oct. 8, 2019) (declining to take judicial notice of results of private corporation's study on supplement it produced and posted on its website).[5] Indeed,

---

[5]     *See also Mendoza v. Wells Fargo Bank, N.A.*, 2014 WL 2624938, at *3 (S.D. Tex. June 12, 2014) (concluding "the averments in the Foreclosure Applications and the factual content of the documents attached to them fail to clear [Federal] Rule [of Evidence] 201's 'indisputability hurdle,'" in part because they were self-serving); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 2007 WL 9717366, at *5 n.6 (N.D. Tex. Aug. 2, 2007) (declining to judicially notice defendants' SEC filings that purportedly provided terms of trusts because court could not

Natera's statement cannot be judicially noticed because it conflicts with the Complaint's well-pled allegations. *See, e.g.*, *Mace v. Ocwen Loan Servicing, LLC*, 2016 WL 9275406, at *3 (N.D. Cal. Dec. 29, 2016) (declining to notice "self-serving" statement that defendants comply with the law).

The concern with taking judicial notice of selected, self-serving factual statements is particularly acute here, where Natera has yet to fully disclose all underlying facts or discovery about the limited internal investigation in question, conducted by outside counsel. To be sure, to the extent Natera seeks to "defend[] itself by relying upon an investigation," that investigation must be subjected to the normal workings of discovery under the Federal Rules of Civil Procedure, including the privilege-, work product-, and subject matter waiver rules, because the "adequacy of the . . . investigation becomes critical to the issue of liability." *In re Anadarko Petroleum Corp. Sec. Litig.*, 2023 WL 2733401, at *4 (S.D. Tex. Mar. 31, 2023) (finding waiver), *reconsideration denied*, 2023 WL 4308750 (S.D. Tex. June 30, 2023).[6] With merits discovery largely stayed, no such factual development of Natera's defenses has yet occurred.

Further underscoring that the proffered evidence concerning Natera's investigation should not be judicially noticed is the fact that such evidence is likely not admissible. *See, e.g.*, *Hanan v.*

---

determine whether representations were accurate); *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (affirming district court's refusal to judicially notice findings from related cases because facts underlying those decisions were subject to reasonable dispute and "were indeed disputed"); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1255 (N.D. Cal. 2008) ("***[I]f district court judges simply accepted the findings of special committees in the face of otherwise adequate allegations, they would be abdicating their duties to the special committees and their well-paid advocates*. *Defendants cannot escape the securities laws so easily*.").

[6]    A party "cannot rely on [an] investigation as a defense and shield [its underlying] information from plaintiffs merely because their investigators happen to be attorneys." *Id.* (alteration in original); *see also Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 496 (W.D. Tex. 2020) (waiver of privilege and work product concerning outside counsel's investigation where party was "explicitly relying on the *existence* of [outside counsel] work product in the form of its investigation, findings and implementation of reforms" while "simultaneously restricting Plaintiffs' discovery of the facts underlying the very same investigation") (emphasis in original).

*Crete Carrier Corp.*, 2021 WL 5447659, at *4 (N.D. Tex. Mar. 8, 2021) (barring evidence concerning "internal investigation or conclusion regarding causation or fault" because "the probative value is substantially outweighed by the danger of unfair prejudice"), *denying new trial*, 2021 WL 3130081 (N.D. Tex. Jul. 23, 2021), *aff'd*, 2022 WL 2188527 (5th Cir. 2022) (affirming lower court's denial of new trial and finding no error in excluding results of internal investigation); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 2006 WL 622796, at *1 (E.D. La. Mar. 7, 2006) ("Furthermore, even if the fact that these internal investigations took place (and were terminated) was relevant, the Court finds that the probative value would be substantially outweighed by the danger of unfair prejudice and confusion to the jury.").

For all of these reasons, Defendants' arguments concerning RJN Exhibit 2 are meritless.

### 2.    Excerpts of Natera's Forms 10-K for FY 2022 and 2023 (RJN Ex. 3)

In RJN Exhibit 3, Defendants seek judicial notice of statements within Natera's fiscal year ("FY") 2022 Form 10-K and FY 2023 Form 10-K concerning: (i) the opinions of the Company's auditor, EY, about Natera's reported financial results; and (ii) the number of employees at Natera. RJN at 6.

