# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § | Case No. 1:22-cv-00398-DAE |
| Plaintiff, | § § § |  |
| v. | § § |  |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | § § § § § | |
| Defendants. | § § § § | |

## THE NATERA DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF DOCUMENTS INCORPORATED BY REFERENCE IN SUPPORT OF <u>THEIR MOTION FOR JUDGMENT ON THE PLEADINGS</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.      THE COURT MAY REVIEW EXHIBITS 1, 3, 4, AND 5 AS INCORPORATED
        BY REFERENCE AND/OR SUBJECT TO JUDICIAL NOTICE. .................................. 2

        A.  The Hindenburg Report (Exhibit 1) ............................................................. 2

        B.  Natera's Form 10-K for 2022 (Exhibit 3) ..................................................... 5

        C.  SEC Investigation Documents Obtained through a FOIA Request
            (Exhibits 4 and 5) .......................................................................................... 5

CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Van Kampen Funds, Inc.*,
  2005 WL 88973 (N.D. Ill. Jan. 13, 2005) ................................................................................8

*Ambler v. Williamson Cnty.*,
  2021 WL 769667 (W.D. Tex. Feb. 25, 2021) ..........................................................................4

*Anadarko Petroleum Corp. Sec. Litig.*,
  2023 WL 2733401 (S.D. Tex. Mar. 31, 2023) .........................................................................8

*Aventa Learning, Inc. v. K12 Inc.*,
  2011 WL 13100748 (W.D. Wash. Mar. 28, 2011) ..................................................................7

*Batwin v. Occam Networks, Inc.*,
  2008 WL 2676364 (C.D. Cal. July 1, 2008) ............................................................................7

*Beech Aircraft Corp. v. Rainey*,
  488 U.S. 153 (1988) .................................................................................................................8

*Brooks v. United Dev. Funding III, L.P.*,
  2020 WL 6132230 (N.D. Tex. Apr. 15, 2020) .........................................................................4

*Brown v. China Integrated Energy, Inc.*,
  875 F. Supp. 2d 1096 (C.D. Cal. 2012) ...................................................................................2

*Cicalese v. Univ. of Tex. Med. Branch*,
  456 F. Supp. 3d 859 (S.D. Tex. 2020) .....................................................................................4

*City of Miami Gen. Emp.s' & Sanitation Emp.s' Ret. Tr. v. RH, Inc.*,
  302 F. Supp. 3d 1028 (N.D. Cal. 2018) ...................................................................................6

*Crawford v. Pitts*,
  2022 WL 479959 (N.D. Tex. Feb. 16, 2022) ...........................................................................5

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ...................................................................................................5

*Highfields Cap. I, LP v. SeaWorld Ent., Inc.*,
  365 F. Supp. 3d 1050 (S.D. Cal. 2019) ....................................................................................8

*In re BearingPoint, Inc. Sec. Litig.*,
  525 F. Supp. 2d 759 (E.D. Va. 2007), *aff'd in part, rev'd in part*,
  576 F.3d 172 (4th Cir. 2009) ...................................................................................................7

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) ..................................................................7

*In re ITT Educ. Servs., Sec. Litig.*,
34 F. Supp. 3d 298 (S.D.N.Y. 2014)................................................................8

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) ...........................................................7

*In re Levi Strauss & Co. Sec. Litig.*,
527 F. Supp. 2d 965 (N.D. Cal. 2007) ............................................................7

*In re LexinFintech Holdings Ltd. Sec. Litig.*,
2021 WL 5530949 (D. Or. Nov. 24, 2021)......................................................4

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ..........................................................................4

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*,
288 F. Supp. 3d 1087 (D.N.M. 2017) ..............................................................6

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
2011 WL 1219238 (N.D. Cal. Jan. 12, 2011)...................................................8

*In re Tellium Inc., Sec. Litig.*,
2005 WL 1677467 (D.N.J. June 30, 2005).......................................................6

*In re Velti PLC Sec. Litig.*,
2015 WL 5736589 (N.D. Cal. Oct. 1, 2015).....................................................4

*Kakkar v. Bellicum Pharms., Inc.*,
2020 WL 2845279 (S.D. Tex. May 29, 2020)..................................................5

