**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § § | Case No. 1:22-cv-00398-DAE |
| Plaintiff, | § § § | |
| v. | § § | |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | § § § § § § | |
| Defendants. | § § § | |

**DEFENDANTS SURREPLY IN OPPOSITION TO LEAD**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT**
**OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.    Preliminary Statement..................................................................................................1

II.   Argument .......................................................................................................................2

    A.    Plaintiffs Are Required to Prove Reliance on an Individualized Basis. ..................2

    B.    Plaintiffs Have Failed to Prove Market Timing..........................................................2

        1.    Plaintiffs Must Prove Market Timing. ..........................................................2

        2.    The TCF Reports Detailed the Alleged Panorama Omissions.....................3

    C.    There Was No Price Impact. ........................................................................................5

        1.    No Front-End Price Impact.............................................................................6

        2.    No Back-End Impact Upon First Disclosure ................................................7

        3.    The Gap Between the Alleged Misstatements and Hindenburg Report. .....8

    D.    No Class Can Be Certified Based on Microdeletion Statements and
        Omissions........................................................................................................................9

    E.    *Affiliated Ute* Does Not Apply....................................................................................9

    F.    Plaintiffs Are Atypical and Inadequate Because They Lack Standing to
        Pursue Their Claims Under Sections 11 and 12. .....................................................10

III.  Conclusion ...................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)..................................................................................................7

*Anderson v. U.S. Dep't of Hous. and Urb. Dev.*,
  554 F.3d 525 (5th Cir. 2008) ...................................................................................9

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  77 F.4th 74 (2d Cir. 2023) .......................................................................................9

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)........................................................................................ *passim*

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
  2016 WL 4585753 (N.D. Cal. Sept. 2, 2016) ..........................................................5

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  2023 WL 2932485 (D. Conn. Apr. 13, 2023)...........................................................6

*Chabot v. Walgreens Boots Alliance, Inc.*,
  2023 WL 2908827 (M.D. Pa. 2023) .........................................................................7

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
  504 F. Supp. 2d 151 (N.D. Tex. 2007)) .................................................................10

*DBW Partners, LLC v. Mkt. Sec., LLC*,
  2023 WL 2610498 (D.D.C. Mar. 23, 2023)..............................................................8

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  2023 WL 6300569 (S.D. Tex. Sept. 27, 2023) .........................................................6

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
  594 U.S. 113 (2021)............................................................................................2, 5, 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)..........................................................................................1, 2, 5

*Homyk v. ChemoCentryx, Inc.*,
  2024 WL 1141699 (N.D. Cal. Mar. 6, 2024)...........................................................6

*IBEW Loc. 98 Pension Fund v. Best Buy Co.*,
  818 F.3d 775 (8th Cir. 2016) ...................................................................................5

*In re Apache Corp. Sec. Litig.*,
  2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ...........................................................................2

*In re Arcimoto Inc., Sec. Litig.*,
  2022 WL 17851834 (E.D.N.Y. Dec. 22, 2022) ......................................................................3

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ........................................................................5

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004), *aff'd*, 165 F. App'x 928 (2d Cir. 2006).......................9

*In re FibroGen Sec. Litig.*,
  2024 WL 1064665 (N.D. Cal. Mar. 11, 2024).........................................................................4

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
  2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) ........................................................................6

*In re PolarityTE, Inc. Sec. Litig.*,
  706 F. Supp. 3d 1343 (D. Utah 2020)......................................................................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) .........................................................................4

*Peak v. Zion Oil & Gas, Inc.*,
  2020 WL 1047894 (N.D. Tex. Mar. 3, 2020).......................................................................10

*Ramirez v. Exxon Mobil Corp.*,
  2023 WL 5415315 (N.D. Tex. Aug. 21, 2023).......................................................................6

*Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*,
  482 F.3d 372 (5th Cir. 2007) ..................................................................................................9

*Satanic Temple Inc. v. Young*,
  681 F. Supp. 3d 685 (S.D. Tex. 2023) ..................................................................................10

*Smith v. Ayres*,
  845 F.2d 1360 (5th Cir. 1988) ..............................................................................................10

I.    **PRELIMINARY STATEMENT**[1]

Plaintiffs' Reply fails to overcome key evidentiary deficiencies that prevent them from: (1) invoking the *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) presumption of reliance to certify a class on the Exchange Act claims; and (2) establishing standing on the Securities Act claims.

