# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § § § | Case No. 1:22-cv-00398-DAE |
| Plaintiff, | § § § | |
| v. | § § | |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | § § § § § § | |
| Defendants. | § § § | |

## UNDERWRITER DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION

**O'MELVENY & MYERS LLP**

2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

1301 Avenue of the Americas, Suite 1700
New York, NY 10019
T: (212) 326-2000
F: (212) 326-2061

*Counsel for Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group LLC*

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group, LLC (collectively, the "Underwriters," and each an "Underwriter") respectfully make the following objections to the Report and Recommendation (the "R&R") entered in this matter on January 28, 2025.  (ECF No. 170.)  For the reasons stated below, the R&R should not be followed, and the Court should deny class certification of Plaintiffs' Section 12(a)(2) Securities Act claim against the Underwriters.

## PRELIMINARY STATEMENT

Plaintiffs' sole claim against the Underwriters is under Section 12(a)(2) of the Securities Act of 1933.  Am. Compl. ¶¶ 293–304.  Plaintiffs base that claim on allegations that the offering materials for Natera's July 2021 secondary public offering (the "SPO") failed to disclose that 11% of Natera's revenues for its non-invasive prenatal test, Panorama, were submitted by a third-party payment processor, My Genome My Life (MGML), that had ties to a former Natera employee, and that Natera's diagnostic order form "made microdeletions testing a default selection" when patients ordered Panorama testing.  *Id.* ¶¶ 13–14, 275.  Plaintiffs do not allege that any of Natera's reported Panorama revenues were inaccurate, but rather that the omission of this diagnostic order form information rendered those reported revenue amounts misleading.

A Section 12(a)(2) claim requires a plaintiff to have purchased shares directly in the offering at issue.  15 U.S.C. § 77l(a)(2).  As relevant here, that means Plaintiffs must establish that they made a direct purchase of Natera shares in the SPO from an Underwriter.  *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 928 (S.D. Tex. 2017) (stating Section 12(a)(2) allows "'the person purchasing' a security from a statutory seller to sue for misrepresentations connected with the sale"), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019).  This is a crucial threshold issue that Plaintiffs must prove to have standing to pursue a Section 12(a)(2) claim.  *Id.* at 888 (noting "[a] court lacks power to decide a claim that a plaintiff lacks standing

to bring" and therefore the "plaintiff must demonstrate standing for each claim he seeks to press" (citation omitted)); *Peak v. Zion Oil & Gas, Inc.*, 2020 WL 1047894, at *1 (N.D. Tex. Mar. 3, 2020) (dismissing "the Securities Act claims for lack of standing").  And since Plaintiffs cannot bring their Section 12(a)(2) claims, their claims are not "typical" as required to certify the purported class asserting those claims.  *Levitin v. A Pea In The Pod, Inc.*, 1997 WL 160184, at *5 (N.D. Tex. Mar. 31, 1997) (concluding that plaintiff's "§ 12[(a)](2) claim is not typical of those of the purported class, because [plaintiff] is unlikely to have standing to sue the defendants under § 12[(a)](2)").

Neither Plaintiff has met that burden here.  The court-appointed lead Plaintiff BAPTL admitted that it did not purchase shares in the SPO, and additional plaintiff Key West did not proffer evidence of its alleged purchase in the SPO from an Underwriter.  The Court therefore should not follow the R&R, but rather deny class certification of the Section 12(a)(2) claim against the Underwriters.

## LEGAL STANDARD

This Court's review is *de novo*.  28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" for dispositive motions); *see also Ferguson v. Texas Farm Bureau Bus. Corp.*, 2018 WL 1392704, at *1 (W.D. Tex. Mar. 20, 2018) (noting motions for class certification are dispositive motions for which "parties are entitled to *de novo* review" of objected-to dispositions).

## OBJECTIONS

Section 12(a)(2) standing is "limited to shareholders who acquired securities directly in the initial offering; it is not sufficient to allege that the shares can be 'traced back' to the offering."  *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 159 (N.D. Tex. 2007); *see also Caifa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) ("[C]laims

under Section 12(a)(2) may be brought by those who have purchased securities in 'initial public offerings' but not by those who purchased securities in a 'secondary market.'" (citation omitted)).  The Court should deny class certification of the Section 12(a)(2) claim against the Underwriters because Plaintiffs have (i) failed to establish standing and (ii) not met their threshold burden under Rule 23 to show that their claims are typical of the class claims.  Fed. R. Civ. P. 23(a); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d at 932 (stating that when plaintiff "does not have individual standing to assert a claim [it] may not do so even if [it] meets the other Rule 23(a) requirements").[1]

First, BAPTL—the only court-appointed lead Plaintiff—has failed to establish standing by showing that it purchased shares in the SPO from the Underwriters.  BAPTL admitted during deposition that it did not purchase any shares in the SPO, much less that it did so from any of the Underwriters.  Indeed, BAPTL waived any argument as to BAPTL's standing to bring the Section 12(a)(2) claim by failing to respond in support when Defendants contested BAPTL's standing during class certification briefing.  (*See* ECF No. 162 at 10.)  BAPTL thus indisputably lacks standing to bring a Section 12(a)(2) claim against the Underwriters and class certification should be denied.  Because Section 12(a)(2) standing is a key class certification gating issue, beyond showing that the class representatives are typical, the R&R should be rejected on this basis alone.  *See Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 (5th Cir. 2002) ("[S]tanding is an inherent prerequisite to the class certification inquiry." (cleaned up)); *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d at 160 (dismissing case where lead plaintiffs lacked standing, stating that while "the Class may well include unnamed class members who have standing to pursue claims under sections 11 and 12(a)(2), none of those putative class members is a named plaintiff"); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020)

---

[1] The Supreme Court recently granted certiorari on the question whether a class can be certified where non-lead class members were not injured as required to support Article III standing. *See Lab. Corp. of Am. Holdings v. Luke Davis, et al.*, No. 24-304 (U.S. Jan. 24, 2025).

