**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**FILED**

March 19, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg _____
DEPUTY

JOHN HARVEY SCHNEIDER, Individually
and on Behalf of All Others Similarly
Situated,

        Plaintiff,

    v.

NATERA, INC., STEVE CHAPMAN,
MICHAEL BROPHY, MATTHEW
RABINOWITZ, and RAMESH
HARIHARAN,

        Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 1:22-cv-00398-DAE

**REPLY BRIEF IN FURTHER SUPPORT OF UNDERWRITER DEFENDANTS'**
**OBJECTIONS TO REPORT AND RECOMMENDATION**


**O'MELVENY & MYERS LLP**

2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

1301 Avenue of the Americas, Suite 1700
New York, NY 10019
T: (212) 326-2000
F: (212) 326-2061

*Counsel for Defendants Morgan Stanley &*
*Co. LLC, Goldman Sachs & Co. LLC, Cowen*
*and Company, LLC, SVB Leerink LLC,*
*Robert W. Baird & Co., BTIG, LLC, and*
*Craig-Hallum Capital Group LLC*

The Underwriters[1] respectfully submit this reply brief in further support of their objections (ECF No. 172, the "Objections") to the R&R entered on January 28, 2025 (ECF No. 170).

## ARGUMENT

The Underwriters have shown that the Court should deny Plaintiffs' motion for class certification of their Section 12(a)(2) claim against the Underwriters because no named Plaintiff has proved standing to assert such a claim:  (i) BAPTL, the court-appointed lead Plaintiff, admittedly did not purchase shares in the SPO; and (ii) additional Plaintiff Key West has failed to provide any evidence to support its allegation that it purchased shares in the SPO from Morgan Stanley, a statutory seller.  (Obj. at 2–6.)  Plaintiffs therefore have not met the threshold Section 12(a)(2) claim requirement of showing that they made a direct purchase of Natera shares in the SPO from an Underwriter.  *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 928 (S.D. Tex. 2017) (stating Section 12(a)(2) allows "the person purchasing a security from a statutory seller to sue for misrepresentations connected with the sale"), *aff'd on other grounds sub nom. Police and Fire Ret. Sys. of City of Detroit Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019).  That lack of standing renders Plaintiffs inadequate class representatives.  *See In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 310 F. Supp. 2d 819, 859 (S.D. Tex. 2004) (stating that for Section 12(a)(2) claims, "the class representative(s) must be actual purchasers from their immediate sellers" and noting that representative must be "qualified" to maintain claims in event "class is certified").  And it also means that Plaintiffs' claim is not typical of the class, as required for certification.  *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d at 932 (noting that plaintiff cannot assert claims "on behalf of a class of persons similarly situated" absent individual standing); *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 160 (N.D. Tex. 2007) (noting "a plaintiff who lacks

---

[1] The Underwriters include defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co., LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group, LLC.  Capitalized terms not otherwise defined here have the meanings given to them in the Objections.

standing to sue a defendant may not acquire such status through class representation").

None of the four arguments in Plaintiffs' response to the Underwriters' Objections (ECF No. 174, the "Response") overcomes this dispositive failure of proof.

*First*, Plaintiffs are wrong that they are not required to establish standing at the class certification stage. (Resp. at 4–6.) The Fifth Circuit held in *Rivera v. Wyeth Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002), that standing is an "inherent prerequisite" to class certification. And it is of no moment that *Rivera* addressed Article III standing rather than Section 12(a)(2) statutory standing. In *In re Plains All American Pipeline, L.P.*, for example, where the court similarly dismissed a Section 12(a)(2) claim for lack of subject-matter jurisdiction, the court noted that if the plaintiffs do "not have individual standing to assert a claim, [they] may not do so even if [they] meet[] the other Rule 23(a) requirements." 245 F. Supp. 3d at 932–33.[2] Also unavailing is Plaintiffs' reliance on *In re Cobalt International Energy, Inc.*, 2016 WL 215476, at *10 (S.D. Tex. Jan. 19, 2016), where the court simply found that the plaintiffs had pleaded sufficient allegations to survive Rule 12(b)(6) dismissal. (Resp. at 5–6.) Unlike the pleading stage, the class-certification stage requires *proof*, not just allegations, of standing, as Plaintiffs' own cases suggest. *See Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *2 (D. Ariz. July 17, 2009) (holding plaintiff had submitted sufficient proof of Section 12(a)(2) standing at class certification stage); *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at *6 (D.N.J. Apr. 23, 2007) (noting that plaintiff "produced evidence" of standing at class certification stage). While Plaintiffs state that the Underwriters did not seek discovery into Key West's alleged purchase (Resp. at 7–8), any such discovery was rendered unnecessary by Plaintiffs' failure to submit any testimonial or documentary evidence—either with their class certification motion or even in their reply papers on that motion—supporting their Section 12(a)(2) claim standing allegations.

---

[2] The plaintiffs in the out-of-circuit case cited in the Response ultimately dropped their request for class certification on their Section 12(a)(2) claim, after defendants challenged class certification by arguing that lead plaintiffs were atypical. *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 40 (D. Mass. 2003); Case No. 01-cv-10911, ECF No. 99 at 21 (July 30, 2003).

