IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § § | No. 1:22-CV-398-DAE |
| Plaintiffs, | § § | |
| v. | § § | |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | § § § § § | |
| Defendants. | § § | |

ORDER DENYING NATERA DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court is Defendants Natera, Inc. ("Natera" or the "Company"), Steve Chapman, Michael Brophy, Matthew Rabinowitz, Paul Billings, Roy Barnes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, Jamkes I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena's (collectively, "the Natera Defendants") Motion for Judgment on the Pleadings. (Dkt. # 133.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of memoranda filed in support of and in opposition to the Motion, the Court—for the reasons that follow—**DENIES** the Natera Defendants' motion.

<u>FACTUAL BACKGROUND</u>

Lead Plaintiff British Airways Pension Trustees Limited and additional plaintiff Key West Police & Fire Pension Fund (together, "Plaintiffs") filed this federal securities class action on behalf of those who purchased or otherwise acquired the stock of Natera between February 26, 2020, and March 14, 2022 (the "Class Period"). (Dkt. # 60 at 5.)

Plaintiffs alleged claims against Defendants for violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and 78t-1(a), and the rules and regulations promulgated thereunder, including United States Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. (See <u>id.</u> at 1.) Plaintiffs also asserted claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k, 77l(a)(2), and 77o. (<u>Id.</u>)

I.    <u>The Company</u>

Natera, a genetic testing company headquartered in Austin, Texas, "develops, markets, and commercializes a range of genetic tests in the areas of women's health, organ health, and oncology." (Dkt. # 60 ¶¶ 1, 28.) This lawsuit originally concerned two of Natera's products: (1) Prospera, a non-invasive kidney

transplant rejection test,[1] and (2) Panorama, a non-invasive prenatal test ("NIPT").

(Id. ¶ 2.)  The lawsuit now only concerns Panorama.  (See Dkt. # 104.)

 Panorama, Natera's "flagship NIPT," screens for genetic

abnormalities and "can provide important information about a pregnancy, such as

indications of Down syndrome, as early as nine weeks into that pregnancy."  (Id. ¶

9.)  According to Plaintiffs, Natera added screening for microdeletions—"small,

missing parts of a chromosome that can adversely impact a baby's health and

development"—before the start of the Class Period.  (Id. ¶ 10.)  This additional

screening was "not required by any medical protocols" and was often not covered

by the patient's medical insurance.  (Id.)

 Plaintiffs allege that Defendants cultivated a misleading impression

that the increased revenue from Panorama sales "was the result of organically

growing demand."  (Id. ¶ 12.)  But this demand was actually driven by "deceptive

and improper business practices."  (Id.)  Natera did not disclose that it had close

ties to a third-party company, My Genome My Life, Inc. ("MGML"), which

submitted prior authorization requests on Natera's behalf.  (Id. ¶ 13.)  The "driving

force and architect of MGML" had "significant connections" with Natera's Vice

---

[1] After careful consideration, on September 11, 2023, the Court granted in part
Defendants' motion to dismiss and dismissed without prejudice Plaintiffs' claims
regarding Prospera.  (Dkt. # 104.)  The Court allowed Plaintiffs leave to amend
their complaint, but Plaintiffs chose not to amend.  (Id.)

President of Commercial Sales. (Id. ¶ 127–29.) Natera "benefitted from roughly $450,000 prior authorization submissions, many times submitted without regard for the underlying necessity, and sometimes after the subject test was performed, inflat[ing] Natera's revenue through overall volume growth." (Id.) Natera's requisition form for Panorama also automatically opted patients in for screening for one microdeletion,[2] "which created the impression that demand growth for microdeletion testing was organic, rather than the result of a default order form." (Id. ¶ 14.)

## II.    The Executive Defendants

Defendant Steve Chapman ("Chapman") served as Natera's Chief Executive Officer and as a director on Natera's Board throughout the Class Period.[3] (Id. ¶¶ 4, 29.) Defendant Michael Brophy ("Brophy") served as Natera's Chief Financial Officer. (Id. ¶ 30.) Defendant Matthew Rabinowitz ("Rabinowitz") co-founded Natera in 2003, served as its CEO from 2005 to 2018, and served as Natera's Executive Chairman during the Class Period. (Id. ¶ 31.) Defendant Paul Billings ("Billings") served as Natera's Chief Medical Officer and

---

[2] Panorama's order form contained an opt-*out* for the 22q.11.2 deletion (also known as DiGeorge syndrome) in its "Panorama Prenatal Panel Plus 22Q11.2." (Id. ¶ 145.)

