**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, <br><br> Defendants. | Case No. 1:22-cv-00398-DAE |

**PLAINTIFFS' OPPOSED MOTION TO COMPEL THE NATERA DEFENDANTS
TO CONDUCT SEARCHES FOR CUSTODIAL DOCUMENTS RESPONSIVE TO
<u>PLAINTIFFS' DOCUMENT REQUESTS</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   RELEVANT FACTUAL BACKGROUND.....................................................................3

III.  ARGUMENT.......................................................................................................5

       A.    Defendants Are Attempting to Circumvent the Standard Discovery Process ................................................................................................6

       B.    Plaintiffs' Proposed Custodians and Search Terms Are Relevant..........................7

IV.  CONCLUSION...................................................................................................10

Class Representatives British Airways Pension Trustees Limited and Key West Police and Fire Pension Fund (collectively, "Plaintiffs") move pursuant to Federal Rule of Civil Procedure ("Rule") 37 and Local Civil Rule CV-7 for an order compelling Defendants Natera, Inc. ("Natera"), Steve Chapman, Michael Brophy, Matthew Rabinowitz, Roy Baynes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, James I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena (collectively, "Natera Defendants") to conduct searches for custodial documents responsive to Plaintiffs' document requests in all relevant sources using Plaintiffs' proposed custodians and search terms. Plaintiffs certify that the parties have met and conferred in an attempt to resolve the present issue but were unable to do so.

## I.    INTRODUCTION[1]

The Natera Defendants have broadly refused to take the essential step in civil litigation to collect and produce communications and documents of relevant employees based on search terms and custodians negotiated by the parties. This Motion seeks to compel them to undertake that fundamental action now, as the litigation enters the merits discovery phase.

This case involves claims under six separate causes of action against the 13 Natera Defendants for alleged violations of the federal securities laws based on deceptive business practices and public misrepresentations surrounding Natera's Panorama test that spanned more than two years. Discovery was bifurcated on defendants' request (Dkt. 115), with the first phase limited to "class certification and targeted merits discovery" ("Phase 1"), and full merits discovery ("Phase 2") occurring only if the Court granted class certification. Dkt. 128 at 2.

Prior to class certification, the scope of discovery was duly limited. While Plaintiffs'

---

[1]    Unless otherwise noted, all emphasis is added and all internal emphasis, quotations, and citations are omitted. Citations to "Hoey Decl., ¶__" are to the Declaration of Evan R. Hoey, filed herewith, and citations to "Ex. __" are to exhibits to the Hoey Declaration.

omnibus document requests ("RFPs"; Ex. 1) concern all alleged aspects of the Natera Defendants' conduct, the Natera Defendants refused to produce documents responsive to many of the RFPs, and only partially responded to the rest, citing Phase 1's limited scope. They also generally refused to collect internal custodial documents (e.g., emails, chat/text messages, and other work files), or to negotiate search terms or custodians with Plaintiffs.

Rather, for nearly all of their production, the Natera Defendants simply reproduced documents from a cache of files previously collected by a Special Committee of Natera's Board of Directors in an investigation into the Hindenburg Research report that allegedly concluded the class period in this case ("Board Investigation Documents"). That cache, collected before discovery here by counsel for the Special Committee, included files from just eight custodians. Nevertheless, the Natera Defendants insisted that these limited custodial documents satisfied their production obligations in Phase 1.

The Court granted class certification on March 21, 2025. This permitted the parties to engage in Phase 2, or full merits discovery. That same month, Plaintiffs proposed search terms and custodians to the Natera Defendants and sought to negotiate the scope and sources of their merits stage document collection. The Natera Defendants, however, replied that they would produce only "ancillary," non-custodial documents in Phase 2, and that they had substantially satisfied their obligation to produce documents responsive to Plaintiffs' RFPs through their Phase 1 production. After several exchanges, with two narrow exceptions, the Natera Defendants adamantly refuse to search for, collect, and produce custodial documents.

Plaintiffs' proposed custodians and search terms are tailored to this litigation and plainly relevant. The Natera Defendants should run them in all relevant document sources and produce responsive documents. To date, the Natera Defendants have hardly disputed relevance, quibbling

(wrongly) with just three proposed custodians, nor have they substantiated their claim that the proposed search parameters are unduly burdensome or disproportionate to the needs of this complex class action. With the Class certified for all claims, "[t]he discovery door has been flung wide open, and Plaintiffs should be allowed to probe inside." *Edwards v. McDermott Int'l, Inc.*, 2022 WL 1568279, at *3 (S.D. Tex. May 18, 2022). Respectfully, this Motion should be granted.

