**EXHIBIT 7**

**Katten**

**2121 Avenue of the Stars**
**Suite 1100**
**Los Angeles, CA  90067-5010**
**+1.310.788.4400 tel**
**katten.com**

**CHRISTINA L. COSTLEY**
christina.costley@katten.com
+1.310.788.4485 direct
+1.310.712.8235 fax

April 2, 2025

**VIA EMAIL**

Joshua D'Ancona
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087

Re:    *Schneider v. Natera, Inc., et al.*, No. 1:22-cv-00398-DAE (W.D. Tex.)

Dear Josh:

We write to respond to your letter, dated March 4, 2025, concerning Plaintiffs' proposed search parameters for Phase 2 of discovery in this case.  As we expressed during the parties' meet-and-confer held on March 25, 2025, Plaintiffs' proposal far exceeds the scope of discovery that was contemplated by the Court in ordering phased discovery and that is relevant and proportional to Plaintiffs' needs in this case.  Indeed, contrary to Evan's March 26 email asserting that the Natera Defendants "were not prepared to discuss Plaintiffs' custodian and search term proposals," we explained that we had reviewed Plaintiffs' proposal; that such proposal was exceedingly overbroad; and that we were prepared to seek the Court's assistance in limiting further discovery to a proper and reasonable scope.  We are, however, providing this written response to your March 4 letter at your request.

As you know, Defendants' phased-discovery proposal to the Court, as presented in their section of the parties' Rule 26(f) Report, contemplated:  (i) a first phase consisting of documents specifically needed for class certification as well as documents reviewed as part of the Special Committee's investigation; and (ii) a second phase consisting of "*ancillary* merits discovery if a class is certified."  (Dkt 115 at 8 (emphasis added).)  Defendants restated this position during the discovery hearing held on February 27, 2024 before Magistrate Judge Howell.  (*See, e.g.*, Dkt. 129 at 21:4-8 ("it is difficult to conceive of why plaintiffs need more documents and to conduct a further investigation than was sufficient for the Securities and Exchange Commission when exonerating Natera on these allegations").)  The Court ultimately accepted Defendants' proposal, stating on the record:  "Having considered the parties' filings and the case law that's been provided to me in this area … I do think that defendants' proposed phased discovery is prudent …"  (*Id.* at 44:16-17.)

Contrary to your assertion that Phase 1 discovery was "highly limited," the Natera Defendants produced, consistent with the Court's order, over 56,000 documents (and over 300,000 pages) to Plaintiffs.  Those documents include, among other things, (i) emails and Google Chats from eight different custodians that the Special Committee reviewed and found relevant in

KATTEN MUCHIN ROSENMAN LLP
CENTURY CITY    CHARLOTTE    CHICAGO    DALLAS    LOS ANGELES
NEW YORK    ORANGE COUNTY    SHANGHAI    WASHINGTON, DC
A limited liability partnership including professional corporations
LONDON: KATTEN MUCHIN ROSENMAN UK LLP

# Katten

April 2, 2025
Page 2

investigating Hindenburg Report's allegations; (ii) additional emails from Natera's CFO's mailbox that were collected pursuant to search terms Plaintiffs provided to us; (iii) the entire production Natera previously made to the SEC as part of its investigation into Hindenburg's allegations; (iv) the presentation deck the Special Committee shared with the SEC; and (v) documents reflecting Natera's policies and procedures sought by several of Plaintiffs' Requests for Production.

While your letter complains that these productions "responded to only a fraction of Plaintiffs' RFPs," Plaintiffs do not even attempt to identify the documents (or even types of documents) Plaintiffs still need to make their case, beyond pointing generically to all of the RFPs.[1] Regardless, insofar as Plaintiffs' case is premised on the allegations made in the Hindenburg Report, there is no basis for seeking any more material than that which the Special Committee and the SEC reviewed in investigating those exact allegations and, ultimately, exonerating Natera. Similarly, Plaintiffs have provided no basis for using (i) search terms beyond those the Special Committee and the SEC together crafted to seek relevant documents; and (ii) custodians beyond the eight executives who were specifically selected as custodians by the Special Committee because they had the most involvement in, and control over, Natera's Panorama business.

As such, Plaintiffs' proposed Phase 2 search parameters extend well beyond the scope of discovery that was contemplated by the Court and that is relevant and proportional to this case. Plaintiffs are requesting documents from **34 different custodians**, and proposing 40 exceedingly broad search terms. Based on a preliminary search, these parameters would require the Natera Defendants to review **millions** of documents. That is far from targeting "ancillary" documents, which should be limited to discrete materials that can be obtained without a mailbox pull (*e.g.*, relevant 10b5-1 trading plans) or documents referenced during depositions that were not already produced. Moreover, to the extent Plaintiffs actually expect Defendants' document productions to be substantially complete within 90 days, Plaintiffs' proposal would make compliance with that deadline a virtual impossibility. Indeed, Plaintiffs' conception of Phase 2 discovery is entirely at odds with the 90-day deadline imposed in the Court's Scheduling Order. (*See* Dkt. 128 at 2.)

Finally, Plaintiffs cannot use Phase 2 discovery as a means of exploring new potential theories of liability. Plaintiffs' claims, as discussed in the Court's recent order on Defendants' motion for judgment on the pleading, are premised on two discrete topics: (i) Natera's alleged "close ties to [MGML]," and (ii) "Natera's requisition form for Panorama." (Dkt. 177 at 3-4.) Many of Plaintiffs' proposed search terms appear crafted to capture documents relating to Natera's

---

[1] Several of the RFPs that Plaintiffs claim remain unanswered are not even addressed by Plaintiffs' proposed search terms. For example, Plaintiffs have proposed no search terms relating to "Medicare or Medicaid billing practices" (RFP No. 27) or HIPAA compliance (RFP No. 28).

# Katten

April 2, 2025
Page 3

entire business rather than the specific issues in this case.[2]  Others appear tailored to specific issues that are indisputably irrelevant to Plaintiffs' claims.[3]  Plaintiffs' attempt to use Phase 2 discovery to explore topics unrelated to the two narrow issues in this case amounts to a fishing expedition and is plainly improper.

We do not presume to know which ancillary documents Plaintiffs still need to make their case.  Accordingly, we invite Plaintiffs to provide a revised and more narrowly tailored proposal that complies with the Court's instruction and permits the parties to have a more productive discussion about completing Phase 2.  To the extent Plaintiffs refuse to provide one, the Natera Defendants intend to move the Court for a protective order.

Sincerely,

*/s/ Christina L. Costley*

Christina L. Costley

---

[2] The worst offenders are Terms 1, 3, 10, 22, 26, 27, 28, and 29.

[3] For example, despite Plaintiffs' confirmation that "there are no claims based on accounting violations, and Plaintiffs do not contend that Natera's disclosed financials were misstated" (Dkt. 140 at 10), Plaintiffs are proposing (i) search terms relating to revenue accounting and financial reporting (*e.g.*, Terms 4, 5, 8, and 9), and (ii) custodians having accounting and financial reporting functions (*e.g.*, Geoff Shum, John Holt, and Artem Sergienko).