**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § § § § § § § § § § § § § § § | Case No. 1:22-cv-00398-DAE |
| Plaintiff, | | |
| v. | | |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | | |
| Defendants. | | |

**THE NATERA DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SEARCHES FOR CUSTODIAL DOCUMENTS RESPONSIVE TO PLAINTIFFS' DOCUMENT REQUESTS AND MOTION FOR PROTECTIVE ORDER**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ...........................................................................................................................2

      A.     Plaintiffs' Claims and Investigations by the Special Committee and the SEC....... 2

      B.     The Court's Phased-Discovery Order.................................................................... 2

      C.     Plaintiffs Ask For Millions of Documents and the Natera Defendants Seek Compromise By Offering Even More Than "Ancillary" Documents .................... 4

ARGUMENT...................................................................................................................................4

I.      PLAINTIFFS PROVIDE NO BASIS TO EXPAND THE SCOPE OF PHASE 2 .............5

II.     PLAINTIFFS' PROPOSED SEARCH PARAMETERS TARGET IRRELEVANT MATERIAL AND ARE DISPROPORTIONAL ..................................................................7

      A.     Plaintiffs' Requested Custodians are Grossly Overbroad....................................... 8

      B.     Plaintiffs' Search Terms Are Also Overbroad.......................................................... 9

CONCLUSION..............................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arellanez v. Morales*,
2022 WL 347615 (W.D. Tex. Feb. 4, 2022)................................................................5

*Bitterroot Holdings, LLC v. Bank of N.Y. Mellon*,
2015 WL 11661761 (W.D. Tex. Aug. 25, 2015).........................................................7

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
2015 WL 5055241 (D.N.J. Aug. 21, 2015) ................................................................8

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
2015 WL 5097883 (D.N.J. Aug. 31, 2015) ................................................................8

*Crosby v. La. Health Serv. & Indem. Co.*,
647 F.3d 258 (5th Cir. 2011) .....................................................................................5

*Darquea v. Jarden Corp.*,
2008 WL 11517443 (S.D.N.Y. Oct. 27, 2008).........................................................10

*Dexon Computer, Inc. v. Cisco Sys., Inc.*,
2023 WL 9648853 (E.D. Tex. May 31, 2023).............................................................8

*Edwards v. McDermott Int'l, Inc.*,
2021 WL 1421603 (S.D. Tex. Apr. 13, 2021) ............................................................8

*Hall v. Rent-A-Ctr., Inc.*,
2018 WL 4293141 (E.D. Tex. Aug. 31, 2018) .........................................................10

*Lifescan, Inc. v. Smith*,
2022 WL 20853087 (D.N.J. July 29, 2022)................................................................6

*Lopez v. State Farm Lloyds*,
348 F.R.D. 419 (W.D. Tex. 2025) ........................................................................5, 10

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
54 F.3d 1424 (9th Cir. 1995) .....................................................................................9

*Police & Fire Ret. Sys. of Detroit v. Plains All Am. Pipeline, L.P.*,
777 F. App'x 726 (5th Cir. 2019) ..............................................................................9

*Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*,
325 F.R.D. 578 (N.D. Tex. 2017) ..............................................................................7

*Vickers v. Jp Morgan Chase N.A.*,
    2013 WL 12134153 (W.D. Tex. Feb. 22, 2013)......................................................................5

*Wigglesworth v. Maiden Holdings, Ltd.*,
    2021 WL 3464854 (D.N.J. Aug. 6, 2021) ...........................................................................7

*Wilbert v. Pyramid Healthcare, Inc.*,
    2025 WL 873947 (W.D. Pa. Mar. 20, 2025) ......................................................................8

**Rules**

Fed. R. Civ. P. 26(b) ....................................................................................................................4, 7

Fed. R. Civ. P. 26(f)........................................................................................................................2

