# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § § Case No. 1:22-cv-00398-DAE § § |
| Plaintiff, | § § |
| v. | § § |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | § § § § § |
| Defendants. | § § § |

**NATERA, INC.'S FIRST SET OF INTERROGATORIES TO LEAD PLAINTIFF BRITISH AIRWAYS PENSION TRUSTEES LIMITED**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Rules of the Western District of Texas, and any other applicable rules or governing law (collectively, the "Applicable Rules"), Defendant Natera, Inc. ("Natera") hereby propounds Natera's First Set of Interrogatories directed to Lead Plaintiff British Airways Pension Trustees Limited ("Lead Plaintiff"). Lead Plaintiff is required to serve responses within thirty (30) days of service, in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the definitions and instructions that follow. Such production should be made in accordance with the "DEFINITIONS" and "INSTRUCTIONS" set forth below.

**DEFINITIONS**

Unless stated otherwise, the terms set forth below are defined as follows:

1.      "Action" means the above-captioned proceeding, *Schneider v. Natera, Inc., et al.*, 1:22-cv-00398-DAE, pending in the United States District Court for the Western District of Texas.

1

2.      "Anti-Kickback Statute" means the United States Anti-Kickback Statute, codified at 42 U.S.C. § 1320a-7b(b).

3.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary to make the request, definition or instruction inclusive, rather than exclusive.

4.      "Communication(s)" or "Communicate(d)" means any conceivable manner or means of disclosure, transfer, transmittal, or exchange of oral, written, electronic, or other information, between or among one or more Person(s) (defined below), and includes all documents, writings, correspondence, memoranda, messages, meetings, conversations, discussions, conferences, agreements, e-mails, notes, or other transmittal of information, whether face-to-face, by telephone, by mail, by computer, by videoconference, or otherwise, and further includes all forms of electronic communications, including text messages and any form of instant messages.

5.      "Complaint" means the Amended Class Action Complaint for Violations of the Federal Securities Laws filed in this Action on October 7, 2022.

6.      "Concerning" means, without limitation, concerning, with respect to, referring to, regarding, establishing, identifying, listing, comprising, connected with, memorializing, recording, responding to, showing, analyzing, representing, constituting, containing, reflecting, discussing, commenting upon, supporting, evidencing, modifying, contradicting, quoting, criticizing, describing, creating or maintaining, bearing upon, relating to, constituting a basis for or deriving or arising therefrom, whether in whole or in part, and when referring to a particular document, includes that document.

7.      "Each" shall be construed to include "Every" and/or "All", and "Every" shall be construed to include "Each."   "Any" shall be construed to include "All", and "All" shall be construed to include "Any."

8.      "Hindenburg Research" means Hindenburg Research LLC and any of its affiliates, subsidiaries, directors, members, employees, representatives, agents, attorneys, assigns, experts,

2

consultants, current and former, Including all other Persons acting or purporting to act on their behalf.

9.      "Hindenburg Report" means the report authored by Hindenburg Research and published on March 9, 2022, titled "Natera: Pioneers In Deceptive Medical Billing."

10.      "Identify" (with respect to Persons) means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural person, the present or last known place of employment.

11.      "Including" means including without limitation.

12.      "Natera" means Defendant Natera, Inc.

13.      "Person(s)" includes natural persons, corporations, not-for-profit entities, partnerships, joint ventures, sole proprietorships, unincorporated associations, banks, trusts, governmental units and subdivisions and other entities of all types, and all predecessors or successors-in-interest.

14.      "Practice(s)" means any plan, scheme, course of conduct, device, act, practice, or course of business of Natera, Including but not limited to those referenced in Paragraphs 218 and 219 of the Complaint.

15.      "You," "Your(s)," or "Lead Plaintiff" means Lead Plaintiff British Airways Pension Trustees Limited, its officers, directors, employees, trustees, and any agent, representative, attorney, accountant, independent contractor, investment advisor, money manager, portfolio manager, or other Person, business advisor, or legal entity acting, or purporting to act, on behalf of Lead Plaintiff.

16.      Where appropriate, the use of the singular includes the plural and the use of the plural includes the singular.

17.      Capitalized terms not defined herein shall have the same meaning as in the Complaint.

3

**INSTRUCTIONS**

A.      All Interrogatories shall be construed pursuant to the applicable Federal Rules of Civil Procedure and Local Rules of this Court.

B.      In accordance with the Federal and Local Rules, You must answer each Interrogatory fully and completely in writing under oath, to the extent that it is not objected to, after exercising due diligence to make an inquiry and secure the information necessary to do so.

C.      If You cannot answer an Interrogatory fully and completely after exercising due diligence, state so in writing, specify the portion of the Interrogatory that You are unable to answer fully and completely, together with the facts on which You rely to support that contention, and answer as much of the Interrogatory as possible.  If You claim any ambiguity in an Interrogatory, Definition, or Instruction, such claim should not be utilized as a basis for refusing to respond, but you should set forth as part of Your response the language deemed to be ambiguous and the interpretation used in responding to the Interrogatory.

D.      If You contend that information sought by an Interrogatory is privileged or protected by the work-product doctrine, Your response must identify the Interrogatory, the date(s) of Each privileged Communication or information, the means of the Communication, all Persons involved, and the grounds for Your assertion of privilege or work-product protection. If You contend that only a portion of the information sought by an Interrogatory is privileged, You must provide a full response to any part of the Interrogatory that is not objectionable.

E.      Unless stated otherwise, the time period applicable to each Interrogatory shall be January 1, 2019 through the date of service of these Interrogatories.

