IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BRITISH AIRWAYS PENSION § No. 1:22-CV-398-DAE
TRUSTEES LIMITED & KEY WEST §
POLICE AND FIRE PENSION FUND, §
Individually and on Behalf of All §
Others Similarly Situated, §
§
Plaintiffs, §
§
v. §
§
NATERA, INC., STEVE CHAPMAN, §
MICHAEL BROPHY, MATTHEW §
RABINOWITZ, and RAMESH §
HARIHARAN, §

Defendants.
_____

ORDER PRELIMINARILY GRANTING PLAINTIFFS' MOTION TO
VOLUNTARILY DISMISS

Before the Court is Class Representatives British Airways Pension

Trustees Limited and Key West Police and Fire Pension Fund's (collectively,

"Plaintiffs") Motion to Voluntarily Dismiss its Section 12(a)(2) claims against

Defendant Natera, Inc. ("Natera" or "the Company") and Defendants Morgan

Stanley & Co. LLC, Goldmach Sachs & Co., LLC, Cowen and Company, LLC,

SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital

Group LLC (collectively, "Underwriter Defendants"). (Dkt. # 206.) The Court

held a hearing on this matter on February 19, 2026. After careful consideration of

memoranda filed in support of and in opposition to the Motion, the Court—for the reasons that follow—**GRANTS** Plaintiffs' Motion.  (Dkt. # 206.)

FACTUAL BACKGROUND[1]

Lead Plaintiff British Airways Pension Trustees Limited and additional plaintiff Key West Police & Fire Pension Fund (together, "Plaintiffs") filed this federal securities class action on behalf of those who purchased or otherwise acquired the stock of Natera between February 26, 2020, and March 14, 2022 (the "Class Period").  (Dkt. # 60 at 5.)

Plaintiffs alleged claims against Defendants for violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and 78t-1(a), and the rules and regulations promulgated thereunder, including United States Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.  (See id. at 1.)  Plaintiffs also asserted claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k, 77l(a)(2), and 77o.  (Id.)

I.     The Company

Natera, a genetic testing company headquartered in Austin, Texas, "develops, markets, and commercializes a range of genetic tests in the areas of

---

[1] Having already stated the facts as alleged by Plaintiffs in full in its previous orders, the Court repeats only those facts relevant to the instant Motion.

2

women's health, organ health, and oncology." (Dkt. # 60 ¶¶ 1, 28.) This lawsuit originally concerned two of Natera's products: (1) Prospera, a non-invasive kidney transplant rejection test,[2] and (2) Panorama, a non-invasive prenatal test ("NIPT"). (Id. ¶ 2.) The lawsuit now only concerns Panorama. (See Dkt. # 104.)

Panorama, Natera's "flagship NIPT," screens for genetic abnormalities and "can provide important information about a pregnancy, such as indications of Down syndrome, as early as nine weeks into that pregnancy." (Id. ¶ 9.) According to Plaintiffs, Natera added screening for microdeletions—"small, missing parts of a chromosome that can adversely impact a baby's health and development"—before the start of the Class Period. (Id. ¶ 10.) This additional screening was "not required by any medical protocols" and was often not covered by the patient's medical insurance. (Id.)

Plaintiffs allege that Defendants cultivated a misleading impression that the increased revenue from Panorama sales "was the result of organically growing demand." (Id. ¶ 12.) But this demand was actually driven by "deceptive and improper business practices." (Id.) Natera did not disclose that it had close ties to a third-party company, My Genome My Life, Inc. ("MGML"), which

---

[2] After careful consideration, on September 11, 2023, the Court granted in part Defendants' motion to dismiss and dismissed without prejudice Plaintiffs' claims regarding Prospera. (Dkt. # 104.) The Court allowed Plaintiffs leave to amend their complaint, but Plaintiffs chose not to amend. (Id.)

submitted prior authorization requests on Natera's behalf.  (Id. ¶ 13.)  The "driving force and architect of MGML" had "significant connections" with Natera's Vice President of Commercial Sales.  (Id. ¶ 127–29.)  Natera "benefitted from roughly $450,000 prior authorization submissions, many times submitted without regard for the underlying necessity, and sometimes after the subject test was performed, inflat[ing] Natera's revenue through overall volume growth."  (Id.)  Natera's requisition form for Panorama also automatically opted patients in for screening for one microdeletion,[3] "which created the impression that demand growth for microdeletion testing was organic, rather than the result of a default order form." (Id. ¶ 14.)

