**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| **BRITISH AIRWAYS PENSION TRUSTEES LIMITED and KEY WEST POLICE & FIRE PENSION FUND,** individually, and on behalf of all others similarly situated, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Plaintiffs,* | §<br>§ | |
| v. | §<br>§ | **Case No. 1:22-cv-00398-DAE** |
| **NATERA, INC., et al.,** | §<br>§ | |
| *Defendants.* | §<br>§<br>§ | |

**THE NATERA DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL THE NATERA DEFENDANTS
TO ANSWER PLAINTIFFS' INTERROGATORY NO. 6**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................1

    A.  The Hindenburg Report ................................................................................ 1

    B.  This Litigation........................................................................................... 3

    C.  The Interrogatory, and Defendants' Objections to and Plan for Answering It. .................. 4

ARGUMENT ...................................................................................................................4

    A.  Plaintiffs Improperly Move for Answers to an Unasserted Defense. ................................ 4

    B.  Plaintiffs Improperly Seek Contention Discovery on an Unasserted Defense. .................. 6

    C.  Plaintiffs Do Not Demonstrate Any Need for an Immediate Answer. ............................. 8

CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Abrego v. Budget Truck Rental, LLC,*
   2018 WL 6220163 (W.D. Tex. Apr. 23, 2018)...............................................................................7

*Cognizant TriZetto Software Grp., Inc. v. Infosys Ltd.,*
   2025 WL 1490364 (N.D. Tex. May 23, 2025) ...........................................................................8

*DaVita, Inc. v. Scot Indus., Inc.,*
   2018 WL 11443618 (E.D. Tex. Dec. 3, 2018)...........................................................................7

*Doe 1 v. Baylor Univ.,*
   335 F.R.D. 476 (W.D. Tex. 2020) ...........................................................................................10

*Gabrielli v. Motorola Mobility LLC,*
   2025 WL 3078832 (N.D. Cal. Nov. 4, 2025) ...........................................................................7

*Gardner v. Huott,*
   2015 WL 12733406 (W.D. Tex. Apr. 22, 2015)........................................................................7

*Hall v. Johnson & Johnson,*
   2021 WL 2562384 (D.N.J. June 22, 2021) ..............................................................................4

*InternetAd Sys., LLC v. ESPN, Inc.,*
   2004 WL 5181346 (N.D. Tex. Oct. 8, 2004)............................................................................7

*In re Itron, Inc.,*
   883 F.3d 553 (5th Cir. 2018) ....................................................................................................9

*Kilby v. CVS Pharmacy, Inc.,*
   2019 WL 977874 (S.D. Cal. Feb. 28, 2019).............................................................................8

*Royal Park Invs. SA/NA v. HSBC Bank USA Nat'l Ass'n,*
   2016 WL 11891678 (S.D.N.Y. Nov. 17, 2016)........................................................................5

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n,*
   2017 WL 4174926 (S.D.N.Y. Aug. 28, 2017)..........................................................................9

*In re Schlumberger Tech. Corp.,*
   818 F. App'x 304 (5th Cir. 2020) .............................................................................................9

*Scott Env't Servs., Inc. v. Newfield Expl. Co.,*
   2019 WL 13149925 (E.D. Tex. Dec. 17, 2019)........................................................................7

*Scott v. Cnty. of Kern,*
   2025 WL 3651330 (E.D. Cal. Dec. 17, 2025) ..........................................................................8

*Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*,
  314 F.3d 278 (7th Cir. 2002) ....................................................................................................5

*Stanton 4433 Owners Ass'n v. State Farm Lloyds*,
  2022 WL 17752218 (W.D. Tex. Sept. 6, 2022)......................................................................7

*Thompson v. United States*,
  2023 WL 12148013 (C.D. Ill. Dec. 19, 2023) ........................................................................5

*Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*,
  2017 WL 3011144 (E.D. La. July 14, 2017) ..........................................................................8

*United Servs. Auto. Ass'n ("USAA") v. Mitek Sys., Inc.*,
  2013 WL 12092408 (W.D. Tex. Oct. 8, 2013) ........................................................................8

*United States v. Shah*,
  95 F.4th 328 (5th Cir. 2024) ..................................................................................................10

*Vishay Dale Elecs., Inc. v. Cyntec Co.*,
  2008 WL 4868772 (D. Neb. Nov. 6, 2008) .............................................................................4

## INTRODUCTION

Through their Motion, Plaintiffs seek an order requiring Defendants to waive privilege and list all legal advice they have received in connection with a defense – advice of counsel – that Defendants have not yet asserted and may never assert. The parties are currently in the middle of fact discovery. In accordance with this Court's July 2, 2025 Order, Defendants agreed to review over one million documents from 30 custodians. To date, Defendants have produced roughly 103,000 documents and expect to produce many thousands more before the April 30 substantial completion date. The deadline for fact discovery is not for another eight months.

