# EXHIBIT 2

| Interrogatory | Excerpt from Amended Responses |
|---|---|
| **1** | Lead Plaintiff's claims center on Natera's deceptive practices in its Panorama business prior to and during the Class Period involving its improper utilization of a closely-related third-party prior authorization company, My Genome My Life ("MGML"), and the Natera-designed Panorama requisition form. Natera maintained an inappropriate, inadequately disclosed relationship with MGML, which provided free prior authorization services to practitioners in order to facilitate Panorama orders and submitted large volumes of prior authorization requests for Panorama tests, including many submissions that were materially faulty in various respects. *See* Complaint, ¶¶123, 127-41. As a direct benefit of this improper conduct and relationship, Natera propped up its Panorama revenues and also inflated the number of Panorama microdeletion screens ordered, creating misimpressions regarding Panorama revenues and demand. *See id.*, ¶¶132-35, 138. Moreover, contrary to industry guidance, Natera's Panorama requisition form by default opted patients into receiving microdeletion screening (a costly addition to the basic panel) unless the patient was affirmatively opted out. *See id.*, ¶¶145-46, 149. This inflated the number of Panorama microdeletion screens ordered and enabled Natera to pursue payment for microdeletion screening, and further padded Natera's Panorama revenues, creating misimpressions regarding microdeletion demand and the factors driving revenues from the test. *See id.*, ¶149. Natera's utilization of the Panorama requisition form and MGML to drive Panorama orders and revenues were central components of, and directly related to, Natera's sales (including market access), billing and collections processes related to Panorama. Natera's practices and conduct before and during the Class Period involving "unbundling"—which is not defined in the Interrogatories, but which Lead Plaintiff interprets for purposes of this response to mean utilizing multiple Current Procedural Terminology (or CPT) codes in connection with the claims and billing process for a single Panorama test—are relevant or related to (and thus comprise a basis, in part, for) Lead Plaintiff's claims. In particular, for example, Natera's practices involving unbundling CPT codes in the process of billing or submitting claims or prior authorizations—including those submitted by MGML and/or those that were ordered by default through the use of Natera's deceptively-designed Panorama requisition form—are relevant or related to Lead Plaintiff's claims. |
| **2** | The deceptive design of the Panorama requisition form automatically opted patients in to expensive microdeletion testing without regard for medical necessity. Natera's practices and conduct before and during the Class Period involving increasing the cost for Panorama tests by automatically including microdeletions are relevant or related to (and thus comprise a basis, in part, for) Lead Plaintiff's claims. |

| Interrogatory | Excerpt from Amended Responses |
| --- | --- |
| 3 | Natera's practices and conduct before and during the Class Period involving "double billing"—which is not defined in the Interrogatories, but which Lead Plaintiff interprets for purposes of this response to mean seeking substantially duplicative payments from patients and insurance payors for the same Panorama test—are relevant or related to (and thus comprise a basis, in part, for) Lead Plaintiff's claims. In particular, for example, Natera's practice of double billing claims—including claims for Panorama screens with microdeletions that were ordered by default without regard for medical necessity through the use of Natera's deceptively-designed Panorama requisition form and/or which MGML submitted for prior authorization—to further increase its Panorama revenue numbers is relevant or related to Lead Plaintiff's claims. |
| 4 | Natera's practices and conduct before and during the Class Period involving its "Price Transparency Program"—which is not defined in the Interrogatories, but which Lead Plaintiff interprets for purposes of this response to mean Natera's program in which it allowed (i) patients who elected self-pay and paid within a particular time frame and (ii) patients with copays Natera estimated to be higher than the Price Transparency Program price to pay a preset cash price for Panorama—are relevant or related to (and thus comprise a basis, in part, for) Lead Plaintiff's claims. In particular, for example, Natera's Price Transparency Program was, at least in part, addressed to patients who were by default opted into Panorama tests with additional expensive microdeletion screens without regard for medical necessity through the use of Natera's deceptively-designed Panorama requisition form, and whose copay for the Panorama tests may not have been as expensive or may have been covered by their insurance had they opted out of the additional microdeletion screen. Natera's utilization of the Price Transparency Program allowed it to capitalize on an immediate cash payment for Panorama screens (while avoiding payor review of submitted claims or prior authorization requests), including those ordered with microdeletions by default without regard for medical necessity due to the misleading nature of the Panorama requisition form, contributing to the inflation of Panorama revenues, and is relevant or related to Lead Plaintiff's claims. |
| 5 | Natera's practice of resolving patients' complaints about surprise high bills for Panorama tests—including patient bills for Panorama screens with microdeletions that were ordered by default without regard for medical necessity through the use of Natera's deceptively-designed Panorama requisition form and/or which MGML submitted for prior authorization—by offering to bill a lower price to patients in exchange for a cash payment, even after the patients' insurers were billed for the same Panorama test, is relevant or related to (and thus comprises a basis, in part, for) Lead Plaintiff's claims. |

| Interrogatory | Excerpt from Amended Responses |
|---|---|
| **6** | In addition to the conduct Lead Plaintiff has stated is relevant or related to its claims in its amended responses to Interrogatory Nos. 1-5 above, additional aspects of Natera's practices and conduct before and during the Class Period are relevant or related to (and thus comprise a basis, in part, for) Lead Plaintiff's claims, including but not limited to the following: its submission of prior authorizations after a test was run; its submission of claims for Panorama screens that were medically unnecessary; its submission of prior authorizations and insurance claims without supporting medical documentation; its failure to collect on or zero-balancing patients' cost-sharing payments like copays and deductibles; and its use of the Panorama order form that automatically opted patients into receiving microdeletion screening unless they affirmatively opted out. Each of these practices was supported and facilitated by Natera's use of a deceptive requisition form to inorganically increase the number of microdeletion screenings ordered and Natera's improper utilization of MGML to, inter alia, indiscriminately submit prior authorizations. |