# EXHIBIT 10

The chart below contains each of the allegedly deceptive or improper practices included in the chart Defendants designed and requested Plaintiffs fill out in response to Defendants' Interrogatory No. 7. The chart cites to where each practice appears in the Amended Complaint ("AC") and/or the Hindenburg Report ("HR"), which is discussed in the AC (¶¶ 18; 127-32; 135; 139; 142-44; 172; 174-75) and which Defendants have stated they consider to be "incorporated by reference into the Complaint." Dkt. 80 at 5.[1]

| Allegedly Improper or Deceptive Practice at Issue | Amended Complaint Paragraph(s) and Hindenburg Report Page(s) |
|---|---|
| **"Natera maintained an inappropriate, inadequately disclosed relationship with MGML"** | AC ¶¶123-141; H.R. 1-2, 13-29 |
| **"unbundling" – "utilizing multiple CPT codes in connection with the claims and billing process for a single Panorama test"** | H.R. 1, 11, 33-36, 39-40 |
| **"double billing" - "seeking substantially duplicative payments from patients and insurance payors for the same Panorama test"** | H.R. 1-2, 24-31 |
| **Price Transparency Program ("PTP") -- allowing patients "who elected self-pay and paid within a particular time frame . . . to pay a preset cash price for Panorama."** | H.R. 33 |
| **PTP - allowing "patients with copays Natera estimated to be higher than the [PTP] price to pay a preset cash price for Panorama"** | H.R. 33 |
| **PTP – allowing patients "whose copay for the Panorama tests may not have been as expensive or may have been covered by their insurance had they opted out of the additional microdeletion screen" to pay a preset cash price.** | H.R. 33 |
| **Resolving "complaints about surprise high bills . . . by offering to bill a lower price to patients in exchange for a cash payment, even after the patients' insurers were billed for the same Panorama test"** | H.R. 28, 32, 34-37 |
| **"submission of prior authorizations after a test was run"** | AC ¶¶143, 175; H.R. 20-21, 33 |
| **"submission of claims for Panorama screens that were medically unnecessary"[2]** | AC ¶¶123-24, 135; H.R. 7, 20-21, 40 |

[1] Footnote 2 to Defendants' Exhibit A is identical to Footnote 1 in Lead Plaintiff's Amended Response to Interrogatory 7, submitted as Defendants' Exhibit B. As a point of clarification, the language in Footnote 2 is not applicable to Defendants' Exhibit A, which does not contain the full and complete language of Lead Plaintiff's Amended Response to Interrogatory 7.

[2] In their Motion and Exhibit A, Defendants attempt to pull apart two connected practices to create the appearance that Plaintiffs' claims are multiplying: the "submission of claims for Panorama screens that were medically unnecessary" and the "submission of . . . claims

| Allegedly Improper or Deceptive Practice at Issue | Amended Complaint Paragraph(s) and Hindenburg Report Page(s) |
|---|---|
| **"submission of . . . claims without supporting medical documentation"** | H.R. 7, 20-21, 40 |
| **"failure to collect on or zero-balancing patients' cost-sharing payments like copays and deductibles"** | H.R. 35 |
| **Panorama requisition form "automatically opted patients in to expensive microdeletion testing without regard for medical necessity"** | AC ¶¶14, 145-149, 172; H.R. 1-2, 22-24 |

without supporting medical documentation." *See* Mot. at 4; Defendants' Ex. A at 1. In creating their requested chart, Defendants selectively excerpted Lead Plaintiff's Amended Responses and Objections to Natera, Inc.'s First Interrogatories, which read, in full, "submission of prior authorizations and insurance claims without supporting medical documentation." Natera's practice of automatically opting patients into medically unnecessary microdeletion testing led to the submission of prior authorizations and, ultimately, insurance claims, without proper documentation to support medical necessity.