**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| BRITISH AIRWAYS PENSION TRUSTEES LIMITED and KEY WEST POLICE & FIRE PENSION FUND, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NATERA, INC., et al.,<br><br>Defendants. | Case No. 1:22-cv-00398-DAE |

**PLAINTIFFS' OPPOSED MOTION TO COMPEL DEFENDANTS TO CURE DOCUMENT PRODUCTION DEFICIENCIES**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 2

III. LEGAL STANDARD ....... 3

IV. THE IDENTIFIED DOCUMENTS MUST BE PRODUCED ....... 4

V. CONCLUSION ....... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Matter of Am. River Transp. Co., LLC*,
2022 WL 22893785 (E.D. La. June 8, 2022) .......... 8

*U.S. ex rel. Becker v. Tools & Metals, Inc.*,
2011 WL 856928 (N.D. Tex. Mar. 11, 2011) .......... 4

*In re Concho Res., Inc. Sec. Litig.*,
2025 WL 2899518 (S.D. Tex. Oct. 10, 2025) .......... 4

*Crosby v. La Health Serv. & Indem. Co.*,
647 F.3d 258 (5th Cir. 2011) .......... 3

*Edwards v. McDermott Int'l, Inc.*,
2022 WL 1568279 (S.D. Tex. May 18, 2022) .......... 4

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
218 F.R.D. 125 (E.D. Tex. 2003) .......... 3

*Hobbs v. Petroplex Pipe & Constr., Inc.*,
2018 WL 3603074 (W.D. Tex. Jan. 29, 2018) .......... 3

*Kilmon v. Saulsbury Indus., Inc.*,
2018 WL 5800757 (W.D. Tex. Feb. 28, 2018) .......... 3

*Primoris Energy Servs. Corp. v. Air Prods. & Chems., Inc.*,
2025 WL 2529644 (S.D. Tex. Sept. 3, 2025) .......... 8

*SEC v. Brady*,
238 F.R.D. 429 (N.D. Tex. 2006) .......... 3, 4

*Shapira v. Rare Character Whiskey Co., LLC*,
2025 WL 4055407 (W.D. Ky. Oct. 14, 2025), *R. & R. adopted*, 2025 WL 3460114 (W.D. Ky. Dec. 2, 2025) .......... 8

## Other Authorities

Fed. R. Civ P. 26(b)(1) .......... 3, 10

*Laboratory Billing Process And Its Applications To Molecular Microbiology Testing: Guidance For Laboratorians*, J CLIN MICROBIOL. (Oct. 2025) available at https://pmc.ncbi.nlm.nih.gov/articles/PMC12505987 .......... 8

Plaintiffs move pursuant to Federal Rule of Civil Procedure ("Rule") 37 and Local Civil Rule CV-7 for an order compelling Defendants to cure deficiencies in their document productions. Plaintiffs certify that the parties have met and conferred in an attempt to resolve the present issue but were unable to do so.

## I. INTRODUCTION

This complex securities fraud class action centers on allegations that Natera employed deceptive sales and billing practices that inflated demand and revenue for its Panorama non-invasive prenatal genetic test ("NIPT"). Those practices included Natera's use of an entity, My Genome My Life, Inc. ("MGML"), to submit hundreds of thousands of prior authorization requests without disclosing that MGML (and not physicians) were submitting the prior authorizations at Natera's direction. Defendants' deceptive conduct inflated and jeopardized Natera's Panorama revenues by substantially increasing Natera's regulatory and legal risk.