As a threshold matter, judicial notice is appropriate only where the underlying records are pertinent to Plaintiffs' claims. *See Lovelace*, 78 F.3d at 1018; *Miller v. Stroman*, 2020 WL 2494576, at *2-3 (W.D. Tex. May 14, 2020) (declining request for judicial notice and holding that a court can only take judicial notice of records that are relevant to the claim). These post-Complaint EY certifications about irrelevant matters are not. As Defendants are well aware, Plaintiffs do not bring claims about accounting violations or other forms of accounting fraud, nor allege that Natera's reported financial results were false. Rather, Plaintiffs claim that Natera made material misstatements and omissions to the market about important factors related to Panorama demand and revenue drivers. *See Schneider*, 2023 WL 9958265, at *9. Thus, contrary to Defendants'

10

arguments, auditor opinions about the Company's financials do not bear upon the alleged corrective disclosure. *But see* RJN at 6 n.3 (arguing statements about auditor opinions in RJN Exhibit 3 "undermine the Hindenburg Report's ability to plausibly provide 'corrective' information to the market").

Beyond its lack of relevance, the Court should not take judicial notice of RJN Exhibit 3 because, regardless of their say-so, Defendants are improperly offering it for the truth of certain statements it contains, and as evidence to counter Plaintiffs' allegations. *See* MJOP at 11 (claiming "[a]fter specifically considering the accounting issues raised in the Report . . . EY issued clean audit opinions for the entire putative class period"); *id*. at 12 ("there can be no reasonable expectation that discovery will prove allegations that . . . EY . . . ha[s] already scrutinized"); *id*. at 15 ("EY repeatedly has verified the accuracy of Natera's financial reporting from 2020-2022."). The law is clear that judicial notice cannot be used in this way. *See Lovelace*, 78 F.3d at 1018 (judicial notice cannot be used "to prove the truth of the documents' contents"). Doubly so when the statement proffered for notice is or purports to be an opinion. *See Wooden*, 862 F.2d at 563.

The cases cited by Defendants are distinguishable, as the courts therein judicially noticed documents which were indisputably relevant to the facts at issue. *See In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 884 (S.D. Tex. 2001) (judicial notice of SEC filings plaintiffs "relied on" when drafting complaint); *McNulty v. Kanode*, 2013 WL 12077503, at *5 (W.D. Tex. Nov. 6, 2013) (judicial notice of SEC filings which provided context or were referenced during conference calls in which alleged misstatements occurred); *Basic Capital Mgmt., Inc. v. Dynex*

*Capital, Inc.*, 2019 WL 5578510 at \*3 (N.D. Tex. Oct. 28, 2019) (noticing filing date and contents of SEC filing for the limited purpose of analyzing statute of repose issue).[7]

> ### C.      Non-Public Letters from the SEC to Defendants and Their Counsel (RJN Exs. 4 and 5)

RJN Exhibits 4 and 5 are non-public letters that Natera and its counsel received directly from the SEC and then, seemingly to attempt to avoid potential privilege or work product waiver issues, sought through a FOIA request. Defendants claim to seek judicial notice of these letters for the limited purpose of "showing that the SEC sought documents from Natera" and that the "SEC disclosed . . . that it would not commence an enforcement action." RJN at 7-8. This is belied by their MJOP, and understates the improper use Defendants attempt to make of the proffered documents.

In truth, throughout their MJOP, Defendants draw unreasonable and unfounded inferences from the SEC letters that impermissibly conflict with Plaintiffs' allegations, and rely on them as a basis for seeking the dismissal of this case. *See* MJOP at 5-6, 10-12. Defendants argue that the SEC letters prove the SEC "scrutinized" facts integral to Plaintiffs' claims and found them uncompelling, leading to the conclusion—according to Defendants—that there is no discovery Plaintiffs could unearth that would enable them to prove their allegations of fraud here. *Id*. at 12 ("[T]here can be no reasonable expectation that discovery will prove allegations that . . . the SEC ha[s] already scrutinized and determined . . . insufficient to support regulatory action"); *id*. at 6-7 (claiming that Court should accept as true statements concerning the scope of the SEC's investigation).

---

[7]      Notably, Plaintiffs did not oppose Defendants' request for judicial notice of certain SEC filings that they offered alongside their MTD because notice was sought for proper purposes, such as the fact that a statement was made. *See Schneider*, 2023 WL 9958265, at \*4.

Of course, RJN Exhibit 5 does not even support Defendants' urged inference of innocence. In it, the SEC instead stated that: "***[T]his notice . . . must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation***." RJN Ex. 5. Even had the SEC exonerated Natera, it would be "improper to take judicial notice of an agency's findings if they are offered on the ultimate issue," as they are here, "since taking judicial notice [of] the findings would render them conclusive according to [Federal] Rule [of Evidence] 201(g)." *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1147 (C.D. Cal. 2006). The case law Defendants rely on does not support taking judicial notice of administrative letters for the purpose of determining ultimate issues. *See Blain v. Liberty Mut. Fire Ins. Co.*, 2024 WL 948020, at *2 (S.D. Cal. Feb. 12, 2024) (taking judicial notice of settlement order but rejecting argument that it determined liability).