*Kellam v. Servs.*,
2013 WL 12093753 (N.D. Tex. May 31, 2013), *aff'd*,
560 F. App'x 360 (5th Cir. 2014) ....................................................................5

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)............................................................................4

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)..............................................................2

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
2021 WL 3077305 (N.D. Ill. Mar. 25, 2021)...................................................5

*Slaughter v. Torres*,
592 F. Supp. 3d 515 (M.D. La. 2022)...............................................................7

iii

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)....................................................................................................2, 4, 6

*Trigg v. Merida*,
    2019 WL 13193355 (W.D. Tex. Mar. 1, 2019) ........................................................8

*Umeda v. Tesla Inc.*,
    2020 WL 5653496 (N.D. Cal. Sept. 23, 2020), *aff'd*,
    2022 WL 18980 (9th Cir. Jan. 3, 2022) ..................................................................6

*Zarnow v. City of Wichita Falls*,
    614 F.3d 161 (5th Cir. 2010) ..................................................................................3

## **INTRODUCTION**[1]

The Natera Defendants ask this Court to consider only four documents submitted in support of their Motion for Judgment on the Pleadings: (1) the Hindenburg Report, (2) a Form 10-K Natera filed with the SEC in which it disclosed the number of its employees, (3) a subpoena the SEC issued to Natera in connection with its investigation into the Hindenburg Report's allegations, and (4) the SEC's no-action letter that closed its investigation.[2]  Plaintiffs do not dispute that the Hindenburg Report is the basis for their claims, thereby effectively conceding that the report is incorporated by reference in the Complaint and can be considered in its entirety.  Plaintiffs also do not dispute the authenticity and public accessibility of any of these documents, thereby admitting that they are at least susceptible to judicial notice under Rule 201 of the Federal Rules of Evidence.

Plaintiffs, nevertheless, object to the Court's consideration of these documents, revealing a fundamental misunderstanding of this Court's prior rulings and the purposes for which Defendants proffer the documents.  First, Plaintiffs contend that the Court should disregard the Hindenburg Report because it previously declined to review the report's reliability in ruling on Defendants' Motion to Dismiss, but the Court never ruled on whether the Hindenburg Report is incorporated by reference or judicially noticeable – it simply did not reach the issue at all.  Second, Plaintiffs complain that Defendants proffer these documents to draw competing inferences and support their defense, but that objection runs headlong into the Reform Act and the Supreme Court's instruction that courts, in securities class actions, "must" review "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in

---

[1] All capitalized terms used herein have the same meanings as in the Natera Defendants' Motion for Judgment on the Pleadings (the "Motion" or "MJOP," Dkt. 133).  References to "RJN" are to Defendants' Request for Consideration of Documents (Dkt. 134).  References to "RJN Opp." are to Plaintiffs' memorandum of law opposing the RJN (Dkt. 141).

[2] Defendants believe that this Court can grant their Motion without considering Natera's Form 10-Q for Q3 2022 (Exhibit 2) or the disclosures concerning the EY audit in Natera's Form 10-Ks for 2022 and 2023 (Exhibit 3 at 3-4, 7-8).  Accordingly, in the interest of narrowing the issues before the Court, Defendants withdraw their request that the Court take judicial notice of those disclosures.

1

considering, among other things, "plausible, nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); (*see* RJN at 1-4). Third, Plaintiffs claim that the SEC investigation materials are being improperly introduced as determinative evidence exculpating Defendants, but Defendants proffer them only to establish the lack of any enforcement action arising from the Hindenburg Report's allegations, which is a proper purpose supported by the applicable case law.

The Court should reject these and Plaintiffs' other arguments and consider Exhibits 1, 3, 4, and 5 as incorporated by reference in the Complaint and/or properly subject to judicial notice, as set forth below.