*First*, Plaintiffs fail to meet their burden of proving market timing, *i.e.*, that they "traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("*Halliburton II*").  The Supreme Court repeatedly has described market timing as a prerequisite that Plaintiffs must meet before certifying a class.  Lead Plaintiffs here did not purchase stock until 2021 – *months* after The Capitol Forum ("TCF") released the articles that became the basis for the March 9, 2022 Hindenburg Report.  Plaintiffs do not seriously dispute that Hindenburg merely rehashed the same allegations made by TCF in 2020: they do not contest Hindenburg's declaration confirming that "all" factual information in its report came from TCF and other public sources, and even the few specific facts that Plaintiffs argue Hindenburg first "revealed" (Reply at 11) appear to have been copied directly from the earlier TCF articles.  Plaintiffs argue that Hindenburg must have revealed *something* new (they cannot explain what) because Natera's stock price declined, but as Defendants explained in the Opposition (and Plaintiffs do not refute) there is ample evidence that short attacks often drive down stock price regardless of whether they report anything true or novel.

*Second*, Plaintiffs have failed to refute Defendants' showing severing the link between the alleged misstatements and the price of Natera's stock.  On the front end, Plaintiffs have failed to bring forth any evidence that the omissions at issue caused Natera's stock price to increase.  On the back end, Plaintiffs have failed to rebut evidence that: (1) the allegedly corrective information was already "on the market;" and (2) the allegations in the Hindenburg Report are simply too attenuated from the allegedly misleading statements to have corrected them.

Finally, no class can be certified as to the Securities Act claims because neither of Plaintiffs

---

[1] All undefined terms have the same meaning as in Defendants' Opposition (Dkt. 154).  References to "Ex. __" are to exhibits to the Costley Declarations submitted with the Opposition (Dkt. 155) and herewith.  References to "PX __" are to exhibits submitted with Plaintiffs' Reply (Dkt. 161).

purchased shares directly in or traceable to the July 2021 SPO and, therefore, they lack standing on those claims and can establish neither typicality nor adequacy.

## II.    ARGUMENT

### A.    Plaintiffs Are Required to Prove Reliance on an Individualized Basis.

To invoke *Basic's* presumption of reliance, Plaintiffs must prove both market timing and market efficiency.  *Halliburton II*, 573 U.S. at 282 (both "must still be proved at the class certification stage").  As further discussed below and in Defendants' Opposition, Plaintiffs' Motion for Class Certification should be denied because: (1) Plaintiffs have failed to meet their burden of proving market timing; and (2) Defendants have demonstrated a lack of price impact, and thereby, rebutted any showing of market efficiency.  *See Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 118 (2021).

### B.    Plaintiffs Have Failed to Prove Market Timing.

#### 1.    Plaintiffs Must Prove Market Timing.

Plaintiffs do not seriously dispute that they have failed to prove market timing.  After ignoring it in their motion, Plaintiffs now argue that as long as they prove market *efficiency*, they can show market *timing* merely by alleging that they purchased stock during the "relevant period" (which Plaintiffs misconstrue as the "class period").  (Reply at 2.)  The Supreme Court, however, has repeatedly confirmed that, to show market timing, plaintiffs have the "burden of proving" that they bought stock before "the truth was revealed."  *See Goldman*, 594 U.S. at 119.  Regardless of whether Plaintiffs must prove they purchased stock before then or simply "during the class period," the burden is the same because the "class period" in a securities class action is, by definition, the period between the misrepresentation and the revelation of the truth.  *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *7 (S.D. Tex. Feb. 9, 2024).[2]

---

[2] Price impact and market timing are distinct legal concepts. Although both ask whether the information was previously disclosed, price impact also requires defendants to prove that the prior disclosure was publicly available. (*See, e.g.*, Opp. at 13.)  Price impact, however, is also generally more impactful: an absence of price impact completely bars certification of a class, whereas market timing, in most cases, just requires the class period to end on the first disclosure date.  As a result, most cases involving prior disclosures analyze them in connection with price impact, not market