3

(stating in FCPA case that "if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise").

Second, BAPTL's lack of standing also means that its claims are not typical of the class, as required for certification. *See Levitin v. A Pea In The Pod, Inc.*, 1997 WL 160184, at *5 (concluding that, since plaintiff lacks Section 12(a)(2) standing, her Section 12(a)(2) claims are not typical for class certification purposes); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 310 F. Supp. 2d 819, 859 (S.D. Tex. 2004) (stating that, for Section 12(a)(2) claims, "the class representative(s) must be actual purchasers from their immediate sellers").

The R&R nevertheless recommends that this Court certify a Section 12(a)(2) class against the Underwriters based on the alleged standing of additional Plaintiff Key West. That recommendation is wrong because Key West also failed to carry its burden of proving standing.

The only evidence supporting Key West's standing is its "certification" included as an exhibit to Key West's lead plaintiff motion (which was later dismissed when the Court appointed BAPTL as lead (*see* ECF No. 36)) that it purchased 389 shares on the day of the SPO at the $113 offering price. (R&R at 24 (citing ECF No. 9-2).) But the certification contains no information indicating that Key West made this purchase from any Underwriter, only that "Key West purchased Natera shares on the day of the July 21 SPO." (*See* R&R at 24.) And given the volume of other shares on the market from the prior offering (here, 31,915,724 shares) (ECF No. 159), "even alleging that someone bought shares on the day of the . . . [o]ffering at the offering price is inadequate to establish statutory standing [under either Section 11 or Section 12(a)(2)] . . . . , due to the significant possibility that shares purchased originated from the prior offering but were being traded at the secondary offering price." *Jedrzeczyk v. Skillz Inc.*, 2022 WL 2441563,

at \*7 (N.D. Cal. July 5, 2022).[2]  In other words, because Natera's SPO amounted to only 14% of its outstanding shares (ECF No. 159), Key West has not proved that its purchase originated from the SPO, even if at the SPO price, let alone from an Underwriter.

While Key West separately alleges in the Amended Complaint at paragraphs 251 and 300 that it made its 389-share purchase from Morgan Stanley, it provided no evidence in its class certification briefing or during the class certification hearing to support that allegation, nor does it even state that in its "certification."  And Key West has not made even an allegation that it purchased SPO shares from any of the other six Underwriters.  *See Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 712–13 (S.D. Ohio 2010) (finding affidavit stating that plaintiff purchased shares from a single underwriter was insufficient to sustain claims "against all of the [other] Underwriter Defendants" and dismissing claim against other underwriter defendants); *see also Levitin v. A Pea In The Pod, Inc.*, 1997 WL 160184, at \*5–7 (allowing class certification where plaintiff provided "uncontroverted evidence" showing purchase from specific underwriter, but denying class certification as to other sellers).

Neither of the two cases relied on in the R&R—*Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498 (5th Cir. 2005), and *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736 (1975)—addresses Section 12(a)(2) standing.  *Krim* does not mention Section 12(a)(2) at all, and *Blue Chip Stamp* states only that recovery under Section 12(a)(2) is limited to the "person purchasing"

---

[2] Even plaintiffs bringing claims under Section 11 of the Securities Act, who are only required to show the purchase of shares "traceable" to the offering at issue, often cannot prove standing in the secondary offering context. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106–09 (9th Cir. 2013) (holding that plaintiffs' allegations that they purchased shares traceable to issuance did not give rise to traceability where multiple registration statements issued and describing difficulties with tracing); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at \*5 (S.D. Tex. July 6, 2016) (describing the "often impossible" task of tracing shares where multiple issuances and dismissing claims); *see also Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496–97 (5th Cir. 2005) (noting that the "traceability requirement is satisfied, as a matter of logic, when stock has only entered the market via a single offering" and declining to permit "statistical tracing" to allow plaintiffs standing where the alleged offering was 90% of shares available in the market).

a security issued in the offering, as opposed to those who might have Section 11 standing by later "acquire[ing]" that security.  Neither case changes the Section 12(a)(2) standing analysis or provides any basis to ignore Plaintiffs' failure to meet their burden of showing standing to maintain such a claim against the Underwriters.

## CONCLUSION

For these reasons, the Underwriter Defendants respectfully request that the Court deny Plaintiffs' motion for class certification of a Section 12(a)(2) claim against the Underwriters.

Dated:  February 21, 2025

O'MELVENY & MYERS LLP

By: /s/ *Danny S. Ashby*

Danny S. Ashby
Texas Bar No. 01370960
dashby@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

Jonathan Rosenberg (*pro hac vice*)
jrosenberg@omm.com
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
T: (212) 326-2000
F: (212) 326-2061

*Counsel for Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group LLC*

**CERTIFICATE OF SERVICE**

I, Danny S. Ashby, hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on February 21, 2025 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.

*/s/ Danny S. Ashby*