*Second*, Plaintiffs have not met their burden to prove Key West's standing by cobbling together (i) Key West's sworn certification that it purchased shares on the day of the SPO at the $113 offering price, with no mention of the required statutory seller; and (ii) the complaint's allegation that Key West purchased the shares from Morgan Stanley.  (Obj. at 4–5.)  Even assuming that Key West's certification qualifies as evidence, it provides only that "Key West purchased Natera shares on the day of the July 21 SPO."  (*Id.* at 4 (quoting R&R at 24).)  As the Underwriters have explained, in light of the volume of Natera shares on the market from the prior offerings (31,915,724 shares), "even alleging that someone bought the shares on the day of the . . . [o]ffering at the offering price is inadequate to establish statutory standing [under Section 12(a)(2)] . . . due to the significant possibility that shares purchased originated from the prior offering[.]"  (*Id.* (quoting *Jedrzeczyk v. Skillz Inc.*, 2022 WL 2441563, at *7 (N.D. Cal. July 5, 2022).)  And Plaintiffs do not plug the statutory-seller hole by merely *alleging* in the complaint that Key West made its purchase of 389 shares from Morgan Stanley, because a mere allegation is proof of nothing.  Plaintiffs' out-of-circuit cases do not hold otherwise, because the plaintiffs in those cases either (i) undisputedly purchased in the offering,[3] or (ii) produced the type of concrete evidence showing they purchased shares from an underwriter in the offering that Plaintiffs here lack.[4]

*Third*, Plaintiffs' concession that they have not purchased shares from each Underwriter

---

[3] *See Freedland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 44 (D.D.C. 2006) (holding at class certification stage that named plaintiff had standing to pursue Section 12(a)(2) claim where no dispute that he "bought his own shares during the Secondary Offering," and not in the aftermarket).

[4] In *Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *2, for example, the court found sufficient an investment transaction detail document that the named plaintiff produced showing a stock purchase from an underwriter at the offering price on the offering date, *see Tsirekidze v. Sollitto, et al.*, Case No. 07-cv-2204, ECF No. 263-2 (D. Ariz Mar. 27, 2009).  And in *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at *6, the court found sufficient plaintiff's declaration setting forth "transactions in [issuer] securities," including a purchase from an underwriter in the offering, *see Smith v. Suprema Specialties, Inc.*, Case No. 02-cv-168, ECF No. 219 (D.N.J. Sept. 15, 2006).

is a further ground for denying class certification.  In arguing otherwise, Plaintiffs cite a case holding only that a purchase from each underwriter is not required *at the pleading stage*.  (Resp. at 8 (citing *In re WorldCom, Inc., Sec. Litig.*, 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003)).)  But as the Underwriters showed (Obj. at 5), at least one other court has come to the opposite conclusion.  *See Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 712–13 (S.D. Ohio 2010) (finding at pleading stage affidavit stating that plaintiff purchased shares from single underwriter defendant not enough to sustain claims against other underwriter defendants).  Plaintiffs fail even to address *Fifth Third* in their Response.  They instead try to distinguish *Levitin v. A Pea In The Pod, Inc.*, 1997 WL 160184, at *5–7 (N.D. Tex. Mar. 31, 1997), by arguing that there, unlike here, the proposed class representative "admit[ted] that she did not purchase her stock from the Underwriter Defendants." (Resp. at 5.)  But Plaintiffs ignore that the court in *Levitin* certified the class only against "the underwriter who passed title of the stock to" the other proposed class representative—not as to the other alleged sellers.  *Levitin*, 1997 WL 160184, at *5.  Here, Plaintiffs have provided no proof of a purchase from Morgan Stanley and concede that they have not purchased from any other Underwriter.  Plaintiffs therefore cannot certify a class against any of the Underwriters.

*Fourth*, Plaintiffs' argument that they need not establish that both lead Plaintiff BAPTL and Key West have standing to bring their Section 12(a)(2) claim ignores that *neither* Plaintiff has established standing.  BAPTL testified that it did not purchase Natera shares in the SPO from an Underwriter, and Key West has still failed to offer evidence of such a purchase, despite having multiple opportunities to do so.  The cases Plaintiffs cite (Resp. at 8–9) merely suggest that a lead plaintiff's lack of standing is not dispositive where another named plaintiff has standing sufficient to represent a class or subclass.  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (at least one named plaintiff had standing on each cause of action); *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have

distinct interests or claim.").  That is not the case here.

## CONCLUSION

For these reasons and the reasons explained in the Underwriters' Objections, the Underwriters respectfully request that the Court deny Plaintiffs' motion for class certification of the Section 12(a)(2) claim against the Underwriters.

Dated:  March 18, 2025

O'MELVENY & MYERS LLP

By: /s/ *Danny S. Ashby*
Danny S. Ashby
Texas Bar No. 01370960
dashby@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

Jonathan Rosenberg (*pro hac vice*)
jrosenberg@omm.com
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
T: (212) 326-2000
F: (212) 326-2061

*Counsel for Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group LLC*

## **CERTIFICATE OF SERVICE**

I, Danny S. Ashby, hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on March 18, 2025 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.

*/s/ Danny S. Ashby*