[3] Before that, Chapman served as Natera's Chief Operating Officer and "led the Company's commercial entry into the NIPT market." (Id. ¶ 29.)

Senior Vice President of Medical Affairs until his resignation in December 2021.

(Id. ¶ 32.)  Chapman, Brophy, Rabinowitz, and Billings ("the Executive

Defendants," and together with Natera, "Defendants") were "directly involved in

preparing, reviewing, and approving the Company's public statements and

disclosures to the market."  (Id. ¶ 34.)

III.    The Insider Trading Defendants

Plaintiffs allege that Chapman, Brophy, and Rabinowitz ("the Insider

Trading Defendants") also sold shares of Natera common stock while in possession

of material nonpublic information, including material nonpublic information

"regarding the purported superiority of Prospera as compared to AlloSure and the

fact that the Company was using deceptive practices to increase its Panorama

revenues."  (Id. ¶ 229.)  "The Insider Trading Defendants learned of or were

provided" the material nonpublic information "through, among other ways, their

control of Natera as the Company's senior executives, receipt of internal reports

and studies, and preparation of the false and misleading statements at issue."  (Id. ¶

231.)

IV.    Securities Act Defendants

Plaintiffs provide a list of directors or officers of Natera who signed

the Registration Statement filed with the SEC: Chapman, Brophy, Rabinowitz, Roy

Baynes ("Baynes"), Monica Bertagnolli ("Bertagnolli"), Roelof F. Botha

("Botha"), Rowan Chapman ("R. Chapman"), Todd Cozzens ("Cozzens"), James I. Healy ("Healy"), Gail Marcus ("Marcus"), Herm Rosenman ("Rosenman"), and Jonathan Sheena ("Sheena") (collectively, the "Securities Act Defendants"). (Id. ¶¶ 254–55.) Each of the Securities Act Defendants had the duty to: (1) "exercise due care and diligence and the duty of full and candid disclosure of all material facts" related to Natera, (2) "exercise reasonable care and prudent supervision over the dissemination of information concerning the business, operations, and financial reporting of Natera," (3) "disseminate promptly complete, accurate, and truthful information with respect to Natera," (4) "correct any previously issued statements that had become materially misleading or untrue," and (5) "disclose any trends that would materially affect Natera's earnings and present and future operating results." (Id. ¶¶ 256–58.)

## V.     The Underwriter Defendants

Plaintiffs have also alleged liability on the part of Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group LLC (together, the "Underwriter Defendants"), who "served as the underwriters of the July 2021 SPO and shared more than $33 million in fees paid to the underwriting syndicate." (Id. ¶¶ 259–66.) According to Plaintiffs, the offering documents for

Natera's July 2021 secondary public offering contained materially untrue statements and material omissions regarding Panorama.  (Id. ¶¶ 271–84.)

VI.    Pertinent Events

Natera's stock price more than tripled from 2020 to late 2021.  (Id. ¶ 15.)  In July 2021, Natera "sold investors 5.175 million shares of its common stock at $113 per share in a secondary public offering," which yielded approximately $585 million in gross proceeds.[4]  (Id. ¶ 16.)  This came on the heels of a public offering in September 2020 that had generated about $287 million in gross proceeds.  (Id.)  During the Class Period, Chapman, Brophy, and Rabinowitz "unloaded over $137 million worth of Natera common stock through insider sales."  (Id. ¶ 17.)

On March 9, 2022, an investigative report by Hindenburg Research ("Hindenburg Report") was released.  (Id. ¶ 18.)  Hindenburg Research "detailed Natera's use of MGML to submit prior authorizations" and also noted that Natera "was propping up microdeletion demand by forcing patients to opt out of receiving such screenings."  (Id.)  Natera's stock price dropped 33%.  (Id.)