## II.    RELEVANT FACTUAL BACKGROUND

On February 29, 2024, Magistrate Judge Howell ordered a discovery schedule with a first phase limited to "class certification and targeted merits discovery," and full, merits discovery not occurring unless a class was certified. Dkt. 128 at ¶¶7, 9, 12. Phase 1 discovery ensued.

Aside from organizational charts and corporate and insurance policy documents, the Natera Defendants' Phase 1 production consisted mostly of reproduced Board Investigation Documents, which included certain custodial files. Ex. 2 at 2.[2] The Natera Defendants refused to run any custodial document searches, save for: (1) a search of Defendant Brophy's email and Google Chats for class certification-related documents; and (2) a search for documents concerning Plaintiffs (which yielded zero documents).[3] In total, the Natera Defendants assert that they produced around 60,000 documents in Phase 1. Hoey Decl., ¶4.[4] Only around 30,000 of these documents are from

---

[2]    The parties in this action were not involved in setting the search parameters for the Special Committee's collection, which drew from custodial files of just eight individuals at Natera, and certain central files. The custodians were Defendants Chapman, Brophy, and Rabinowitz, and Olesya Anisimova (Chief Accounting Officer), Lev Grodzinskiy (Vice President, Finance and Revenue Cycle), Phillip Grinnell (Chief Sales Officer), Ramesh Hariharan (General Manager, Women's Health), and Amar Kamath (former Vice President, Commercial Sales). Plaintiffs understand that the Special Committee used search terms to harvest emails and Google Chats (but no other custodial files), and used a time period of January 1, 2017 to August 3, 2022. Ex. 3 at 1.

[3]    *See* Ex. 4 at 2; Ex. 5.

[4]    Defendants in securities fraud class actions commonly produce many times this number of documents. *See, e.g.*, *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, No. 4:21-cv-02045 (S.D. Tex., filed Sept. 19, 2024), Dkt. 214 at ¶43 (defendants produced over 866,000 documents); *In re Apache Corp. Sec. Litig.*, No. 4:21-cv-00575 (S.D. Tex., filed Aug. 15, 2024), Dkt. 166 at ¶48 (defendants produced approximately 226,000 documents); *see also Erica P. John Fund, Inc.*

within the two-year Class Period. *Id.*

The parties' back-and-forth reflected that, consistent with the Court's order, the scope of Phase 1 discovery was narrow. For instance, in a May 15, 2024 letter, Plaintiffs stated their understanding that the Natera Defendants were "not taking the position that any productions made during the current phase of discovery necessarily satisfy their discovery obligations with respect to any particular document request for purposes of full merits discovery . . . ." Ex. 3 at 2. On May 24, 2024, the Natera Defendants represented that they would discuss relevant data sources for Phase 1 taking into account "the proportional need for such materials to complete class certification briefing, and ***the limited scope of discovery imposed by the Court for this phase of the case***." Ex. 6 at 2. They refused to conduct additional searches or to collect text messages in Phase 1 due to its limited issues. Ex. 4 at 2 (refusing to search custodial files because those individuals "would not have communicated about the Capitol Forum Reports or the Hindenburg Report without Brophy's involvement (if at all)" and thus "our position remains that Brophy is the relevant 'additional' custodian for Phase One discovery"); Ex. 5 ("collection and production of text messages is unduly burdensome and ***outside the scope of this phase of discovery***").

The Court granted class certification on March 21, 2025 (Dkt. 178), opening Phase 2 of discovery. Plaintiffs proposed Phase 2 search terms and custodians to the Natera Defendants (Ex. 2), who flatly refused to negotiate custodial searches. Instead, the Natera Defendants claimed that (1) Phase 2 is limited to "ancillary" document discovery, which "should be limited to discrete materials that can be obtained without a mailbox pull"—i.e., non-custodial documents (Ex. 7 at 1, 2), and (2) their Phase 1 production fulfilled their obligation to collect and produce documents for

_____

*v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) ("The parties have produced over 1.3 million documents. . . .").

two-thirds (31 of 47) of Plaintiffs' RFPs (Hoey Decl., ¶5).[5] After meeting-and-conferring, the parties are at impasse as to whether the Natera Defendants must run custodial searches for documents responsive to Plaintiffs' omnibus RFPs regarding the issues in this case.