**INTRODUCTION**

Plaintiffs' motion to compel (the "Motion" or "Mot.") is a transparent attempt to circumvent the Court's case management order and seek an immense volume of irrelevant and disproportional discovery into Natera's entire business operations. In doing so, Plaintiffs ignore two critical aspects of this case. ***First***, the Court, in adopting Defendants' proposal for phased discovery in this case, ordered that post-class certification document discovery (*i.e.*, "Phase 2") be limited to the collection and production of "ancillary" documents to fill any remaining gaps in merits discovery not satisfied by the first phase (*i.e.*, "Phase 1"). ***Second***, Plaintiffs' securities claims – which are premised entirely on allegations by a since debunked report by the now defunct short-seller Hindenburg Research ("Hindenburg") – are narrow, and relate to only two discrete topics: (1) Natera's use of a third-party company, My Genome My Life ("MGML") to submit prior authorization requests for Panorama; and (2) a single check box in the Panorama test requisition form that permits physicians to order a microdeletion test.

The Natera Defendants already produced in Phase 1 roughly 56,000 documents, including all documents that the SEC and a Special Committee of Natera's board reviewed – as part of extensive investigations into Hindenburg's allegations – and found sufficient to exonerate Natera. Notwithstanding Plaintiffs' failure to provide any credible basis for needing more than this to prove their claims, they seek to impose on the Natera Defendants search parameters that would, if accepted, require the Natera Defendants to collect and review ***millions*** of documents relating to business practices far outside the narrow scope of this case. Indeed, Plaintiffs have admitted that their sole basis for seeking this far-flung discovery is their belief that they are entitled to take discovery into *all* of Natera's business practices. Nevertheless, as the submitted correspondence shows, the Natera Defendants attempted to work with Plaintiffs in good faith – and in accordance with the Court's instruction – to configure Phase 2 in such a way that it would cover any legitimate discovery gaps remaining after Phase 1. Plaintiffs refused and, without warning, filed the Motion seeking the Court's approval of their fishing expedition. This Court should reject it.

1

**BACKGROUND**

**A.      Plaintiffs' Claims and Investigations by the Special Committee and the SEC**

Plaintiffs claim that Natera, in 11 statements and in offering materials issued in connection with its July 2021 Secondary Public Offering ("SPO"), omitted two "deceptive" business practices: (1) Natera's use of MGML to submit prior authorization requests, an engagement to which only 7% of Panorama revenue was attributed at the time Hindenburg published its report (Dkt. 161-7 at 1); and (2) a check box, on the Panorama requisition form, for ordering a single microdeletion test. (*See* Dkt. 177 at 3-4.)  Plaintiffs base these claims entirely on allegations made about the same practices in a short report published by Hindenburg in March 2022.  (*See, e.g.*, Dkt. 60 ¶ 18.)[1]

Hindenburg's allegations were thoroughly investigated by two separate bodies: (1) the SEC, and (2) a Special Committee of Natera's board through its independent counsel, WilmerHale LLP (the "Special Committee").  (*See* Dkt. 135-4.)  Following the Special Committee's exhaustive investigation, which included its review of roughly 150,000 documents – including emails and Google Chat messages from eight separate custodians and using over 80 search terms that were crafted jointly with the SEC – the Special Committee concluded that Hindenburg's allegations were "unfounded."  (Dkt. 135-2 at 2.)  Similarly, the SEC, after receiving a production of roughly 1,000 documents from Natera, declined to bring any enforcement action.  (Dkt. 135-5.)

**B.      The Court's Phased-Discovery Order**

Following the Court's resolution of Plaintiffs' motion to dismiss, the parties presented competing plans for document discovery in their Rule 26(f) Report.  While Plaintiffs proposed that class certification and merits discovery proceed simultaneously (*see* Dkt. 115 at 6-8); Defendants proposed a phased approach that contemplated: (i) Phase 1, consisting of all documents that formed part of the Special Committee's and SEC's investigation as well as all documents specifically needed for class certification; and (ii) Phase 2, consisting of "***ancillary*** merits discovery if a class is certified."  (*Id.* at 8-9 (emphasis added).)  Accordingly, as the Natera Defendants proposed, this

---

[1] Hindenburg disbanded itself in January 2025.  *See* https://hindenburgresearch.com/gratitude/.