**INTERROGATORIES**

1.      State whether You contend that Your claims and alleged damages in this Action are based, in whole or in part, on Natera's alleged Practice Concerning "unbundling" versions of its Panorama test both with and without microdeletion screening, as alleged in the Hindenburg Report.  To the extent You contend that Your claims and alleged damages are based on this

4

Practice, quote the specific language or provide pinpoint citations to the Hindenburg Report (including page/section) describing the Practice.

2.    State whether You contend that Your claims and alleged damages in this Action are based, in whole or in part, on Natera's alleged Practice Concerning "doubl[ing] the cost of Panorama screenings by adding microdeletions," as described in the Hindenburg Report. To the extent You contend that Your claims and alleged damages are based on this Practice, quote the specific language or provide pinpoint citations to the Hindenburg Report (including page/section) describing the Practice.

3.    State whether You contend that Your claims and alleged damages in this Action are based, in whole or in part, on Natera's alleged Practice Concerning "double billing" Panorama by charging both patients and insurers for same tests, as described in the Hindenburg Report. To the extent You contend that Your claims and alleged damages are based on this Practice, quote the specific language or provide pinpoint citations to the Hindenburg Report (including page/section) describing the Practice.

4.    State whether You contend that Your claims and alleged damages in this Action are based, in whole or in part, on Natera's alleged Practice Concerning the "Price Transparency Program," as described in the Hindenburg Report. To the extent You contend that Your claims and alleged damages are based on this Practice, quote the specific language or provide pinpoint citations to the Hindenburg Report (including page/section) describing the Practice.

5.    State whether You contend that Your claims and alleged damages in this Action are based, in whole or in part, on Natera's alleged Practice Concerning retroactive offerings of discounted cash pay rates to customers resulting in insurance deductible discounts, as described in the Hindenburg Report. To the extent You contend that Your claims and alleged damages are based on this Practice, quote the specific language or provide pinpoint citations to the Hindenburg Report (including page/section) describing the Practice.

6.    Identify Each Practice of Natera described in the Hindenburg Report not specifically mentioned in Interrogatories 1–5 that Your claims and alleged damages in this Action

are based, in whole or in part.  For Each Practice identified in response to this Interrogatory 6, quote the specific language or provide pinpoint citations to the Hindenburg Report (including page/section) describing the Practice.

7.      For Each Practice You identified in response to Interrogatories 1–6, state all facts supporting Your contention that the Practice supports a claim in this Action and that You suffered damages as a result of that Practice.  In responding, to the extent known after a reasonable inquiry, identify: (a) the portion(s) of the Hindenburg Report (including page/section) that You contend disclosed the Practice to the market and contributed to Your damages suffered in this Action; (b) the date or dates on which the Practice occurred; (c) the Persons You contend were involved in the Practice (including but not limited to Persons You may rely upon in this Action in connection with the Practice); (d) which of Your claim(s) (*e.g.*, Section 10(b), Section 11) this Practice supports; (e) how the Practice rendered any statement or omission You identified in response to Interrogatory 8 false or misleading; and (f) whether You contend the Practice violated any law, statute (including but not limited to the Anti-Kickback Statute), regulation, or industry standard, and, if so, identify Each specific law, statute, regulation, or industry standard You contend was violated.

8.      Identify Each statement or omission on which Your Section 10(b) and Section 11 claims in this Action is based.  For Each such statement or omission, state the date, speaker/author, forum (*e.g.*, earnings call, press release, SEC filing), the specific language challenged (exact quote or provide a pinpoint citation sufficient to identify the specific statement), the applicable claims (*e.g.*, Section 10(b), Section 11), and the paragraph(s) in the Complaint in which You allege the statement or omission.

9.      Identify Each purchase, acquisition, sale, or other disposition of Natera stock made by or for Your benefit from January 1, 2019 through present, including the date, quantity, price, the number of Natera shares you currently hold, and any profit (realized or unrealized) from that stock.

10.    Identify Each Person with whom You or any Person acting on Your behalf has Communicated with or from whom You have received factual information Concerning this Action, including but not limited to all interviews referenced in the second unnumbered paragraph on page 1 of the Complaint and any Persons referenced in Paragraph 172 of the Complaint ("The Hindenburg Report stated it was based on 'more than 2 dozen interviews….'").  If You are claiming privilege on any Communication, You shall comply with Instruction D.


Dated: February 10, 2026

**KATTEN MUCHIN ROSENMAN LLP**

/s/ *Christina L. Costley*
Bruce G. Vanyo (admitted *pro hac vice*)
Christina L. Costley (admitted *pro hac vice*)
Paul S. Yong (admitted *pro hac vice*)
2021 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
Tel: (310) 788-4400
Fax: (310) 788-4471
bruce@katten.com
christina.costley@katten.com
paul.yong@katten.com

Ted A. Huffman
State Bar No. 24089015
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
ted.huffman@katten.com

*Counsel for Defendant Natera, Inc.*

7

## CERTIFICATE OF SERVICE

I, Patrick McCusker, hereby certify that a copy of the foregoing Natera, Inc.'s First Set of Interrogatories to Lead Plaintiff British Airways Pension Trustees Limited was served via electronic mail to the following individuals at the addresses identified below.

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Evan R. Hoey
Vanessa M. Milan
Aubrie Kent
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
jdancona@ktmc.com
ehoey@ktmc.com
vmilan@ktmc.com
akent@ktmc.com

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
James A. Harrod
Matthew S. Goldstein
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(212) 554-1400
jim.harrod@blbglaw.com
matthew.goldstein@blbglaw.com

**NIX PATTERSON, LLP**
Jessica Underwood
Jeff Angelovich
Cody Hill
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
(512) 328-5333
junderwood@nixlaw.com
jangelovich@nixlaw.com
chill@nixlaw.com

Date:   February 10, 2026
        New York, NY

                                        */s/ Patrick J. McCusker*
                                        Patrick J. McCusker

8