V.    The Underwriter Defendants

Plaintiffs have also alleged liability on the part of Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group LLC (together, the "Underwriter Defendants"), who "served as the underwriters of the July 2021 SPO and shared more than $33 million in fees paid to the underwriting syndicate."  (Id. ¶¶ 259–66.)  According to Plaintiffs, the offering documents for

---

[3] Panorama's order form contained an opt-*out* for the 22q.11.2 deletion (also known as DiGeorge syndrome) in its "Panorama Prenatal Panel Plus 22Q11.2." (Id. ¶ 145.)

Natera's July 2021 secondary public offering contained materially untrue statements and material omissions regarding Panorama. (Id. ¶¶ 271–84.)

VI.    Pertinent Events

Natera's stock price more than tripled from 2020 to late 2021. (Id. ¶ 15.) In July 2021, Natera "sold investors 5.175 million shares of its common stock at $113 per share in a secondary public offering," which yielded approximately $585 million in gross proceeds. (Id. ¶ 16.) This came on the heels of a public offering in September 2020 that had generated about $287 million in gross proceeds. (Id.) During the Class Period, certain Defendants "unloaded over $137 million worth of Natera common stock through insider sales." (Id. ¶ 17.)

On March 9, 2022, an investigative report by Hindenburg Research ("Hindenburg Report") was released. (Id. ¶ 18.) Hindenburg Research "detailed Natera's use of MGML to submit prior authorizations" and also noted that Natera "was propping up microdeletion demand by forcing patients to opt out of receiving such screenings." (Id.) Natera's stock price dropped 33%. (Id.)

Just five days later, on March 14, 2022, a federal jury awarded CareDx $44.9 million in damages after finding that Natera "intentionally and willfully misled the public by falsely marketing Prospera as more accurate than, and superior to, AlloSure." (Id. ¶ 19.) Natera's common stock price plunged again, this time by 22%. (Id.) "By the end of the Class Period, Natera's stock had

5

fallen more than 70% from its Class Period high of $129.09, erasing over $8.5

billion in shareholder value." (Id. ¶ 20.)

PROCEDURAL BACKGROUND

On September 11, 2023, the Court granted in part and denied in part

Defendants' motion to dismiss Plaintiffs' amended complaint. (Dkt. # 104.)

Magistrate Judge Howell issued a Report and Recommendation on January 28,

2025 recommending that the Court certify the Class. (Dkt. # 170.) The

Underwriter Defendants objected to the certification of the Section 12(a)(2) claims,

arguing Plaintiffs lacked standing. (Dkt. # 172.) This Court issued an Order

overruling those objections and adopting Judge Howell's Recommendations on

March 21, 2025. (Dkt. # 178).

Thereafter, Natera and the Underwriter Defendants filed a petition for

leave to appeal the class certification with the Fifth Circuit pursuant to Fed. R. Civ.

P. 23(f), and the Fifth Circuit granted Defendants leave on May 15, 2025. (Dkt. #

181.) On July 22, 2025, Plaintiffs informed Defendants they intended to

voluntarily dismiss their Section 12(a)(2) claims, (Dkt. # 206 at 2), and filed the

instant motion on August 22. (Id.)

Plaintiffs' Motion to Voluntarily Dismiss their claims is unopposed by

Natera or the Underwriter Defendants regarding the voluntary dismissal of

Plaintiffs' Section 12(a)(2) claims; rather, the only issue they dispute is whether it

6

is appropriate for the Court to dismiss such claims with or without prejudice. (Dkt. ## 208, 209). Defendants timely responded, and Plaintiffs replied. (Dkt. ## 208, 209, 211.)

## LEGAL STANDARD

### I.    Voluntary Dismissal Under Fed. R. Civ. P. 41(a)(2)

Upon a plaintiff's request, the court can dismiss an action by court order on terms that it considers proper. Fed. R. Civ. P. 41(a)(2). Unless otherwise specified, dismissal under this paragraph is without prejudice. Id. Ordinarily, a motion for voluntary dismissal "should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." Elbaor v. Tripath Imaging, Inc., 279 F.3d 314, 317 (5th Cir. 2002) (citation omitted). "Whe[n] the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal." Id. at n.3 (quoting Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc., 903 F.2d 352, 360 (5th Cir. 1990)). Legal prejudice may also exist if "a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort." Davis v. Huskipower Outdoor Equip. Co., 936 F.2d 193, 199 (5th Cir. 1991).