Nevertheless, Plaintiffs have filed a motion to compel Defendants to decide, immediately, whether they will waive privilege and assert advice of counsel. This request is premature. As Defendants explained during the meet and confer process, the proper procedure is for Plaintiffs to first identify the basis of their claims and then allow Defendants to determine whether they sought counsel's advice on those issues. Without that information, Defendants cannot make an informed decision about the issue. This approach is also consistent with decisions from courts in the Fifth Circuit, which generally refuse to enforce plaintiffs' contention interrogatories prior to the close of fact discovery. For these reasons, Plaintiffs' Motion should be denied.

## BACKGROUND

### A.     The Hindenburg Report

Plaintiffs' claims are premised on a report issued on March 9, 2022, by now-defunct short-seller, Hindenburg Research. *See* Ex. 1.[1] The Hindenburg Report claimed that Natera was "starkly unprofitable," that its revenue growth had "been fueled by deceptive sales and billing practices," and that "as payors and patients wise up to its practices," Natera's "'growth' and prospects will

---

[1] References to "Ex. __" are to exhibits to the Declaration of Christina L. Costley.

rapidly fizzle." Ex. 1 at 1, 3. Relying on unnamed sources, the Report alleged that Natera's use of a third-party vendor, MGML, to process payments on behalf of physicians was unsustainable because: (a) prior authorization services, in general, "are suspect and may violate the anti-kickback statute;" (b) MGML, in particular, "doesn't submit anything under its own name," purportedly violating anti-kickback guidance requiring "transparency;" (c) MGML's founder had an undisclosed personal relationship with a former Natera employee; (d) MGML submitted claims regardless of "medical necessity;" (e) MGML sought authorization for services after they were rendered; and (f) MGML improperly claimed 501(c)(3) non-profit status. *Id.* at 13-17, 21-24, 27-28. Similarly, Hindenburg speculated that Natera's microdeletion screening was impermissible and unsustainable because: (a) microdeletions are "rarely covered by insurance;" (b) physicians were purportedly required to opt out of the screening; (c) patients purportedly did not know they ordered it; (d) microdeletion screening has a high false-positive rate; and (e) Natera "unbundled" the screening from trisomy screening and billed each separately. *Id.* at 2-3, 29-36.[2]

Four years later, none of Hindenburg's predictions have come to fruition. Rather than "fizzling," Natera's revenue has more than tripled and its stock is "trading significantly higher than" during the class period. Dkt. 206 at 6-7. The Office of Inspector General (responsible for enforcing anti-kickback laws) has not taken action against Natera. The independent investigation into Hindenburg's allegations conducted by Natera's Special Committee "concluded that the allegations of wrongdoing … were unfounded." Dkt. 135-2 at 2 (Form 10-Q filed Nov. 8, 2022). And the SEC concluded its own investigation with a "no-action" letter. Dkt. 135-4-5.

---

[2] The Court has not yet decided whether these claims are true, but it has noted "convincing case law which suggests that 'to the extent that open-market securities fraud complaints use as the source for adverse factual allegations about a public issuer a report by a short seller – an entity with an economic interest in driving down the company's stock price – these allegations must be considered with caution.'" Dkt. 177 at 17-18 (Order on Motion for Judgment on the Pleadings).

### B.    This Litigation

Plaintiffs' Complaint repeated some (but not all) of Hindenburg's allegations.  *E.g.*, Dkt. 60 ¶¶ 129, 136-37.  Among other things, it does not allege that (i) prior authorization services, in general, violate the anti-kickback statute; (ii) MGML improperly had tax exempt status, and (iii) Natera "unbundled" tests and double billed patients and insurers.  Plaintiffs have also stated that their claims are not based on allegations "that Natera's disclosed financials were misstated." Dkt. 140 at 10.  Nevertheless, they have sought, and are taking, discovery into these theories, making it unclear whether they are at issue here.  *See* Dkt. 192 at 2-3 (MTC reply demanding discovery into all "Panorama-related revenues and demand [that] were boosted by deceptive authorization, billing, and other business practices"); Dkt. 183-2 at 18-19, 21 (seeking "projected and actual sales, profits, revenues, and earnings," "billing practices and procedures," and "[patient] interactions" as to "payment options and billing practices"); Ex. 2 at 10, 12-13 (search terms including "Donat* OR charit* OR 'non profit'" and accounting issues and firms).