Defendants have refused to produce several categories of highly relevant documents: (1) documents containing key details of the Natera-MGML collaboration; (2) documents reflecting Natera's compliance review of its use of MGML and its Panorama prior authorization and billing processes; (3) electronic health insurance claims data that links Natera's deceptive conduct to revenues; (4) records of health insurer investigations and audits; and (5) documents related to Natera's failure to collect Panorama copays and deductibles.[1]

Defendants must produce these documents. Plaintiffs have served document requests requiring their production and each category easily meets the relevance standard. Plaintiffs also have taken pains to agree to accept documents to address the gaps in Defendants' production that

[1] Plaintiffs are not presently seeking an order compelling Defendants to produce another category of missing documents—relevant health insurer contracts, incorporated manuals, and coverage policies—because Defendants have represented that they are conducting searches and will produce these materials if found.

can be produced with relatively minimal burden, and easily within proportion to the needs of this case. Defendants' arguments against production rest on a self-serving definition of relevance that finds no support in the rules or caselaw, unsubstantiated assertions of burden, and a mistaken belief that negotiated search terms constitute the outer bounds of discovery even when specific gaps are identified in Defendants' production. The Court should grant Plaintiffs' motion to compel.

## II. FACTUAL BACKGROUND

Plaintiffs served Requests for Production of Documents ("RFPs") on Defendants on November 16, 2023. Friedman Declaration, Ex. 1. On February 29, 2024, Magistrate Judge Howell bifurcated discovery into two phases, with the first phase limited to "class certification and targeted merits discovery," and full merits discovery deferred until after the class was certified. Dkt. 128 at ¶¶ 7, 9, 12. Following Phase 1 of discovery, the Court granted class certification on March 21, 2025 (Dkt. 178) and Phase 2 of discovery began. After document search parameters were ordered by Magistrate Judge Howell on July 2, 2025, Dkt. 197, Defendants made rolling document productions, culminating in the substantial completion of document production on April 30, 2026. The fact discovery deadline is October 27, 2026.

Plaintiffs identified numerous deficiencies in Defendants' productions, including missing documents critical to Plaintiffs' claims. Beginning just one week after substantial completion, Plaintiffs sent Defendants a series of three detailed letters identifying the gaps and providing a basis for believing that the additional responsive documents are in their possession. Exs. 2-4. The parties met and conferred regarding the deficiencies and exchanged further correspondence. During this process, Plaintiffs tied each deficiency to RFPs,[2] explained the relevance of each category of missing documents, and outlined how Defendants could remedy each deficiency with

[2] Exhibit 5 identifies the RFPs that call for the production of each category of documents.

little burden. Ex. 6. Defendants agreed to remedy a small number of deficiencies but have stated they will not produce the documents that are the subject of this motion. Exs. 7-8.

## III. LEGAL STANDARD

The scope of discovery is governed by Rule 26(b)(1), which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"[T]he scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense." *Crosby v. La Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (citation modified). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Hobbs v. Petroplex Pipe & Constr., Inc.*, 2018 WL 3603074, at *2 (W.D. Tex. Jan. 29, 2018) (citation modified). "Courts construe discovery rules liberally to serve the purposes of discovery: providing the parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 132 (E.D. Tex. 2003). "Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *SEC v. Brady*, 238 F.R.D. 429, 436 (N.D. Tex. 2006).

A party may move for an order compelling production pursuant to Rule 37 "when a party fails to . . . respond to a request for production under [Rule] 34, provided such discovery requests are within the scope of Rule 26(b)." *Kilmon v. Saulsbury Indus., Inc.*, 2018 WL 5800757, at *2 (W.D. Tex. Feb. 28, 2018). "The burden is on the party who opposes its opponent's request for production to show specifically how each request is not relevant or how each request is overly

broad, burdensome or oppressive." *Brady*, 238 F.R.D. at 436 (citation modified).