More fundamentally, courts often find that "no-action" letters from the SEC are not the "proper subject of judicial notice." *LDK Solar*, 584 F. Supp. 2d at 1240; *see, e.g.*, *Aventa Learning, Inc. v. K12 Inc.*, 2011 WL 13100748, at *4 (W.D. Wash. Mar. 28, 2011) (declining to take judicial notice of SEC "no-action" letter). And, even in the infrequent case where a court judicially notices the fact that a "no-action" letter was issued, they unequivocally prohibit reliance on such materials for the truth of their contents or a defendant's preferred inferences. *See* RJN at 8 (citing *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 274 n.2 (D.N.J. 2007) ("The Court, however, stresses that this Court's notice of the SEC No-action Letter shall not be interpreted as the Court's determination that the SEC examined the very same matters presented to this Court or that the SEC lacked agency discretion to terminate the investigation even if the SEC did find that Intelligroup violated securities provisions."); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *13 n.7 (C.D. Cal. July 1, 2008) (finding "no authority for the proposition that the SEC's discretionary

13

decision not to institute enforcement proceedings should be taken into consideration")). The additional cases Defendants cite do not stand for the proposition that the Court may judicially notice private correspondence to a company from the SEC regarding an investigation, let alone for the purpose of accepting the outcome of its investigation as evidence.[8] No such findings or inferences may be drawn until these SEC materials that Defendants rely upon and all facts about the related investigation have been subjected to full and fair discovery. *See Anadarko* 2023 WL 2733401, at *4-5.

Finally, it is doubtful that Defendants could ever establish that the SEC letters proffered in RJN Exhibits 4 and 5 are admissible. Courts routinely exclude evidence or references to parallel government investigations and related settlements as irrelevant or highly prejudicial. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2011 WL 1219238, at *1 (N.D. Cal. Jan. 12, 2011) (excluding at trial "any evidence of or reference to [defendant's] agreement with the [DOJ] in connection with DOJ's investigation of the [parallel allegations], or any other evidence of or reference to that investigation"); *Highfields Capital I, LP v. SeaWorld Ent., Inc.*, 365 F. Supp. 3d 1050, 1057 (S.D. Cal. 2019) (rejecting reliance on SEC investigations); *In re ITT Educ. Servs., Inc. Sec. Litig.*, 34 F. Supp. 3d 298, 309 (S.D.N.Y. 2014) (government investigations are "not tremendously probative" of scienter).

In sum, neither RJN Exhibit 4 nor RJN Exhibit 5 reflects an indisputable fact and neither is judicially noticeable. *See Fantroy v. First Fin. Bank, N.A.*, 2012 WL 12884864, at *1 (N.D. Tex.

---

[8]    *See Castaneda v. Maxim Healthcare Servs., Inc.*, 2024 WL 1747650, at *4 (W.D. Tex. Apr. 23, 2024) (judicially noticing plaintiff's charge of discrimination filed with EEOC to determine if he satisfied administrative exhaustion); *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) (taking judicial notice of letter from executive director of school district to all parents of particular schools); *Slaughter v. Torres*, 592 F. Supp. 3d 515, 521 (M.D. La. 2022) (granting unopposed request for judicial notice of documents that were "not necessary for this Court to decide the present motion").

Nov. 19, 2012) (judicial notice extends to only "indisputable adjudicative facts because its effect . . . is to preclude a party from introducing contrary evidence") (ellipsis in original).

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' Request as to RJN Exhibits 1-5.

Dated: June 21, 2024

Respectfully submitted,

**NIX PATTERSON, LLP**

By: */s/ Jessica Underwood*
Jessica Underwood (Bar No. 24093291)
Cody Hill (Bar No. 24095836)
Jeffrey J. Angelovich (Bar No. 00786988)
8701 Bee Cave Road
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 495-1534
junderwood@nixlaw.com
codyhill@nixlaw.com
jangelovich@nixlaw.com

*Liaison Counsel for Lead Plaintiff British Airways Pension Trustees Limited*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted *pro hac vice*)
Joshua E. D'Ancona (admitted *pro hac vice*)
Joshua A. Materese (admitted *pro hac vice*)
Evan R. Hoey (admitted *pro hac vice*)
Vanessa M. Milan (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com
ehoey@ktmc.com
vmilan@ktmc.com

*Lead Counsel for Lead Plaintiff British Airways Pension Trustees Limited*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Jesse L. Jensen (*pro hac vice forthcoming*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(212) 554-1400
jesse.jensen@blbglaw.com

*Counsel for Additional Named Plaintiff Key West Police & Fire Pension Fund*

16

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 21, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.


Dated: June 21, 2024                    */s/ Jessica Underwood*
                                        Jessica Underwood