## **ARGUMENT**

**I.      THE COURT MAY REVIEW EXHIBITS 1, 3, 4, AND 5 AS INCORPORATED BY REFERENCE AND/OR SUBJECT TO JUDICIAL NOTICE.**

### **A.      The Hindenburg Report (Exhibit 1)**

While not altogether clear, Plaintiffs do not appear to argue that the Hindenburg Report is not incorporated by reference in the Complaint. Presumably because there is no such conceivable argument, Plaintiffs speciously (and incorrectly) assert that Defendants' RJN "primarily" sought consideration of the Hindenburg Report under the judicial notice doctrine. (*See* RJN Opp. at 4.) That is clearly wrong. Defendants dedicated an entire page of their RJN to explaining the basis for deeming the Hindenburg Report incorporated by reference in the Complaint, which Plaintiffs ignore. (*See* RJN at 2-3.) Regardless, Plaintiffs do not dispute that the Hindenburg Report, which is cited extensively in the Complaint, serves as ***the entire basis*** of Plaintiffs' surviving claims in this case. (*See* ¶¶ 18, 127, 130-32, 135, 139, 142, 144, 172-75.) Accordingly, the Hindenburg Report may be deemed incorporated by reference and, therefore, the Court may consider it in its entirety. (*See* RJN at 2-3); *see also Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 788 (S.D.N.Y. 2020) (deeming short seller report that allegedly served as corrective disclosure incorporated by reference); *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1109-10 (C.D. Cal. 2012) (deeming negative analyst report incorporated by reference and "analyz[ing] the complaint

2

and the . . . report in tandem in determining whether sufficient information is provided about the bases for the report's conclusions").

Plaintiffs also do not dispute that publicly available short reports, like the Hindenburg Report, are susceptible to judicial notice. (*See* RJN at 5.) Nor do they claim that Defendants are proffering the report's disclaimers – *i.e.*, disclosing Hindenburg's financial stake in Natera and disclaiming the "accuracy" and "completeness" of its reporting (*see* Ex. 1 at 44-45) – for anything beyond the simple fact that those statements were made. (*See* RJN at 5.) The objection they do assert amounts to nothing more than a cursory attempt to hide behind this Court's prior decision on Defendants' Motion to Dismiss. (*See* RJN Opp. at 5-6.) It should be rejected.

First, Plaintiffs contend that the Court should not consider the Hindenburg Report because it previously determined that the report was "not relevant to [its] analysis" in resolving the Motion to Dismiss. (RJN Opp. at 5.) But this Court did not rule on whether the Hindenburg Report could properly be considered under the judicial notice doctrine (or, for that matter, the incorporation by reference doctrine). (*See* Dkt. 104 ("Order") at 13.) It is fully entitled to do so here.

Second, Plaintiffs assert that the Court cannot consider the Hindenburg Report's disclaimers for purposes of considering the report's reliability because it had determined, in a single paragraph in its Motion to Dismiss decision, that the report's reliability could not be "resolve[d] at this time." (RJN Opp. at 5 (quoting Order at 23-24).) Not only is this a different motion, informed by subsequent developments bearing on this case, the Court's prior determination is not legally binding on this Court. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) ("[T]he law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings . . . [a] court has the power to revisit prior decisions of its own in any circumstance"). Regardless, given the extent to which the Hindenburg Report serves as the basis for Plaintiffs' claims and the alleged corrective disclosure, the reliability of that report is a critical issue that courts routinely review on motions to dismiss. (*See generally* MJOP.) The Court, therefore, may consider the report's disclaimers, whether through the incorporation by reference or the judicial notice doctrine, in determining the plausibility of that report as a source

of corrective information to the market.  (*See* RJN at 2-5); *In re LexinFintech Holdings Ltd. Sec. Litig.,* 2021 WL 5530949, at *4, 16 (D. Or. Nov. 24, 2021) (taking judicial notice of short report's disclaimers in determining that "it is not plausible that investors would perceive the [short] report as revealing the falsity of statements").