### 2.    The TCF Reports Detailed the Alleged Panorama Omissions.

Plaintiffs' attempt to satisfy their burden of proving market timing is a single sentence in the Reply (at 2) that claims there is "ample evidence" that Hindenburg revealed new information. Plaintiffs fail, however, to identify any such "new information" or to refute Hindenburg's claim, in its declaration, that it obtained "all information" in the Report "from publicly available sources," including, primarily, the 2020 TCF articles.  (Ex. 1 ¶ 5.)  Plaintiffs argue that "Hindenburg's investigation" included "interviews with former Natera employees, patients, and industry experts" (Reply at 11), but they identify no new factual claims made by these (mostly unnamed) sources nor do they establish these are not the *same* unnamed sources cited in the TCF articles.  (*Compare* Ex. 10 at 1, 6, 12, 22, *with* Ex. 8 at 1, 3-5, 8 (citing, *inter alia*, "former employee[s] of Natera," "sources familiar with MGML's operations," and "industry sources"); Ex. 10 at 19 (Hindenburg using same source as TCF).)  Plaintiffs argue that Hindenburg "revealed" that MGML, aided by Natera salespeople, "submit[ted] information to insurance companies under practitioners' login credentials" in violation of "anti-kickback guidance" (Reply at 11), but the December 2020 TCF report similarly stated that MGML "obtain[ed] login information [from providers] for insurance payer portals," that Natera salespeople instructed providers "to send the prior authorization request to MGML" for processing, and that "anti-kickback regulations [] could be in play."  (Ex. 8 at 1, 4, 7-8.)  And Plaintiffs argue that Hindenburg "revealed" that Natera "used MGML to further" (unspecified) "deceptive billing practices" (Reply at 11), but again, TCF made the same accusation first, describing MGML as a "front organization" used by Natera to improperly bill insurers for prior authorizations.  (Ex. 7 at 4.)  Plaintiffs do not identify *any* new factual information reported only by Hindenburg – a failing fatal to their feeble effort to prove market timing.[3]

In the absence of evidence, Plaintiffs argue that the Court should infer that Hindenburg

---

timing.  This, however, is a rare case in which market timing will totally prevent certification of a class (at least on this motion) because neither Plaintiffs bought stock until after the first disclosure.

[3] Claims that Natera violated anti-kickback laws and engaged in "deceptive" billing practices are legal conclusions, not facts, and have been debunked by multiple investigations (including by the SEC).  (Dkt. 135-2-5); *see In re Arcimoto Inc., Sec. Litig.*, 2022 WL 17851834, at *7 (E.D.N.Y. Dec. 22, 2022) (short report's analysis not corrective because "[l]egal labels [] reveal no new facts").  ***None*** of the negative consequences speculated about in the Report have occurred.

revealed new information because Natera's stock price declined following its publication – the *post hoc ergo propter hoc* fallacy. (Reply at 9.) The question, however, is not whether the report revealed new information, it is whether the report revealed new information showing that Natera's statements were false or misleading. *See In re FibroGen Sec. Litig.*, 2024 WL 1064665, at \*12 (N.D. Cal. Mar. 11, 2024) ("revelations that are not 'corrective' cannot" be "a corrective disclosure"). *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084 (S.D.N.Y. July 10, 2019), on which Plaintiffs rely, is instructive. There, the court held that the party with the burden of proof (there, the defendants) was required to provide empirical evidence consistent with their proposed explanation for the decline. *Id.* at \*17. Here, although it is not Defendants' burden to do so, they have provided empirical evidence confirming that negative publicity from a short report typically "send[s] shares of stock plummeting," *regardless* of whether the report reveals new, factual information about the truth of the company's prior disclosures. (Opp. at 14-15; Ex. 4 ¶¶ 63-70; Ex. 38 ¶¶ 10, 41-43.) Plaintiffs do not rebut this evidence nor have they provided any of their own linking the post-Hindenburg price decline to news that Natera's statements were misleading.

Plaintiffs also argue – again, without evidence – that the reaction by Natera's analysts shows that Hindenburg revealed new information. It does not. It is undisputed that no analysts changed their revenue forecasts in the immediate aftermath of the Report, despite Plaintiffs' claim that Hindenburg revealed that Natera had engaged in deceptive practices to drive up Panorama revenue. (Ex. 38 ¶ 37; *see* PX 5 at 1-2; PX 11 at 1, 3; PX 8 at 1, 3; Ex. 26 at 1; Ex. 27 at 1, 8; Ex. 40 at 1, 7 (reiterating rating and price targets).) Plaintiffs argue that, two weeks later, "analysts did lower their revenue estimates" (Reply at 10), but only a single analyst, Piper Sandler, did so "to reflect conservativism in reputation damage and potential distractions," *not* concern about Natera's use of MGML. (PX 9; *see* PX 1 ¶ 81; Ex. 38 ¶ 38.) Nor is it significant that one analyst (Craig Hallum) did not seem to remember that TCF made similar claims 15 months earlier.[4] (Ex.