Just five days later, on March 14, 2022, a federal jury awarded CareDx $44.9 million in damages after finding that Natera "intentionally and

---

[4] The offering was authorized by Defendants Chapman, Brophy, Rabinowitz, and the rest of Natera's Directors. (Id. ¶ 16.)

willfully misled the public by falsely marketing Prospera as more accurate than, and superior to, AlloSure." (Id. ¶ 19.)  Natera's common stock price plunged again, this time by 22%. (Id.)  "By the end of the Class Period, Natera's stock had fallen more than 70% from its Class Period high of $129.09, erasing over $8.5 billion in shareholder value." (Id. ¶ 20.)

## PROCEDURAL BACKGROUND

On September 11, 2023, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' amended complaint. (Dkt. # 104.)  The Court determined that Plaintiffs' Panorama-related claims under Section 10(b) of the Exchange Act and 17 CFR § 240.10b-5 against Natera, Chapman, Brophy, and Rabinowitz can proceed, as can Plaintiffs' Panorama-related claims under Section 20(a) and 20A of the Exchange Act against Chapman, Brophy, and Rabinowitz. (Id. at 31.)  Similarly, the Court held that Plaintiffs' Panorama-related claims under Sections 11, 12(a)(2), and 15 of the Securities Act may proceed. (Id.)  The Court, however dismissed without prejudice Plaintiffs' Prospera-related claims, and all claims against Billings. (Id.)

On May 30, 2024, the Natera Defendants filed the instant motion for judgment on the pleadings. (Dkt. # 133.)  The Natera Defendants also filed a request for judicial notice and consideration of documents incorporated by reference in support of their motion. (Dkt. # 134.)  On June 21, 2024, Plaintiffs

filed an opposition to the motion for judgment on the pleadings and an opposition to the request for judicial notice.  (Dkts. ## 140, 141.)  On July 9, 2024, the Natera Defendants filed a reply in support of their motion and their request for judicial notice.  (Dkts. ## 146, 147.)

## LEGAL STANDARDS

The Natera Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure which provides that "[a]fter the pleadings are closed—but early enough not the delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  Hebert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted); Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312–13 (5th Cir. 2002).  "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001) (citing St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." Great Plains Tr., 313 F.3d at 312 (quoting Hughes, 278 F.3d at 420). The standard applied under Rule 12(c) is the same as that applied under Rule 12(b)(6). Ackerson v. Bean Dredging, LLC, 589 F.3d 196, 209 (5th Cir. 2009); Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Cid. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. Bowlby v. City of Aberdeen, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir.

2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "But where the well-

pleaded facts do not permit the [C]ourt to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the

pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)).

         In addition, when alleging claims under Section 10(b) of the

Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff must:

   (1) specify each statement alleged to have been misleading, i.e.,
       contended to be fraudulent;

   (2) identify the speaker;

   (3) state when and where the statement was made;

   (4) plead with particularity the contents of the false representations;

   (5) plead with particularity what the person making the misrepresentation
       obtained thereby;

   (6) explain the reason or reasons why the statement is misleading, i.e.,
       why the statement is fraudulent.

ABC Arbitrage Plaintiffs Grp. v. Tchuruk, 291 F.3d 336, 350 (5th Cir. 2002).

Further, if an allegation regarding a statement or omission is "made on information

and belief, the plaintiff must (7) state with particularity all facts on which that

belief is formed, i.e., set forth a factual basis for such belief."  Id. (citing 15 U.S.C.

§ 78u–4(b)(1)).  According to the Fifth Circuit, "this is the 'who, what, when,

where, and how' required under Rule 9(b) in our securities fraud jurisprudence and under the PSLRA."  Id.

## DISCUSSION

The Natera Defendants contend that facts have emerged which undermine the reliability of the Hindenberg Report, which the Court previously found was sufficiently reliable at that stage of the litigation to support Plaintiffs' claims that Natera's revenue during the putative class period was artificially inflated by improper billing practices.  (Dkt. # 133 at 8.)  Given this, the Natera Defendants assert that Plaintiffs' allegations do not support a claim for securities fraud and the Court should not credit the legal conclusions in the Hindenberg Report.  (Id. at 10.)  The Natera Defendants further argue that Plaintiffs have failed to plead that any individual defendant acted with the required state of mind to support a securities fraud claim, nor have they plead loss causation.  (Id.)