## III.    ARGUMENT

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "[T]he scope of discovery is broad." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Hobbs v. Petroplex Pipe & Constr., Inc.*, 2018 WL 3603074, at *2 (W.D. Tex. Jan. 29, 2018).

A party may move to compel production under Rule 37 "when a party fails to . . . respond to a request for production under [Rule] 34, provided such discovery requests are within the scope of Rule 26(b)." *Kilmon v. Saulsbury Indus., Inc.*, 2018 WL 5800757, at *2 (W.D. Tex. Feb. 28, 2018). Once the moving party establishes the discovery is relevant, *Hobbs*, 2018 WL 3603074 at *2, "[t]he burden is on the party resisting discovery to establish the discovery is not proportional." *Hall v. Rent-A-Center, Inc.*, 2018 WL 4293141, at *3 (E.D. Tex. Aug. 31, 2018). "A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."

---

[5]    On May 2 and 9, the Natera Defendants stated that they would run two limited custodial searches (on which "Plaintiffs' original [search term and custodian] proposal has no bearing") for documents concerning: (i) the development of and complaints about the Panorama requisition form; and (ii) the July 2021 SPO, respectively. Ex. 8. The parties also continue to negotiate whether the Natera Defendants will collect and produce a limited set of centrally located, non-custodial documents, including board materials, certain incentive-based compensation documents, and Panorama marketing flyers. *Id.*

*English v. Tex. Farm Bureau Bus. Corp.*, 462 F. Supp. 3d 667, 669 (W.D. Tex. 2020).

### A.    Defendants Are Attempting to Circumvent the Standard Discovery Process

"Negotiated agreements regarding ESI production, e.g., number of custodians, search term combinations, etc., are standard in modern discovery practice." *Su v. Su*, 2024 WL 3509673, at *7 (N.D. Ill. July 23, 2024).[6] The Natera Defendants are trying to skip this step, claiming their Phase 1 production broadly satisfies their obligation to search for responsive custodial documents regarding all of the liability issues in this case.[7] That production consisted mainly of reproduced documents, collected previously from a few sources by Special Committee counsel using search parameters that were not negotiated by the parties here. The Natera Defendants cannot refuse to negotiate and apply custodians, search terms, and other search parameters in this case by pointing to a production based on narrow parameters set by non-parties in a separate investigation. *See Am. Airlines, Inc. v. Travelport Ltd.*, 2012 WL 12884821, at *1-3 (N.D. Tex. May 29, 2012) (compelling additional searches using negotiated search parameters over defendant's argument that it already reproduced relevant documents from a prior investigation).

The law is clear that the Natera Defendants' reproduction of documents relevant to aspects of this case does not excuse them from actually running searches scaled to this litigation, and

---

[6]    *See also Acorn Semi, LLC v. Samsung Elecs. Co., Ltd*., 2021 WL 2720480, at *2 (E.D. Tex. Feb. 4, 2021) ("Document production issues arise in lawsuits of all types, and the ability to reach a negotiated resolution to discovery disputes is a skill expected of all lawyers practicing before any United States District Court."); *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 644 (S.D.N.Y. 2019) ("[T]he Rules also require cooperation in discovery to achieve a just, speedy, and inexpensive determination of a case. Where ESI is concerned, this typically means the parties are expected to meet and confer about custodians of relevant ESI, date ranges for searches of ESI, and other search parameters."), *aff'd*, 2020 WL 5037573 (S.D.N.Y. Aug. 26, 2020).

[7]    At odds with their claims that the reproduced custodial files satisfy most of their document production obligations, in the February 2024 scheduling hearing before Judge Howell, the Natera Defendants' counsel represented that full document discovery "***can take one to two years in a case of this size and scope***." Dkt. 129 at 17:21-25; *see also id.* at 38:9-24 (Natera Defendants' counsel arguing that Plaintiffs' motion for class certification should not be delayed until after production of all documents requested in Plaintiffs' RFPs, which could take a "year and a half").

collecting custodial files for responsive documents on merits issues from all relevant sources based on negotiations with Plaintiffs. *See id.* (compelling searches and rejecting argument that reproduction of documents from a Department of Justice investigation and prior litigation were sufficient where claims and proposed search parameters were not identical); *In re BP PLC Sec. Litig.*, 2020 WL 488960, at *1-3 (S.D. Tex. Jan. 30, 2020) (ordering defendants to run plaintiffs' proposed search terms and rejecting argument that searches were duplicative of those conducted in prior class action on similar claims); *Family Wireless #1, LLC v. Auto. Techs. Inc.*, 2016 WL 2930887, at *3 (D. Conn. May 19, 2016) ("The mere fact that many documents have already been produced is not sufficient to establish that there are no other relevant materials to be found.").[8]