"would allow Plaintiffs to conduct a full and independent review into the core allegations in the case *even before class certification* while deferring the burden and expense of chasing down ancillary documents." (*Id.* at 9.)  The parties argued the merits of these proposals during the discovery hearing on February 27, 2024 before Magistrate Judge Howell, when counsel for the Natera Defendants restated their long-stated position that Plaintiffs do not "need more documents and to conduct a further investigation than was sufficient for the Securities and Exchange Commission [and the Special Committee] when exonerating Natera on these allegations."  (*See, e.g.*, Dkt. 129 at 21:4-8.)  The Court accepted Defendants' proposal, stating on the record: "Having considered the parties' filings and the case law that's been provided to me in this area … I do think that defendants' proposed phased discovery is prudent …"  (*Id*. at 44:16-25.)

Pursuant to the Court's instruction, and based on the parties' agreement, the Natera Defendants produced roughly 56,000 documents (and over 300,000 pages)[2] that included, among other things: (i) all emails and Google Chats within the date range specified in Plaintiffs' RFPs that the Special Committee found responsive in investigating the Hindenburg Report's allegations; (ii) Natera's entire production to the SEC; (iii) additional emails from Natera's CFO's mailbox concerning, among other things, Natera's investor communications and reactions to Hindenburg and other media reporting; (iv) the presentation deck the Special Committee shared with the SEC; and (v) documents reflecting Natera's policies and procedures sought by several of the RFPs.  (*See* Hoey Decl., Exs. 4 at 2, 6 at 1-2, 7 at 1-2.)[3]  Plaintiffs have also received tens of thousands of documents (and counting) from the July 2021 SPO underwriters and Natera's PR firms and auditor.

---

[2] Plaintiffs' complaint that "only 30,000" of the documents were produced during the class period ignores that **over 55,000** of them were within the "relevant time period" specified in Plaintiffs' own Requests for Production ("RFPs") (January 1, 2019 through September 30, 2022).

[3] Plaintiffs incorrectly suggest that the Natera Defendants' prior acknowledgment of Phase 1's "limited scope," and that Phase 2 would include additional merits discovery, implied that Phase 2 would require an even greater amount of document discovery.  (Mot. at 4 (citing Hoey Decl., Exs. 3 at 2, 6 at 2).)  That mischaracterizes the Natera Defendants' statements.  They were simply recognizing that the Court imposed specific boundaries on Phase 1 and that Phase 2 would encompass some merits-related document discovery to fill gaps left by Phase 1.  (*Supra* at 2-3.)

### C.    Plaintiffs Ask For Millions of Documents and the Natera Defendants Seek Compromise By Offering Even More Than "Ancillary" Documents.

On April 7, 2025, following the Court's class certification order, and seemingly based on the understanding that the scope of Phase 2 was limited to "ancillary" document discovery, the Court set a June 20, 2025 deadline for the substantial completion of document production. (Dkt. 180 at 1.) Plaintiffs, nevertheless, proposed new search parameters that included 40 search terms and *34 different custodians* and would, as described below, target documents relating to Natera's entire business (rather than the two discrete issues in this case) and require the Natera Defendants to review *millions* of documents. (*Infra* at 8-10.) Confronting Plaintiffs' misunderstanding of the ordered scope of Phase 2, the Natera Defendants offered to produce several additional categories of documents that potentially were not specifically reviewed in the Special Committee's or the SEC's investigations: (1) custodial documents (including email and Google Chats) relating to the Panorama test requisition form and the SPO; (2) marketing materials Natera used for Panorama; (3) relevant Natera Board materials; and (4) relevant Natera officers' compensation plans. (Costley Decl., Ex. 1 at 1, 3-5.) Despite this good-faith offer, which already extends beyond "ancillary" documents, Plaintiffs refused to further negotiate or identify any specific categories of documents relevant to the claim pled in the Complaint that have not already been produced. Instead, without warning or fully responding to the Natera Defendants' outstanding offer of production, Plaintiffs filed this Motion. (*Id.* at 1-2 (responding to offer after filing the Motion.).)[4]

### ARGUMENT

Rule 26 permits parties to obtain discovery "that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering," among other things, "the importance of the issues at stake in the action," "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly," and accordingly, "[t]he court may decline to compel, and at its option, may

---

[4] Defendants are in the process of producing these documents anyway.