Whether legal prejudice exists under these circumstances is a determination to be made by the court using its sound discretion. If the court determines that legal prejudice exists, it may "refuse to grant a voluntary dismissal." Id. (citations omitted).  "[T]he mere prospect of a second lawsuit is not enough prejudice to a defendant to warrant denial of a motion to dismiss without prejudice." United States ex rel. Doe v. Dow Chemical Co., 343 F.3d 325, 330 (5th Cir. 2003).  Alternatively, the court can "craft conditions that will cure the prejudice." Elbaor, 279 F.3d at 318.

II.    Voluntary Dismissal of Class Action Claims Under Fed. R. Civ. P. 23(e)

Under Federal Rule of Civil Procedure 23(e), claims of a certified class may be voluntarily dismissed "only with the court's approval." Fed. R. Civ. P. 23(e).  The Court must decide "whether to give notice of the proposal to the class" based on the information provided by the parties.  Fed. R. Civ. P. 23(e)(1)(A).  If the Court finds that Notice is necessary, notice must be directed "in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B).  If the proposal is one that would bind class members, "the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).

8

<u>DISCUSSION</u>

Although both parties agree that Plaintiffs' Section 12(a)(2) claims should be voluntarily dismissed, the Court must first determine that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court will then turn to the disputed question in the parties' briefing: whether such a dismissal should be with or without prejudice.

I.    <u>Plaintiffs' Proposal is Fair, Reasonable, and Adequate</u>

Under Federal Rule of Civil Procedure 23(e)(2), the Court must consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[;] and (D) the proposal treats class members equitably relative to each other."

Here, it appears that Plaintiffs have adequately represented the class, as determined in both Judge Howell's Report and Recommendations and this Court's Order adopting it. (Dkt. ## 170, 178.) Plaintiffs and their counsel have diligently pursued their claims since the inception of this suit in 2022.

It also appears to the Court that the parties have negotiated the proposal to voluntarily dismiss Plaintiffs' Section 12(a)(2) claims at arm's length. Fed. R. Civ. P. 23(e)(2)(B). Plaintiffs' reasoning for voluntarily dismissing their Section 12(a)(2) claims is sound: they wish to streamline their case by removing

these claims, reducing the time and expense from litigating an appeal, conserving any future recovery to class members, and have set forth arguments that the Section 12(a)(2) claims do not add benefit to the class beyond their maintained Section 11 claims.  (See Dkt. # 206 at 4.)

The third factor is neutral; because Plaintiffs are voluntarily dismissing—not settling—this claim, there is no relief promised to the class for dismissal of the Section 12(a)(2) claims.  See Fed. R. Civ. P. 23(e)(2)(C).  Fourth, the proposal treats all members of the class equitably, regardless of whether they have Section 12(a)(2) claims or not.  See Fed. R. Civ. P. 23(e)(2)(D).

Based on the above reasons and the parties' representations at the hearing, the Court finds that Plaintiffs' proposal to voluntarily dismiss their Section 12(a)(2) claims is fair, reasonable and adequate.[4]

II.    Dismissal Without Prejudice is Appropriate Here

The parties dispute whether the voluntary dismissal of Plaintiffs' Section 12(a)(2) claims should be granted with or without prejudice.  Unless a Court specifies otherwise, a voluntary dismissal pursuant to Rule 41(a)(2) is without prejudice.  Fed. R. Civ. P. 41(a)(2).  If the Court finds that a voluntary dismissal would cause Defendants plain legal prejudice, the Court has two options:

---

[4] As an additional matter, Plaintiffs inform the Court of their intention to provide notice to the class.  (Dkt. # 206.)  The Court thus reserves its judgment on whether such notice is required by Fed. R. Civ. P. 23(e)(1)(B).

10

(1) deny the motion, or (2) "craft reasonable conditions that would eliminate the prejudice." Elbaor, 279 F.3d at 319.  "When opposing a [movant's] motion for voluntary dismissal or dismissal of an action without prejudice, the [non-movant] has the burden to demonstrate in a nonconclusory manner how it will be prejudiced."  Sezgin v. James River Ins. Co., No. A-19-CV-410-LY, 2019 WL 13199714, at *2 (W.D. Tex. 2019).

Defendants argue they would be prejudiced if the Court dismisses Plaintiffs' Section 12(a)(2) claims without prejudice because the "proposed without-prejudice dismissal would harm the Underwriters in mooting their Fifth Circuit Rule 23(f) appeal."  (Dkt. # 208 at 2.)  However, as Defendants appear to acknowledge, their appeal will be mooted by any dismissal, regardless of whether it is made with or without prejudice.  See id. ("Dismissal under any circumstance requires the Underwriters to relinquish their opportunity to obtain a decision from the Fifth Circuit that could decertify the Section 12(a)(2) class[.]").  Thus, the Court finds this argument unpersuasive and irrelevant as to whether dismissal should be with or without prejudice.