Defendants' team of 14 Katten attorneys and 23 contract attorneys are actively reviewing more than one million documents and, to date, have reviewed well over half a million and produced roughly 103,000 documents (more than 450,000 pages).  *See* Ex. 3 at 2 (Oct. 24, 2025 email from E. Hoey).  These documents cover the full range of topics set forth in the Hindenburg Report.  *See* Ex. 2 at 8-13 (Plaintiffs' Sept. 24, 2024 search parameter proposal, accepted by Defendants).

On November 21, 2025, the parties submitted a proposed discovery schedule, which the Court adopted on December 3, 2025.  The Court's December 3 Order sets April 30, 2026 as the substantial completion date for document discovery, September 22, 2026 as the deadline to serve interrogatories, and October 27, 2026 as the fact discovery deadline.  Dkt. 224.

C.    **The Interrogatory, and Defendants' Objections to and Plan for Answering It.**

On November 25, 2025, Plaintiffs served Interrogatory No. 6, which asks whether any Defendants "will rely on any legal advice, opinions, or Communications from counsel in defending this Action with respect to any defense You have or will assert," and further asks that Defendants "[i]dentify all such legal advice, opinions, or Communications from counsel." Dkt. 227-2 at 6.

Defendants objected that the request was untimely but agreed to provide an amended answer "if, at a later point in time, they determine to rely upon" an advice-of-counsel defense. *See* Dkt. 227-3 at 10-11. Defendants explained that they were still investigating their defenses and noted that "fact discovery . . . is still many months from completion." *Id.* at 11. Defendants also explained that they were not clear about which of Hindenburg's theories formed the basis for Plaintiffs' claims. *Id.* During a January 21 meet-and-confer, which Defendants memorialized in a February 6 letter, Defendants advised Plaintiffs that they would serve interrogatories asking Plaintiffs to identify those theories. *See* Dkt. 227-5. Defendants served their interrogatories on February 10, 2026. Dkt. 227-6. On February 19, 2026, Plaintiffs filed the present Motion.

## ARGUMENT

A.    **Plaintiffs Improperly Move for Answers to an Unasserted Defense.**

Until and unless Defendants assert advice of counsel as a defense, there is nothing for the Defendants to answer or for the Court to compel. *See Vishay Dale Elecs., Inc. v. Cyntec Co.*, 2008 WL 4868772, at *3 (D. Neb. Nov. 6, 2008) ("[T]he court will not compel the defendants to provide discovery on a[n] [advice-of-counsel] defense they may or may not raise."). It would be premature to compel Defendants to take a position on an as-yet unasserted defense in any event, but particularly because advice of counsel "implicates" waiver of "attorney-client privilege" – the proverbial bell that cannot be unrung. *Id.*; *see also Hall v. Johnson & Johnson*, 2021 WL 2562384,

at *1 (D.N.J. June 22, 2021) (answering interrogatories seeking affirmative defenses, following production of "hundreds of thousands of documents" in securities class action, would "prematurely lock Defendants into [supporting] legal theories"). As a result, courts are particularly reluctant to rush Defendants into taking a position on it. *See Thompson v. United States*, 2023 WL 12148013, at *3 (C.D. Ill. Dec. 19, 2023) (denying motion to permit party sufficient time "to decide whether to <u>knowingly</u> waive the attorney client privilege by asserting a reliance on counsel defense").[3]

Indeed, courts in similar cases have allowed defendants to serve contention interrogatories before forcing them to decide whether to assert an advice-of-counsel defense. *See Thompson*, 2023 WL 12148013, at *3 ("[b]efore [responding party] can answer the contention interrogatory regarding advice of counsel, the [seeking party] must first identify the" basis for the alleged violation); *Royal Park Invs. SA/NA v. HSBC Bank USA Nat'l Ass'n*, 2016 WL 11891678, at *1 (S.D.N.Y. Nov. 17, 2016) (requiring plaintiffs to "identify [the] specific action or omission" underlying their claim before defendants answer plaintiffs' interrogatory asking whether it "will be asserting an advice-of-counsel defense"); *cf. Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 283 (7th Cir. 2002) ("[T]he simplest way to do this is . . . for the defendant to serve the plaintiff with a contention interrogatory.").