## IV. THE IDENTIFIED DOCUMENTS MUST BE PRODUCED

As set forth in detail below, the limited categories of unproduced documents easily clear the "extremely low" threshold for relevance in discovery matters. *U.S. ex rel. Becker v. Tools & Metals, Inc.*, 2011 WL 856928, at *2 (N.D. Tex. Mar. 11, 2011). Production of the documents is also proportional to the needs of the case. The requested documents are central to the key elements of material falsity and scienter. Plaintiffs have no other means of accessing the information sought, as Natera has "complete and exclusive control" over the information. *Edwards v. McDermott Int'l, Inc.*, 2022 WL 1568279, at *3 (S.D. Tex. May 18, 2022). The amount in controversy in this matter strongly weighs in favor of broad discovery, as the Court and opposing counsel have previously acknowledged. *See* July 1, 2025 Hr'g Tr. at 42:20-22 (Dkt. 199) (the scope of discovery is not "unduly burdensome, given the scope of issues in this case and the potential damages that might be at issue."); July 28, 2026 Hr'g Tr. at 18:24-25 (Dkt. 277) (Defendants: "From our perspective, this is a big case. Plaintiffs have said damages are enormous in this case[.]"); *see also In re Concho Res., Inc. Sec. Litig.*, 2025 WL 2899518, at *3 (S.D. Tex. Oct. 10, 2025) ("[I]t is hard to imagine a damages model in a securities class action that would not encourage broad (and potentially expensive) discovery."). The nature of this action, brought to "protect investors" and to "deter corporations from misleading the public" also weighs in favor of discovery. *Id.*

**<u>Documents Concerning MGML</u>** Natera's relationship with and use of MGML forms the crux of this case and was also the primary focus of the Hindenburg Report ("H.R.") that constitutes the corrective disclosure. Yet Defendants have refused to produce documents about the beginning and critical first year of the MGML-Natera relationship.

Natera viewed MGML [redacted]

[redacted] Ex. 9. [redacted], Amar Kamath, whom the H.R. reported had an undisclosed personal relationship with MGML's operator. Ex. 10 at -104. The [redacted] has hallmarks of being a sham designed to hide that Natera was paying MGML to submit prior authorizations that were supposed to be submitted by physicians. It provided that [redacted] *Id.* at -095, -105. The [redacted] falsely stated that [redacted] *Id.* at -095.

Between the start of the MGML-Natera relationship, and continuing through the Class Period, MGML submitted [redacted] prior authorizations (*see* Ex. 11) that facilitated [redacted] reimbursements from health insurers to Natera (*see* Ex. 12). Irregularities about Natera's use of MGML include that Natera [redacted] (Ex. 13 at 253:19-22; 258:3-259:1; 265:2-8); [redacted] (*id.* 198:21-24; 238:23-239:5); and [redacted] Ex. 14 at -939 and Ex. 15.

Documents in Defendants' possession concerning MGML from before January 1, 2019 are critical because they reflect information regarding Natera's involvement in creating MGML; the key actors involved in the decision to retain MGML; Natera's motivations for helping to create and use MGML; the decision to pay MGML through a [redacted]; the negotiation of the terms of the [redacted]; the conception of the role Natera would play in MGML's

business practices; the decision to conceal Natera's use of MGML; and whether any red flags were acknowledged by Natera before or shortly after the engagement began. The story of MGML's involvement—critical to demonstrating falsity and scienter—is necessarily incomplete without details about the understanding on which the relationship began and operated.

Defendants do not claim that documents concerning the genesis and first year of the MGML-Natera partnership are not in their possession, and they have not articulated a coherent argument that they are irrelevant. Producing them is unlikely to be burdensome—and any burden is proportional to the elevated need for this evidence—because they are likely maintained by a small number of individuals who are already custodians and concern a short time period. Defendants presumably have already preserved and collected the relevant documents to provide to [redacted] and because [redacted]. Ex. 16.

**<u>Documents Concerning Natera's Compliance Review</u>**: Defendants' productions contain significant gaps related to Natera's compliance team's review of MGML, relevant contracts, billing regulations, healthcare laws, and industry guidance. Ex. 2 at 3-4. Natera's lack of compliance (and the attendant increase in regulatory risk) is central to the material falsity and scienter elements. *See* Dkt. 60, Compl. ¶¶ 136-42 ("The undisclosed Natera-MGML ties implicated potential anti-kickback law violations and industry-standard practices"; also detailing HHS-OIG guidance regarding the use of prior authorization services that Natera violated). These documents are also needed to rebut Defendants post-H.R. public statements touting [redacted] Ex. 17 at -862.