Finally, Plaintiffs suggest in passing that it would be improper to take judicial notice of the Hindenburg Report's disclaimers because they are being offered "to rebut Plaintiffs' factual allegations."  (RJN Opp. at 5.)  It is well settled, though, that when ruling on a pleading motion "the court is not required to strain to accept . . . a plaintiff's allegation that is refuted by a fact of which the court has taken judicial notice." *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 872 (S.D. Tex. 2020); *see In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *28 (N.D. Cal. Oct. 1, 2015) ("As is the case with any affirmative defense, if . . . documents which the court may take judicial notice of[] establish the . . . defense as a matter of law, then the motion to dismiss may be granted").  That is particularly so in securities class actions where it is critical, consistent with the Reform Act and the Supreme Court's instruction in *Tellabs*, that courts consider "public records [that] refute a plaintiff's claim," since "[f]oreclosing resort to such documents might lead to complaints filed solely to extract nuisance settlements." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (noting that "fairness and efficiency requires this practice") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see Tellabs*, 551 U.S. 308, 322-23 (courts "must" review such documents in weighing competing inferences; "The strength of an inference cannot be decided in a vacuum.").[3]  As such, absent any dispute as to the disclaimers' authenticity, it is sufficient that they are "relevant to the issue at hand" to judicially notice them.

---

[3] The cases Plaintiffs cite on this point (*see* RJN Opp. at 5-6) are either inapposite, *see Ambler v. Williamson Cnty.*, 2021 WL 769667, at *4 (W.D. Tex. Feb. 25, 2021) (declining to take judicial notice of "heavily edited" video in reviewing Section 1983 excessive force claim), or **support** the Court taking judicial notice of the Hindenburg Report, *see Brooks v. United Dev. Funding III, L.P.*, 2020 WL 6132230, at *33 (N.D. Tex. Apr. 15, 2020) ("the Court agrees it may take judicial notice of the anonymous 'report' and website referenced" in defendant's brief).

4

*See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (upholding district court's finding that judicially noticeable FDA letter preempted claim).

**B.      Natera's Form 10-K for 2022 (Exhibit 3)**

As set forth in the RJN, Defendants seek judicial notice of Natera's disclosure, in its Form 10-K for 2022, of the number of its employees.  (*See* Ex. 3 at 2.)  Plaintiffs do not object to the Court taking judicial notice of this disclosure, thereby conceding that the Court may properly do so. *See Kellam v. Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("failure to respond to arguments constitutes abandonment or waiver of the issue"), *aff'd*, 560 F. App'x 360 (5th Cir. 2014).[4]

**C.      SEC Investigation Documents Obtained through a FOIA Request (Exhibits 4 and 5)**

Defendants proffer two documents issued by the SEC in connection with its investigation into Natera that they obtained pursuant to a FOIA request: (1) a subpoena the SEC issued to Natera (Exhibit 4), and (2) the no-action letter sent by the SEC to Natera (Exhibit 5).[5]  Plaintiffs do not dispute that these exhibits constitute public administrative documents and that Courts routinely take judicial notice of such materials.  (*See* RJN at 7.)  Rather, Plaintiffs argue that the Court may not do so here because Defendants draw inferences from the documents "that impermissibly conflict with Plaintiffs' allegations," and because those documents are supposedly being used for

---

[4] To the extent the Opposition does object to this disclosure, it would ignore that courts, in securities class actions and on Rule 12(c) motions in particular, routinely take judicial notice of SEC filings to inform the "factual background" of a case.  (*See* RJN at 4); *Crawford v. Pitts*, 2022 WL 479959, at *2-3 (N.D. Tex. Feb. 16, 2022).  That includes, as here, the number of company employees, as relevant to a plaintiff's scienter allegations.  (*See* MJOP at 16); *Kakkar v. Bellicum Pharms., Inc.*, 2020 WL 2845279, at *4 (S.D. Tex. May 29, 2020) (considering number of employees in scienter analysis even though not alleged in complaint); *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 2021 WL 3077305, at *12 (N.D. Ill. Mar. 25, 2021) (judicially noticing disclosure "that [company] has 8,200 employees").

[5] Plaintiffs made a confusing claim that Defendants sought these documents  "to attempt to avoid potential privilege or work product waiver issues."  (RJN Opp. at 12.)  That is false.  Defendants sought these documents through a FOIA request to avoid any doubt that these documents are public administrative documents, as was confirmed by their release by the SEC.

an improper "purpose of accepting the outcome of [the SEC's] investigation as evidence." (RJN Opp. at 12-15.) Plaintiffs are wrong on both counts.