---

[4] Plaintiffs also cite reports from: (1) Piper Sandler, stating that the MGML allegations were "more novel" than allegations reported two months earlier by the New York Times (PX 5) and recommending investors be "aggressive" about buying Natera's stock because only 7% of Natera's women's health business went through MGML (PX 6); (2) Nephron Research, describing the use

18.)  To meet their burden of establishing market timing, Plaintiffs must prove they bought stock

before the "truth" was revealed publicly, *not* before the truth was known to, and understood by,

every analyst.  *See Halliburton II*, 572 U.S. at 268; *Bonanno v. Cellular Biomedicine Grp., Inc.*,

2016 WL 4585753 at *5 (N.D. Cal. Sept. 2, 2016) (rejecting argument that information was not

"on the market" because it had not been analyzed by an analyst); (*see also* Ex. 3 at 167:21-171:2).

Since Plaintiffs have failed to meet their *Basic* threshold burden of establishing that they

bought stock before disclosure of the "truth," no member of the proposed class who bought stock

after 2020 can bring a claim with respect to the Panorama Omissions.  If a class is certified (and it

cannot be on the motion of these Plaintiffs because they are not part of the class), it would consist

of investors who purchased stock from February 26, 2020 through December 14, 2020.

### C.    There Was No Price Impact.

A class should not be certified because Defendants have shown there was no price impact.

In *Halliburton II*, the Supreme Court held that Defendants can rebut the presumption of reliance

by showing that *either* the "asserted misrepresentation (*or* its correction) did not affect the market

price of the defendant's stock."  *Halliburton II*, 573 U.S. at 278-80 (emphasis added).  This is not

an all or nothing inquiry, but a holistic review "aided by a good dose of common sense."  *Goldman*,

594 U.S. at 122 (courts must consider "all evidence relevant to price impact").  Courts have

confirmed that "overwhelming evidence" on one end can "rebut[] the *Basic* presumption" even

when there is evidence of a price reaction on the other.[5]  *See IBEW Loc. 98 Pension Fund v. Best*

---

of "third-party companies" as "a common industry practice" (PX 7); and (3) Leerink, speculating
that investors might still have questions after the management call (PX 8).  None of these establish
that Hindenburg reported new information.  Defendants, on the other hand, have submitted reports
confirming that these allegations were "not entirely new information."  (Ex. 26; *see* Ex. 27.)

[5] Plaintiffs argue that Defendants must show a complete absence of both front and back end impact,
but they base this on unpublished, out-of-circuit district court decisions that pre-date *Goldman* and
limited their review to back-end arguments.  (Reply at 2-4 (citing *In re Chi. Bridge & Iron Co.
N.V. Sec. Litig.*, 2020 WL 1329354, at *4-9 (S.D.N.Y. Mar. 23, 2020); *Bos. Ret. Sys. v. Alexion
Pharms., Inc.,* 2023 WL 2932485, at *11-12 (D. Conn. Apr. 13, 2023).)  The only Texas case
Plaintiffs cite simply confirmed that price impact is generally evaluated on the back end because
front-end impact is not expected in inflation maintenance cases.  *Del. Cnty. Emps. Ret. Sys. v.
Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *7 (S.D. Tex. Sept. 27, 2023).  Plaintiffs also cite
*Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at *5 (N.D. Cal. Mar. 6, 2024), where the court
found that the defendants failed to rebut *either* front or back end, not that they had to do both.

*Buy Co.*, 818 F.3d 775, 782 (8th Cir. 2016) ("overwhelming evidence of no 'front-end' price impact rebutted the *Basic* presumption"). In the words of *Basic*, "*any* showing that severs the link between the alleged misrepresentation and [] the price" is sufficient. *Basic*, 485 U.S. at 248.