In response, Plaintiffs insist that the Natera Defendants' motion is nothing more than "a thinly-veiled and baseless request that the Court reconsider" its prior order on the motion to dismiss.  (Dkt. # 140 at 6.)  Plaintiffs contend the motion is nearly verbatim to the arguments that the Court heard and rejected in its prior order.  (Id.)  Additionally, Plaintiffs maintain that the Natera Defendants cannot meet the standard for judgment on the pleadings because materials facts are in dispute in this case.  (Id. at 7.)

The Court will first address the Natera Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference (Dkt. # 134) before turning to their motion for judgment on the pleadings (Dkt. # 133).

I.    Request for Judicial Notice/Consideration

When reviewing Rule 12 motions, "a court must limit itself to the contents of the pleadings, with two exceptions." In re BP p.l.c. Sec. Litig., 843 F. Supp. 2d 712, 745 (S.D. Tex. 2012). First, courts may consider certain documents attached to the motion to dismiss; a court's consideration is restricted, however, "to documents that are referenced in the complaint and are central to the plaintiffs' claim." Id. (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000) and Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003)). "Second, in securities cases, courts may take judicial notice of the contents of public disclosure documents that the law requires be filed with governmental agencies, such as the SEC, and that are actually filed with the agency."   Id. (citing Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018 n.1 (5th Cir. 1996)). But these documents may be considered only to determine what statements they contain, not for proving the truth of their contents.  Id.

Defendants present four exhibits in support of their motion for judgment on the pleadings: (1) the Hindenberg Report (Exhibit 1); (2) Natera's

Form 10-K for 2022 (Exhibit 3)[5]; and (3) Non-Public Letters from the SEC to Defendants and their Counsel (Exhibits 4 and 5).  (Dkt. # 134.)  Defendants claim that all the exhibits are subject to judicial notice and/or are incorporated by reference into the Amended Complaint.  (Id.)

The Court finds that the Hindenberg Report (Exhibit 1) is cited repeatedly throughout the Amended Complaint and appears central to Plaintiffs' claims; the Court will thus consider the Hindenberg Report (Exhibit 1).  Regarding Natera's Form 10-K for 2022 (Exhibit 3), the Natera Defendants seek judicial notice regarding the number of Natera's employees as contained in the document. (Dkt. # 134 at 11.)  The Court finds this SEC filing informs it of background facts regarding employee numbers and will therefore be judicially noticed in this case.

The Natera Defendants also seek judicial notice of Exhibit 4, a subpoena issued to Natera offered for the purpose of showing that the SEC sought documents from Natera pursuant to the requests identified therein.  (Dkt. # 134 at 12.)  Likewise, Exhibit 5 is a No-Action Letter sent by the SEC to Natera which is offered for the purpose of showing that the SEC disclosed that it would not commence an action against Natera following the conclusion of its investigation.

---

[5] In their reply to the request, the Natera Defendants withdrew their request for consideration of Natera's Form 10-Q for Q3 2022 (Exhibit 2), and the disclosures concerning an Ernst and Young ("EY") audit in Natera's Form 20-Ks for 2022 and 2023.  (Dkt. # 147 at 6 n.2.)

14

(Id. at 12–13.)  The Court will take judicial notice of both exhibits for the limited purpose offered by the Natera Defendants, specifically that an investigation occurred and was terminated without recommendation to the SEC of any enforcement action.  "The Court, however, stresses that this Court's notice of the SEC No-action Letter shall not be interpreted as the Court's determination that the SEC examined the very same matters presented to this Court or that the SEC lacked agency discretion to terminate the investigation even if the SEC did find that [Natera] violated securities provisions." In re Intelligroup Secs. Litig., 527 F. Supp. 2d 262, 274 n.2. (D.N.J. 2007).

II.    Motion for Judgment on the Pleadings

The elements of a securities-fraud claim under Section 10(b) and Rule 10b–5 are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, 552 U.S. 148, 157 (2008).

A.    Falsity

When stating "falsity," i.e., "material misrepresentation" element of his/her 10b–5 claim, a securities fraud plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1), (2).