**B.    Plaintiffs' Proposed Custodians and Search Terms Are Relevant**

As the Court explained, "Plaintiffs adequately allege that Defendants' repeated statements that Panorama was a key source of Natera's revenues . . . made while concealing that Panorama revenues were inflated by deceptive practices—such as the inappropriate submission of prior authorizations by MGML—rendered those statements false or misleading. The same is true for Defendants' statements regarding microdeletions." Dkt. 104 at 24; Dkt. 177 at 3-4, 19. Plaintiffs' proposed search parameters target individuals and issues relevant to their claims.

**Custodians:** Plaintiffs proposed 34 custodians for Phase 2 of discovery, all of whom are relevant. Ex. 2 at 4. Plaintiffs offered and stood ready to discuss the basis for each of the proposed Phase 2 custodians with the Natera Defendants, but they declined to discuss the individuals proposed. As such, with just three exceptions (noted below), the relevance of these custodians is uncontested. Nevertheless, for the Court's convenience, Plaintiffs outline key relevance points regarding the proposed custodians below.

---

[8]    The narrow search of Brophy's files for class certification-related documents in Phase 1 should not excuse his documents from negotiated searches related to all merits issues in Phase 2.

Eight of them are the Board Investigation Documents custodians—Defendants Chapman, Brophy, and Rabinowitz (*id.* at ##5, 8, 25), and five Natera executives, including the Chief Accounting Officer and Chief Sales Officer (*id.* at ##1, 13-14, 16, 19). These custodians' files are indisputably likely to contain relevant information, and Plaintiffs are entitled to documents from their custodial files based on search parameters negotiated for purposes of this case. *See* Section III.A, *supra*. Nine additional proposed custodians are the Director Defendants. *Id.* at ##2-4, 7, 10, 17, 22, 27, 29. These defendants' custodial files are likely to contain materials relevant to liability issues, and "[t]o exclude any defendant from electronic information collection entirely would be the unusual course . . . ." *Thomas v. City of N.Y.*, 336 F.R.D. 1, 2 (E.D.N.Y. 2020).

Plaintiffs proposed the remaining 17 individuals upon review of discovery produced by the Natera Defendants. Six of the 17 custodians were identified in the Natera Defendants' responses to interrogatories regarding relevant underlying events. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see* Ex. 9. Plaintiffs proposed the 11 remaining custodians based on a review of documents produced in Phase 1. They include individuals below the executive level, in order to capture relevant operational emails and documents regarding, e.g., Natera's sales, billing, and reporting activities, and corporate disclosure and compliance practices. *See Family Wireless*, 2016 WL 2930887, at *3 ("[i]t is reasonable to believe that discussions and transmissions of potentially relevant information could transpire below the highest echelon of management"). Such custodians include Natera's Senior Director of Market Access (Ex. 2 at 4, #23), who reported up to the Chief Compliance and Privacy Officer, individuals in Revenue Cycle Management roles (*id.* at ##26, 33), who reported up to the Chief Accounting Officer, and individuals in sales and billing positions (*id.* at ##9, 21, 32). *See Family Wireless*, 2016 WL 2930887, at *3 ("[L]ower-level employees may discuss execution of policies amongst themselves and with third parties other than their superiors. These

communications may be particularly revealing."); *see also Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 50 (S.D.N.Y. 2009) ("[I]t may well be . . . that only the more senior . . . employees sent or received emails that are relevant to the issues in this case . . . . [I]t also may be true that employees at that level took care not to say anything incriminating and that lower-level employees were less guarded in their email communications."). Plaintiffs also proposed a custodian in a SEC reporting role (Ex. 2 at 4, #30), which is relevant in this securities fraud case involving public misstatements in SEC-regulated settings.