4

limit the extent of discovery if the requested discovery is outside the scope permitted by Rule 26(b)(1)." *Lopez v. State Farm Lloyds*, 348 F.R.D. 419, 422 (W.D. Tex. 2025) (citations omitted). "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition," and therefore "district courts [must] guard against abusive discovery" pursued by plaintiffs. *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

The discovery sought by Plaintiffs far exceeds proportional and authorized discovery and, instead, is a fishing expedition into conduct and business practices outside the scope of this case.

## I.     PLAINTIFFS PROVIDE NO BASIS TO EXPAND THE SCOPE OF PHASE 2.

Plaintiffs fail to explain why they should be entitled to expand Phase 2 document discovery beyond the limited scope of "ancillary" document productions contemplated by the Court. As an initial matter, Plaintiffs' view of Phase 2 – which would require the Natera Defendants to review millions of documents – is entirely at odds with the deadline for the substantial completion of document productions imposed by the Court's Scheduling Order. (*See supra* at 4; Dkt. 180 at 1.)

Moreover, Plaintiffs do not explain why they need more documents than those the Special Committee and the SEC deemed sufficient to make conclusive findings about the same allegations asserted by Plaintiffs here. Critically, Plaintiffs do not actually identify any category or type of documents they still need to prove their claims, or even any individual RFP they contend remains unsatisfied by the Phase 1 productions. *See Arellanez v. Morales*, 2022 WL 347615, at *2 (W.D. Tex. Feb. 4, 2022) (movant "must specifically identify each disputed discovery request, explain how or why the answer is deficient, request specific relief as to each discovery item, and include a brief description of the supporting facts and authority for each"); *cf. Vickers v. JP Morgan Chase N.A.*, 2013 WL 12134153, at *13, 15 (W.D. Tex. Feb. 22, 2013). Nor do Plaintiffs even attempt to explain why the search parameters jointly crafted by the Special Committee and the SEC were inadequate to retrieve relevant documents beyond their generic (and incorrect) assertion that their proposed terms are "distinct from those used by Special Committee counsel in significant ways."[5]

---

[5] Plaintiffs' only examples of "deficiencies" in the Special Committee's search terms are that they supposedly (1) did not use root expanders on words like "exaggerate," "deceive," and "fraud"; and

(Mot. at 10.)  To the contrary, the Special Committee's search terms – which were more numerous than Plaintiffs' – addressed a wide range of concepts relating to, among other things, MGML, prior authorizations generally, Panorama revenue, and potential misstatements.[6]

Plaintiffs' argument, at base, is that they have an unqualified right to craft their own search parameters, no matter how many investigations have collected and reviewed documents bearing on the same conduct and issues underlying their lawsuit.  (*See* Mot. at 6.)  This cannot possibly be right.[7]  *See, e.g.*, *Lifescan, Inc. v. Smith*, 2022 WL 20853087, at *11 (D.N.J. July 29, 2022) ("a party claiming that an adversary's custodial designations are inadequate or incomplete faces a very heavy burden to overcome a presumption that the responding party is in the best position to choose its custodians"); *see also The Sedona Principles*, 19 Sedona Conf. J. 1, 52 (3rd ed. 2018) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for" their productions).  Moreover, it ignores the entire basis for the Court's approach to discovery in this case – that the Special Committee and the SEC had ***already*** crafted search parameters to collect and review documents bearing on the same allegations asserted by Plaintiffs. If those documents constituted inadequate merits discovery because Plaintiffs were not involved in determining the underlying search parameters, the Court would never have ordered it.