Defendants also argue that "the only rationale Plaintiffs offer for dismissing, now, is their assertion that damages are essentially duplicative of the still pending Section 11 claim—a fact that has been true since Plaintiffs brought this case on March 10, 2022."  (Dkt. # 209 at 2.)  The Court finds it inapposite to

11

the pleadings to argue that Plaintiffs bring only one reason for their voluntary dismissal—they additionally cite to factors such as anticipated time and cost expenditures on appeal and concerns for preserving any future recovery amounts for the class members.  (Dkt. # 206.)

They next assert that Plaintiff is only dismissing these claims to avoid a potential adverse ruling from the Fifth Circuit.  (See id.; Dkt. # 208 at 2.)  To support this, the Natera Defendants rely on Harris v. Devon Energy Production, L.P., a case in which the Fifth Circuit found that a district court abused its discretion in dismissing a suit without prejudice where Plaintiff appeared to be dismissing its claims to avoid an adverse result on summary judgment.  500 Fed. App'x 267, 269 (5th Cir. 2012) (per curiam).  However, the Court finds that case distinguishable because in Harris, the plaintiffs conceded that they could not prove their case, and the appellate court found that it could "only conclude" that the dismissal was "intended to avoid an imminent adverse result on summary judgment."  Id.  Here, Plaintiffs have not conceded that they lack standing to pursue their Section 12(a)(2) claims—the issue underlying the appeal—and Defendants' implication that an adverse judgment is "imminent" is merely

12

speculative.[5]  Thus, the Court finds this argument unpersuasive and an insufficient basis for a with-prejudice dismissal.

Defendants' remaining arguments relate to their concern that dismissal without prejudice would lead to subsequent suits, or the Underwriter Defendants being brought back into the case at a later time.  (Dkt. ## 208, 209.)  First, the Fifth Circuit has found that the "mere prospect of a second lawsuit" is not enough to show plain legal prejudice in deciding whether to grant a motion for voluntary dismissal.  Elbaor, 279 F.3d at 317.  Thus, the Court reasonably concludes that this is also not sufficient plain legal prejudice to warrant additional conditions on the voluntary dismissal.  See id. at 319 (calling dismissal with prejudice the "harshest condition available" to the district court).

Further, the Court finds that other procedural mechanisms exist to insulate Defendants from the potential threat of Plaintiffs reinstating their claims.  First, even if Plaintiffs wanted to amend their complaint at a future date, they would have to move for leave to do so; in considering such a motion, the Court would necessarily weigh prejudice to the Defendants in its ruling.  See Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014)

---

[5] Indeed, the Underwriter Defendants characterize their posture on appeal as having "a reasonable prospect of obtaining a favorable ruling from the Fifth Circuit." (Dkt. # 208 at 4.)  The Court finds that reasonable prospect is not the same as an "imminent adverse result" as in Harris.  See 500 Fed. App'x at 269.

("The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive, undue prejudice to the opposing party . . . , and futility of the amendment.'").  Second, in their Motion to Dismiss, Plaintiffs point out that class members are likely barred from bringing individual suits asserting Section 12(a)(2) claims because the Securities Act contains a three-year statute of repose.  (Dkt. # 12.)  The Court is persuaded that these procedural systems adequately safeguard Defendants' interests, and no additional conditions on the voluntary dismissal are necessary.

CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Voluntarily Dismiss its Section 12(a)(2) claims is preliminarily **GRANTED** and such claims are **DISMISSED WITHOUT PREJUDICE**.  (Dkt. # 206.)  Plaintiffs **SHALL INCLUDE** in their forthcoming Class Notice a discussion of the proposed dismissal of the Section 12(a)(2) claims and state that the Court has preliminarily granted the proposed dismissal without prejudice.  The Class Notice **SHALL ALSO ADVISE** Class members of their right to object to the proposed dismissal without prejudice.  If any Class member objects to the dismissal, Plaintiffs **SHALL FILE** with the Court any such objection(s) and Plaintiffs' response thereto **within ten (10) business days** of the expiration of the deadline for Class

14

members to object to the proposed dismissal.  After receiving any such objection(s) and Plaintiffs' response thereto, the Court will determine whether a further hearing on the proposed dismissal without prejudice is necessary before finally granting Plaintiffs' motion for dismissal of the Section 12(a)(2) claims.

 **IT IS SO ORDERED**.

 **DATED**: Austin, Texas, March 4, 2026

_____

David A. Ezra
Senior United States District Judge