In this instance, as Defendants have explained, they do not yet have sufficient information to decide whether to assert advice of counsel because it is not clear whether Plaintiffs are arguing that: (1) prior authorization services, in general, violate anti-kickback laws; (2) Natera violated anti-kickback laws because of the relationship between its former employee and MGML's founder (or some other conduct); (3) MGML violated anti-kickback laws because of its failure to comply

---

[3] Plaintiffs suggest that Defendants waived any "prematurity" argument because they first raised it in their February 9 letter. Mot. at 5 n.3. That is preposterous. *See* Dkt. 227-3 at 10-11.

with tax laws, failure to identify itself when processing authorizations, or improperly had non-profit status; or (4) no one violated anti-kickback laws.[4]

If Plaintiffs' claims are based exclusively on conduct that was unknown to the Individual Defendants – either because it was undertaken exclusively by MGML or because it involved only lower level Natera employees – then the Individual Defendants likely will not assert advice of counsel because it would have been impossible for them to seek legal advice about conduct of which they were unaware. *Compare* Dkt. 83 at 6 (alleging that unspecified individuals at Natera "boosted" revenue growth through "indiscriminately submitted PAs" but not alleging that the individual defendants were aware of this) *with* Ex. 1 at 27 (Hindenburg Report claiming that MGML, not Natera, did this). Similarly, if Plaintiffs are arguing that the conduct violated the securities laws regardless of whether it violated any other law, then Defendants likely would not assert advice of counsel because the conduct's permissibility would be irrelevant. *See, e.g.*, Dkt. 169 (Class Cert Hearing Tr.) at 12:14-18 ("our claim [is] that it was the publication of the Hindenburg report disclosing myriad points of information about this MGML prior authorization entity"). In all events, Defendants are entitled to have this information – and to understand how it undermines Natera's disclosures – before they make the irreversible decision to waive privilege and assert advice of counsel. *Cf. Shah*, 314 F.3d at 283 ("[D]efendant is entitled to be supplied by the plaintiff . . . with a road map of the plaintiff's suit so that he can know how to defend itself.").

**B.      Plaintiffs Improperly Seek Contention Discovery on an Unasserted Defense.**

Even if Defendants had asserted an advice-of-counsel defense, Interrogatory No. 6 would be premature because it demands that Defendants marshal and enumerate "all" factual evidence of

---

[4] It is also unclear whether Plaintiffs' microdeletion claims are limited to the requisition form, as described in the Complaint, or extend to allegations that: (1) Natera billed carriers and patients separately for microdeletion screening; or (2) such screening has a high rate of false positives.

any "legal advice, opinions, or Communications from counsel . . . concerning the events at issue." Dkt. 227-3 at 10.  That is infeasible as the parties are still in the midst of discovery, with Defendants reviewing a million plus documents with hundreds of thousands left to be reviewed.

While courts occasionally require plaintiffs to answer contention interrogatories before discovery closes (*infra* at 7-8), courts in Texas frequently decline to require defendants to answer interrogatories concerning their defenses in the middle of discovery, on the ground that defendants need discovery to do so.  *See Stanton 4433 Owners Ass'n v. State Farm Lloyds*, 2022 WL 17752218, at \*3 (W.D. Tex. Sept. 6, 2022) (declining to compel answer on interrogatory seeking defensive position as further investigation was needed); *Gardner v. Huott*, 2015 WL 12733406, at \*7 (W.D. Tex. Apr. 22, 2015) (declining to compel based on defendant's representation "it will supplement its responses" later in discovery); *InternetAd Sys., LLC v. ESPN, Inc.*, 2004 WL 5181346, at \*2 (N.D. Tex. Oct. 8, 2004) (declining to compel defendant to specify factual bases for defense, as "contention interrogatories need not be answered until later in [] discovery"); *DaVita, Inc. v. Scot Indus., Inc.,* 2018 WL 11443618, at \*4-5 (E.D. Tex. Dec. 3, 2018) (declining to compel defendant's answer, noting contention interrogatories' uselessness when premature).