Plaintiffs have identified nine narrow, highly relevant subsets of compliance documents

that have not been produced: (i) review of Natera's retention of MGML, subsequent relationship, [redacted], and MGML's status as a charitable organization; (ii) review of Natera's prior authorization practices and those of any third party providers it used, and its decision to use third party prior authorization providers; (iii) review of Natera's compliance with Anti-Kickback laws and the Stark Law; (iv) records of Natera employees' training and certifications of compliance with Anti-Kickback laws and the Stark Law; (v) compliance review of Panorama billing policies and plans (including choice of which CPT codes to bill for Panorama tests), pricing actions, write-off policies, and the design of the Panorama requisition form; (vi) review of CPT code billing; (vii) review of HHS-OIG advisory opinions regarding the use of third party prior authorization services; (viii) review of Natera's health insurer contracts and manuals which established the health insurers' requirements regarding prior authorization and claims submission; and (ix) minutes and presentations from meetings of Natera's [redacted], to the extent they pertain to the above issues. Ex. 6 at 3. The compliance documents are likely contained within the custodial file of Natera's Chief Compliance Officer, whose documents already have been collected, and who will be deposed in the coming weeks. Any burden is far outweighed by their importance to the case.[3]

**Panorama Claims Data**: To obtain reimbursement for Panorama tests from health insurers, Natera submitted claims electronically. The claims communicated information about the patient and prescriber; the prescriber's reason for ordering the test (diagnosis code); the CPT or procedure code; whether a prior authorization was required and submitted; and other information. For each submitted claim, Natera received an electronic response from the insurer stating whether the claim

[3] Defendants have said that they are "continuing to search for, collect, and produce additional [compliance] documents that can be located through reasonable searches" (Ex. 8), but four months after being advised of the deficiencies have not committed to remedying any of them.

was approved; the reimbursement amount; and the amount of copay or deductible Natera was required to collect from the patient.[4] Claims data is important in this case because it reflects the process by which Natera converted Panorama tests and prior authorizations into revenue, and will reveal whether Natera was truthful when providing information about the tests, the prior authorizations, and their medical necessity when it sought payment. *See, e.g.*, Compl. ¶ 134.

To minimize the associated burden and to avoid the need to collect or review any custodial files, Plaintiffs have offered to accept an export from Natera's electronic claims database. Defendants have not disputed that Natera maintains claims data in electronic form that includes Panorama tests from the relevant time period. Defendants have not articulated any reason why claims data is not relevant and have not substantiated any undue burden. Courts reject Defendants' position that they are not required to create reports of relevant data for discovery purposes. Where a party only needs to "query a database of existing financial information and generate a report from that information," it is not a "new document created for the purpose of discovery, but an accessible report created from existing data." *Shapira v. Rare Character Whiskey Co., LLC,* 2025 WL 4055407, at *5 (W.D. Ky. Oct. 14, 2025), *R. & R. adopted*, 2025 WL 3460114 (W.D. Ky. Dec. 2, 2025); *Primoris Energy Servs. Corp. v. Air Prods. & Chems., Inc*., 2025 WL 2529644, at *2 (S.D. Tex. Sept. 3, 2025) ("[T]here is a critical distinction between creating new documents and 'requiring a party to query an existing database to produce reports for opposing parties.' . . . 'Courts regularly require parties to produce reports from dynamic databases.'") (citations omitted); *Matter of Am. River Transp. Co., LLC*, 2022 WL 22893785, at *3 (E.D. La. June 8, 2022) ("[S]imply searching a database and providing the results does not require creation of a new document beyond

[4] *See* Meghan Starolis et. al., *The Laboratory Billing Process And Its Applications To Molecular Microbiology Testing: Guidance For Laboratorians*, J CLIN MICROBIOL. (Oct. 2025) available at https://pmc.ncbi.nlm.nih.gov/articles/PMC12505987

the scope of Rule 34.").