As an initial matter, as discussed above, Plaintiffs' contention that a document that conflicts with their allegations cannot be judicially noticed on that basis is unsupported by law. (*See supra* at 4-5); *Tellabs*, 551 U.S. at 322 (courts "must" review "matters of which a court may take judicial notice" in weighing competing inferences). If Plaintiffs are urging that a separate inference should be drawn from the SEC materials (*see, e.g.*, RJN Opp. at 13 (asserting that the no-action letter does not indicate exoneration)), "such argument belongs in [their] opposition to [D]efendants' motion" and "does not persuade on the question of whether judicial notice is proper." *City of Miami Gen. Emp.s' & Sanitation Emp.s' Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028, 1033 n.1 (N.D. Cal. 2018).

Moreover, Defendants do not, as Plaintiffs claim, proffer the SEC materials as evidence on the "ultimate issue" of whether Defendants engaged in wrongdoing. (*See* RJN Opp. at 13.) As Defendants have repeatedly made clear, they are not asking this Court to defer or otherwise give any weight to the SEC's determination. (*See* MJOP at 3; MJOP Reply at 3.) Rather, Defendants seek judicial notice of these documents' contents solely to show that the SEC (1) conducted an investigation into the Hindenburg allegations, and (2) declined to pursue an enforcement action following its investigation. This limited purpose is plainly proper and supported by case law. *See Umeda v. Tesla Inc.*, 2020 WL 5653496, at \*3 (N.D. Cal. Sept. 23, 2020) (taking judicial notice of "various federal government records and reports" for the "purpose of showing that the [company's technology has] been the subject of . . . governmental regulatory investigations"), *aff'd*, 2022 WL 18980 (9th Cir. Jan. 3, 2022); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1212 (D.N.M. 2017) (taking judicial notice of agency's agreement not to initiate enforcement action); *In re Tellium Inc., Sec. Litig.*, 2005 WL 1677467, at \*4 (D.N.J. June 30, 2005) (taking judicial notice of SEC documents for fact of "resolution of the SEC investigation").[6] Plaintiffs' cited authority is in accord. *See In re LDK*

---

[6] *See also In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 765, 771, n.1 (E.D. Va. 2007) (taking judicial notice of disclosures concerning investigation and audit into company's financial

*Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1239-40 (N.D. Cal. 2008) (cited RJN Opp. at 9) (taking judicial notice of company's disclosures concerning internal investigation findings and the fact that company did not thereafter issue financial restatement).

Indeed, Plaintiffs do not cite a single authority even suggesting that it is improper to judicially notice an SEC or other government agency subpoena for the statements contained therein.  While Plaintiffs claim that courts "often" decline to take judicial notice of SEC no-action letters (*see* RJN Opp. at 13), they cite only two cases addressing that type of document, one of which found it appropriate to take judicial notice of a no-action letter for ***the same exact purpose*** Defendants proffer a no-action letter here.  *See Aventa Learning, Inc. v. K12 Inc*., 2011 WL 13100748, at *4 (W.D. Wash. Mar. 28, 2011) (cited RJN Opp. at 13) (noting that court could take judicial notice of no-action letters "for the limited purpose of acknowledging that the [investigation] . . . was terminated without recommendation to the SEC of any enforcement action").  In all events, the clear weight of case law supports taking judicial notice of SEC no-action letters for the limited purpose identified herein.  *See In re Intelligroup Sec. Litig*., 527 F. Supp. 2d 262, 274, n.2 (D.N.J. 2007) (taking judicial notice of SEC no-action letter because it could not "be questioned with respect to whether or not an investigation was terminated"); *Batwin v. Occam Networks, Inc*., 2008 WL 2676364, at *2, n.3 (C.D. Cal. July 1, 2008) (SEC's no-action letter "is properly the subject of judicial notice"); *see also Slaughter v. Torres*, 592 F. Supp. 3d 515, 520 (M.D. La. 2022) (taking judicial notice of "documents from the Attorney General's Office, such as responses to a public records request for file materials from its investigation of Plaintiff, correspondence with defense counsel, and a press release").

---

reporting and determining that eventual "finding weighs heavily against scienter"), *aff'd in part, rev'd in part on other grounds*, 576 F.3d 172 (4th Cir. 2009); *In re Levi Strauss & Co. Sec. Litig*., 527 F. Supp. 2d 965, 987-88 (N.D. Cal. 2007) (taking judicial notice of post-class period audit into company's reported financials and finding that, "in light of the . . . conclusions that there was no fraud . . . the complaint fails to raise a plausible inference that the financial statements were misstated in the manner alleged by plaintiffs").