### 1.    No Front-End Price Impact

Plaintiffs attempt to rebut Defendants' showing of no front-end price impact by arguing that the stock price increased on some (but not all) of the dates at issue. (Reply at 3-4.) As Defendants established in the Opposition, however, this increase could not have been caused by Natera's purported failure to disclose its use of MGML because "market participants cannot respond to information that was not revealed." (Ex. 4 ¶ 13; *see* Opp. at 12; Ex. 38 ¶¶ 7, 12-17.) Plaintiffs argue that this rule applies only to "pure omissions," not affirmative statements rendered false by omission, but they point to no economic literature or other rule so stating. As the Opposition explained (at 12), courts generally apply *Goldman's* back-end analysis when plaintiffs claim that an earlier statement was "misleading by omission." *See In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *7 (S.D.N.Y. Mar. 29, 2024). That is the correct standard here as well. Here, moreover, the statements at issue did not even reveal new information but, instead, simply reiterated Natera's longstanding (and undisputedly true) assertion that Panorama and Horizon drove revenue growth. This "should not influence the price of a stock." *See Ramirez v. Exxon Mobil Corp.*, 2023 WL 5415315, at *20 (N.D. Tex. Aug. 21, 2023). Plaintiffs do not dispute this as an economic principle, but instead insist that Defendants must prove that the repetition of this information "did not contribute ***at all*** to the stock price increases." (Reply at 3.) This is inconsistent with *Goldman*, which only requires Defendants to show that it is *more likely than not* that another statement caused the price increase. *See Goldman*, 594 U.S. at 122. Here, common sense dictates that it is more likely the stock increased in response to Natera's release of positive earnings news, ***not omission*** of its alleged sales practices. (*See* Opp. at 12-13 (increases occurred on days Natera announced it beat guidance, experienced record growth, and overcame Covid headwinds).) This is a sufficient basis to find no front-end impact.

### 2.    No Back-End Impact Upon First Disclosure

There was also no back-end price impact.  Plaintiffs suggest it should be inferred from the price decline following Hindenburg's release, but price impact is judged based on initial disclosure of the news, which occurred in 2020 when TCF released its reports.  (Opp. at 13-14.)

Plaintiffs largely ignore the TCF articles.  They did not mention them at all in the Opening Brief, and in the Reply, they attempt to minimize their significance by arguing the articles were only "marginally public" because they appeared behind a paywall and subscribers had limited distribution rights.  (Reply at 5-6.)[6]  This argument, however, directly contradicts *Basic's* holding that the market price of a security traded in an efficient market reflects "*all publicly* available information," *not* just freely or widely distributed information.  *Basic*, 485 U.S. at 246 (emphasis added); (*see* Opp. at 6-7 (citing cases reiterating this rule)).  Plaintiffs do not cite any case in which any court has recognized an exception to *Basic* for "marginally" public information.

Nor is such a view consistent with how other courts have treated TCF reports.  Defendants have identified at least four cases in which courts have held that disclosures issued by TCF were publicly available and digested by the market.  (*See* Opp. at 9 (citing cases)); *In re PolarityTE, Inc. Sec. Litig.*, 706 F. Supp. 3d 1343, 1351 (D. Utah 2020); *Chabot v. Walgreens Boots Alliance, Inc.*, 2023 WL 2908827, at *19, 21 (M.D. Pa. 2023).  In three of them (*PolarityTE*, *Fleetcor*, and *Chabot*), publication of TCF reports – though subject to the same distribution limitation and paywall as in this case – directly caused the target's stock price to decline.[7]  *Cf. DBW Partners, LLC v. Mkt. Sec., LLC,* 2019 WL 494435, Complaint (D.D.C. Feb. 7, 2019) ("the release of [TCF] reports will often affect the price of publicly traded stocks – and will do so in a matter of minutes").

Plaintiffs have failed to produce any direct evidence that TCF reports in this case were not "publicly available" and incorporated into Natera's stock price.  Instead, they rely on Mr.

---

[6] Information can be incorporated into a company's stock price without affecting it.  Most often, this occurs when the information is not material.  (*See* Ex. 38 ¶ 27); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

[7] Mr. Coffman served as the plaintiffs' expert in one of these cases.  *See City of Sunrise Gen. Empls. Ret. Plan v. FleetCor Techs.*, No. 1:17-cv-02207, Dkt. 68-3 (N.D. Ga.) (Coffman Report).