      1.    <u>Hindenberg Report</u>

The Natera Defendants contend that "two judicially noticeable events have occurred since Defendants filed their motion to dismiss that render the allegations and conclusions in the Hindenberg Report implausible and unreliable." (Dkt. # 133 at 17.)  First, according to the Natera Defendants, "the SEC concluded a seventeen-month investigation into the claims made in the Hindenberg Report" and ultimately decided to take no-action as referred to in Exhibit 5.  (<u>Id.</u> at 17–18.) Second, the Natera Defendants assert that EY has issued two clean audit opinions for the period covered by the Hindenberg Report, certifying that Natera's financial results were accurate in all material respects.  (<u>Id.</u> at 18.)

First, the EY audit reports have not been judicially noticed as stated above and therefore the Natera Defendants ask the Court to consider evidence outside of the pleadings which the Court will not do.  Second, the Court agrees with Plaintiffs that the Court has already considered the Natera Defendants same or very similar arguments regarding the Hindenberg Report in its Order on the motion to dismiss.  The Court has already addressed the Natera Defendants' arguments regarding "the presumptive unreliability" of a short-seller report like the

16

Hindenburg Research report.  (Dkt. # 104 at 23.)  The Court already found it permissible for Plaintiffs to rely on short-seller reports to allege falsity at the motion-to-dismiss stage.  (Id. (citing Bond v. Clover Health Invs., Corp., 587 F. Supp. 3d 641, 668 (M.D. Tenn. 2022) (citing McIntire v. China MediaExpress Holdings, Inc., 927 F. Supp. 2d 105 (S.D.N.Y. 2013); Snellink v. Gulf Res., Inc., 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012)).)  "This is because the reliability of short-seller reports—here, the Hindenburg Research report—is a question of fact that the Court cannot resolve at this time."  (Id.)

The Court finds no need to depart from this decision in light of Exhibits 4 and 5 presented by the Natera Defendants in the instant motion because, at this stage of the litigation, these exhibits further suggest disputed facts regarding the Hindenberg Report's reliability which the Court will not yet consider.  The standard for a motion for judgment on the pleadings requires that facts not be in dispute.  See Hebert Abstract, 914 F.2d at 76.  And, in any case, the No-Action Letter specifically states that "this notice . . . must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation."  (Dkt. # 135-5.)  Still, moving forward, the Court notes convincing case law which suggests that "to the extent that open-market securities fraud complaints use as the source for adverse factual allegations about a public issuer a report by a short seller—an entity with an economic interest in

driving down the company's stock price—these allegations must be considered with caution." In re DraftKings Inc. Secs. Litig., 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023); see also Long Miao v. Fanhua, Inc., 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020) (collecting cases). The Court will keep this in mind in future stages of this litigation.

 2. Illegality

 The Natera Defendants next argue that Plaintiffs have failed to plead that Panorama revenue was inflated by illegal practices. (Dkt. # 133 at 20.) The Natera Defendants contend the relevant inquiry is whether Natera engaged in misconduct that caused its statements to investors to be false and not whether Natera engaged simply in misconduct. (Id.) The Natera Defendants assert that Plaintiffs have failed to adequately allege that a law or standard was violated and caused Natera's revenue to be inflated during the putative class period. (Id. at 21.)

 Plaintiffs respond that the Court has already considered a version of the Natera Defendants' argument in its Order on the motion to dismiss. (Dkt. # 140 at 18–19.) Additionally, Plaintiffs assert that the Natera Defendants could have presented this argument in its prior motion to dismiss as there has been no intervening change in the law or the pleadings. (Id. at 6.)

 The Court agrees with Plaintiffs—the Natera Defendants are attempting to take a second bite at the apple with this argument. The standard for

evaluating a motion under Rule 12(c) is "the same standard as a motion to dismiss under rule 12(b)(6) for failure to state a claim." Gentilello v. Rege, 627 F.3d 540, 543–44 (5th Cir. 2010). Thus, to the extent that the Natera Defendants' instant motion repeats similar arguments raised in their motion to dismiss, those issues have already been decided under the same standard that applies here.

In its Order on the motion to dismiss, the Court determined that

> Plaintiffs adequately allege that Defendants' repeated statements that Panorama was a key source of Natera's revenues ("[t]he increase in total revenues was driven primarily by sales of Natera's Panorama and Horizon tests"), made while concealing that Panorama revenues were inflated by deceptive practices—such as the inappropriate submission of prior authorizations by MGML—rendered those statements false or misleading. The same is true for Defendants' statements regarding microdeletions.