To date, the Natera Defendants have specifically disputed just three custodians (##18, 28, and 30) in accounting and financial reporting functions, wrongly arguing, in a single, conclusory footnote, that these topics are not relevant to Plaintiffs' claims. Ex. 7 at 3 n.3; *but see* Ex. 9 at 22

Plaintiffs' proposal of 34 total document custodians (including 12 named defendants) is comfortably in line with other complex securities class actions. *See, e.g.*, *Edwards v. McDermott Int'l, Inc.*, 2021 WL 5121853, at *2 (S.D. Tex. Nov. 4, 2021) (ordering defendants to search 50 custodians' files); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *4 (D.N.J. Aug. 21, 2015) (76 custodians).

**Search Terms:** Plaintiffs' proposed Phase 2 search terms consist of 40 search strings drafted to hit on relevant documents. The terms "closely track the allegations of the Complaint," and were informed by a review of the Phase 1 document productions and the Board Investigation Documents search terms. *Rent-A-Center*, 2018 WL 4293141, at *4. For example, Plaintiffs propose 18 terms related to Panorama (such as "NIPT") and issues such as feedback from patients or providers, denials and appeals of insurance coverage, and reimbursements. Plaintiffs also include terms regarding the July 2021 SPO, and Natera's internal monitoring of its stock price and

market profile. Ex. 2 at 5-6. The Natera Defendants have for the most part declined to engage with Plaintiffs on each of the proposed search terms, specifically challenging relevance only as to strings 4, 5, 8, and 9 (on the incorrect basis that revenue accounting and reporting are irrelevant to Plaintiffs' claims). Ex. 7 at 3 n.3. Thus, the relevance of Plaintiffs' proposed search terms is in all other regards uncontested.

To be sure, the custodial files of the eight individuals in the Special Committee collection should be subject to Plaintiffs' proposed searches, as that prior collection applied deficient terms (e.g., it did not apply "Panorama" (or "Pano*") or terms concerning microdeletions).[9] *See* Ex. 3 at 3 (Plaintiffs stating that Special Committee search terms "are insufficient for the current phase (and, obviously, the full merits phase) of discovery"). Plaintiffs' proposed search terms are distinct from those used by Special Committee counsel in significant ways, "which means that a search of the requested employees could yield additional documents not found as a part of the [Special Committee] investigation." *Am. Airlines*, 2012 WL 12884821, at *2; *see also BP*, 2020 WL 488960, at *2 (compelling document searches where "[p]laintiff's claims in the instant action and its proposed search inquiries are sufficiently distinct from those in previous lawsuits"); *In re Subpoenas to Plains All Am. Pipeline, L.P.*, 2014 WL 204447, at *7 n.9 (S.D. Tex. Jan. 17, 2014) (subpoena not duplicative where it sought "additional, distinct information" not produced in prior investigation).

## IV.   CONCLUSION

For the foregoing reasons, the Motion should be granted.

---

[9]   The Board Investigation Documents search terms also did not include variations of relevant words (e.g., they included the term "Capitol Forum," but not "thecapitolforum," or "TCF") and used discrete terms (e.g., "exaggerate," "deceive," and "fraud") rather than using root-expanders to capture iterations of those words, i.e., "exaggerat*," "deceiv*," or "fraud*." That investigation also did not search key document sources (e.g., text messages).

Dated: May 14, 2025

Respectfully submitted,

**NIX PATTERSON, LLP**

*/s/ Jessica Underwood*
Jessica Underwood (State Bar No. 24093291)
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Tel: (512) 328-5333
Fax: (512) 328-5335
junderwood@nixlaw.com

*Liaison Class Counsel*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted *pro hac vice*)
Joshua E. D'Ancona (admitted *pro hac vice*)
Evan R. Hoey (admitted *pro hac vice*)
Vanessa M. Milan (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
gcastaldo@ktmc.com
jdancona@ktmc.com
ehoey@ktmc.com
vmilan@ktmc.com

*Counsel for Lead Plaintiff and Class
Representative British Airways Pension Trustees
Limited and Class Counsel*

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
Jesse Jensen (admitted *pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1400
jesse.jensen@blbglaw.com

*Counsel for Additional Plaintiff and Class
Representative Key West Police & Fire Pension
Fund and Class Counsel*

11

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Plaintiffs telephonically met and conferred in good faith with counsel for the Natera Defendants on March 25, 2025, April 14, 2025, and April 15, 2025, and also exchanged related email correspondence in an effort to resolve the dispute without court intervention. The parties were unable to reach resolution on the matters raised in this Motion.

Dated: May 14, 2025

/s/ Evan R. Hoey
Evan R. Hoey

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2025, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: May 14, 2025

*/s/ Jessica Underwood*
Jessica Underwood