As noted above, the Natera Defendants, recognizing that certain RFPs may not have been completely satisfied by Phase 1, offered to undertake supplemental collections and productions of, among other things, custodial documents relating to two separate topics (*i.e.*, the test requisition

---

(2) used the term "Capitol Forum" and not, additionally, "capitolforum" and "TCF." (Mot. at 10 n.9.)  These are not deficiencies or otherwise meaningful differences.  The Special Committee ***did*** use root expanders on those types of terms – *e.g..*, it used exaggerate*, deceive*, mislead*, omit*, misrepresent*, and misstat*.  And "Capitol Forum" was sufficient because "TCF" would have generated too many mishits and "capitolforum" would have added only a handful of documents.

[6] While the Special Committee's terms did not explicitly relate to the requisition form, the Natera Defendants offered to undertake a supplemental collection relating to that issue.  (*Supra* at 4.)

[7] The only case Plaintiffs cite where a court declined to find that the re-production of a prior investigation's document collection satisfied discovery obligations, *American Airlines, Inc. v. Travelport Ltd.*, 2012 WL 12884821 (N.D. Tex. May 29, 2012) (cited Mot. at 6), has no bearing here.  There, the prior investigation dealt with different claims and focused on a far shorter time period than the plaintiff's suit, *id*. at *2, whereas here, the Special Committee investigation focused on a ***longer*** time period and investigated ***the same*** claims and issues that Plaintiffs assert here.

form and the July 2021 SPO) and invited Plaintiffs to propose custodians relevant to each of those topics.  (*Supra* at 4.)  In spite of Plaintiffs' good-faith effort to engage with Plaintiffs towards filling potential discovery gaps, Plaintiffs refused the Natera Defendants' invitation and, without warning and while negotiations were ongoing, filed the Motion.  (*Id.*); *see Bitterroot Holdings, LLC v. Bank of N.Y. Mellon*, 2015 WL 11661761, at *2 (W.D. Tex. Aug. 25, 2015) (an "ultimatum" "does not amount to a good faith attempt to resolve the matter by agreement").  Nevertheless, as a showing of their own good faith, the Natera Defendants are in the process of collecting and will produce these documents.  There is no justification for Plaintiffs to be allowed more.

## II.   PLAINTIFFS' PROPOSED SEARCH PARAMETERS TARGET IRRELEVANT MATERIAL AND ARE DISPROPORTIONAL.

Even absent the Court's order limiting Phase 2 discovery to "ancillary" documents, the search parameters Plaintiffs are attempting to impose on the Natera Defendants extend well beyond the scope of relevant and proportional discovery.  As discussed above, Plaintiffs' claims are narrow and relate to two discrete topics: (1) Natera's limited use of MGML to submit prior authorization requests for Panorama, and (2) a single check box on the Panorama requisition form used to order a microdeletion test.  (*See supra* at 2.)  Plaintiffs make no attempt show how the millions of documents they are seeking are proportional to their need to prove claims premised on these narrow issues.  *See Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 595 (N.D. Tex. 2017) (noting that "it is a good practice for a movant to explain the relevance and proportionality of its discovery requests" and the "failure to appropriately address Rule 26(b)(1) proportionality factors may be determinative in a proportionality analysis and result in the motion to compel being denied on its merits").  To the contrary, they admitted outright during the meet and confer process that they believe they are entitled to take discovery into *all* of Natera's business practices and that they drafted their discovery requests accordingly.  *See Wigglesworth v. Maiden Holdings, Ltd.*, 2021 WL 3464854, at *7 (D.N.J. Aug. 6, 2021) (permitting "limited discovery" given "narrow claim" to "prevent this litigation from turning into a securities fishing expedition").[8]

---

[8] As examples, the RFPs seek documents related to HIPAA compliance, Medicare and Medicaid