Notably, Plaintiffs do not cite a single case in which any court required a defendant to answer a contention interrogatory before substantially completing discovery.  Many of the cases they do cite on this point (Mot. at 5-7) did not involve contention interrogatories or even interrogatories at all.[5]  And, the few cases Plaintiffs do cite involving contention interrogatories (*see id*. at 6-7) – half of which are out-of-circuit – involved interrogatories that asked ***plaintiffs*** to

---

[5] *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 3078832, at \*1 (N.D. Cal. Nov. 4, 2025) (objection to interrogatories as overbroad); *Scott Env't Servs., Inc. v. Newfield Expl. Co.*, 2019 WL 13149925, at \*1 (E.D. Tex. Dec. 17, 2019) (ordering deposition); *Abrego v. Budget Truck Rental, LLC*, 2018 WL 6220163, at \*3 (W.D. Tex. Apr. 23, 2018) (interrogatory about vehicle inspection).

state the facts supporting ***claims they had already asserted***.[6]  Of course, there is a greater expectation that plaintiffs understand their own asserted claims, and can answer interrogatories describing them, without first needing discovery to be complete.  It is fundamentally different to expect a defendant in the middle of discovery to determine and support defenses ***that they have not asserted yet***, especially where, as here, doing so is factually and legally complicated and poses significant consequences to Defendants' attorney-client privilege.  *Cf. Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, 2017 WL 3011144, at *3 (E.D. La. July 14, 2017) (denying motion to compel "seek[ing] 'the factual basis' for a number of affirmative defenses" because "the Parties are still in the midst of exchanging discovery" and noting "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed" (citation omitted)).

### C.    Plaintiffs Do Not Demonstrate Any Need for an Immediate Answer.

Plaintiffs separately fail to demonstrate any need for Defendants to determine immediately whether they will assert an advice-of-counsel defense.  *See Trident Mgmt. Grp.*, 2017 WL 3011144, at *3 (plaintiff failed to articulate explanation for needing answer to contention interrogatories at stage of litigation).  Their "needs" are manufactured.

***First***, Plaintiffs claim that, ***in the event*** Defendants assert an advice-of-counsel defense, Plaintiffs need "to obtain discovery on counsel's role, advice, and communications" – specifically, "Plaintiffs' choice of deponents and areas of inquiry, [and] potential additional document requests."  Mot. at 8-9.  But Defendants already said they would provide a substantive response

---

[6] *See Scott v. Cnty. of Kern*, 2025 WL 3651330, at *2-3 (E.D. Cal. Dec. 17, 2025) (interrogatories asking plaintiffs to state facts supporting claims); *Cognizant TriZetto Software Grp., Inc. v. Infosys Ltd.*, 2025 WL 1490364, at *5 (N.D. Tex. May 23, 2025) (same); *United Servs. Auto. Ass'n ("USAA") v. Mitek Sys., Inc.*, 2013 WL 12092408, at *2-3 (W.D. Tex. Oct. 8, 2013) (same for counter-plaintiff); *Kilby v. CVS Pharmacy, Inc.*, 2019 WL 977874, at *3 (S.D. Cal. Feb. 28, 2019) (limiting interrogatory so "Plaintiff need only" provide "principal facts" supporting contentions).

before depositions, which are not set to finish until October 2026.  Dkt. 224 at 2.  Plaintiffs' concern about potentially needing additional document discovery also does not follow.  In October 2025, the parties agreed to the full scope of custodians and search terms, and it was made clear at that time that the parties' agreement "encompasse[d] the outer boundary of custodial data" allowed.  Ex. 3 at 1.  Regardless, if Plaintiffs are concerned that they may run out of time to seek documents bearing on any legal advice, then they can of course request a modification of the case schedule to seek those documents.  *See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 2017 WL 4174926, at *10 (S.D.N.Y. Aug. 28, 2017) (court can extend discovery deadline "to entertain any further requests . . . on the advice-of-counsel defense, according to the needs of the case").

    ***Second***, Plaintiffs contend they need an immediate answer to determine whether Defendants' reliance on advice-of-counsel effects an "at issue" waiver to the attorney-client privilege related to: (1) affirmative defenses that make no reference to any counsel's advice, and (2) the results of the SEC investigation and the Special Committee investigation that occurred ***after*** the relevant time period giving rise to this suit.  Mot.  at 8-10; *see supra* at 2.  Plaintiffs are wrong.