**Records of Insurer Investigations**: Defendants produced some documents concerning health insurer audits, investigations, pre-payment reviews, post-payment reviews, requests for corrective action plans, and refund and recoupment requests, but have refused to produce many others, including documents necessary to understand the conduct underlying each investigation, which contractual provision or rule it violated, Natera's response, and any resolution. The Court has already found that Natera's history of being investigated for improper or fraudulent billing practices is relevant to Defendants' scienter. Dkt. 104 at 25 (allegations that "Natera previously settled with the DOJ 'for abusive billing practices that increased Natera's Panorama revenues' at a time that Chapman and Rabinowitz were in key positions at Natera . . . supported a cogent inference of scienter"). They are also relevant to materiality, as repeat violations are more likely to be addressed with serious consequences like contract termination. Ex. 18 [redacted] Defendants have also not produced documents concerning what appear to be several post-H.R. investigations conducted by State Medicaid agencies or Attorneys General. [redacted]

To minimize any burden, Plaintiffs have offered to limit this request to documents concerning [redacted], as well as: (1) documents concerning investigations into Natera's Women's Health portfolio; (2) for matters active between January 1, 2017 and December 31, 2022; and (3) to exclude routine

audits involving billings of less than $50,000. Defendants have stated they will not produce any further records of insurer investigations on the grounds they are not relevant or material because they did not lead to recoupments in excess of Natera's reserves. Ex. 7. Defendants' attempt to restrict production based on the dollar amount of subsequent recoupments should be rejected because materiality is an issue for trial and documents "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Defendants' position is particularly meritless in light of their partial production of insurer investigation documents. Defendants have not explained why certain documents related to investigations are relevant, but other documents (in some instances pertaining to the exact same investigation) are not relevant.

**Documents Related to Failure to Collect Copays and Deductibles**: Natera's failure to diligently collect patient cost-sharing payments like copays, coinsurance, and deductibles for Panorama tests, including tests where prior authorizations were submitted by MGML, allowed it to receive reimbursements from insurers in violation of contractual requirements and increased the risk of investigation, recoupment, and termination. Natera's failure to collect copays and deductibles is implicated by the Complaint's allegations, *see* Compl. ¶¶ 122-49, 163, is discussed in the H.R. 34-37, and was highlighted by Defendant Chapman in the special investor call responding to the H.R. Ex. 17 at -862 [redacted] Natera's post-H.R. internal investigation included a dubious finding of [redacted] Ex. 19. Documents reflecting Natera's collection of copays and deductibles are relevant and necessary to rebut Defendants' defenses.

## V. CONCLUSION

Plaintiffs respectfully request that the Court compel the Defendants to cure the document production deficiencies outlined above.

Dated: September 3, 2026

Respectfully submitted,

**NIX PATTERSON, LLP**

*/s/ Jessica Underwood*
Jessica Underwood (Bar No. 24093291)
Cody Hill (Bar No. 24095836)
Jeffrey J. Angelovich (Bar No. 00786988)
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Tel: (512) 328-5333
Fax: (512) 328-5335
codygukk@nixlaw.com
jangelovich@nixlaw.com
junderwood@nixlaw.com

*Liaison Class Counsel*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joshua E. D'Ancona (admitted *pro hac vice*)
Daniel A. Friedman (admitted *pro hac vice*)
Vanessa M. Milan (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jdancona@ktmc.com
dfriedman@ktmc.com
vmilan@ktmc.com

*Counsel for Lead Plaintiff and Class Representative British Airways Pension Trustees Limited and Class Counsel*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano (admitted *pro hac vice*)
James A. Harrod (admitted *pro hac vice*)
Matthew S. Goldstein (admitted *pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1400
salvatore@blbglaw.com
jim.harrod@blbglaw.com
matthew.goldstein@blbglaw.com

*Counsel for Additional Plaintiff and Class Representative Key West Police & Fire Pension Fund and Class Counsel*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Plaintiffs telephonically met and conferred in good faith with counsel for the Defendants on July 17, 2026 and August 17, 2026, and also exchanged related correspondence in an effort to resolve the dispute without court intervention. The parties were unable to reach resolution on the matters raised in this Motion.

Dated: September 3, 2026

*/s/ Daniel A. Friedman*
Daniel A. Friedman

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: September 3, 2026

*/s/ Jessica Underwood*
Jessica Underwood