Finally, Plaintiffs' assertion that judicial notice is improper because it is "doubtful" that the SEC's investigation materials would be admissible evidence (*see* RJN Opp. at 14-15) is baseless. As an initial matter, that is legally wrong. *See Trigg v. Merida*, 2019 WL 13193355, at *2 (W.D. Tex. Mar. 1, 2019) ("The Supreme Court has held that portions of [government] investigatory reports otherwise admissible under Rule 803(8) 'are not inadmissible merely because they state a conclusion or opinion'" (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988))); *see also, e.g.*, *Abrams v. Van Kampen Funds, Inc.*, 2005 WL 88973, at *17-21 (N.D. Ill. Jan. 13, 2005) (holding that SEC's letters concerning its inspection of financial procedures were admissible and "would not be unfairly prejudicial"). Moreover, Plaintiffs do not explain what the admissibility of trial evidence has to do with judicial notice. Indeed, the authorities Plaintiffs cite on this point (*see* RJN Opp. at 13-14) have nothing do with that doctrine, and they are either inapposite[7] or **support** the Court's consideration of government investigation materials. *See Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 365 F. Supp. 3d 1050, 1057 (S.D. Cal. 2019) (considering the terms of company's settlement with the SEC in resolving motion in Defendants' favor); *In re ITT Educ. Servs., Sec. Litig.*, 34 F. Supp. 3d 298, 309 (S.D.N.Y. 2014) ("The Court will consider the pending investigations as evidence of scienter"). Regardless, again, Defendants are not proffering the SEC materials as eventual trial evidence, but simply to establish, at this juncture, that the absence of a regulatory enforcement action renders Plaintiffs' claims implausible, such that that no amount of discovery will prove them. (*See supra* at 6-7.)[8]

Accordingly, the Court can and should take judicial notice of the SEC's subpoena and no-action letter as contained in Exhibits 4 and 5, respectively.

---

[7] *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2011 WL 1219238, at *1 (N.D. Cal. Jan. 12, 2011) (excluding at trial evidence of company's leniency agreement with DOJ).

[8] Plaintiffs suggest in passing that judicial notice of the SEC materials is improper proper because the SEC investigation may be "subjected to full and fair discovery." (RJN Opp. at 13.) The decision Plaintiffs cite on this point, *Anadarko Petroleum Corp. Sec. Litig.*, 2023 WL 2733401, at *4-5 (S.D. Tex. Mar. 31, 2023), involved a discovery dispute and in no way addresses judicial notice. Regardless, Plaintiffs do not explain what discovery it would need and, again, Defendants are not proffering these materials as eventual trial evidence. (*See supra* at 6-7.)

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court consider Exhibit 1 under the incorporation by reference doctrine, and take judicial notice of the specific portions of Exhibits 1, 3, 4, and 5 that are identified above and marked in the documents attached to the Declaration of Christina L. Costley.

Dated:  July 9, 2024

**KATTEN MUCHIN ROSENMAN LLP**

/s/ *Bruce G. Vanyo*
Bruce G. Vanyo (admitted pro hac vice)
Christina L. Costley (admitted pro hac vice)
Paul S. Yong (admitted pro hac vice)
2121 Avenue of the Stars, STE 1100, Suite 1100
Los Angeles, CA 90067
Tel: (310) 788-4400
Fax: (310) 788-4471
bruce@katten.com
christina.costley@katten.com
paul.yong@katten.com

Eric R. Hail
State Bar No. 24047579
Ted A. Huffman
State Bar No. 24089015
Megan C. McKennon
Texas State Bar No. 24102184
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
eric.hail@katten.com
ted.huffman@katten.com
megan.mckennon@katten.com

*Counsel for Defendants Natera, Inc., Steve Chapman, Michael Brophy, Matthew Rabinowitz, Paul Billings, Roy Baynes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, James I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena*

9

## **CERTIFICATE OF SERVICE**

I, Bruce G. Vanyo, hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on July 9, 2024 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.

*/s/ Bruce G. Vanyo*