Coffman's speculation that reports seen by "very few people" may not be fully incorporated into a company's stock price. (Reply at 7 (citing Ex. 3 at 59:7-10).) At no point, however, does Mr. Coffman state that TCF reports (in general or in this case) do not meet *Basic*'s definition of public availability. Nor would such a conclusion be consistent with the evidence here. TCF reports are not seen by "very few people;" they are seen by a significant number of institutional subscribers, each of which can designate multiple individuals to receive reports, and an unknown number of other investors who received emails from TCF describing them. (Ex. 39 ¶¶ 3-4; *see* Opp. at 8.) These are not casual readers. According to TCF, its subscribers include "policymakers, law firms, investors, and industry stakeholders," each of whom, as Plaintiffs point out, paid over $24,000 annually for access to reports that cover only a handful of companies. *DBW Partners, LLC v. Mkt. Sec., LLC*, 2023 WL 2610498, at *1 (D.D.C. Mar. 23, 2023); (Ex. 4 ¶ 43, nn.87-90 (citing emails from Natera investors asking about TCF reports).) Defendants introduced evidence that the TCF reports (or excerpts from them) were sent to, and read by, key market makers, analysts, and investors including J.P. Morgan, Craig Hallum, Bridger Health, GGHC, and RTW Funds. (Ex. 39 ¶ 3 (J.P. Morgan had subscription); Exs. 11-21.) Based on these facts, Dr. Skinner has confirmed that he views TCF reports in this case as publicly available. (Ex. 38 ¶¶ 24-27.) In the absence of any rebuttal evidence by Plaintiffs, this is *more* than sufficient to find they were publicly available.

### 3. The Gap Between the Alleged Misstatements and Hindenburg Report.

Plaintiffs do not, and cannot, deny that *Goldman* requires at least some correlation between the corrective disclosure and the alleged misstatements. (*See* Reply at 11.) Hindenburg confirmed in its declaration that no such correlation exists here because its report was not intended to, and did not, take the position that any of Natera's statements were false. (Ex. 1 ¶¶ 6, 8.) Plaintiffs have failed to introduce any evidence contesting this. Instead, they simply ignore Hindenburg's account of its own report and ask this Court to infer that Hindenburg said Natera's prior statements were false because the Report alleged that Natera engaged in "deceptive billing practices." (Reply at 12.) But allegations of deceptive billing practices only would have revealed that Natera's statements about its revenue were false if those practices impacted Natera's reported revenue –

which, here, it is undisputed they did not.  (*See* Dkt. 140 at 10); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (no duty "to disclose that its revenues were derived from 'unsustainable and illegitimate sources'"), *aff'd*, 165 F. App'x 928 (2d Cir. 2006).[8]

**D.      No Class Can Be Certified Based on Microdeletion Statements and Omissions.**

Plaintiffs cannot certify a class based on the microdeletion statements (*see* ¶¶ 153-55, 159-61) for at least two reasons.  First, they cannot establish market timing.  The Complaint alleges that Natera misled investors by failing to disclose that its Panorama requisition form forced physicians to check a box opting out of microdeletions testing, but Plaintiffs do not dispute that the form was publicly available through the entire putative class period (well before they bought stock).  Instead, they argue in the Reply that their microdeletion claim is not based on the format of the form but on the fact that it "dupe[d] doctors."  (Reply at 8-9.)  Plaintiffs do not explain how the need to check a box would have "duped" anyone – let alone, a physician accustomed to such forms.  In any event, this allegation appears nowhere in the Complaint and therefore cannot be relied upon to certify a class.  *See Anderson v. U.S. Dep't of Hous. and Urb. Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) (certifying class based on unpled claims outside court's discretion).

Second, Plaintiffs do not seriously dispute that there was no price impact as to the Microdeletion Omissions.  Plaintiffs do not contest the absence of front-end price impact.  (*See* Reply at 3-4, n.2 (arguing that Natera's stock price increased following other statements but not these).)  On the back end, they rely primarily on the (unpled) argument discussed above concerning the form "duping" doctors (*see* Reply at 8-9), which fails for the same reason.  Each of these is a separate, and independent, reason to deny Plaintiffs' motion as to these statements.