(Dkt. # 104 at 24.) The Natera Defendants have presented no real basis in their present motion to depart from that ruling. And, to the extent they contend that Plaintiffs have not pled an underlying illegal act with particularity, the Court notes that Plaintiffs have pled that Natera violated "potential anti-kickback laws." (Dkt. # 60 at 44, 48.) Although Plaintiffs could have pled these laws more specifically, the Court will not reconsider its prior ruling especially given that the Natera Defendants already had an opportunity to raise this issue in their motion to dismiss but did not do so at that time.

19

B.    <u>Scienter</u>

The Natera Defendants contend that Plaintiffs have failed to plead particularized allegations supporting a strong inference of scienter regarding Chapman and Brophy's statements in this case.  (Dkt. # 133 at 23.)  The Natera Defendants further assert that the "special circumstances" pleading doctrine is not applicable in this case because it does not apply to companies like Natera with more than 60 employees.  (<u>Id.</u>)

For the same reasons discussed above, the Court declines to reconsider any similar arguments already asserted by the Natera Defendants in their motion to dismiss.  The Court has already found that "Plaintiffs have supported a cogent inference of scienter, but only as to Chapman, Brophy, and Rabinowitz."  (Dkt. # 104 at 25.)  Regarding the Natera Defendants' new argument that the "special circumstances" doctrine does not apply because Natera has more than 60 employees, they failed to raise it in their motion to dismiss and the Court finds no basis to consider the issue now.  To the extent it is applicable, the Court will consider the merits of this argument at a later stage of the case.

C.    <u>Loss Causation</u>

The Natera Defendants again assert that Plaintiffs have failed to allege loss causation.  (Dkt. # 133 at 25.)  They argue that Plaintiffs have not identified any statement by Natera revealing that its revenue was inflated for any reason, and

therefore they have not alleged any loss causation.  (Id.)  The Natera Defendants

further assert that courts have found that reliance on reports such as the

Hindenberg Report, written by an anonymous entity with financial incentives to

convince others to sell, is not a sufficient basis to constitute a corrective disclosure

and therefore there is no loss causation alleged in Plaintiffs' amended complaint.

(Id.)

 For a complaint to adequately plead loss causation, "it need only set

forth 'a short and plain statement of the claim showing that the pleader is entitled

to relief' and provide the defendant with 'fair notice of what the plaintiff's claim is

and the grounds upon which it rests.'"  Pub. Emps. Ret. Sys. of Mississippi, Puerto

Rico Tchrs. Ret. Sys. v. Amedisys, Inc., 769 F.3d 313, 320 (5th Cir. 2014) (citing

Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005)).  The complaint must

include "sufficient allegations the misrepresentations actually *caused* plaintiffs'

loss—it is insufficient to simply allege the misrepresentation 'touches upon' a later

economic loss."  In re ArthroCare Corp. Sec. Litig., 726 F. Supp. 2d at 725–26; see

also Congregation of Ezra Sholom v. Blockbuster, Inc., 504 F. Supp. 2d 151, 167

(N.D. Tex. 2007) ("To allege loss causation adequately, Plaintiffs must explicitly

allege a corrective disclosure—i.e., a statement that corrects a previous

misrepresentation or discloses a prior omission—that, when disclosed, negatively

affected the value of the security.").

The Court has already found that "Plaintiffs adequately plead loss causation: they allege that on March 9, 2022, the release of the Hindenburg Research report regarding Natera's Panorama sales and billing practices led to a 33% decline in Natera's stock price." (Dkt. # 104 at 26.) "And the stock did not 'sharply rebound' from this." (Id.) The Court declines to reconsider its findings given that any new arguments by the Natera Defendants could have been raised in prior briefing.

D.    <u>Secondary Liability Claims</u>

The Court also finds no need to reconsider its decision on Plaintiffs' secondary liability claims for the same reasons discussed above.

The Court thus finds no basis upon which to grant Defendants' motion for judgment on the pleadings and it will be denied.

CONCLUSION

For the reasons stated above, the Natera Defendants' Motion for Judgment on the Pleadings (Dkt. # 133) is **DENIED**.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, March 21, 2025.

_____
David Alan Ezra
Senior United States District Judge

22