### A.    Plaintiffs' Requested Custodians are Grossly Overbroad.

Plaintiffs' request for documents from *34 different custodians* is plainly disproportional and would, if accepted, require the Natera Defendants to review an immense amount of irrelevant and duplicative material.  As an initial matter, this number is not, as Plaintiffs claim, "comfortably in line with other complex securities class actions."  (*See* Mot. at 9); *Hall v. Rent-A-Ctr.,* Inc., 2018 WL 3918622, at *1 (E.D. Tex. Aug. 2, 2018) (Defendants' Opposition to Plaintiffs' Motion to Compel) (parties agreed to use 19 custodians); *see also Dexon Computer, Inc. v. Cisco Sys., Inc.*, 2023 WL 9648853, at *1 (E.D. Tex. May 31, 2023) (permitting eight custodians in antitrust case).[9]

Regardless, Plaintiffs do not support their requests as to *any* of the proposed custodians. There is plainly no reason to seek more communications from the eight custodians (*i.e.*, those selected by the Special Committee because of their involvement in the MGML engagement, Panorama billing issues, and financial reporting) from whom Plaintiffs have already received tens of thousands of communications.  Nor do they explain the relevance of their additional proposed custodians and why each of them would possess "relevant, noncumulative and unique information" that was not already produced in Phase 1.  *Cf. City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *3 (D.N.J. Aug. 21, 2015) (permitting custodians because plaintiffs "identified in chart form the factual basis for their contention that each of the custodians at issue has" such information); *see Wilbert v. Pyramid Healthcare, Inc.*, 2025 WL 873947, at *7 (W.D. Pa. Mar. 20, 2025) (movant "has not even attempted to explain the relevance for each of his proposed custodians and thus fails to satisfy his burden of establishing relevance").

To start, nine of the proposed custodians are Natera outside directors who Plaintiffs include

---

billing practices, and marketing for Natera's gender-screening test.  (Hoey Decl., Ex. 1 at 20, 22.)

[9] Plaintiffs' reliance on *Edwards v. McDermott Int'l, Inc.*, 2021 WL 5121853 (S.D. Tex. Nov. 4, 2021) and *Prudential Fin.*, 2015 WL 5055241 to support their requested number of custodians is misguided.  Unlike here, where Plaintiffs' claims are premised on two discrete topics, those cases involved far more wide-ranging issues and conduct.  *See Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421603, at *4 (S.D. Tex. Apr. 13, 2021) (alleged misstatements about the company's financial condition at large at time of corporate merger), *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *1 (D.N.J. Aug. 31, 2015) (claims premised on investigations undertaken by seven different states into widespread insurance misconduct).

only because they are named defendants as to Plaintiffs' Section 11 claim by virtue of their signing the SPO offering documents.  (Mot. at 8.)  But "a claim under section 11 of the Securities Act does not have a scienter requirement," *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 730 (5th Cir. 2019), such that any documents bearing on the director-defendants' knowledge of, or involvement in, the underlying conduct is legally irrelevant. *See Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1436 (9th Cir. 1995) (denying discovery into certain individuals as legally irrelevant to responsibility for alleged fraud).[10]  Moreover, even if their documents were relevant, there is no reason Plaintiffs need documents from each of them given that, by the nature of their positions, they would be on the same communications.

Three of the proposed custodians had "accounting and financial reporting functions," and two of them held Revenue Cycle Management roles and "reported up to the Chief Accounting Officer" (Mot at 9),[11] but Plaintiffs have conceded that their claims "are not predicated upon an assertion that Defendants misstated their reported financial results or violated an accounting rule." (Dkt. 140 at 14.)   Plaintiffs propose six custodians only because they were identified in interrogatory responses, but Plaintiffs make no showing as to ***what*** relevant material they possess and ***why*** Plaintiffs need it.  (Mot. at 9.)  Absent any demonstration that these custodians have relevant and non-duplicative information not already produced in Phase 1, it would be disproportional to require the Natera Defendants to review millions of their custodial documents.

**B.      Plaintiffs' Search Terms Are Also Overbroad**.

Plaintiffs' search terms, similarly, seek an immense amount of irrelevant and disproportional material.  As an initial matter, certain are irrelevant insofar as they seek documents relating to accountants engaged by Natera – *i.e.*, Ernst & Young, Altum Partners, and Moss Adams (*see* Hoey Decl., Ex. 2 at 5-6) – even though, again, Plaintiffs do not challenge Natera's accounting

---

[10] The only case Plaintiffs cite for their request for documents from the director-defendants, *Thomas v. City of New York*, 336 F.R.D. 1 (E.D.N.Y. 2020), related to defendants who conceded their direct involvement in the acts underlying the plaintiff's employment retaliation claim.