    As to their first point, Plaintiffs contend that the "Thirteenth, Fourteenth, and Sixteenth Affirmative Defenses assert 'good faith' and similar defenses" that would, ***if asserted by Defendants***, waive ***any*** attorney-client privilege because good faith "depend[s] on a belief that one acted within the bounds of the law and implicate[s] the involvement of lawyers." Mot. at 7-8.  But Plaintiffs misstate the case law they cite for this position, and none of the referenced Affirmative Defenses make mention of any advice of counsel. *See* Dkt. 113 at 76-84.  In fact, the Fifth Circuit has specifically held that a "good faith" defense does not waive privilege where a defendant "has not 'rel[ied] on attorney-client communications' to establish its good-faith defense." *In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 308 (5th Cir. 2020) (citing *In re Itron, Inc.*, 883

F.3d 553, 558 (5th Cir. 2018)).  "[A] party does not waive attorney-client privilege unless it *affirmatively* invokes and relies on the privileged communications."  *Id*. at 306 (emphasis added).[7]

Nor do the SEC and Special Committee investigations relate to any potential advice-of-counsel defense.  To assert such a defense, the defendant must establish it sought the attorney's advice "before taking action."  *United States v. Shah*, 95 F.4th 328, 378 (5th Cir. 2024).  The SEC and Special Committee investigations, which were prompted by Hindenburg, took place *after* the alleged corrective disclosure.  *See* Dkt. 135-2, 135-4.[8]  And, to the extent those investigations' conclusions constitute legal "opinions," they would still be irrelevant because they were not, as Interrogatory No. 6 seeks, "opinions . . . from counsel that [Defendants] received."  Dkt. 227-6.  Rather, Defendants here have only ever cited to an SEC filing and public FOIA materials.  *See* Dkt. 135-2 at 3; Dkt. 135-4-5.  Regardless, Defendants already produced the documents they and the Special Committee provided the SEC in connection with those investigations.  Dkt. 190 at 3.

## CONCLUSION

Defendants will substantively answer Interrogatory No. 6 as soon as they can determine whether to rely upon an advice-of-counsel defense and before party depositions.  But they should not be prematurely forced into that profound decision at this stage.  The Motion should be denied.

---

[7] Plaintiffs mischaracterize two district court cases for their good faith defense arguments, including by omitting key parts of the opinions.  *Gales* did not hold that assertion of a general "good faith" defense waived the attorney-client privilege; the holding was based on what the defendant specifically pleaded for that defense.  And Plaintiffs misquote *Edwards* as holding a "[defendant] has waived its privilege . . . by injecting into the case its good faith belief" while omitting that the rest of the quote refers to a "good faith belief *in the lawfulness*" of certain FLSA classifications.  In any event, *Gales* and *Edwards* are bad law, as they conflict with *Schlumberger*.

[8] This is not the situation in *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476 (W.D. Tex. 2020) (cited Mot. at 8), where the privilege waiver occurred because the defendant relied on a counsel-led investigation, and subsequent reforms, to show it acted appropriately with respect to an "assault [that] occurred . . . *after* the [law firm's] investigation" and "recommendations."  *Id.* at 490-91 (emphasis added).  Here, the alleged wrongdoing occurred *before* the investigations.

Dated: March 5, 2026

**KATTEN MUCHIN ROSENMAN LLP**

*/s/ Christina L. Costley*
Bruce G. Vanyo (admitted *pro hac vice*)
Christina L. Costley (admitted *pro hac vice*)
Paul S. Yong (admitted *pro hac vice*)
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: (310) 788-4400
Fax: (310) 788-4471
bruce@katten.com
christina.costley@katten.com
paul.yong@katten.com

Eric R. Hail
State Bar No. 24047579
Ted A. Huffman
State Bar No. 24089015
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
eric.hail@katten.com
ted.huffman@katten.com

*Counsel for Defendants Natera, Inc., Steve Chapman, Michael Brophy, Matthew Rabinowitz, Roy Baynes, Monica Bertagnolli, Roelof F. Botha, Rowan Chapman, Todd Cozzens, James I. Healy, Gail Marcus, Herm Rosenman, and Jonathan Sheena*

-11-

## CERTIFICATE OF SERVICE

I, Christina L. Costley, hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on March 5, 2026 which caused an electronic copy of that document to be served on all counsel of record who have appeared in this matter.


/s/ Christina L. Costley
Christina L. Costley