**E.      *Affiliated Ute* Does Not Apply.**

*Affiliated Ute* applies only to pure omissions cases, not cases, like this one, brought under Rule 10b-5(b).  *See Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007) ("For us to invoke the *Affiliated Ute* presumption . . . a plaintiff must

---

[8] Plaintiffs curiously rely (at 11) upon *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023), wherein the Second Circuit decertified the class upon finding, after a "searching review," that it was insufficient (and "cannot be enough") that the corrective disclosure simply "touch[ed] upon [] the same subject matter" as the alleged statements.  *Id.* at 104-05.

(1) allege a case primarily based on omissions or non-disclosure."); *Smith v. Ayres*, 845 F.2d 1360, 1363 (5th Cir. 1988) (*Affiliated Ute* does not apply to claims brought under Rule 10b-5(b)). Since Plaintiffs have never purported to bring this claim under any subsection of Rule 10b-5 except subsection (b), there is no question *Affiliated Ute* is inapplicable.

**F.      Plaintiffs Are Atypical and Inadequate Because They Lack Standing to Pursue Their Claims Under Sections 11 and 12.**

Plaintiffs do not dispute that BAPTL – the only lead plaintiff appointed by this Court – must have standing as to the Securities Act claims for a class to be certified. (Opp. at 19.) Failing to respond to this argument, Plaintiffs "forfeit[] opposition" to it. *See Satanic Temple Inc. v. Young*, 681 F. Supp. 3d 685, 693 (S.D. Tex. 2023). Absent standing on these claims (Opp. at 19), class certification must be denied. *See Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 160 (N.D. Tex. 2007) (denying certification where lead plaintiffs lacked standing).

Even if Key West's standing were relevant (it is not), Plaintiffs have not carried their burden of proving it here. *See Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 n.21 (5th Cir. 2005) (plaintiff holds this burden on class certification). The Reply confirms that the only "evidence" supporting Key West's standing is the "certification" from its lead plaintiff motion that it purchased shares "on the day of the July 2021 SPO, at the $113 offering price." (Rep. at 15 (citing Dkt. 9-2.) They provide no documentation of that purchase, and nor do they cite any authority holding that merely certifying a purchase on the secondary offering date at the offering price is sufficient to prove a purchase in (as required for a Section 12(a)(2) claim), or traceable to (as required for a Section 11 claim), the SPO. (Opp. at 20; Dkt. 159.) Recognizing this, Plaintiffs hypothesize that "other Class members" might establish traceability (Rep. at 15), but that is irrelevant. *See Peak v. Zion Oil & Gas, Inc.*, 2020 WL 1047894, at *5 (N.D. Tex. Mar. 3, 2020). (plaintiffs "cannot magically grant [standing] to themselves by conjuring up a class member who can trace their shares"). Plaintiffs have failed to establish standing and no class can be certified.

**III.    CONCLUSION**

For the reasons discussed above, Plaintiffs' Motion should be denied.

Dated: October 25, 2024

**KATTEN MUCHIN ROSENMAN LLP**

*/s/ Bruce G. Vanyo*
Bruce G. Vanyo (admitted *pro hac vice*)
Christina L. Costley (admitted *pro hac vice*)
Paul S. Yong (admitted *pro hac vice*)
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: (310) 788-4400
Fax: (310) 788-4471
bruce@katten.com
christina.costley@katten.com
paul.yong@katten.com

Eric R. Hail
State Bar No. 24047579
Ted A. Huffman
State Bar No. 24089015
Megan C. McKennon
Texas State Bar No. 24102184
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
eric.hail@katten.com
ted.huffman@katten.com
megan.mckennon@katten.com

*Counsel for Defendants Natera, Inc., Steve Chapman, Michael Brophy, Matthew Rabinowitz, Paul Billings, Roy Baynes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, James I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena*

**O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
Danny S. Ashby
State Bar No. 01370960
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901
dashby@omm.com

Jonathan Rosenberg (admitted pro hac vice)
jrosenberg@omm.com
1301 Avenue of the Americas, 17th Floor
New York, New York 10019
T: (212) 326-2000
F: (212) 326-2061

*Counsel for Defendants Morgan Stanley & Co.
LLC, Goldman Sachs & Co. LLC, Cowen and
Company, LLC, SVB Leerink LLC, Robert W.
Baird & Co., BTIG, LLC, and Craig-Hallum
Capital Group LLC*

## CERTIFICATE OF SERVICE

I, Bruce G. Vanyo, hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on October 25, 2024 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.

/s/ Bruce G. Vanyo