[11] One of the eight custodians selected by the Special Committee was Natera's Vice President of Revenue Cycle Management and Plaintiffs do not explain why the two proposed custodians having such roles would possess unique, non-duplicative information.

or its reported financials. (*See supra* at 2.) More broadly, Plaintiffs' search terms appear crafted to obtain documents concerning Natera's entire business and not, as they must, to target the specific (and narrow) issues in this case. As examples, Plaintiffs are asking the Natera Defendants to use: (i) (Panorama* OR Pano*) AND (ELT OR "executive leadership team"); (ii) (Panorama* OR Pano* …) AND (revenue* OR … sale* OR order* OR pay* …); (iii) (Microdeletion OR Mdel OR microdel* OR microdel panel OR microD*) AND (Pano* OR Panorama*); (iv) DiGeorge; (v) CPT AND (81420 OR 81422 OR 81507);[12] and (vi) 22q.11.2 OR 22q* OR q112. (Hoey Decl., Ex. 2 at 5-6.) As such, Plaintiffs are seeking to impose search terms that would capture documents relating to Natera's ***entire operation of its Panorama and microdeletion screening business***. *See Hall v. Rent-A-Ctr., Inc.*, 2018 WL 4293141, at *5 (E.D. Tex. Aug. 31, 2018) (criticizing plaintiffs' proposed terms in securities class action for being too generic and disproportionate where they generated 528,956 documents); *Darquea v. Jarden Corp.*, 2008 WL 11517443, at *3 (S.D.N.Y. Oct. 27, 2008) (finding in securities class action that "many of the forty-four search terms proposed by the plaintiffs are unreasonable" and directing parties to agree to "a <u>reasonable</u> number of" terms "taking into consideration the documents already produced" (emphasis in original)).[13]

The discovery process does not grant plaintiffs "a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Lopez*, 348 F.R.D. at 422. Plaintiffs, here, are seeking not only to expand Phase 2 beyond its court-ordered scope, but to impose grossly overbroad search parameters that appear intended to explore Natera's entire Panorama business in search of new theories of liability. The Court should reject this attempt to force disproportional discovery on the Natera Defendants and require the parties to engage on the Natera Defendants' offer to conduct supplemental discovery on the limited topics identified above. (*See supra* at 3.)

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion to Compel.

---

[12] These are the Current Procedural Terminology (CPT) codes used for different test panels. DiGeorge syndrome is the name of the condition caused by a 22q11.2 microdeletion.

[13] Plaintiffs' search terms are also problematic because they lack proximity limiters (*e.g.*, "w/5").

Dated: May 28, 2025

**KATTEN MUCHIN ROSENMAN LLP**

*/s/ Christina L. Costley*
Bruce G. Vanyo (admitted *pro hac vice*)
Christina L. Costley (admitted *pro hac vice*)
Paul S. Yong (admitted *pro hac vice*)
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: (310) 788-4400
Fax: (310) 788-4471
bruce@katten.com
christina.costley@katten.com
paul.yong@katten.com

Eric R. Hail
State Bar No. 24047579
Ted A. Huffman
State Bar No. 24089015
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
eric.hail@katten.com
ted.huffman@katten.com

*Counsel for Defendants Natera, Inc., Steve*
*Chapman, Michael Brophy, Matthew Rabinowitz,*
*Roy Baynes, Monica Bertagnolli, Roelof F.*
*Botha, Rowan Chapman, Todd Cozzens, James I.*
*Healy, Gail Marcus, Herm Rosenman, and*
*Jonathan Sheena*

11

## <u>CERTIFICATE OF SERVICE</u>

I, Christina L. Costley, hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on May 28, 2025 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.

*/s/ Christina L. Costley*
Christina L. Costley
